# APPENDIX B:

## End-Payor Drug Cases Seeking Damages and Their Standing Analyses[1]

| Case Name | Any Type of "Standing" Analysis?[2] | Analysis of Whether There is an Available *Illinois Brick* Repealer?[3] | Analysis of Whether *AGC* Should Further Limit Potential Claims? |
|---|---|---|---|
| *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2019 WL 1397228, at *23-24, 26-27 (E.D. Va. Feb. 6, 2019), *report and rec. adopted as modified*, 400 F. Supp. 3d 418, 433-35 (E.D. Va. 2019). | Yes (Deferred Article III standing determination to class certification) | Yes | No |
| *Blue Cross & Blue Shield of Vt. v. Teva Pharm. Indus., Ltd.*, No. 5:22-cv-159, 2024 WL 323775, at *30-34 (D. Vt. Jan. 22, 2024). | Yes | Yes | No |

---

[1] This chart considers a representative sample of end payor generic / biosimilar drug delay cases seeking damages and does not purport to address every such case. Because J&J limited its briefing to plaintiffs' state antitrust claims, this chart is similarly limited to claims under state antitrust statutes.

[2] This column reflects whether a court analyzed standing pursuant to one of the following: (1) Article III standing; (2) availability of an *Illinois Brick* repealer; and/or (3) an analysis under the *AGC* test.

[3] Courts analyzing end-payor claims under state antitrust statutes generally divide their analyses into two parts: (1) an analysis of whether the relevant state has an *Illinois Brick*-repealer statute such that an end payor may recover under that state's antitrust statute; and (2) an analysis of whether the end payor has met other elements of each antitrust statute (*e.g.*, notice requirements or statute of limitations). Because Appendix B collects cases analyzing end-payor standing under state antitrust statutes, this column reflects whether the court conducted the first analysis, not the second.

| Case Name | Any Type of "Standing" Analysis?[2] | Analysis of Whether There is an Available *Illinois Brick* Repealer?[3] | Analysis of Whether *AGC* Should Further Limit Potential Claims? |
|---|---|---|---|
| *In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litig.*, No. 20-1076-CFC, 2022 WL 2438934, at *15-20 (D. Del. July 5, 2022). | Yes (Deferred Article III standing determination to class certification) | Yes | No |
| *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, MDL No. 2895, 2022 WL 736250, at *16-24 (D. Del. Mar. 3, 2022). | Yes | No[4] | No |
| *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 555 F. Supp. 3d 829, 883-88 (N.D. Cal. 2021). | Yes | Yes | No |
| *In re Loestrin 24 Fe Antitrust Litig.*, 410 F. Supp. 3d 352, 367-71 (D.R.I. 2019). | Yes | Yes | No |
| *In re Ranbaxy Generic Drug App. Antitrust Litig.*, No. 19-md-02878-NMG, 2019 WL 6341298, at *6 (D. Mass. Nov. 27, 2019). | Yes | Yes | No |

---

[4] The *Sensipar* court analyzed whether the end payors met the citizen and/or resident requirement under the Utah antitrust statute. *See Sensipar*, 2022 WL 736250, at *21. While some courts have analyzed that issue alongside antitrust standing under other state antitrust statutes, *see, e.g., In re Effexor Antitrust Litig.*, 337 F. Supp. 3d 435, 460-61 (D.N.J. 2018), the court here did not. As such, we do not classify it as a standing analysis for purposes of this appendix.

| Case Name | Any Type of "Standing" Analysis?[2] | Analysis of Whether There is an Available *Illinois Brick* Repealer?[3] | Analysis of Whether *AGC* Should Further Limit Potential Claims? |
|---|---|---|---|
| *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 827-834 (E.D. Pa. 2019). | Yes (Deferred Article III standing determination to class certification) | Yes | No |
| *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 417-19 (D.N.J. 2018). | Yes | Yes | No |
| *In re Effexor Antitrust Litig.*, 337 F. Supp. 3d 435, 458-61 (D.N.J. 2018). | Yes | Yes | No |
| *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, No. 15 Civ. 6549, 2018 WL 7197233, at *20-24 (S.D.N.Y. Dec. 26, 2018). | Yes | Yes | No |
| *In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 584-85 (E.D. Pa. 2018). | Yes | No | No |
| *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 724-28 (S.D.N.Y. 2017). | Yes | No | Yes |
| *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 721-24 (N.D. Ill. 2016). | Yes | Yes | No |
| *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 249-53 (D. Conn. 2015). | Yes | Yes | No |

| Case Name | Any Type of "Standing" Analysis?[2] | Analysis of Whether There is an Available *Illinois Brick* Repealer?[3] | Analysis of Whether *AGC* Should Further Limit Potential Claims? |
|---|---|---|---|
| *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14–MD–02503–DJC, 2015 WL 5458570, at *14-15 (D. Mass. Sept. 16, 2015). | Yes | Yes | No |
| *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 691-94, 696-98 (E.D. Pa. 2014). | Yes | No | Yes |
| *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1078-81, 1084-88 (N.D. Cal. 2014); *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155 (N.D. Cal. 2015) (on motion to dismiss second amended complaint, defendants did not challenge end payors' antitrust standing). | Yes | Yes | No |
| *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 757-60 (E.D. Pa. 2014). | Yes | Yes | No |
| *In re Nexium Antitrust Litig.*, 968 F. Supp. 2d 367, 403-07 (D. Mass. 2013). | Yes | Yes | No |
| *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 532-34, 537-46 (E.D. Pa. 2010). | Yes | No | No |

| Case Name | Any Type of "Standing" Analysis?[2] | Analysis of Whether There is an Available *Illinois Brick* Repealer?[3] | Analysis of Whether *AGC* Should Further Limit Potential Claims? |
|---|---|---|---|
| *In re K-Dur Antitrust Litig.*, No. 01-1652 (JAG), 2007 WL 5297755, at *11, 17-19 (D.N.J. Mar. 1, 2007). | Yes | No | The full extent of *K-Dur*'s analysis reads: *AGC* "stands for the proposition that not every party connected with a violation of federal antitrust laws has standing to bring an antitrust claim. Indeed, as the Court noted in *AGC*, '[t]he existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party.'" *Id.* at *17 (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council*, 459 U.S. 519, 542 (1983)) |
| *Ryan-House v. Glaxosmithkline, PLC*, No. 2:02CV442, 2004 WL 7390565 (E.D. Va. Mar. 11, 2004). | No | No | No |
| *In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30 (D.D.C. 2003). | Yes | Yes | Yes (applies *AGC* factors and finds that end payors have met them) |