# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRIGINIA
### NORFOLK DIVISION

CAREFIRST OF MARYLAND, INC.,
GROUP HOSPITALIZATION AND
MEDICAL SERVICES, INC., and
CAREFIRST BLUECHOICE, INC., on
behalf of themselves and all others similarly
situated,

        Plaintiffs,

v.

JOHNSON & JOHNSON and JANSSEN
BIOTECH, INC.,

        Defendants.

Case No. 2:23-cv-00629-JKW-LRL

**ORAL ARGUMENT REQUESTED**

## J&J'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE IN PART THE PROPOSED EXPERT TESTIMONY OF DR. BYRON CRYER AND ANDREW HIRSHFELD

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.    The Legal Requirements of Obviousness & Anticipation ................................................. 2

      A.    Obviousness ............................................................................................................ 2

      B.    Anticipation............................................................................................................. 3

II.   The '307 Patent Claims an Effective Treatment that Achieves Specific Clinical Endpoints ................................................................................................................................. 3

III.  Plaintiffs' *Walker Process* Allegations and Expert Reports ............................................. 5

IV.   Dr. Cryer's Responsive Opinions on Obviousness and Anticipation ................................. 6

      A. A POSA Would Have Considered the Unique Nature of Ulcerative Colitis .......... 6

      B. The Prior Art References ........................................................................................... 7

      C. Plaintiffs' Obviousness Combinations Provide "No Expectation" of Success for the Effective Treatment of Ulcerative Colitis.............................. 9

      D. ClinicalTrials.Gov Does Not Anticipate ................................................................. 10

LEGAL STANDARD............................................................................................................. 11

ARGUMENT.......................................................................................................................... 11

I.    Dr. Cryer Did Not Require an Elevated Standard of "Conclusive Proof of Efficacy" in Evaluating Reasonable Expectation of Success ........................................... 11

      A.    Because the Patent Claims Require Clinical Efficacy, Dr. Cryer's Reasonable Expectation of Success Opinion Properly Assessed a POSA's Expectations About Clinical Efficacy.................................................................. 12

            1.    Dr. Cryer Correctly Applied the Law of Reasonable Expectation of Success....................................................................................................... 13

            2.    Dr. Cryer's Deposition Testimony Is Also Consistent With the Law ........... 15

      B.    Plaintiffs Ignore the Nature of Ulcerative Colitis and the Perspective of a Person of Ordinary Skill in the Art..................................................................... 17

      C.    Reasonable Expectation of Success Is a Question of Fact from the Perspective of a Person of Ordinary Skill in the Art, Not a Legal Conclusion ........................................................................................................ 20

      D.    Dr. Cryer Should Be Permitted to Explain to the Jury What the Prior Art Teaches ............................................................................................................. 22

II.   Dr. Cryer Applied a Patent Law Analysis Specific to the Claimed Invention and the Prior Art As a Whole, Not Under an FDA Approval Standard ................................. 22

| III. | | Dr. Cryer's Anticipation Opinions Are Consistent with Patent Law | 24 |
|---|---|---|---|
| | A. | Dr. Cryer Applied the Correct Inherency Standard | 24 |
| | B. | Plaintiffs' Motion Does Not Address Dr. Cryer's Independent Opinion That ClinicalTrials.Gov Does Discloses a Test, not a Method of Treatment | 27 |
| IV. | | Dr. Cryer Opined on But-For Materiality, Not Materiality Under 37 C.F.R. § 1.56 | 28 |
| V. | | Dr. Cryer's Opinions Regarding What the PTO Examiner Reviewed Is Not Testimony on PTO Practices or Procedures | 29 |
| | | CONCLUSION | 30 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Sandoz, Inc.*,
544 F.3d 1341 (Fed. Cir. 2008)...............................................................................................19

*Acorda Therapeutics, Inc. v. Roxane Labs., Inc.*,
903 F.3d 1310 (Fed. Cir. 2018).........................................................................................21, 22

*Adapt Pharma Operations Ltd. v. Teva Pharms. USA, Inc.*,
25 F.4th 1354 (Fed. Cir. 2022) ...............................................................................................19

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*,
485 F. Supp. 2d 519 (D. Del. 2007)........................................................................................15

*Allergan, Inc. v. Apotex Inc.*,
754 F.3d 952 (Fed. Cir. 2014).................................................................................................25

*Allergan, Inc. v. Sandoz Inc.*,
726 F.3d 1286 (Fed. Cir. 2013)...............................................................................................24

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
651 F.3d 1318 (Fed. Cir. 2011)...............................................................................................27

*Amarin Pharma, Inc. v. Hikma Pharms. USA Inc.*,
449 F. Supp. 3d 967 (D. Nev. 2020).......................................................................................18

*Apotex Inc. v. Regeneron Pharms., Inc.*,
2023 WL 2588222 (PTAB Mar. 10, 2023)..............................................................................26

*Bausch Health Ireland Ltd. v. Padagis Israel Pharms. Ltd.*,
No. 20-5426, 2022 WL 17352334 (D.N.J. Dec. 1, 2022).......................................................18

*Belcher Pharms., LLC v. Hospira, Inc.*,
11 F.4th 1345 (Fed. Cir. 2021) ...............................................................................................28

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*,
661 F.3d 629 (Fed. Cir. 2011)...................................................................................................3

*Boehringer Ingelheim Int'l GmbH et al. v. Genentech, Inc.*,
IPR2015-00417, 2015 WL 4760571 (PTAB July 14, 2015) ..................................................26

*Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*,
752 F.3d 967 (Fed. Cir. 2014)...................................................................................................2

*Cumberland Pharms. Inc. v. Mylan Institutional LLC*,
   846 F.3d 1213 (Fed. Cir. 2017)...............................................................................21

*Daedalus Blue, LLC v. Microstrategy, Inc.*,
   No. 20-551, 2023 WL 4157543 (E.D. Va. Apr. 11, 2023) ......................................29

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)........................................................................................ *passim*

*Duke Univ. and Allergan Sales, LLC v. Sandoz, Inc.*,
   No. 18-cv-00997, 2023 WL 9227019 (D. Colo. Sept. 21, 2023)............................13

*Elan Pharms., Inc. v. Mayo Found. for Med. Educ. & Rsch.*,
   346 F.3d 1051 (Fed. Cir. 2003)...............................................................................27

*Eli Lilly and Co. v. Teva Pharms. Int'l GmbH*,
   8 F.4th 1331 (Fed. Cir. 2021) ......................................................................2, 12, 16

*Galderma Labs., L.P. v. Teva Pharms. USA, Inc.*,
   799 F. App'x 838 (Fed. Cir. 2020) ...........................................................................3

*Glaxo Inc. v. Novopharm Ltd.*,
   52 F.3d 1043 (Fed. Cir. 1995)..................................................................................26

*Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*,
   936 F.3d 1353 (Fed. Cir. 2019)................................................................................25

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).......................................21

*J&M Indus., Inc. v. Raven Indus., Inc.*,
   457 F. Supp. 3d 1022 (D. Kan. 2020).......................................................................29

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*,
   141 F.4th 1367 (Fed. Cir. 2025) ........................................................................18, 20

*Johnson v. Air & Liquid Sys., Corp.*,
   No. 18-cv-132, 2020 WL 11563846 (E.D. Va. Nov. 6, 2020) ................................20

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999)..................................................................................................11

*Life Techs., Inc. v. Clontech Labs., Inc.*,
   224 F.3d 1320 (Fed. Cir. 2000).................................................................................22

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
   370 F.3d 1354,1367 (Fed. Cir. 2004).......................................................................25

*In re Montgomery*,
  677 F.3d 1375 (Fed. Cir. 2012)............................................................................................25, 26

*Novartis Pharm. Corp. v. West-Ward Pharms. Int'l Ltd.*,
  287 F. Supp. 3d 505 (D. Del. 2017), *aff'd*, 923 F.3d 1051 (Fed. Cir. 2019) ...........................14

*Novartis Pharms. Corp. v. West-Ward Pharms. Int'l Ltd.*,
  923 F.3d 1051 (Fed. Cir. 2019)............................................................................................2, 18

*OSI Pharms. LLC v. Apotex Inc.*,
  939 F.3d 1375 (Fed. Cir. 2019)...............................................................................................14

*Oterra A/S v. Wild Flavors, Inc.*,
  2025 WL 1424919 (D. Del. May 16, 2025)..............................................................................16

*Par Pharm., Inc. v. TWi Pharm., Inc.*,
  773 F.3d 1186 (Fed. Cir. 2014)..................................................................................................2

*Salix Pharms., Ltd. v. Norwich Pharms. Inc.*,
  98 F.4th 1056 (Fed. Cir. 2024) ................................................................................................21

*Sanofi v. Lupin Atlantic Holdings S.A.*,
  282 F. Supp. 3d 818 (D. Del. 2017).........................................................................................18

*Sanofi v. Watson Lab'ys Inc.*,
  875 F.3d 636 (Fed. Cir. 2017)......................................................................................14, 16, 17

*Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*,
  2023 WL 4175334 (D. Del. June 26, 2023).........................................................................14, 18

*Sigray, Inc. v. Carl Zeiss X-Ray Microscopy, Inc.*,
  137 F.4th 1372 (Fed. Cir. 2025) ...........................................................................................3, 24

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
  550 F.3d 1356 (Fed. Cir. 2008).................................................................................................20

*Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*,
  18 F.4th 1377 (Fed. Cir. 2021) ............................................................................................12, 15

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) (en banc)..................................................................................28

*United States v. Wilson*,
  484 F.3d 267 (4th Cir. 2007) ....................................................................................................11

*ViiV Healthcare UK Ltd. v. Lupin Ltd.*,
  6 F. Supp. 3d 461 (D. Del. 2013), *aff'd*, 594 F. App'x 686 (Fed. Cir. 2015)...........................14

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
 853 F.3d 1272 (Fed. Cir. 2017)...............................................................................................3

*Westberry v. Gislaved Gummi A*B,
 178 F.3d 257 (4th Cir. 1999) ...............................................................................................11

**Statutes**

35 U.S.C. § 103...........................................................................................................................2

**Other Authorities**

37 C.F.R. § 1.56.........................................................................................................................28

*Clinical Efficacy*, CDISC Glossary Controlled Terminology,
 https://evs.nci.nih.gov/ftp1/CDISC/Glossary/CDISC%20Glossary.html (last
 visited Sept. 15, 2025) ...........................................................................................................17

Federal Rule of Evidence 702.............................................................................................11, 24

## INTRODUCTION

Plaintiffs seek to exclude the opinions of J&J's expert witness Byron Cryer, M.D., an experienced gastroenterologist who has spent decades studying inflammatory bowel disease, including Crohn's disease and ulcerative colitis ("UC"). Dr. Cryer offers testimony from the perspective of a "person of ordinary skill in the art"—or a "POSA"—a term of art in patent law that reflects the perspective that governs an obviousness or anticipation analysis. Plaintiffs also seek to exclude the opinions of Mr. Andrew Hirshfeld, J&J's Patent Office expert, to the extent he relies on Dr. Cryer.

Dr. Cryer's opinions are directly relevant to an essential element of Plaintiffs' *Walker Process* fraud theory. To prevail on this theory, Plaintiffs must show that allegedly withheld prior art renders the claims of U.S. Patent No. 10,961,307 (the "'307 Patent") "obvious" or "anticipated" and if it had been disclosed to the U.S. Patent & Trademark Office ("PTO"), the PTO would not have granted the '307 Patent. With respect to obviousness, Dr. Cryer explains, *inter alia*, that Plaintiffs' prior art references would not have given a POSA any expectation, let alone a reasonable one, that ustekinumab would effectively treat UC or achieve any of the claimed clinical endpoints of the '307 Patent. With respect to anticipation, he explains that a POSA would not find every limitation of the '307 Patent's claims disclosed by the prior art; as a result, the claims are not anticipated.

Plaintiffs seek to exclude Dr. Cryer's testimony on the grounds that he somehow misapplied patent law, offered improper legal conclusions, or opined on issues outside of his areas of expertise. They are wrong. Each argument Plaintiffs make for exclusion fails. Dr. Cryer's opinions are directly responsive to Plaintiffs' experts, apply the proper legal standards on issues of fact (not law), and are well within his area of expertise. And because Dr. Cryer's opinions are proper, Plaintiffs' motion should also be denied as to Mr. Hirshfeld.

1

## BACKGROUND

### I.    The Legal Requirements of Obviousness & Anticipation

Plaintiffs allege J&J committed fraud on the PTO during the prosecution of the '307 Patent (the "*Walker Process* theory") by failing to disclose certain prior art references to the PTO's patent examiner.  Dkt. 184, ¶¶ 144-148, 159-60.  To succeed on their *Walker Process* claim, Plaintiffs must prove (among other things) "but-for materiality"—*i.e.*, that if the prior art had been disclosed to the PTO, the PTO would not have granted the '307 Patent.  Plaintiffs' experts Dr. Matovcik and Dr. Warfield opine that the allegedly withheld prior art renders the claims of the '307 Patent obvious or anticipated.  Dr. Cryer responds.

#### A.    Obviousness

A claimed invention is not patentable if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious."  35 U.S.C. § 103.  To show obviousness, a party must prove that a "skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and the skilled artisan would have had a reasonable expectation of success in doing so."  *Novartis Pharms. Corp. v. West-Ward Pharms. Int'l Ltd.*, 923 F.3d 1051, 1059 (Fed. Cir. 2019) (internal citations omitted).  Only the latter is relevant on this motion.  The "presence or absence" of "a reasonable expectation of success" is a "question of fact."  *Id.* at 1059 (quoting *Par Pharm., Inc. v. TWi Pharm., Inc.*, 773 F.3d 1186, 1196 (Fed. Cir. 2014)).

Reasonable expectation of success "refers to the likelihood of success in combining references to meet the limitations of the claimed invention."  *Eli Lilly and Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1345 (Fed. Cir. 2021) (internal citations omitted).  It is a fact-based assessment from the perspective of the POSA.  *Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*, 752 F.3d 967, 974 (Fed. Cir. 2014) ("Obviousness, and expectation of success, are evaluated

from the perspective of a person having ordinary skill in the art at the time of invention.") (citing *Velander v. Garner*, 348 F.3d 1359, 1377 (Fed. Cir. 2003)).

### B.    Anticipation

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention, either expressly or inherently." *Galderma Labs., L.P. v. Teva Pharms. USA, Inc.*, 799 F. App'x 838, 842 (Fed. Cir. 2020) (internal citation omitted). "Anticipation is a question of fact." *Sigray, Inc. v. Carl Zeiss X-Ray Microscopy, Inc.*, 137 F.4th 1372, 1376 (Fed. Cir. 2025). It "is an inquiry viewed from the perspective of one skilled in the art," the question being whether a POSA "would reasonably understand or infer from the prior art reference's teaching that every claim element was disclosed in that single reference." *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1284 (Fed. Cir. 2017) (citation and internal quotation marks omitted).

"A limitation or the entire invention is inherent and in the public domain if it is the 'natural result flowing from' the explicit disclosure of the prior art." *Galderma*, 799 F. App'x at 845 (quoting *Schering Corp. v. Geneva Pharms*., 339 F.3d 1373, 1379 (Fed. Cir. 2003)). Inherency "may not be established by probabilities or possibilities." *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639 (Fed. Cir. 2011). Inherent anticipation requires ***inevitability***. *See id.*

## II.    The '307 Patent Claims an Effective Treatment that Achieves Specific Clinical Endpoints

Both obviousness and anticipation require analysis of the prior art in relation to the specific claims of the patent at issue. The '307 Patent, entitled "Methods of Treating Moderately to Severely Active Ulcerative Colitis by Administering an Anti-IL12/IL23 Antibody," issued to J&J

on March 30, 2021.  PEX 67 at 1.[1]  The '307 Patent's innovation follows from the results of J&J's UNIFI Phase III clinical trial, reported in the patent's examples.  PEX 1, Cryer Report ¶¶ 66-74. The UNIFI clinical trial was the first clinical trial evaluating the efficacy of ustekinumab as a treatment for moderate-to-severe UC.  *Id.* ¶ 64.  The results of UNIFI demonstrated that ustekinumab could treat and achieve the claimed clinical endpoints.  PEX 67, Examples 1-2; PEX 1 ¶¶ 68-75.

The '307 Patent has 34 claims.  PEX 67 at cls. 1-34; PEX 1 ¶ 75.  Claims 1, 19, 33, and 34 are the independent claims.  PEX 67 at cls. 1, 19, 33, 34; PEX 1 ¶ 75.  Claim 1 recites administering a "clinically proven safe and ***clinically proven effective amount***" of ustekinumab to a "moderately to severely active ulcerative colitis (UC)" subject, wherein the subject "***is a responder to treatment*** by at least one" of seven specific clinical endpoints.  PEX 67 at cl. 1 (emphasis added); PEX 1 ¶¶ 75, 246.  Those endpoints include clinical remission based on "Mayo score[s]," "Mayo endoscopy subscore[s]," "IBDQ" scores, and "mucosal healing."  PEX 67 at cl. 1; PEX 1 ¶¶ 75, 246-53.

The remaining independent claims in the '307 Patent recite these endpoints and *specific* dosage regimens, including "intravenously administering" ustekinumab "at a dosage of about 6.0 mg/kg body weight . . . at week 0 of treatment" and "subcutaneously administering [ustekinumab] . . . at a dosage of 90 mg per administration at week 8 of the treatment."  PEX 67 at cls. 19, 33, 34; PEX 1 ¶¶ 280, 329.  Every claim requires that the subject "is a ***responder*** to treatment," *i.e.*, the treatment works by at least one of the claimed endpoints.  PEX 67 at cls. 1, 19, 33, 34 (emphasis added); PEX 1 ¶ 246.

---

[1]    J&J's exhibits, referred to as "Ex." in the brief, are attached to the Declaration of Amanda Antons in Support of J&J's Opposition to Plaintiffs' Motion to Exclude the Expert Testimony of Dr. Byron Cryer and Andrew Hirshfeld.  Plaintiffs' exhibits, referred to as "PEX," are attached to the Declaration of Hannah Brennan (Dkt. Nos. 456, 458, 459).

### III.    Plaintiffs' *Walker Process* Allegations and Expert Reports

Plaintiffs claim that J&J committed fraud by withholding certain prior art references from the PTO during the prosecution of the '307 Patent. To support their contention that the allegedly withheld prior art references would have been material to the claims of the '307 Patent, Plaintiffs offer the expert opinions of Drs. Matovcik and Warfield. Dr. Matovcik, a patent attorney who is notably not a POSA[2], opines that certain claims of the '307 Patent are invalid as obvious or anticipated. Specifically, she attempts to assess combinations of an August 2018 posting of a summary (without results) of the UNIFI trial's design on the database ClinicalTrials.Gov ("CT.Gov") with three allegedly withheld prior art references.[3] PEX. 66, Matovcik Report ¶¶201, 217-19. In her view, which is of no relevance because she is not a POSA, combining CT.Gov with additional prior art would provide a "strong expectation that J&J's Phase III clinical trial would successfully lead to the FDA approval of ustekinumab to treat UC" and that the UNIFI trial was "likely to be successful." PEX 66 ¶¶ 224-25. Dr. Matovcik also opines, again not from the perspective of a POSA, that the '307 Patent is anticipated by CT.Gov, even though CT.Gov does not disclose the claimed results, because the results are inherently disclosed (as demonstrated by the withheld information). PEX 82, Matovcik Reply Report ¶¶ 146-158.

Dr. Warfield, a gastroenterology M.D., is a POSA. But he does not offer obviousness or anticipation opinions; nor does he compare the prior art to the claims of the '307 Patent, or even review all of the claims of the '307 Patent.[4] Ex. 1, Warfield Dep. Tr., at 47:12-48:1, 46:15-25,

---

[2]    J&J has moved to exclude Dr. Matovcik's opinions on various issues, including invalidity, because she is not a POSA. *See* Dkt. 438.

[3]    Those three references are Ochsenkühn, Kolios, and Afonso, discussed below. *See* Exs. 3-5; *see infra* pp. 7-9.

[4]    As explained in J&J's *Daubert* motion, these analytical failures render Dr. Warfield's opinions about what is "obvious" inadmissible. *See* Dkt. 434.

98:5-14, 96:13-97:16, 74:6-8, 98:3-14. Dr. Warfield instead offers opinions that it would have been "obvious" in a laymen's, not legal, sense that ustekinumab would have been effective in treating UC, and that he would have "anticipated future FDA approval" for UC based on the allegedly withheld prior art references. PEX 81, Warfield Report ¶¶ 37, 175, 178, 181.

## IV.    Dr. Cryer's Responsive Opinions on Obviousness and Anticipation

Dr. Cryer is an experienced gastroenterologist with over 30 years of experience treating UC and Crohn's disease patients. PEX 1 ¶¶ 5, 9; Ex. 2, Cryer Dep. Tr., at 15:10-16:19. He has personally treated thousands of patients with UC and CD, and has supervised students, residents, and fellows who sought to specialize in gastroenterology. PEX 1 ¶¶ 9, 12. He previously served as a member of the FDA's Advisory Committee for Gastrointestinal Drugs. *Id.* ¶ 14. He is a POSA under J&J's and Plaintiffs' definition. *Id.* ¶¶ 77-79, 87.

Dr. Cryer's challenged opinions are direct responses to Dr. Matovcik and Dr. Warfield. In his opinion, from the perspective of a POSA, the '307 Patent claims are not obvious (and therefore the allegedly withheld references cannot be but-for material), disagreeing with Dr. Matovcik's explicit and Dr. Warfield's implicit obviousness opinions. *Id.* ¶¶ 467-84, 366, 201-56 (summarizing flaws of Ochsenkühn), 273-95 (summarizing issues with Kolios), 300-31 (summarizing issues with Afonso) *see also* Ex. 2, Cryer Dep. Tr., at 72:05-73:16. He also disagrees with Dr. Matovcik that CT.Gov (which the patent examiner explicitly addressed during prosecution of the patent) inherently anticipates the claims of the '307 Patent. PEX 1 ¶¶ 24, 366-395. And he directly responds to (and disagrees with) Dr. Warfield's opinion that he "would have anticipated future FDA approval" based on the prior art. *Id.* ¶ 191 (citing PEX 81 ¶¶ 175, 178, 181, 184, 187).

### A.    A POSA Would Have Considered the Unique Nature of Ulcerative Colitis

Because UC is not like other diseases, the unique nature of UC is a necessary predicate to

determining whether the POSA would have a reasonable expectation of success in view of the prior art. Dr. Cryer explains that UC is a relapsing and remitting disease. PEX 1 ¶¶ 204-205; Ex. 2, Cryer Dep. Tr., at 35:13-37:4. Plaintiffs' gastroenterologist agrees. Ex. 1, Warfield Dep. Tr., at 59:15-25. This means that UC patients go through periods where the disease is "naturally in remission for months or even years" followed by "relapse" where they experience symptoms. PEX 1 ¶¶ 204, 207. This cycle "repeats" and varies. *Id.* Due to this phenomenon, clinical remission can be part of the disease cycle rather than the result of administered treatment. *Id.* Dr. Cryer also explains that, to complicate things further, the "placebo effect" is notoriously high for UC biologics. *Id.* ¶ 231 (noting 35% placebo response rate). A placebo is an inactive treatment given to a subject to evaluate whether a drug is better than no treatment at all. *Id.* ¶ 228. Oftentimes UC subjects who take a placebo still experience improvement—the placebo effect. *Id.* ¶ 229.

It is Dr. Cryer's opinion that, considering UC's characteristics, a POSA would conclude that identified studies having small sample sizes and no placebo control would fail to create *any* expectation of success. Namely, the "placebo effect and natural remission could account for many of the subject's reported improvement." *Id.* ¶¶ 232, 314; *see also id.* ¶¶ 224, 245. Dr. Cryer explains that the nature of UC as a disease impacts the *degree* of evidence a POSA would need to have any expectation that a treatment is effective.

### B.     The Prior Art References

Against this backdrop, Dr. Cryer provides his rebuttal opinions about Plaintiffs' prior art:

***CT.Gov.*** As Dr. Cryer explains, because the CT.Gov posting only discloses the existence of J&J's UNIFI clinical trial, it does not contain any data or results from the trial showing that ustekinumab effectively treats moderate-to-severe UC or achieves the claimed clinical endpoints; CT.Gov does not provide a POSA a reasonable expectation of success. *Id.* ¶¶ 366-67, 370. He further explains that there are no differences between the 2018 CT.Gov posting, and an earlier

2017 posting, which is undisputed that the patent examiner reviewed. *Id.* ¶¶ 360-61.

*Ochsenkühn*.  Ochsenkühn is a single-page abstract published in 2018 describing a "retrospective data analysis" of 17 UC patients. Ex. 3, Ochsenkühn 2018; PEX 1 ¶ 201.  It is a "small" study. PEX 1 ¶203.  There was no placebo control. *Id.* ¶ 226.  Six of the 17 patients were in remission before they were administered ustekinumab. *Id.* ¶ 223.  Ochsenkühn defined remission using the "modified Truelove and Witts colitis activity index," also known as the Lichtiger index. *Id.* ¶ 239.  The abstract states it is "possible that large ongoing trials will confirm [their] findings."  Ex. 3, Ochsenkühn 2018.

Dr. Cryer opines that (1) Ochsenkühn did not treat any severe UC subjects (PEX 1 ¶¶238-40), (2) Ochsenkühn lacks data to support the efficacy of ustekinumab to treat moderate UC (*id.* ¶¶ 241-44), (3) Ochsenkühn defines clinical remission incorrectly and does not disclose any of the claimed clinical endpoints (*id.* ¶¶ 246-53), (4) Ochsenkühn does not teach the limitation of claim 1 of a "clinically proven safe and clinically proven effective amount" of ustekinumab (*id.* ¶¶ 256, 219-220; PEX 67, 10:34-42), (5) Ochsenkühn 2018 had six subjects who were already in remission (PEX 1 ¶¶ 223-25), and (6) Ochsenkühn 2018 did not use a washout period to rule out the effects of other treatments (*id.* ¶¶ 234-37).  The "serious flaws" of this abstract would "not provide a reasonable expectation that ustekinumab would work to treat moderately to severely active ulcerative colitis." *Id.* ¶ 202.  To a POSA, Ochsenkühn provides "virtually no data" to support the use of ustekinumab to treat UC. *Id.* ¶272; *see also id.* ¶ 191.  Ultimately, as Dr. Cryer opines, a POSA would view Ochsenkühn 2018 "as hypothesis generating" at best. *Id.* ¶ 202.

*Kolios*.  Kolios is a case report on one patient who developed ulcerative colitis as a result of treatment by Humira, *i.e.*, adalimumab. *Id.* ¶ 274; Ex. 4, Kolios.  The reference states that after cessation of Humira treatment, colitis "improved significantly."  Ex. 4, Kolios.  The authors

administered ustekinumab to the patient to treat psoriasis, not ulcerative colitis.  PEX 1  ¶ 275.

Dr. Cryer opines that (1) Kolios is a case report and a POSA cannot evaluate efficacy for a relapsing and remitting disease "based on only a single patient" (*id.* ¶¶ 281-95), (2) Kolios teaches that other treatments, not ustekinumab, account for the single patient's improvement (*id.* ¶¶ 274-77), and (3) Kolios does not disclose the claimed dosing regimen (*id.* ¶¶ 278-80).

*Afonso*.  Afonso is an abstract describing a retrospective analysis of 7 patients (5 of which had Crohn's disease and 2 with UC).  *Id.* ¶ 301; Ex. 5, Afonso.  Three of the 7 patients were reportedly in clinical remission at the conclusion of the study.  Ex. 5, Afonso.  But Afonso does not state which 3 (UC or Crohn's disease) "patients showed clinical remission."  PEX 1 ¶ 301.  The three patients in remission "could have been patients with Crohn's disease."  *Id.*  Dr. Warfield agreed.  Ex. 1, Warfield Dep. Tr., at 120:2-13.

Dr. Cryer opines that (1) a POSA would "understand that Afonso does not disclose effective treatment of ulcerative colitis patients" (PEX 1 ¶¶ 301-02), (2) Afonso does not disclose or define how it evaluated clinical remission or the claimed clinical endpoints (*id.* ¶¶ 319-26), (3) Afonso does not disclose the claimed dosing regimen (*id.* ¶¶ 327-31), and (4) Afonso did not utilize a washout period to rule out effects of other treatments (*id.* ¶¶ 316-18).

### C.    Plaintiffs' Obviousness Combinations Provide "No Expectation" of Success for the Effective Treatment of Ulcerative Colitis

After summarizing each "significant flaw[]" in the prior art, Dr. Cryer addressed Dr. Matovcik's obviousness theories, which combine CT.Gov with Ochsenkühn, Kolios, or Afonso.  *See* PEX 66,  ¶¶201, 217-19.

Dr. Cryer opines that the prior art, alone or in combination, would not have provided a POSA with "*any* expectation that ustekinumab would work as a treatment for ulcerative colitis," as required by the claims.  PEX 1 ¶ 376 (emphasis added).  In his view, these references alone or

in combination "do not provide ***any expectation*** to a [POSA] that ustekinumab would work as a treatment for ulcerative colitis, or render the specific claims of the '307 patent obvious." *Id.* ¶ 467. He also disagrees with Dr. Matovcik's opinion that there would be a "strong expectation" that J&J's Phase III clinical trial would succeed given this prior art. PEX 66 ¶¶ 224-25. Dr. Cryer opines that a POSA would have "***no expectation***" that the UNIFI trial would succeed in achieving the treating the claimed clinical endpoints. PEX 1 ¶¶ 473 (emphasis added), 478, 482.

### D.    ClinicalTrials.Gov Does Not Anticipate

Dr. Cryer also addressed Dr. Matovcik's anticipation opinions. Applying the POSA's perspective, Dr. Cryer opines that CT.Gov does not anticipate the '307 Patent claims.

*First*, Dr. Cryer explains that CT.Gov does not disclose a "method of treating" moderate to active UC. PEX 67, cls. 1, 19, 33, 34. The claims cover a method of "treating moderately to severely active ulcerative colitis," which a POSA would understand to require that ustekinumab "be administered for the purpose of treating moderately to severely active ulcerative colitis." PEX 1 ¶ 368; PEX 67, cl. 1. The claims define effective treatment by requiring the subject be a "responder to treatment" and achieve the claimed clinical endpoints. PEX 1 ¶ 368; PEX 67, cls. 1, 19, 33, 34. Dr. Cryer opines that a POSA would interpret ClinicalTrials.gov as disclosing a plan for a test and not a "method of treating." PEX 1 ¶¶ 369-76 ("Testing is not the same as treating" to a POSA). CT.Gov also discloses a plan for an investigation but does not "enable" a POSA to use ustekinumab as a treatment for UC without "undue experimentation." *Id.* ¶ 375.

*Second*, CT.Gov does not anticipate for the separate and independent reason that it does not inherently disclose the claimed clinical endpoints. *Id.* ¶¶ 391-95. The results of the trial show that a fraction of subjects achieved the claimed clinical endpoints. *Id.* ¶392-95. Thus, the "results of the trial demonstrate that achievement of the clinical endpoint[s] is not inevitable and dependent on the subject." *Id.* ¶¶ 394-95.

10

## LEGAL STANDARD

Rule 702 governs the admissibility of expert witness testimony. *See United States v. Wilson*, 484 F.3d 267, 274-75 (4th Cir. 2007); *see also* Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 "if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue." *Westberry v. Gislaved Gummi A*B, 178 F.3d 257, 260 (4th Cir. 1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)). The first prong requires the court to examine "whether the reasoning or methodology underlying the expert's proffered opinion is reliable" and the second asks the court to analyze "whether the opinion is relevant to the facts at issue." *Id.*; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) ("[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" (quoting *Daubert*, 509 U.S. at 597)).

Under Rule 702, the Court "need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct." *Westberry*, 178 F.3d at 261. Rather, the "inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." *Id.* (quoting *Daubert*, 509 U.S. at 594-95).

## ARGUMENT

### I.    Dr. Cryer Did Not Require an Elevated Standard of "Conclusive Proof of Efficacy" in Evaluating Reasonable Expectation of Success

Plaintiffs argue that Dr. Cryer improperly applied a "conclusive proof of efficacy" standard in his reasonable expectation of success analysis. Mot. at 6-11. Plaintiffs complain that Dr. Cryer effectively required evidence of a successful FDA-approved clinical trial to establish a reasonable expectation in the prior art. *Id.* They are wrong. Nowhere does Dr. Cryer opine that to render the

11

claims obvious, the prior art provide a POSA conclusive proof that the endpoints would be met by administering ustekinumab. Rather, he applied the "reasonable expectation of success" standard correctly. PEX 1 ¶¶ 24, 191, 197, 202; *Eli Lilly and Co.*, 8 F. 4th at 1345 ("the likelihood of success in combining references to meet the limitations of the claimed invention.") (internal citation omitted).

Plaintiffs distort Dr. Cryer's Report and his deposition testimony. Because the claims of the '307 Patent require *efficacy*, Dr. Cryer evaluated whether Plaintiffs' obviousness combinations provided a POSA with a "reasonable expectation of success" in achieving those clinical endpoints. PEX 1 ¶ 197. Given the nature of UC as a relapsing and remitting disease, and the fact that prior art results were limited to case reports with small sample sizes, no placebo controls, and riddled with errors, a POSA would need more to have "any expectation" of success, let alone a reasonable one. *Id.* ¶¶ 467, 473, 478, 482. Plaintiffs may not agree, but that is a question for the finder of fact. Dr. Cryer's opinions are consistent with patent law and crucial for a jury to understand the POSA's perspective.[5,6]

### A. Because the Patent Claims Require Clinical Efficacy, Dr. Cryer's Reasonable Expectation of Success Opinion Properly Assessed a POSA's Expectations About Clinical Efficacy

Plaintiffs' suggestion that Dr. Cryer required "conclusive proof" of efficacy ignores the plain language of the '307 Patent's claims, which require efficacy. "The reasonable-expectation-of-success analysis must be tied to the scope of the claimed invention." *Teva Pharms. USA, Inc.*

---

[5]    While Dr. Cryer provides expert testimony on issues of fact, such as a reasonable expectation of success, that does not mean there is a factual dispute with respect to Plaintiffs' *Walker Process* claim, where Plaintiffs rely on experts who are not POSAs and must also show knowledge and specific intent to deceive.

[6]    Independent of Plaintiffs' arguments regarding the obviousness standards that Dr. Cryer applied, Plaintiffs do not seek to exclude Dr. Cryer's opinions regarding what each prior art reference teaches to the POSA.

*v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1381 (Fed. Cir. 2021).  The relevant inquiry is whether there is "proof that a person of ordinary skill in the art would have had a reasonable expectation that performing the recited method would bring about the recited result," *Eli Lilly*, 8 F.4th at 1345, here the specifically claimed clinical endpoints that demonstrate efficacy, PEX 67, cls. 1, 19, 33, 34.  As Dr. Cryer opines, the "nature" of UC is part of the POSA's assessment, which makes it "critical to making the determination regarding . . . the reasonable expectation of success."  *Duke Univ. and Allergan Sales, LLC v. Sandoz, Inc.*, No. 18-cv-00997, 2023 WL 9227019, at *4 (D. Colo. Sept. 21, 2023).

### 1.  Dr. Cryer Correctly Applied the Law of Reasonable Expectation of Success

Consistent with the case law, Dr. Cryer was instructed that, "in order for a reference or combination of references to render the claimed invention obvious, a person of ordinary skill in the art must have had a *reasonable* expectation of success in arriving at the claimed invention." PEX 1 ¶ 197 (emphasis added).  Dr. Cryer faithfully applied that standard and did not, as Plaintiffs contend, require conclusive proof of efficacy.  *Id.* ¶¶ 191, 24, 197, 202.  Specifically, he opines that a POSA "would immediately see serious flaws" in the prior art references on which plaintiffs' experts rely, in large part because they contain "virtually no data."  *Id.* ¶¶ 202, 272, 299, 335.  He directly disagrees with Dr. Matovcik's and Warfield's opinions that the prior art would "provide confidence" to a POSA that the UNIFI trial would succeed, because of their lack of data or limited sample says, and concludes the "references would therefore not provide a [POSA] any increased expectation".  *Id.* ¶¶ 381-82.  This is a far cry from demanding "conclusive proof of efficacy". Mot. at 8.

*First*, Dr. Cryer opines that the prior art does not provide "***any*** expectation that ustekinumab would work as a treatment for ulcerative colitis."  PEX 1 ¶376 (emphasis added), ¶

295 ("a single patient's results cannot provide any expectation regarding a clinical treatment"), ¶ 331 (Afonso "has an insufficient sample size to provide any expectation regarding a clinical treatment"), ¶ 402 (Stelara's approval "for Crohn's disease does not provide a [POSA] any expectation that Stelara would work to treat [UC]").  As Dr. Cryer summarized:

> [I]t is my view that the Ochsenkühn 2018, Kolios 2018, Afonso 2017, Tarr 2014, and CADTH 2017 references do not provide *any expectation* to a [POSA] that ustekinumab would work as a treatment for ulcerative colitis, or render the specific claims of the '307 patent obvious.

*Id.* ¶ 467 (emphasis added).  By definition, a POSA who does not have "*any* expectation" of success does not have a *reasonable* expectation of success.  *See ViiV Healthcare UK Ltd. v. Lupin Ltd.*, 6 F. Supp. 3d 461, 487 (D. Del. 2013) (claims not obvious where POSA would not have "had any expectation" in combining drugs), *aff'd*, 594 F. App'x 686 (Fed. Cir. 2015).

*Second*, Dr. Cryer opines that, to a POSA, the prior art is "hypothesis generating material at most."  PEX 1 ¶ 209.  A "hypothesis" that a treatment will work is not a reasonable expectation of its success.  *Sanofi v. Watson Lab'ys Inc.*, 875 F.3d 636, 647-648 (Fed. Cir. 2017) (district court did not improperly "demand known certainty" in reasonable expectation of success analysis where reference was a "mere 'hypothesis'"); *Novartis Pharm. Corp. v. West-Ward Pharms. Int'l Ltd.*, 287 F. Supp. 3d 505, 522, 525, 528-29 (D. Del. 2017) ("hypothesis, subject to further testing" did not provide a reasonable expectation of success), *aff'd*, 923 F.3d 1051 (Fed. Cir. 2019).

*Third*, Dr. Cryer opined that the prior art would, at most, give a POSA "hope" that the UNIFI trial would succeed.  PEX 1 ¶¶ 473, 483, 487, 503, 509.  A reference which "provide[s] no more" than "hope that a potentially promising drug" will treat a condition is "not enough to create a reasonable expectation of success in a highly unpredictable art."  *OSI Pharms. LLC v. Apotex Inc.*, 939 F.3d 1375, 1385 (Fed. Cir. 2019); *see also Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, 2023 WL 4175334, at *12-14 (D. Del. June 26, 2023) (POSA would have "hope and even cautious

optimism" from art with "two patients" but not the "higher bar of a reasonable expectation of success"). Here, Dr. Cryer explained that the art is highly unpredictable given the nature of UC. PEX 1 ¶¶35-36, 204-09, 417-30.

*Finally*, and critically, Dr. Cryer directly responded to Dr. Matovcik's opinion that the allegedly withheld references would have provided a POSA a reasonable expectation of success in achieving the '307 Patent's claimed clinical endpoints. *Id.* ¶¶ 467-484; PEX 66 ¶¶ 224-25, 227. Dr. Cryer explained that, due to the cumulative nature of the "significant flaws" in the prior art, a POSA reading the prior art would have had "***no expectation***" that J&J's UNIFI trial would succeed and achieve any of the claimed endpoints in the '307 Patent. PEX 1 ¶ 473 (emphasis added); *see also id.* ¶¶ 478, 482. That opinion is plainly appropriate; if a "skilled artisan 'would have no expectation'" of success, *a fortiori* a POSA would not have a lack of reasonable expectation of success. *Teva Pharms.*, 18 F.4th at 1381-82 ("the reasonable-expectation-of-success requirement is not satisfied when the skilled artisan would have had no expectation of success") (internal citations omitted); *Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 485 F. Supp. 2d 519, 533 (D. Del. 2007) (denying JMOL where expert testified that "there could have been no expectation of success during the relevant timeframe").

## 2. Dr. Cryer's Deposition Testimony Is Also Consistent With the Law

Faced with a report that applied the proper standard, Plaintiffs mischaracterize Dr. Cryer's deposition testimony to argue he required "conclusive" proof of efficacy. Not so. Dr. Cryer testified at deposition that a POSA "would not have a reasonable expectation that ustekinumab would work as a treatment for [UC] or achieve the specific clinical endpoints" of the '307 Patent. Ex. 2, Cryer Dep. Tr., at 49:22-51:4, 75:1-76:10 (applying legal principles "as a [POSA]"); PEX 1 ¶ 202. When asked how he defines "reasonable expectation," he explained that a POSA is looking to see if the prior art has "shown that the treatment works." Ex. 2, Cryer Dep. Tr., at

15

51:11-16.  He is asking if the "information that's been presented" to him is convincing enough to "lead [him] to a reasonable expectation that it works."  *Id.* at 51:17-52:4.  In other words, he is "looking for evidence that, for those specific endpoints . . . that it's effective as a treatment, that it would work."  *Id.* at 60:19-61:23.

Dr. Cryer's testimony is consistent with the law.  The '307 Patent claims ***require efficacy*** measured in specific ways, so a "reasonable expectation of success" requires ***some*** expectation of successfully treating moderate-to-severe UC and achieving one of the measurable clinical endpoints recited in the claims.  *Sanofi*, 875 F.3d at 646-47 (stating that burden was to show that a POSA "would have had a reasonable expectation that the processes claimed would succeed in their (claimed) aims, a factual issue") (internal citations omitted); *Eli Lilly*, 8 F.4th at 1345 ("Lilly was required to show that a skilled artisan would have had a 'reasonable expectation' of success in treating vasomotor symptoms").  Consistent with that law, Dr. Cryer asked whether there is "evidence" that the "treatment works" and achieves the "specific endpoints" of the claims for a POSA to have a "reasonable expectation that [ustekinumab] works."  Ex. 2, Cryer Dep. Tr., at 51:17-52:4.  Dr. Cryer never testified that he required an "absolute" expectation of success.  Mot. at 10.

Dr. Cryer's related testimony that a POSA would want a study to show "clinical efficacy" to provide a reasonable expectation of success also applied the correct legal standard.[7]  Ex. 2, Cryer Dep. Tr., at 42:12-18.  The NIH defines "clinical efficacy" as the "[p]ower or capacity to produce

---

[7]    Much of Plaintiffs' motion relies on Dr. Cryer's use of imprecise language for legal terms of art in his deposition.  But Dr. Cryer is not a lawyer.  The question is whether his ***opinion***, as reflected in his report and as will be delivered at trial, applied the correct legal standard.  Thus, "when [Dr. Cryer] wrote the declaration, he understood and applied the correct [obviousness] methodology.  Accordingly, [Dr. Cryer's] opinions . . . are sufficiently reliable under *Daubert*."  *Oterra A/S v. Wild Flavors, Inc.*, 2025 WL 1424919, at *6 (D. Del. May 16, 2025) (not excluding testimony despite imprecise deposition testimony).

a desired effect . . . in humans." *Clinical Efficacy*, CDISC Glossary Controlled Terminology, https://evs.nci.nih.gov/ftp1/CDISC/Glossary/CDISC%20Glossary.html (last visited Sept. 15, 2025). Dr. Cryer, adopting a POSA's perspective, needed to see prior art showing a capacity for ustekinumab to have an effect in UC patients for him to reasonably expect the claimed invention, which requires efficacy, to work. It does not mean he required an FDA clinical trial. *See infra* pp. 22-24; Ex. 2, Cryer Dep. Tr., at 34:1-37:4, 40:20-42:20.

*Sanofi v. Watson* is on point. There, the appellant similarly argued that the district court applied "too high a standard" for proving reasonable expectation of success. 875 F.3d at 647. The Federal Circuit rejected the appellant's argument that the district court demanded "known certainty" where it had used phrases like "not a 'concrete' factual assertion" and "in less than certain terms" to describe the prior art. *Id.* (internal citations omitted). The Federal Circuit noted that the district court had "invoked the language of 'reasonable expectation' repeatedly." *Id.* The same is true here. Dr. Cryer repeatedly stated that he analyzed whether a POSA would have had a "***reasonable*** expectation" of arriving at the claimed invention. *See, e.g.*, PEX 1 ¶¶ 24, 191, 197, 202, 224, 245, 265, 273, 300, 404. And he went further, explaining that the prior art provides a POSA "no expectation," did "not provide any expectation," and has "virtually no data"—far below a reasonable expectation. *Id.* ¶¶ 467, 473, 202, 272, 299, 335.

None of Dr. Cryer's opinions, in his Report or at deposition, require absolute certainty of success to conclude that the claims are obvious. Consequently, Plaintiffs' *Daubert* motion as to Dr. Cryer's reasonable expectation of success opinions must be denied.

### B. Plaintiffs Ignore the Nature of Ulcerative Colitis and the Perspective of a Person of Ordinary Skill in the Art

Plaintiffs also contend that Dr. Cryer applied a "conclusive" proof standard because he considered various factors, including whether "sample sizes that are too small," and the lack of a

"placebo," "washout periods," or statistically significant results.  Mot. at 8-9.  In effect, Plaintiffs contend that there can be no set of facts where such considerations can inform a POSA's reasonable expectation of success analysis.  That is wrong.

The Federal Circuit itself has affirmed findings that a POSA would not have a reasonable expectation of success where prior art "had diminished weight" from "small sample sizes" along with the fact that "molecular pathways . . . were not fully understood." *Novartis*, 923 F.3d at 1058, 1060-61; *see also Bausch Health Ireland Ltd. v. Padagis Israel Pharms. Ltd.*, No. 20-5426, 2022 WL 17352334, at **18, 24 (D.N.J. Dec. 1, 2022) (noting expert opinion on the "small number of patients"); *Sanofi-Aventis*, 2023 WL 4175334, at *12-14 (prior art with "a small sample" provided hope but not an expectation of success).  Other courts have found that a POSA would not "reasonably expect" a drug to work as a treatment where a prior art "study" was "without statistical significance." *Sanofi v. Lupin Atlantic Holdings S.A.*, 282 F. Supp. 3d 818, 840-41 (D. Del. 2017) (POSA would not "reasonably expect dronedarone to reduce the risk of cardiovascular hospitalization" where prior art DAFNE study was "without statistical significance").  Still other cases have discounted prior art in an obviousness analysis as not "authoritative" to a POSA based on small sample size and limited "washout period between treatments." *Amarin Pharma, Inc. v. Hikma Pharms. USA Inc.*, 449 F. Supp. 3d 967, 990 (D. Nev. 2020) (prior art reference "only included 9 patients" and had a short "2-week washout period").  These cases make clear that Plaintiffs' position—that these considerations can never be relevant to whether a POSA has a reasonable expectation of success—is wrong.  Reasonable expectation of success is a "well-recognized factual issue[]" that depends on what a POSA would understand from the prior art. *See Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 141 F.4th 1367, 1374 (Fed. Cir. 2025).

Dr. Cryer did exactly what the case law instructs, namely put himself in the mindset of a

18

POSA who, in Dr. Cryer's opinion, *would* take note of the gaps in the prior art in assessing whether or not success was reasonably expected. He analyzed "all of the aspects of a [prior art] study." Ex. 2, Cryer Dep. Tr., at 54:10-55:13.[8] He testified that he can only "make an opinion about the impact of one factor" of a study after analyzing all aspects of the study "in concert." *Id.* at 54:10-55:13, 31:16-33:4. That holistic approach is not only correct as to how a POSA in this field would assess these particular references, but it is required by law. *Adapt Pharma Operations Ltd. v. Teva Pharms. USA, Inc.*, 25 F.4th 1354, 1371 (Fed. Cir. 2022) ("the prior art must be considered as a whole for what it teaches.") (internal citation omitted); *Abbott Lab'ys v. Sandoz, Inc.*, 544 F.3d 1341, 1348 (Fed. Cir. 2008) ("in addressing the question of obviousness a judge must not pick and choose isolated elements from the prior art and combine them so as to yield the invention in question if such a combination would not have been obvious at the time of the invention.") (internal citations omitted).

Dr. Cryer testified that certain flaws, such as a lack of placebo, double-blinding, and so on, relate to controls that are "preferable," but not required. Ex. 2, Cryer Dep. Tr., at 34:1-14 (stating it would be "preferable" for study to be double-blind), 35:13-37:4 ("it's preferable to have a placebo-controlled in studies of ulcerative colitis patients"), 40:20-41:9 ("I would certainly accept and evaluate and could be convinced by studies which were unblinded"), 41:11-42:10 (a "POSA could be convinced in the absence of a placebo"). For statistical significance, Dr. Cryer could be "convinc[ed]" without having "reached the p-value of .05, depending on the circumstances . . . ." *Id.* at 39:14-40:19. For other errors, like the inclusion of subjects in remission, he felt more

---

[8]    Indeed, Dr. Cryer was peppered with incomplete hypotheticals at his deposition. Dr. Cryer stated that he could not "comment" without being "shown that study and [] asked to render an opinion on that study." Ex. 2, Cryer Dep. Tr., at 30:2-33:4. A POSA needs to see "all of the aspects of a study" to be able to render an opinion. *Id.* at 54:10-55:13.

"strongly" because those errors make it impossible to "determine[] the effect of a medication." *Id.* at 37:6-38:10.  But at bottom, this is not a question the law can conclusively answer; Dr. Cryer's fact-specific analysis about what a POSA would take from these flaws is proper. *See Janssen*, 141 F.4th at 1383 (analysis can "consider unclaimed factors" if a POSA would reasonably consider them).  Ultimately, it is Dr. Cryer's opinion that "none" of the prior art provides a reasonable expectation of success.  Ex. 2, Cryer Dep. Tr., at 27:1-29:25.

Dr. Cryer opines that prior art's small sample sizes, the lack of "placebo," "washout period," and "statistical significance," in addition to other issues, *see supra* pp. 18-19, all relate to why a POSA reviewing the prior art would have "no expectation" of success. *See, e.g.*, PEX 1 ¶¶ 204-09, 231-32, 234-37, 211-13, 217-18.  Given UC is a relapsing and remitting disease with a high placebo response rate, a POSA considers these issues.  Plaintiffs may disagree, but that is no basis to exclude his well-founded opinion from the perspective of the POSA.

## C. Reasonable Expectation of Success Is a Question of Fact from the Perspective of a Person of Ordinary Skill in the Art, Not a Legal Conclusion

A *Daubert* motion is not intended to evaluate the "correctness of the experts' opinions" or "disputes of fact."[9]  *Johnson v. Air & Liquid Sys., Corp.*, No. 18-cv-132, 2020 WL 11563846, at *4 (E.D. Va. Nov. 6, 2020) ("disputes of fact do not as a matter of law render an expert's opinion unreliable.").  Plaintiffs try to side-step this issue by asserting that "reasonable expectation of success" is a "legal conclusion."  Mot. at 6.  They are wrong again.  "The presence or absence of a reasonable expectation of success is a question of fact" determined from the perspective of a

---

[9]     If Plaintiffs disagree, they should have presented their own admissible expert testimony, but to be admissible, such testimony would have had to come from POSAs, not patent attorneys. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361-64 (Fed. Cir. 2008). Plaintiffs' decision to rely on patent attorneys who are not POSAs in the relevant field is a problem of their own making and no reason to preclude Dr. Cryer's proper opinions.

POSA. *Cumberland Pharms. Inc. v. Mylan Institutional LLC*, 846 F.3d 1213, 1222 (Fed. Cir. 2017). And "it is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

Plaintiffs' case law, is distinguishable. In *Acorda* and *Salix*,[10] the Federal Circuit was reviewing a lower court's reasonable expectation of success findings for "clear error," not evaluating admissibility of expert testimony on the subject. *See Acorda Therapeutics, Inc. v. Roxane Labs., Inc.*, 903 F.3d 1310, 1328 (Fed. Cir. 2018); *see also Salix*, 98 F.4th at 1061. Neither case involved UC and so neither considered its relapsing and remitting nature. *Acorda*, 903 F.3d at 1313 (patents relating to "multiple sclerosis"); *Salix*, 98 F.4th at 1061 (patents related to diarrhea-associated Irritable Bowel Syndrome).[11]

Plaintiffs also mischaracterize *Acorda*. There, Acorda asserted a "law-required minimum" for reasonable expectation of success in all cases. *Acorda*, 903 F.3d at 1333. The Federal Circuit held that the issue is "one of context-specific fact based on evidence." *Id.* "In some cases, the evidentiary basis for an inference of reasonable expectation of success may be inadequate." *Id.* at 1333-34. But there was enough "expert and other evidence" in *Acorda* to indicate that a "[POSA] in the present context *can* draw a reasonable inference about the likelihood of success" without a "statistically significant difference." *Id.* at 1334. The Federal Circuit did not hold that a lack of statistical significance, as a matter of law, can never be relevant to obviousness. The court held

---

[10]   Plaintiffs note that the "phase 2 protocol" in *Salix* did not have any efficacy or safety data. Mot. at 10. But the obviousness combination included a journal article showed that "rifaximin" "resulted in greater improvement" in symptoms. *Salix Pharms., Ltd. v. Norwich Pharms. Inc.*, 98 F.4th 1056, 1062 (Fed. Cir. 2024). Thus, in *Salix*, the prior art did have substantial efficacy data.

[11]   Irritable bowel syndrome (IBS-D) is a different disease than inflammatory bowel disease.

the opposite—that obviousness is "context-specific," which depends on the record and what a POSA would expect. *Id.* at 1333-35; *see also Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1326 (Fed. Cir. 2000).

### D.    Dr. Cryer Should Be Permitted to Explain to the Jury What the Prior Art Teaches

Plaintiffs' arguments concern Dr. Cryer's reasonable expectation of success and obviousness opinions—Plaintiffs do not seek to exclude Dr. Cryer's opinions on what a POSA would find the prior art to teach. Accordingly, there should be no dispute that it is proper to permit Dr. Cryer, as a POSA, to explain to the jury that Ochsenkühn 2018 does not measure clinical remission correctly (PEX 1 ¶¶ 254-55), that it doesn't teach treatment of severe or moderate UC (*id.* ¶¶ 238-44), that it doesn't disclose certain claim elements, including the claimed clinical endpoints (*id.* ¶¶ 245-53), that a POSA would consider it unreliable because its data is inconsistent (*id.* ¶¶ 266-67), and similarly for other references. That is factual testimony regarding what a POSA would find the prior art to teach, all of which is relevant to the jury's fact-based determination regarding a reasonable expectation of success.

### II.    Dr. Cryer Applied a Patent Law Analysis Specific to the Claimed Invention and the Prior Art As a Whole, Not Under an FDA Approval Standard

Next, Plaintiffs contend that Dr. Cryer applied an FDA approval analysis instead of an obviousness analysis. Mot. at 11-13. For many of the same reasons discussed above, this additional argument is wrong, and ignores both Dr. Cryer's Report and his deposition. Dr. Cryer stated that obviousness requires a "reasonable expectation of success in arriving at the *claimed invention*"—not FDA approval. PEX 1 ¶¶ 24, 191, 197, 202, 273, 300, 455, 463, 475; Ex. 2, Cryer Dep. Tr., at 75:1-76:10. His opinion is that the prior art fails to provide "any expectation" of success in achieving the claimed invention. PEX 1 ¶¶ 467 (art does "not provide any expectation"), 473-75, 478-79, 481-84. As explained above, *see supra* pp. 20, Dr. Cryer repeatedly testified that

22

many aspects of FDA clinical trials, such as a placebo, double-blinding, and a p-value of 0.05, were not required for his obviousness analysis.

Where Dr. Cryer opines that the prior art fails to "meet the requirements of the U.S. FDA," PEX 1 ¶¶ 219-20, 256, that opinion is directly relevant to the patentability at least of claim 1 of the '307 Patent, the only claim on which Dr. Matovcik opined, Ex. 6, Matovcik Dep. Tr., at 266:8-15 (she didn't make "a comparison" of prior art to "any other claims besides Claim 1"), 267:19-269:20; PEX 66 (Matovcik) ¶¶ 186-201. Claim 1 requires a "clinically proven safe and clinically proven effective amount" of ustekinumab. PEX 67, cl. 1. As Dr. Cryer explains, the phrase "clinically proven" is defined in the specification to mean a "dosage proven by an approved clinical trial." PEX 1 ¶ 256; PEX 67 at 10:34-42 ("clinically proven" means a dosage "proven by a clinical trial wherein the clinical trial has met the approval standards of U.S. Food and Drug administration . . . or a corresponding national regulatory agency."). Dr. Cryer took that definition at face value and analyzed that a POSA would not have a reasonable expectation of successfully achieving that limitation—a clinically *proven* effective treatment—in light of the approval standards of FDA or other agencies. *See, e.g.*, PEX 1 ¶¶ 256, 219-20, 279, 290. Thus, Dr. Cryer's opinions on FDA clinical trial standards are still relevant to a *patent* law obviousness analysis of claim 1.

Plaintiffs also conveniently ignore that Dr. Cryer directly responds to their expert, Dr. Warfield, who offered the opinion that a gastroenterologist would "anticipate FDA approval" based on the prior art. PEX 81 ¶¶ 175, 178, 181, 184, 187. Dr. Cryer disagreed with that opinion. PEX 1 ¶ 191. Dr. Cryer's opinion that the prior art fails to "meet the requirements of the U.S. FDA" directly rebuts Dr. Warfield on this point. *Id.* ¶¶ 219-20, 290. Thus, Dr. Cryer's opinion regarding FDA approval is both relevant to a claim 1 obviousness analysis and responsive to one of the Plaintiffs' own experts.

23

Beyond claim 1, Dr. Cryer also cites FDA and clinical-trial related documents to support his obviousness analysis, not an FDA approval analysis.  These documents illustrate that POSAs would recognize (1) the major flaws in the prior art and (2) understand that each flaw is a serious deficiency.  The fact that J&J designed its trial in a manner to avoid the identified errors in the prior art is evidence which tends to show that a POSA would be skeptical of the prior art and the efficacy of ustekinumab.  *See Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286, 1291 (Fed. Cir. 2013) ("[t]he potential for FDA approval also may be properly considered . . . in determining whether there was skepticism regarding the efficacy of such a product.").  For instance, J&J's gastroenterologists, determined that to "detect[] a treatment effect" for a relapsing and remitting disease, they needed many more patients.  PEX 1 ¶¶ 213-16, 286-88, 308-12.  This supports Dr. Cryer's opinion that a POSA would understand the prior art are "far below the number of subjects" needed to evaluate efficacy for UC.  *See, e.g.*, *Id.* ¶¶ 215-218, 221, 204-208, 226-232  (because UC patients "naturally go into remission for months or even years, it is even more important to have statistically significant data").

*     *     *

All of Dr. Cryer's obviousness opinions applied the correct law and would be helpful to the trier of fact.

## III.    Dr. Cryer's Anticipation Opinions Are Consistent with Patent Law

Plaintiffs suggest anticipation is a "legal conclusion" which the Court can decide on a *Daubert* motion.  Mot. at 6.  Again, they are wrong; it "is a question of fact."  *Sigray*, 137 F.4th at 1376.  Dr. Cryer properly applied the correct legal standards on anticipation to the facts of this case.  Plaintiffs may disagree with Dr. Cryer's conclusions, but that is not the role of Rule 702.

### A.    Dr. Cryer Applied the Correct Inherency Standard

Plaintiffs contend that Dr. Cryer applied "the wrong legal standard" with respect to

inherency. Mot. at 15. They are wrong. Dr. Cryer explained that he understood for a reference "to be anticipatory," "all elements must be explicitly or inherently disclosed in a reference," and an element "is inherently disclosed only if it is necessarily present in the prior art reference" and it must be "inevitable, not merely probable or possible." PEX 1 ¶¶ 199-200. He also understood that "an invitation to investigate is not an inherent disclosure." *Id.* ¶ 391. Those understandings of the law are correct. *See In re Montgomery*, 677 F.3d 1375, 1380 (Fed. Cir. 2012) ("The inherent result must inevitably result from the disclosed steps"); *see also Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1364 (Fed. Cir. 2019) (An element is inherent "only if it "is 'necessarily present,' not merely probably or possibly present, in the prior art.") (internal citation omitted); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354,1367 (Fed. Cir. 2004) ("An invitation to investigate is not an inherent disclosure."). Plaintiffs simply disagree with Dr. Cryer's conclusions after he applied the correct legal standard. *Par Pharm.*, 773 F.3d at 1194 ("The inherent teaching of a prior art reference is a question of fact.") (internal citation and quotations omitted). Under *Daubert*, it is not the Court's role to decide such issues.

Inherent anticipation of the '307 Patent claims requires that the subject "be a responder" to treatment and achieve certain specific clinical endpoints. PEX 67, cl. 1. Plaintiffs must, at a minimum, show that carrying out CT.Gov's disclosed steps "necessarily" or "inevitably" results in the achievement of one of the claimed clinical endpoints. *See Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 960 (Fed. Cir. 2014) (the issue "is whether promoting hair growth through topical application of bimatoprost on the skin is necessarily present or inherent in the [disclosed] method of applying eyedrops containing bimatoprost") (internal citation and footnote omitted). To answer that question, Dr. Cryer looked at the actual results of the UNIFI clinical trial—the trial design disclosed (without results) in CT.Gov. PEX 1 ¶¶ 392-395. Large percentages of subjects who

received Stelara did not achieve any of the claimed endpoints. *Id.* In other words, the trial results show that the claimed method does not "inevitably" or "necessarily" achieve the claimed clinical endpoints. *Id.* ¶ 394. Dr. Cryer did not require the CT.Gov posting to "disclose results" for inherency. Mot. at 18. His opinion is that the results of the trial demonstrate that the endpoints are not inherent.

*Montgomery* is not to the contrary. There, the Federal Circuit once again held that an "inherent result must *inevitably* result from the disclosed steps." *Montgomery*, 677 F.3d at 1380 (emphasis added). In *Montgomery*, a fact-bound decision, the prior art disclosed that rampiril treated hypertension, a "known risk factor for stroke." *Id.* at 1377-78. Because ramipril inevitably treated hypertension *as a matter of fact*, the Federal Circuit concluded that "ramipril does in fact inevitably treat or prevent stroke." *Id.* at 1381. Here, unlike in *Montgomery*, following the claimed steps does not inevitably treat moderate-to-severe UC because many subjects are not "responders" and do not achieve the endpoints. PEX 1 ¶¶ 392-95; *see United Therapeutics Corp. v. Liquidia Techs.*, Inc., No. 23-975-RGA, 2024 WL 2805082, at *4-6 (D. Del. 2024) (no inherency where patent challenger had "not shown that 'virtually all' patients who take treprostinil experience an improvement in exercise capacity."); *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047-48 (Fed. Cir. 1995) (no inherent anticipation where prior art method produced claimed invention 13 out of 15 times); *see also Apotex Inc. v. Regeneron Pharms., Inc.*, 2023 WL 2588222, at *15-16 (PTAB Mar. 10, 2023) (PTO finding evidence showing that "4-5% of patients" would not achieve claimed results does not establish inherency); *Boehringer Ingelheim Int'l GmbH et al. v. Genentech, Inc.*, IPR2015-00417, 2015 WL 4760571, at *8 (PTAB July 14, 2015) ("for each individual attempt to practice the claim, there is only a possibility that treatment according to method disclosed in the prior art would result in the claimed method.").

**B.      Plaintiffs' Motion Does Not Address Dr. Cryer's Independent Opinion That ClinicalTrials.Gov Does Discloses a Test, Not a Method of Treatment**

Plaintiffs misunderstand Dr. Cryer's anticipation opinions, characterizing all of his opinions as inherency-related.  Mot. at 15-17.  That is incorrect.  Paragraphs 391-395 of his report address inherency.  PEX 1 ¶¶ 391-95.  But he provides *other* anticipation opinions, which Plaintiffs (and their experts) did not address.  This is a separate basis on which to deny Plaintiffs' motion.

To anticipate, "a reference must describe . . . each and every claim limitation and enable one of skill in the art to practice an embodiment of the claimed invention without undue experimentation."  *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1341 (Fed. Cir. 2011) (citing *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009)).  Determining what qualifies as "undue . . . is made from the viewpoint of [POSAs]."  *Elan Pharms., Inc. v. Mayo Found. for Med. Educ. & Rsch.*, 346 F.3d 1051, 1055 (Fed. Cir. 2003).

The claims of the '307 Patent cover a "method of treating" a moderate-to-severe UC patient.  PEX 67, cl. 1.  Dr. Cryer opines that CT.Gov, to a POSA, does not disclose a "method of treating moderately to severely active ulcerative (UC) colitis in a subject in need thereof."  PEX 1 ¶ 369.  He states that CT.Gov does not "enable a [POSA] to practice the claimed method achieving these clinical outcomes" or to "administer ustekinumab as a treatment."  *Id.* ¶¶ 368-69, 199.  According to Dr. Cryer, a POSA would understand that CT.Gov—which describes itself as a "study"—discloses a "plan for a Phase III test or experiment"  *Id.* ¶¶ 369-71.  As a planned double-blind study, neither the physician nor patient would know whether they were giving or receiving the placebo or Stelara.  *Id.*  Thus, physicians are "administering an ***unknown*** for the purpose of testing, not treatment."  *Id.* (emphasis added).  A POSA would understand that "[t]esting is not the same as treating" and a POSA would need "evidence showing that ustekinumab was effective" to administer it with the "purpose of treating [UC]."  *Id.* ¶ 372.  And, because a POSA views the

27

reference as a "test," it "does not enable" a POSA to administer ustekinumab for the claimed clinical endpoints without "undue experimentation." *Id.* ¶ 375.

## IV.    Dr. Cryer Opined on But-For Materiality, Not Materiality Under 37 C.F.R. § 1.56

Plaintiffs contend that Dr. Cryer's but-for materiality[12] opinions should be excluded because his obviousness opinions are "contrary-to-law." Mot. at 13-15. But Dr. Cryer's obviousness, expectation of success, and anticipation opinions are proper and do not contradict the law, s*ee supra* §§ I and III.B. As a result, his but-for materiality opinions are reliable and helpful to the jury. *See Belcher Pharms., LLC v. Hospira, Inc.*, 11 F.4th 1345, 1351 (Fed. Cir. 2021) (affirming district court which "credited the testimony of Hospira's expert witness, Dr. Pinal" regarding whether information was "but-for material"). For example, Dr. Cryer understood that "a reference is but-for material if, had a reference been disclosed to [the PTO], the patent claims would not have been allowed by the PTO." PEX 1 ¶ 194; *see also* Ex. 2, Cryer Dep. Tr., at 46:09-47:10. That does not "conflict with patent law." Mot. at 13. It is the law.[13] *See Therasense*, 649 F.3d at 1291(Prior art "is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."). A combination which provides "no expectation" of success, cannot render claims obvious and therefore is not but-for material.[14]

---

[12]    Moreover, Dr. Cryer offered opinions on but-for materiality, distinct from Rule 56. PEX 1 ¶¶ 2, 24, 190-91. To prove fraud on the patent office, Plaintiffs must show "but-for materiality" in addition to a specific intent to deceive. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292-93 (Fed. Cir. 2011) (en banc). The Federal Circuit in *Therasense* "decline[d] to adopt the current version of Rule 56 in defining inequitable conduct." *Therasense*, 649 F.3d at 1294.

[13]    Plaintiffs' experts' misapplication of the materiality standard is a basis to exclude the opinions of Dr. Matovick and Mr. Robert Barh. *See* Dkt. Nos. 438 and 440.

[14]    Plaintiffs criticize Dr. Cryer's opinion regarding Kolios's "lack of a double-blinded and placebo-controlled methodology." Mot. at 14 (citing PEX 1 ¶¶ 274-94). But Plaintiffs ignore his other opinions, including that the 1 UC subject was likely resolved by other reasons, and that it did

## V.     Dr. Cryer's Opinions Regarding What the PTO Examiner Reviewed Is Not Testimony on PTO Practices or Procedures

Plaintiffs explicitly do not seek to preclude Dr. Cryer's cumulativeness opinions regarding other references before the PTO.  Mot. at 18 (citing PEX 1 ¶¶ 268-72, 296-99, 332-35, 399-401, 454, 464-66, 485, 492-98).  Plaintiffs only dispute Dr. Cryer's opinions that the examiner reviewed the 2018 CT.Gov posting and the NCT 236 clinical trial protocol.  *See* Mot. at 19-20.  Specifically, Dr. Cryer reviewed the list of documents *considered* by the examiner (Ex. 7), a document which is part of the patent's prosecution history.  That list includes a PCT search report listing the CT.Gov reference.  PEX 1 ¶¶ 363-65.[15]  Any documents not considered were crossed out, but the examiner did not cross this document out.  *Id.*  The examiner also rejected claims over the CT.Gov reference. *Id.*  With respect to the NCT 236 protocol, Dr. Cryer also noted that the examiner reviewed the CT.Gov webpage at a time when the webpage included the full protocol.  *Id.* ¶ 491.  Thus, he offers the opinion that the examiner reviewed the NCT 236 Protocol.  *Id.*

Both opinions are proper.  The issue of *what* the examiner reviewed is not speculation nor is it a matter of PTO "practices or procedures."  *See J&M Indus., Inc. v. Raven Indus., Inc.*, 457 F. Supp. 3d 1022, 1063 (D. Kan. 2020) ("opinion that the examiner 'considered' the references does not delve into or speculate about the thought process of the examiner."); *Daedalus Blue, LLC v. Microstrategy, Inc.*, No. 20-551, 2023 WL 4157543, at \*7-8 (E.D. Va. Apr. 11, 2023) *report and recommendation adopted*, 2023 WL 4707994 (E.D. Va. July 24, 2023).  In *Daedalus Blue, LLC*, for example, the court excluded part of one paragraph in a report which speculated on what the

---

not use the dosage regimen of the claims.  PEX 1 ¶¶ 273-280; *see also e.g.*, Ex. 2, Cryer Dep. Tr., 65:05-67:18.

[15]     Dr. Cryer did not need to review the entire prosecution history to offer these opinions.  He only needed to review the list of documents considered by the examiner.  Ex. 7; *see also e.g.*, Ex. 2, Cryer Dep. Tr., at 89:05-91:10, 97:07-98:12, 101:06-102:01, 116:01-117:25.

examiner hypothetically could have done. *Id.* But the court permitted expert testimony regarding a "factual description of what occurred during prosecution." *Id.* Dr. Cryer's testimony is such a factual description of prosecution.

Plaintiffs rely on *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co. LP* (Mot. at 25), but *Comcast* stands only for the proposition that expert testimony regarding the "state of mind" of an examiner is inadmissible "in the absence of any support in the record." 203 F. Supp. 3d 499, 547 (E.D. Pa. 2016). Here, unlike in *Comcast*, Dr. Cryer is not offering an opinion on the examiner's state of mind. Nor is he offering an opinion with "no basis . . . other than generic PTO rules that require a thorough search of the prior art." *Id.* Dr. Cryer noted that the examiner considered a PCT search report which explicitly lists the 2018 CT.Gov posting. Ex. 8. And Dr. Cryer's opinion regarding the NCT 236 protocol is based on the fact that the examiner reviewed the ClinicalTrials.gov website at a time when the protocol was fully available on that same webpage. PEX 1 ¶ 491.[16]

## <u>CONCLUSION</u>

For the reasons stated above, the Court should deny Plaintiffs' motion to exclude in its entirety.

Dated: September 17, 2025            Respectfully submitted,

                                     */s/ Christina Guerola Sarchio*
                                     Christina Guerola Sarchio (Bar No. 87166)
                                     **DECHERT LLP**
                                     1900 K Street, NW
                                     Washington, DC 20006
                                     Tel.: (202) 261-3300

---

[16]    It is curious that Plaintiffs move to exclude this testimony when their own experts have conceded that CT.Gov was ***considered*** by the Examiner. Ex. 66 ¶ 91 (PTO rejecting claims based on "ClinicalTrials.gov (August 2018)"); Ex. 6, Matovcik Dep. Tr.,at 92:6-93:11 ("It was not withheld, because the examiner provided it").

Fax: (202) 261-3333
christina.sarchio@dechert.com

George G. Gordon *(pro hac vice)*
Julia E. Chapman *(pro hac vice)*
Katherine Unger Davis *(pro hac vice)*
Forrest E. Lovett (*pro hac vice*)
Judah Bellin (*pro hac vice*)
David M. Costigan (*pro hac vice*)
Agnese Whitt (*pro hac vice*)
Madeline Holler (*pro hac vice*)
**DECHERT LLP**
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994 4000
Fax: (215) 994-2222
george.gordon@dechert.com
julia.chapman@dechert.com
katherine.ungerdavis@dechert.com
forrest.lovett@dechert.com
judah.bellin@dechert.com
david.costigan@dechert.com
agnese.nadalini@dechert.com
madeline.holler@dechert.com

Katherine A. Helm *(pro hac vice)*
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel.: (212) 698-3500
Fax: (212) 698-3599
khelm@dechert.com

Amanda K. Antons *(pro hac vice)*
**DECHERT LLP**
230 Northgate Street #209
Lake Forest, IL 60045
Tel.: (312) 656-5800
Fax: (312) 646-5858
Amanda.antons@dechert.com

*Counsel for Defendants Johnson &
Johnson and Janssen Biotech, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2025, I caused to be served a copy of the foregoing

document on all counsel of record via the Court's CM/ECF system.

*/s/ Christina Guerola Sarchio*
Christina Guerola Sarchio, Esq.
VSB No. 87166
**DECHERT LLP**
1900 K Street, NW
Washington, DC 20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
christina.sarchio@dechert.com

*Counsel for Defendants Johnson & Johnson and Janssen Biotech, Inc.*