**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

CAREFIRST OF MARYLAND, *et al.*,

    Plaintiffs,

    v.

JOHNSON & JOHNSON, *et al.*,

    Defendants.

Case No. 2:23-cv-629

**OPINION & ORDER**

Plaintiffs CareFirst of Maryland, Inc., Group Hospitalization and Medical Services, Inc., and CareFirst Bluechoice, Inc. (collectively "CareFirst") move to file a proposed Third Amended Complaint almost six months after the scheduling order deadline for motions to amend the pleadings under Fed. R. Civ. P. 15(a)(2). ECF No. 335. For the reasons stated herein, the motion for leave to amend is **GRANTED IN PART** and **DENIED IN PART.**

**I.     BACKGROUND**

At this stage, the Court assumes the facts alleged in the proposed third amended complaint ("TAC") are true. ECF No. 341-2. The Court has previously described the factual background of this case, so it will only briefly summarize the factual allegations here. ECF No. 119 at 2–7. CareFirst alleges that Johnson & Johnson and its wholly owned subsidiary Janssen Biotech, Inc. (collectively "J&J") used monopoly power over the drug Ustekinumab to exclude biosimilar competitors from the market by fraudulently obtaining its '307 method-of-use patent (*Walker*

*Process* fraud), wrongfully acquiring Momenta biosimilar manufacturing patents, and using the '307 and Momenta patents to delay the entry of biosimilar competitors from the market. ECF No. 341-1 ¶ 465. CareFirst alleges monopolization in violation of § 2 of the Sherman Act (Count I), violations of state antitrust law (Count II) and consumer protection law (Count III), and unjust enrichment (Count IV).

The Court's amended scheduling order set a November 5, 2024 deadline for motions to amend the pleadings under Fed. R. Civ. P. 15(a)(2). ECF No. 61. CareFirst moved to file its TAC on April 30, 2025. ECF No. 335. The TAC maintains the theories of liability presented in the Second Amended Complaint but also incorporates new allegations, which CareFirst groups into nine categories: (1) biosimilar regulatory submissions, approvals, and commercial launches, ECF No. 340 at 9; (2) J&J's litigation against Samsung, *id.* at 9; (3) J&J's expectation of the immateriality of a skinny-label launch[1] on market dynamics, *id.* at 9–10; (4) *Walker Process* fraud: representations to the Food and Drug Administration, *id.* at 10–11; (5) *Walker Process* fraud: the clinical trial protocol vs. the ClinicalTrials.gov posting, *id.* at 11–12; (6) *Walker Process* fraud: additional prior art, *id.* at 12; (7) *Walker Process* fraud: J&J's prosecution of the '310 patent application, *id.* at 13; (8) sham litigation, *id.* at 13–15; and (9) class definition, *id.* at 15. For ease of reference, the Court will refer to each category by number (*e.g.*, Category One).

---

[1] A skinny label is one that carves out the ulcerative colitis indication (the use covered by the '307 patent).

J&J does not take a position on whether the Court should grant leave to amend Categories One, Three, Five, and Nine, but it opposes leave to amend as to all the other categories. ECF No. 369 at 11 n.2.

## II.    LEGAL STANDARD

"[A]fter the deadlines provided by a scheduling order have passed," a plaintiff seeking to amend a complaint must demonstrate good cause pursuant to Fed. R. Civ. P. 16(b). *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). If the plaintiff demonstrates good cause to amend its complaint after the deadline set forth in the scheduling order, the Court must next complete the amendment analysis under Fed. R. Civ. P. 15. *Carlisle v. Allianz Life Ins. Co. of N. Am.*, 540 F. Supp. 3d 567, 572 (E.D. Va. 2021).

Fed R. Civ. P. 15(a)(2) provides that a party may amend a pleading by leave of the court or by written consent of the adverse party and that "[t]he court should freely give leave [to amend] when justice so requires." Leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citation and quotation marks omitted).

### A.    Good Cause

The Fourth Circuit has not addressed in a published opinion what factors guide the good cause analysis in the context of a motion for leave to file an amended complaint after the deadline prescribed in a court's scheduling order. However, it has recognized in unpublished opinions that the "touchstone" of Fed. R. Civ. P. 16(b)(4)'s

3

good cause standard is the diligence of the moving party. *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020) (unpublished); *Montgomery v. Anne Arundel Cnty., Md.*, 182 F. App'x 156, 162 (4th Cir. 2006) (unpublished); *Cook v. Howard*, 484 F. App'x 805, 814–15 (4th Cir. 2012) (unpublished). Thus, the Court looks to whether the plaintiff acted diligently to comply with the scheduling order. *Cf. Cook*, 484 F. App'x at 815 ("[T]he good-cause standard will not be satisfied if the district court concludes that the party seeking relief . . . has not acted diligently in compliance with the schedule.") (alterations accepted).[2]

Under that standard, good cause generally exists when some of the evidence a plaintiff needs to plead their claims did not come to light until after the amendment deadline. *See, e.g.*, *G. W. Aru, LLC v. W. R. Grace & Co.-Conn.*, 344 F.R.D. 446, 449 (D. Md. 2023); *Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 107 (D. Md. 2013); *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768–69 (D. Md. 2010).

## B. Prejudice

Prejudice is often determined by the nature of the amendment and its timing. *Laber*, 438 F.3d at 426. District courts in the Fourth Circuit require the party

---

[2] To determine whether good cause exists under Fed. R. Civ. P. 16(b)(4), district courts within the Fourth Circuit sometimes consider "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." *G. W. Aru, LLC v. W. R. Grace & Co.-Conn.*, 344 F.R.D. 446, 449 (D. Md. 2023); *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-66, 2019 WL 1880148, at *2 (W.D. Va. Apr. 26, 2019); *Ademiluyi v. PennyMac Mortg. Inv. Trudt Holdings*, No. 1:12-cv-752, 2015 WL 575362, at *5 (D. Md. Feb. 10, 2015). The good faith and prejudice inquiries overlap with the Fed. R. Civ. P. 15(a) standard, so the Court will address those issues as part of its Rule 15 analysis. The Court views the length of the delay as part of its inquiry into diligence and the effects of the delay as part of the prejudice consideration.

4

opposing amendment to demonstrate prejudice if it exists. *E.g., Atl. Bulk Carrier Corp. v. Milan Exp. Co., Inc.*, No. 3:10-cv-103, 2010 WL 2929612, *4 (E.D. Va. July 23, 2010); *Hardwire, LLC v. Ebaugh*, No. 1:20-cv-304, 2021 WL 3809078, at *11 (D. Md. Aug. 26, 2021).

"A common example of a prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant[] and is offered shortly before or during trial." *Laber*, 438 F.3d at 427. On the other hand, an amendment is likely not prejudicial if "it merely adds an additional theory of recovery to the facts already ple[ade]d and is offered before any discovery has occurred." *Id.*

### C.    Bad Faith

Bad faith is "dishonesty of belief or purpose." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 198 (4th Cir. 2022) (quoting Bad Faith, BLACK'S LAW DICTIONARY (8th ed. 2004)) (quotation marks omitted and alterations accepted). It captures "act[ing] for the wrong reasons . . . lying, deceiving, playing unjustifiable hardball, slacking off, intentionally causing confusion, [] stubbornly refusing to follow rules," or even "noticing someone's mistake and saying nothing about it." *Id.*

### D.    Futility

Courts deny leave to amend for futility when the proposed amendment is "clearly insufficient or frivolous on its face" or "fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).

5

Such deficiencies must be "obvious on the face of the proposed amendment." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). "To survive a [Fed. R. Civ. P. 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "must take all the factual allegations in the complaint as true." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III.   ANALYSIS

### A.   Categories J&J Does Not Challenge

CareFirst's TAC includes four categories of allegations on which J&J takes "no position" as to whether CareFirst should be granted leave to amend. ECF No. 369 at 11 n.2. Those categories, as CareFirst defines them, are allegations regarding: "the dates on which the FDA approved certain Ustekinumab biosimilars as well as their subsequent market launches" ("Category One");[3] J&J's expectation that biosimilar versions of Stelara would gain equivalent market share regardless of whether they launched with a full label or a skinny label ("Category Three");[4] CareFirst's previous misconception that the patent examiner had the protocol for NCT 236 before him

---

[3] TAC ¶¶ 11, 104, 291, 298, 305, 308, 311, 317, 322, 326, 331–32, 338, 343, 346–47, 350–51, Tables 1 & 2. ECF 340 at 9. CareFirst does not address TAC ¶ 276 in its motion, but that allegation also appears to fall within this category, so the Court includes it within Category One.

[4] TAC ¶¶ 365–67. ECF No. 340 at 9.

when considering the '509 patent application, as he instead had the ClinicalTrials.gov posting ("Category Five");[5] and the class definition ("Category Nine").[6] ECF No. 340 at 5–8, 11–12.[7]

At the outset the Court will dispose of two of the Fed. R. Civ. P. 15(a) factors—prejudice and bad faith—given that J&J does not raise either. *See Atl. Bulk Carrier,* 2010 WL 2929612, at \*4. While J&J need not affirmatively raise bad faith as it must raise prejudice, there is no evidence that CareFirst is acting with "dishonesty of belief or purpose" here. *MedCom Carolinas, Inc.,* 42 F.4th at 198.

### i.    Good Cause

CareFirst establishes good cause to amend its complaint with respect to Categories One, Three, and Five. While CareFirst does not demonstrate diligence with respect to Category Nine, the Court nevertheless finds that good cause exists.

### a.    Categories One, Three, & Five

CareFirst establishes good cause as to Categories One, Three, and Five, because it seeks to amend its complaint to add facts that it learned after the

---

[5] TAC ¶¶ 5, 164–73, 177–78, 183–84, 192, 201, 211–33, 242. ECF No. 340 at 11.

[6] TAC ¶¶ 382–83. ECF No. 340 at 15. The Court will also include ¶ 381 in Category Nine.

[7] CareFirst also proposes edits to existing paragraphs, and entirely new paragraphs, which it does not group into a category and which J&J does not oppose. TAC ¶¶ 6, 7, 14, 37, 48, 49, 71, 96, 186–89, 191–93, 202–204, 247–51, 254–59, 300, 319, 327, 337, 353, 364, 368, 399, 420, 424, 451, 460–62, 469, 472, 527. This is presumably because the edits are minor—wording, grammar, or background additions. The Court will grant CareFirst leave to amend as to these paragraphs as well.

November 2024 deadline to amend the pleadings. *See, e.g., G. W. Aru, LLC*, 344 F.R.D. at 449.

As to Category One, CareFirst seeks to include dates and facts that occurred between December 2024 and March 2025. *See* ECF No. 340 at 9. As to Category Three, CareFirst contends that it learned about "J&J's expectation of the immateriality of a skinny-label launch on market dynamics" through documents obtained during discovery, the importance of which was "further revealed" through a January 2025 deposition. *See id.* at 9–10. And as to Category Five, CareFirst seeks to correct its previous allegations that the patent examiner had a protocol for NCT 236 before him when considering the '509 patent application, when in fact he did not. *Id.* at 11. CareFirst learned during a February 2025 deposition of Mr. Dichter, J&J's attorney, that the patent examiner instead based his rejection on a website posting on ClinicalTrials.gov, which contained only a truncated description of NCT 236. *Id.* The motion suggests that the protocol included J&J's representation to the FDA regarding Phase 2 studies but the website posting did not (though CareFirst does not affirmatively say what information the website lacked). *Id.* at 12.

While the earliest of these facts came to light four months before CareFirst filed its motion to amend, CareFirst contends that "it would have been impractical" to move to amend earlier "as depositions had just begun" and that CareFirst "chose to wait until depositions were all but concluded to file a comprehensive amendment." ECF No. 340 at 9. CareFirst has met its burden to demonstrate that it acted diligently to amend the complaint in a reasonable timeframe while balancing efficiency

8

considerations, particularly as J&J does not indicate that these particular amendments would be prejudicial. *See, e.g.*, *Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002) (reversing district court's denial of leave to amend where plaintiff's motion was filed less than three months after the precipitating events).

### b.    Category Nine

CareFirst seeks to amend its class definition "to provide greater clarity," including by (1) "aligning the class definition to more closely resemble the certified class in *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 18-md-2836, 2020 WL 5778756, *report and rec. adopted*, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021);" (2) "mak[ing] clear that purchases of biosimilar versions of Stelara, which did not exist as of November 5, 2024, are in the class definition;" (3) "limiting qualifying purchases to only those made pursuant to a prescription drug benefit;" and (4) setting an end date for the class period. ECF No. 340 at 15–16.

As to this category of proposed changes, it is not clear that CareFirst acted diligently to comply with the scheduling order. For example, CareFirst does not explain why it did not align its class definition to the 2021 decision in *In re Zetia* before November 2024, even though that decision was available. Nor does CareFirst explain why it was unable to set an end date or limit qualifying purchases previously. CareFirst does not claim that its proposed changes to the class definition are needed due to new evidence that came to light after the amendment deadline; instead, it appears that most of the changes proposed in Category Nine seek to clarify terms that already appear in the Second Amended Complaint.

However, while CareFirst does not establish good cause in the traditional way, there is good cause to amend the class definition because of judicial efficiency considerations. The Court must determine "[a]t an early practicable time" whether a class action can be maintained. Fed. R. Civ. P. 23(c)(1)(A). Therefore, a court "has discretion to limit or redefine [] class[es] in an appropriate manner to bring the action within Rule 23." 7A *Wright & Miller's Federal Practice & Procedure* § 1760 (4th ed. Sep. 2025 update); *see also Piotrowski v. Wells Fargo Bank, NA*, 2015 WL 4602591, at *5 (D. Md. July 29, 2015) (collecting cases explaining that a court is "permitted to limit or modify class definitions to provide the necessary precision"); *Taliaferro v. State Council of Higher Ed.*, 372 F. Supp. 1378, 1388 (E.D. Va. 1974) (limiting the class definition as "the interest of both sides can be protected and justice served" by doing so).

Therefore, the Court will allow CareFirst to clean up the proposed class definition now rather than spending judicial resources to achieve greater clarity later. *Cf. Medline Indus., Inc. v. York Bldg. Prods. Co.*, 702 F. Supp. 3d 403, 408 (D. Md. 2023) (finding good cause to seek a delayed amendment in part due to the "judicial efficiencies that would accrue"); *Remy Holdings Int'l, LLC v. Fisher Auto Parts, Inc.*, No. 5:19-cv-00021, 2022 WL 198851, at *2 (W.D. Va. Jan. 21, 2022) ("[E]ven if the court had not found good cause, the court is justified in allowing the . . . motion in the interests of judicial efficiency and economy.").

### *ii.* *Futility*

CareFirst's proposed amendments within Categories One, Three, Five, and Nine would not be futile because the proposed revised facts support claims that would pass—and have previously passed—muster under Fed. R. Civ. P. 12(b)(6). After the Court ruled on the motion to dismiss, CareFirst filed a Second Amended Complaint that removed its attempted monopolization claim and cured "certain pleading issues discussed" in the decision on the motion to dismiss. ECF No. 340 at 6; *see* ECF No. 180 at 3; *see also* ECF No. 182 (granting motion to amend).

The proposed additional facts in the TAC do not detract from the previous pleadings that supported the Court's analysis in its opinion on the motion to dismiss, so the Court will not engage in a duplicative analysis. But in short, Category One provides background information that supports all of CareFirst's claims; Category Three supports CareFirst's allegations that acquisition of the Momenta patents was anticompetitive conduct, *see* ECF No. 119 at 27–33; Category Five provides an additional example of omitted relevant prior art in support of CareFirst's *Walker Process* fraud claim, *see id.* at 23–27; and Category Nine narrows the class definition in support of all claims.

J&J asserts that CareFirst raises a new claim of sham litigation that CareFirst previously disavowed. ECF No. 369 at 7–8. The Court will address the proposed sham litigation allegations (Category Eight) below, *infra* Part III.C.iii. But the proposed amendments raised in Categories One, Three, Five, and Nine do not bear solely on the sham litigation theory; they also support at least CareFirst's *Walker Process* fraud

claims, as explained above. Therefore, these categories of proposed amendments are not futile.

### B.    Additional Categories CareFirst Can Amend

CareFirst seeks to add two additional categories of allegations for which it demonstrates good cause to amend under Fed. R. Civ. P. 16(b) and that otherwise meet the 15(a) standard. First, CareFirst asks to add allegations about J&J's filing of *Johnson & Johnson, et al. v. Samsung Bioepis Co. Ltd.*, No. 2:25-cv-01439 (D.N.J. Feb. 24, 2025) (Category Two),[8] which CareFirst contends illustrates "J&J's continued use of its unlawfully acquired '307 and Momenta patents and its continued need for injunctive relief." ECF No. 340 at 9. Second, CareFirst seeks to add facts regarding J&J's prosecution of the '310 continuing patent application (Category Seven),[9] which CareFirst alleges covers "claims substantially similar to those of the '307 patent" and the PTO's non-final rejection of the '310 patent and which CareFirst asserts "validates [its] invalidity and materiality allegations" about the '307 patent. *Id.* at 13. To begin with, there is no evidence that CareFirst is acting with "dishonesty" in moving to amend as to any of these categories, and J&J does not argue otherwise.

As explained below, the Court orders the parties to meet and confer regarding whether any additional discovery is required as to Category Seven. If necessary, the parties should propose a schedule for limited discovery for the Court's review.

---

[8] TAC ¶¶ 370–79. ECF No. 340 at 9.

[9] TAC ¶¶ 234–40, 295. ECF No. 340 at 13.

### i.    *Good Cause*

CareFirst meets its burden to establish good cause to amend as to Categories Two and Seven because the material allegations within both categories occurred after the deadline to amend had passed. J&J filed the litigation against Samsung in February 2025, just two months before CareFirst sought leave to amend. ECF No. 340 at 9. And the PTO's non-final rejection of the '310 patent application occurred in January 2025, three months prior to CareFirst's motion. *Id.* at 13. While J&J argues that neither timeframe supports a finding of diligence, ECF No. 369 at 16, two or three months is not an unreasonable delay given CareFirst's indication that it was waiting for fact discovery to end in order to combine all its amendments into one motion, ECF No. 340 at 9. Therefore, CareFirst has shown that it was diligent with respect to Categories Two and Seven.[10]

Regarding Category Seven, J&J argues that CareFirst knew about the '310 patent application prior to the deadline to amend because J&J filed the '310 application in October 2023. ECF No. 369 at 16. But the crux of CareFirst's allegations pertains to the PTO's rejection of the '310 patent application in January

---

[10] In its explanation regarding good cause to amend Category Two, CareFirst explains that "J&J did not supplement its discovery with such information" but that CareFirst discovered the litigation through independent investigation. ECF No. 340 at 16. CareFirst also explains that "it was not until April 28[, 2025] that the [C]ourt denied J&J's motion for preliminary injunction." *Id.* at 9. These explanations are not persuasive. The denial of the preliminary injunction motion does not appear to be material to CareFirst's proposed amendments, *see* ECF No. 341-2 ¶¶ 370–79, and CareFirst could have known about the Samsung case shortly after it was filed, regardless of whether J&J informed CareFirst about it. Nevertheless, good cause exists to amend Category Two for the reasons explained above.

13

2025, and the subsequent communications J&J's attorney had with the PTO in March and April 2025. ECF No. 340 at 13. CareFirst alleges that the January rejection and the March and April communications show that had J&J not "misled the examiner, the examiner would have maintained the rejection of the '307 patent." TAC ¶ 239. Thus, the Court looks to the March and April 2025 events, not the October 2023 patent application filing, and finds that CareFirst was appropriately diligent in this instance.

### ii.    Prejudice

J&J does not argue that inclusion of the Category Two allegations prejudices it, so it has waived that argument; and the Court independently finds that the inclusion of facts about a public lawsuit would not prejudice J&J.

J&J *does* contend that inclusion of the Category Seven allegations as an additional basis for CareFirst's *Walker Process* theory and to support CareFirst's introduction of its sham litigation theory would prejudice it because J&J did not have an opportunity to develop a record related to those references. ECF No. 369 at 32–33. J&J explains that it did not "examine witnesses about [the new references], did not seek third-party discovery related to their development or public accessibility, and did not explore secondary considerations of non-obviousness that might rebut a late-breaking obviousness theory." *Id.* at 33. But J&J has not explained why the inclusion of facts related to the '310 patent application, at least to the extent those facts support the already existing *Walker Process* theory, would *require* additional discovery.

14

Therefore, J&J has not adequately shown that it would be prejudicial to include the Category Seven allegations.

However, to the extent there is any prejudice to J&J in granting leave to amend as to Category Seven, such prejudice would be mitigated by additional discovery. Therefore, the Court will require the parties to meet and confer regarding whether additional discovery is warranted as to Category Seven. If the parties determine such discovery is necessary, they should propose a limited discovery schedule for the Court's review.

### iii.    Futility

The proposed Category Two and Category Seven amendments are not "clearly insufficient or frivolous on [their] face." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d at 750. At this stage, the Court must take CareFirst's allegations as true. As to Category Two, CareFirst seeks to amend the complaint to add what it alleges is an additional example of J&J's "continued use of its unlawfully acquired '307 and Momenta patents as well as the continued need for injunctive relief." ECF No. 340 at 9. As to Category Seven, CareFirst alleges that these allegations support its previous allegations "as to how the patent examiner would have handled the '509 application absent J&J's fraudulent conduct." *Id.* at 13. These allegations support CareFirst's *Walker Process* and antitrust injury arguments at a minimum, which the Court has already held pass Fed. R. Civ. P. 12(b)(6) scrutiny. *See* ECF No. 119 at 23–27, 34–37.

Regarding Category Two, while J&J argues that CareFirst is "wrong on the substance of this case," ECF No. 369 at 18 n.5, that is a factual argument that the

Court need not engage with at this stage. The Category Two allegations plausibly support CareFirst's allegations of antitrust injury stemming from J&J's unlawfully acquired '307 and Momenta patents, and that is enough to meet the Fed. R. Civ. P. 15(a) standard. ECF No. 119 at 34–37.

J&J does not make a futility argument regarding Category Seven. But in any event, its Category Seven allegations plausibly support its *Walker Process* fraud claim by providing additional support for CareFirst's argument that absent J&J's misrepresentations and omissions, the PTO would have rejected the '307 patent.

### C.    Categories CareFirst Cannot Amend

CareFirst fails to show that the proposed allegations in Categories Four, Six, or Eight could not have been included prior to the scheduling order deadline to amend the pleadings. Therefore, CareFirst does not meet its burden to demonstrate good cause as to those three categories.

### i.    *Category Four*

CareFirst's proposed TAC includes a category of "contradictory statements J&J made to the PTO and FDA" that were "uncovered during discovery" and that support CareFirst's *Walker Process* fraud allegations.[11] ECF No. 340 at 10. CareFirst alleges J&J told the FDA that Ustekinumab would be an effective ulcerative colitis treatment but then told the PTO that J&J had no reasonable expectation that Ustekinumab would treat ulcerative colitis. *Id.* CareFirst also contends that this

---

[11] TAC ¶¶ 5, 147–82, 194–96, 241. ECF No. 340 at 10.

"duplicity" was "confirmed during depositions" largely taken in February and March 2025. *Id.*

In response, J&J argues that the proposed Category Four amendments are not timely because the documents CareFirst relies on in support of its new allegations were either publicly available before CareFirst filed its complaint or were produced to CareFirst on September 10, 2024. ECF No. 369 at 11–12. J&J also argues that the depositions CareFirst references "merely confirmed what was stated in the documents" and that CareFirst did not attempt to glean any additional factual information about the documents from the deponents. *Id.* at 20.

CareFirst does not meet its burden to demonstrate good cause here. The allegations it seeks to add largely consist of information pulled directly from ten documents.[12] Much of the proposed amendments in this category appear to be exact recitations of the language contained in the ten documents, which CareFirst ought to have known about prior to the scheduling order deadline to amend. And to the extent CareFirst argues that all the proposed new language was conditionally relevant based on depositions taken in February and March 2025, CareFirst has not met its burden to show that is true.

---

[12] The referenced documents are: 2014 FDA Briefing Document, TAC ¶¶ 151–54; 2014 Scientific Briefing, *id.* ¶¶ 155–59; 2015 pre-IND Meeting, *id.* ¶¶ 160–63; 2015 CT posting, *id.* ¶¶ 164–66; NCT 236 Protocol, *id.* ¶¶ 167–71; NCT 236 Protocol – Amendment 1, *id.* ¶¶ 172–73; MERB responses, *id.* ¶¶ 174–76; NCT 236 Protocol – Amendment 2, *id.* ¶¶ 177–78; Orphan Drug Request, *id.* ¶¶ 179–82; and sBLA for UC, *id.* ¶¶ 195–96.

CareFirst provides brief examples of testimony it obtained that allegedly confirmed the relevance of these documents. *See* ECF No. 340 at 10–11 (citing ECF No. 341-3 at 57:4–69:18; ECF No. 341-4, at 266:3–269:10); ECF No. 378 at 21–22 (citing ECF No. 341-3 at 14:8–17:2, 57:4–69:18; ECF No. 341-4 at 138:20–140:4, 147:12–150:18, 151:20–161:5). But these portions of the deposition transcripts do not include any testimony about four of the ten documents CareFirst seeks to add allegations about: 2015 CT posting, TAC ¶¶ 164–166; MERB responses, *id.* ¶¶ 174–176; NCT 236 Protocol – Amendment 2, *id.* ¶¶ 172–173; and sBLA for UC, *id.* ¶¶ 195–196. And for the documents the testimony does touch on, the cited testimony reveals that CareFirst primarily asked the deponents to confirm that the exact text of the document or that the information was true at the time it was written.

The only instances where it appears CareFirst asked more of the deponents were in reference to the NCT 236 Protocol. *See* ECF No. 379-1 at 16:18–17:2 ("Yes, I was a reviewer and potential drafter of some of the information that was provided in the protocol."); ECF No. 341-4 at 139:24–140:4 ("I would be a reviewer on that document."). But that is not enough to show that the deposition testimony changed CareFirst's knowledge about the relevance of these ten documents in a meaningful way. *See, e.g.*, *Nourison Rug Corp.*, 535 F.3d at 297 (affirming district court denial of leave to amend where there was "no indication that [the plaintiff] learned of these

facts after the scheduling order deadline for amendments to the pleadings"). Therefore, CareFirst does not meet its burden to demonstrate diligence.[13]

### ii.      Category Six

CareFirst seeks to add six additional pieces of prior art—five studies and a 2017 version of the ClinicalTrials.gov posting—that it "first learned of" during discovery and the importance of which was allegedly revealed during depositions taken in February and March 2025.[14] ECF No. 340 at 12. J&J argues that these pieces of prior art were publicly available before the deadline to amend and that CareFirst did not try to elicit substantive deposition testimony about any of them. ECF No. 369 at 15, 23.

CareFirst again fails to meet its burden to show that these new allegations could not have been included prior to the scheduling order's deadline to amend. The Jostins 2012 study, Granlund 2013 study, and 2017 NCT posting were all cited to in J&J's 2016 NCT Protocol, that CareFirst relied on in its original Complaint. ECF No. 369 at 14; *see, e.g.*, ECF No. 1 ¶ 105. And CareFirst does not show that it developed additional facts related to knowledge in the February and March 2025 depositions. The portions of deposition testimony that CareFirst cites in its briefing do not include any questions beyond asking the deponent to confirm that the 2016 NCT protocol

---

[13] Nothing in this Opinion and Order should be taken to preclude CareFirst from using the facts proposed in Category Four as evidence supporting its burden at summary judgment or trial, subject to admissibility.

[14] TAC ¶¶ 141–44, 146, 185, 207–10, 221, 223, 293–94. ECF No. 340 at 12.

cites to the three studies. ECF No. 340 at 12 (citing ECF No. 341-3 at 60:3–12, 67:5–11).

Similarly, the Bradbury 2013, Downs 2010, and Nakajima 2015 studies were listed in a document J&J produced to CareFirst in September 2024, well before the deadline to amend the pleadings had passed. ECF No. 369 at 15. The deposition transcripts CareFirst points to as evidence that it needed to develop substantive testimony on these studies before including them in its pleadings do not reveal such testimony (or questions designed to elicit it). ECF No. 340 at 12 (citing ECF No. 341-4 at 220:13–232:2, 255:3–260:2). Instead, each deponent is merely asked to confirm that a document references particular studies. *E.g.*, ECF No. 341-4 227:17–23 ("Q. . . . there's a reference to a Nakajima . . . article . . . do you see that? A. Yes.").

Additionally, many of the newly proposed allegations simply describe the contents of these studies or state that the NCT 236 Protocol relied on the studies. *E.g.*, ECF No. 341-2 ¶¶ 141–44, 146, 185, 223. Therefore, CareFirst does not show good cause to amend here.

### *iii.    Category Eight*

CareFirst seeks to add allegations regarding the "sham exception as an alternative to their *Walker Process* fraud theory should the Court conclude that J&J unlawfully acquired the Momenta patents but did not commit *Walker Process* fraud."[15] ECF No. 340 at 14. CareFirst has not previously raised a sham litigation theory in this case.

---

[15] TAC ¶¶ 8–10, 292–296, 447–48, 465.

The sham litigation exception to *Noerr-Pennington* immunity says that if a patent suit is a sham rather than a "genuine effort to influence" the court, then the patent litigation does not have antitrust immunity. *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 502–03 (1988). In evaluating whether a lawsuit is a sham, courts consider whether (1) it is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and whether the (2) "baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993) (citations and quotation marks omitted) (emphasis removed).

CareFirst's theory is that J&J's enforcement of the '307 patent, even if it could not have enforced the Momenta patents, was still anticompetitive under *Noerr-Pennington* because any lawsuit to enforce the '307 patent would have been a sham. ECF No. 340 at 14–15.

### a. *Good Cause*

At the outset, the parties argue over whether CareFirst is required to plead sham litigation. CareFirst states that despite not having the burden to allege sham litigation, it raises the claim "in the interest of transparency." ECF No. 340 at 14.

*Noerr-Pennington* immunity is an affirmative defense. *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 359 (4th Cir. 2013). And generally, a plaintiff need not plead matters responsive to an affirmative defense

21

before the affirmative defense is raised. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, this case presents a different situation.

Where "claims are based on activities shielded by *Noerr-Pennington* immunity, the plaintiff must plead the sham litigation with specificity." *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 981 (N.D. Cal. 2019); *see also Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988) ("[A] plaintiff's complaint [must] contain specific allegations demonstrating that the *Noerr–Pennington* protections do not apply.").

CareFirst itself argues that "[t]he role of the sham exception in this case should come as no surprise" because "[m]any of the plaintiffs' previously alleged facts supporting their *Walker Process* allegations also support the sham exception." ECF No. 340 at 15. CareFirst's monopolization claim is partly based on allegations that "J&J's goal was not to win litigation; instead, J&J sought to use the unlawfully acquired patents to *delay entry* of would-be biosimilars . . . ." ECF No. 184 ¶ 8. Therefore, CareFirst's claims were based on activities—including allegedly objectively baseless litigation—shielded by *Noerr-Pennington* immunity. *Id.* ¶ 9. ("None of J&J's misconduct enjoys Noerr-Pennington qualified immunity."). So CareFirst was required to plead sham litigation if it wished to raise the theory.

However, even if CareFirst were not required to plead sham litigation, it still falls far short of meeting the Fed. R. Civ. P. 16(b) good cause standard. CareFirst's original motion provides only one potential basis for diligence: J&J raised *Noerr-Pennington* in its answer to the Second Amended Complaint. ECF No. 340 at 13–14.

22

However, CareFirst concedes that J&J also raised *Noerr-Pennington* in response to CareFirst's *first* Amended Complaint and that the Court rejected J&J's claim of *Noerr-Pennington* immunity on the pleadings in its opinion on the motion to dismiss. *Id.* at 14 n.6; *see* ECF No. 119 at 37.

It is black-letter antitrust law that *Noerr-Pennington* has two exceptions—*Walker Process* fraud and sham litigation. *See* 11 Herbert Hovenkamp, et al., *IP and Antitrust: An Analysis of Antitrust Principles Applied to Intellectual Property Law*, ¶ 1 (2024). J&J in fact briefly argued, in its motion to dismiss the Amended Complaint, that the sham litigation exception did not apply in this case. *See* ECF No. 46 at 30–31. Therefore, CareFirst cannot credibly argue that any recent action or argument by J&J alerted it to a sham litigation theory for the first time.

CareFirst asserts in its reply brief that certain events that occurred after the scheduling order deadline to amend the pleadings as well as evidence obtained by the end of April made it "clear" that "no reasonable litigant could realistically expect to win a lawsuit to enforce the '307 patent." ECF No. 378 at 16. CareFirst contends that because J&J settled every challenge to the '307 patent's validity before any adjudicative body could speak to its strength, "none of these arguments were previously vetted, requiring [CareFirst] to analyze them from scratch." *Id.* Additionally, CareFirst argues that the "invalidity arguments raised in those suits are now the subject of expert reports, which establish an independent basis for the sham allegations." *Id.* Finally, CareFirst provides a lengthy explanation as to why

23

the '310 patent application rejection and resulting discussions with J&J purportedly shed light on a sham litigation theory. *Id.* at 17–19.

These arguments, however, all speak to the strength of a sham litigation theory, not to the existence of one. CareFirst did not need an adjudicative body nor an expert report to weigh in on whether a reasonable litigant could realistically expect to win a lawsuit to enforce the '307 patent before they even *raised* a sham litigation theory.

As J&J correctly states, no "lightbulb moment" occurred recently that could have reasonably caused CareFirst to realize, for the first time, that it could or should plead a sham litigation defense to *Noerr-Pennington* immunity. ECF No. 369 at 19. It therefore does not demonstrate diligence in seeking to include these allegations now.

### b.    *Prejudice*

Though the Court need not analyze prejudice because CareFirst fails to show good cause, it is worth briefly underscoring the prejudice to J&J of adding sham litigation allegations at this stage.

J&J argues that CareFirst previously represented that its antitrust claim was not based on the "patent infringement lawsuit[] but [on] J&J's prior acquisition of the Momenta patents and the '307 patent." ECF No. 369 at 8–9 (quoting ECF No. 57 at 27). J&J argues that therefore, it did not engage in discovery that it otherwise would have undertaken. *Id.* at 24–25. The Court credits J&J's representation that it relied on CareFirst's statement and tailored its litigation strategy accordingly, ECF No. 369

24

at 30, even if it is "unclear what evidence J&J could obtain from the CareFirst or non-parties" about this theory, ECF No. 378 at 19.

CareFirst argues that J&J was on notice of the sham litigation theory because two of its expert reports discuss the exception. ECF No. 340 at 16; ECF No. 378 at 10 (citing ECF No. 379-4 at 8–9, 71–77; ECF No. 379-7 at 121–24). However, the report of one of those experts states only "a reasonable patent practitioner would conclude that a lawsuit premised on alleged infringement of the '307 patent would be objectively baseless and no reasonable litigant could realistically expect to succeed on the merits of the litigation." ECF No. 379-4 at 10–11, 25. And the other expert's report does not specifically address sham litigation but instead discusses the purported misrepresentations that led to the '307 patent. ECF No. 379-7 at 19–22. The Court agrees with J&J that "[a] single unsupported sentence tucked into an 80-page report otherwise focused on [p]laintiffs' *Walker Process* claim is not a proper opinion," and is not enough to mitigate prejudice. ECF No. 369 at 10 n.1.[16]

## IV.   CONCLUSION

The plaintiffs' Motion for Leave to File Proposed Third Amended Class Action Complaint (ECF No. 335) is **GRANTED IN PART** as to Categories One, Two, Three, Five, Seven, and Nine and as to the minor edits identified in footnote seven and **DENIED IN PART** as to Categories Four, Six, and Eight.

---

[16] Because the Court denies CareFirst's motion for leave to amend as to Category Eight, an order requiring the parties to meet and confer on a supplemental expert report schedule, as J&J suggests, is not necessary. ECF No. 369 at 35–36.

25

The plaintiffs are **DIRECTED** to file a Third Amended Complaint on or before October 24, 2025, that complies with this Opinion & Order.

The parties are **ORDERED** to meet and confer regarding Category Seven and propose a limited discovery schedule for the Court to review, if warranted, on or before October 17, 2025.

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
October 10, 2025