**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

|  |  |
|---|---|
| CAREFIRST OF MARYLAND, INC., GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., and CAREFIRST BLUECHOICE, INC., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>JOHNSON & JOHNSON and JANSSEN BIOTECH, INC.,<br><br>    Defendants. | Case No. 2:23-cv-00629-JKW-LRL<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS JOHNSON & JOHNSON AND JANSSEN BIOTECH, INC.'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

I.      There Is No Evidence Supporting Plaintiffs' Claim of *Walker Process* Fraud ................. 2

        A.      Plaintiffs Have Failed To Offer Evidence Of Specific Intent To Deceive ............ 3

        B.      Plaintiffs Have Failed To Offer Evidence Of But-For Materiality ...................... 13

II.     The Undisputed Record Shows That J&J's Acquisition of Momenta Was Neither
        Willful Nor Anticompetitive ...................................................................................... 16

        A.      The Undisputed Record Shows That J&J Did Not Act To Willfully
                Acquire Monopoly Power When It Purchased Momenta ................................... 16

        B.      The Momenta Acquisition Had No Effect On Competition At The Time
                Of The Acquisition .......................................................................................... 23

III.    Plaintiffs Fail to Establish Antitrust Injury ................................................................ 24

        A.      The Entry Dates For Biosimilars Stem From Lawful Settlements, Not
                Anticompetitive Conduct ................................................................................ 24

        B.      Plaintiffs Offer No Evidence That The '307 Patent Delayed Biosimilar
                Entry ............................................................................................................... 24

IV.     Plaintiffs' State Law Claims Fail ................................................................................ 25

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
2013 WL 265602 (E.D. Va. Jan. 22, 2013) ...........................................................................4, 13

*Amgen Inc. v. F. Hoffman-La Roche Ltd.*,
580 F.3d 1340 (Fed. Cir. 2009)........................................................................................14

*Andrew Corp. v. Gabriel Elecs., Inc.*,
847 F.2d 819 (Fed. Cir. 1988)...........................................................................................7

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985)....................................................................................................18, 19

*Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*,
2018 WL 4697255 (C.D. Cal. Aug. 3, 2018)...........................................................................11

*Chamberlain Grp. v. Techtronic Indus. Co. Ltd.*,
2017 WL 3493799 (N.D. Ill. Aug. 14, 2017) ....................................................................7, 11

*CreAgri, Inc. v. Pinnaclife, Inc.*,
2013 WL 6673676 (N.D. Cal. Dec. 18, 2013 .........................................................................15

*Crown Packaging Tech., Inc. v. Belvac Prod. Mach., Inc.*,
591 F. Supp. 3d 52 (W.D. Va. 2022) .................................................................................4, 5

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)........................................................................................8, 10

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
2015 WL 10457176 (D. Del. Apr. 23, 2015)..........................................................................15

*Friedman v. Del. Cnty. Mem. Hosp.*,
672 F. Supp. 171 (E.D. Pa. 1987) ......................................................................................17

*FTC v. Actavis*,
570 U.S. 136 (2013)....................................................................................................24

*Fuma Int'l LLC v. R.J. Reynolds Vapor Co.*,
2020 WL 3470458 (M.D.N.C. Mar. 6, 2020)....................................................................4, 13

*GCP Applied Techs. Inc. v. AVM Indus., Inc.*,
2022 WL 17081176 (C.D. Cal. Aug. 5, 2022)........................................................................10

ii

*Giuliano v. SanDisk LLC*,
224 F. Supp. 3d 851 (N.D. Cal. 2016) ..............................................................10, 13

*Inline Packaging*, LLC v. Graphic Packaging Int'l, LLC,
962 F.3d (8th Cir. 2020) .......................................................................................4, 8

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
383 F.3d 1337 (Fed. Cir. 2004)........................................................................9, 12, 23

*Kove IO, Inc. v. Amazon Web Servs., Inc.*,
2024 WL 450028 (N.D. Ill. Feb. 6, 2024) ................................................................10

*Network Signatures, Inc. v. State Farm Mutual Auto. Ins. Co.*,
731 F.3d 1239 (Fed. Cir. 2013)...............................................................................14

*Nordberg, Inc. v. Telsmith, Inc.*,
82 F.3d 394 (Fed. Cir. 1996)...................................................................................10

*Oksanen v. Page Mem'l Hosp.*,
945 F.2d 696 (4th Cir. 1991) .............................................................................17, 18

*Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.*,
678 F.3d 1280 (Fed. Cir. 2012)...............................................................................14

*Polk Bros., Inc. v. Forest City Enters., Inc.*,
776 F.2d 185 (7th Cir. 1985) ..................................................................................24

*Sysmex Corp. v. Beckman Coulter, Inc.*,
2022 WL 1503987 (D. Del. May 6, 2022)................................................................10

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) (en banc)....................................................... *passim*

*TransWeb, LLC v. 3M Innovative Properties Co.*,
16 F. Supp. 3d 385 (D.N.J. 2014) ...........................................................................11

*U.S. Football League v. Nat'l Football League*,
842 F.2d 1335 (2d Cir. 1988)..................................................................................19

*Unigene Lab'ys v. Apotex, Inc.*,
655 F. 3d 1352 (Fed. Cir. 2011)................................................................................5

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health &*
*Welfare Fund v. Takeda Pharm. Co. Ltd.*,
11 F.4th 118 (2d Cir. 2021) ....................................................................................19

*United States v. Camick*,
796 F.3d 1206 (10th Cir. 2015) .................................................................................5

iii

*Valley Drug Co. v. Geneva Pharm., Inc.*,
344 F.3d 1294 (11th Cir. 2003) ..............................................................................24

**Other Authorities**

37 C.F.R. § 1.56 ..............................................................................5

Defendants Johnson & Johnson and Janssen Biotech, Inc. (collectively, "J&J") respectfully submit their reply memorandum of law in support of their Motion for Summary Judgment (D.I. 441).

## INTRODUCTION[1]

In a desperate attempt to avoid summary judgment, Plaintiffs resort to distorting both the relevant law and the factual record. This strategy only underscores that Plaintiffs' claims are both legally and factually unsupported. The Court should grant summary judgment.

*First*, Plaintiffs base their *Walker Process* claim on allegations that, during the prosecution of US Patent No. 10,961,307 (the "'307 Patent")[2] certain J&J employees (1) withheld from the PTO clinical trial-related submissions to the FDA (the "FDA Submissions") and Dr. Ochsenkühn's abstracts and (2) made "misrepresentations" to the PTO.[3] But the FDA Submissions were before the Examiner, and there is no evidence that anyone with a duty of candor knew about Dr. Ochsenkühn's abstracts, believed that they were material to the patentability of the '307 Patent, or deliberately withheld them with the specific intent to deceive. Similarly, Plaintiffs cannot show that any of the alleged "misrepresentations" were misrepresentations of *fact* made with specific intent to deceive. Instead, Plaintiffs offer nothing but speculation and conjecture—not evidence, let alone evidence showing that intent to deceive is the "single most reasonable inference" from

---

[1]    This brief refers to two sets of facts: (1) J&J's Statement Of Undisputed Facts ("SUF") from J&J's opening brief, D.I. 444 ("Br.") and (2) Plaintiffs' Counterstatement of Facts ("PCSF") from Plaintiffs' opposition brief, D.I. 549 ("Opp."). J&J's exhibits, referred to as "Ex." in the brief, are attached to the Declaration of Katherine Unger Davis In Support of Defendants Johnson & Johnson and Janssen Biotech Inc.'s Motion For Summary Judgment (D.I. 444-1) and the Declaration of Katherine Unger Davis submitted in connection with this Reply. Plaintiffs' exhibits, referred to as "PEX," are attached to the declaration of Hannah Brennan (D.I. 456).

[2]    The '307 Patent issued from U.S. Patent App. 16/580,509 (the "'509 Application").

[3]    The Court has now denied Plaintiffs' Motion for Leave to Amend their Complaint as it related to "*Walker Process* fraud: representations to the Food and Drug Administration" in Plaintiffs' proposed third amended complaint ("TAC"). D.I. 592 at 18-19.

the record with respect to any of the alleged omissions or misrepresentations. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc).

*Second*, Plaintiffs also face a failure of proof with respect to J&J's acquisition of Momenta Pharmaceuticals, Inc. ("Momenta"). Because they have no evidence, they seek to eliminate the settled "willfulness" requirement from monopolization claims. But this is not the law, and "willfulness" requires that, at the time of the Momenta acquisition, J&J had some knowledge that the manufacturing patents obtained in the acquisition (the "Momenta Manufacturing Patents") covered a substantial share of the market for Stelara and would afford it monopoly power. It did not. The uncontradicted record shows that, at the time of the Momenta acquisition, ███████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████

In the face of this undisputed evidence, Plaintiffs resort to distorting the record. Plaintiffs falsely accuse J&J of refusing to provide discovery that it expressly agreed to, and did, provide.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

## ARGUMENT

## I.     There Is No Evidence Supporting Plaintiffs' Claim of *Walker Process* Fraud

Plaintiffs do not dispute that summary judgment is warranted on their *Walker Process* fraud claims related to (1) J&J's postings to the CT.Gov website that provided updates on UNIFI as the

2

trial progressed (the "CT.Gov Postings"); (2) the alleged "prior art" references other than Dr. Ochsenkühn's abstracts[4]; and (3) Mr. Dichter's purported non-disclosure of *In re Montgomery*. *See* Br. 10 n.4, 22-26, 31-32; D.I. 557 at 23. Plaintiffs' *Walker Process* claim now rests entirely upon three items related to J&J's prosecution of the '307 Patent: (1) J&J's alleged non-disclosure of information from the FDA Submissions, including J&J's clinical protocol that outlined the UNIFI trial's design (the "UNIFI Protocol") and J&J's clinical study reports that discussed the UNIFI trial's results (the "Clinical Study Reports"); (2) J&J's alleged non-disclosure of Dr. Ochsenkühn's abstracts; and (3) J&J's alleged misrepresentations to the PTO.

As to the FDA Submissions and alleged misrepresentations based on them, the Court rejected Plaintiffs' untimely attempt to shoehorn allegations related to these documents into its proposed TAC. D.I. 592 at 18-19. J&J recognizes that the Court's decision does not preclude relying on these documents as evidence at this stage (*id.* at 19, n.13), but they do not save Plaintiffs' claims. Even considering these documents, Plaintiffs fail to point to *any* evidence of either specific intent to deceive or but-for materiality, essential elements of their *Walker Process* claim. Instead, they offer only mere speculation, but speculation is not enough to survive summary judgment. The Court should dismiss Plaintiffs' *Walker Process* claims in their entirety.

### A.     Plaintiffs Have Failed To Offer Evidence Of Specific Intent To Deceive

#### 1.     Plaintiffs Are Wrong On The Law

Plaintiffs' Opposition rests on two fundamental misstatements of the law. *First*, Plaintiffs argue that courts in the Fourth Circuit do not grant summary judgment in so-called "fraud cases." Opp. 22. This is wrong. Consistent with courts in other Circuits, Br. 18-19, courts in this Circuit—

---

[4]     The Court has now also denied Plaintiffs' Motion For Leave to Amend their Complaint to add six additional pieces of alleged prior art, including Jostins 2012, Granlund 2013, the 2017 NCT 236 Posting, Bradbury 2013, Downs 2010, and Nakajima 2015. D.I. 592 at 19-20.

including this District—do not hesitate to grant summary judgment on inequitable conduct claims where, like here, the non-movant "has no evidence [of] specific intent to deceive the PTO." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 2013 WL 265602, at *30 (E.D. Va. Jan. 22, 2013), *rev'd in part on other grounds*, 761 F.3d 1329 (Fed. Cir. 2014); *Crown Packaging Tech., Inc. v. Belvac Prod. Mach., Inc.*, 591 F. Supp. 3d 52, 66 (W.D. Va. 2022), *rev'd on other grounds*, 122 F.4th 919 (Fed. Cir. 2024); *Fuma Int'l LLC v. R.J. Reynolds Vapor Co.*, 2020 WL 3470458, at *4 (M.D.N.C. Mar. 6, 2020).[5]

*Second*, Plaintiffs argue that they need *not* show *now* that intent to deceive is "the single most reasonable inference to be drawn from the evidence" but rather that a jury could reasonably find that such intent is the most reasonable inference.  Opp. 22-23.  They are wrong again.  *Inline Packaging*, *LLC v. Graphic Packaging Int'l, LLC*, 962 F.3d, 1015, 1028 (8th Cir. 2020) (affirming summary judgment of no *Walker Process* fraud because "[t]he evidence here does not establish" that intent to deceive was "'single most reasonable inference' to be drawn'"); *Fuma*, 2020 WL 3470458 at *4 .  Moreover, Plaintiffs' purported distinction makes no difference because they have offered no evidence from which a jury *could* reasonably find that intent to deceive is the "single most reasonable inference."

### 2.    J&J Did Not Withhold Information With Specific Intent To Deceive

For the alleged omissions remaining in the case, Plaintiffs have failed to present evidence, as they must, that would allow a jury to find that a J&J employee with a duty of candor for the

---

[5]    These cases involved inequitable conduct allegations that were decided under the Federal Circuit's *Therasense* decision—the same standard that applies here.  Br. 18-19.

'307 Patent "[1] knew of the reference, [2] knew that it was material, *and* [3] made a deliberate decision to withhold it."[6]  *Therasense*, 649 F.3d at 1290 (emphasis added).

### (a)    J&J Did Not Conceal The FDA Submissions, They Were Before The Examiner, And They Were Not Known To Be Material

#### (1)    J&J Did Not Conceal The FDA Submissions, Which Were Before The Examiner

The undisputed record shows that J&J did not conceal the FDA submissions, but rather that they were before the Examiner.  Plaintiffs' argument that J&J withheld the FDA Submissions rests entirely on inferences that supposedly could be drawn from the alleged withholding of the UNIFI Protocol: (1) that Dr. Ralat "deleted" statements from the UNIFI Protocol (Opp. 24);[7] (2) that Mr. Dichter was aware of, or ordered, Dr. Ralat's supposed "deletions" and himself withheld the UNIFI Protocol (*id.* 25-26);[8] and (3) that unnamed inventors took no steps to ensure that the UNIFI Protocol was submitted to the PTO (*id.* 26-27).  These arguments all fail because J&J did not conceal the UNIFI Protocol and it *was before the Examiner*.  Plaintiffs do not dispute that J&J disclosed the UNIFI Protocol on CT.Gov, that the UNIFI Protocol was available to the Examiner when he accessed that website on July 13, 2020, or that Mr. Dichter disclosed the CT.Gov website to the Examiner in October 2020.  SUF ¶28; PCSF ¶85; PEX106A at 274; PEX106C at 109.  These

---

[6]    Plaintiffs cannot ignore *Therasense*'s controlling test for specific intent by citing *Unigene* (Opp. 21), which addressed a different issue: proving common-law fraud to pierce the attorney-client privilege.  *Unigene Lab'ys v. Apotex, Inc.*, 655 F. 3d 1352, 1358–59 (Fed. Cir. 2011).

[7]    Further, Mr. Ralat's conduct is irrelevant to Plaintiffs' *Walker Process* claims because the duty of candor applies "*at the time* an application is being examined," 37 C.F.R. § 1.56(a) (emphasis added), and "only [to] inventors and those *substantively involved* in patent prosecution," *Crown Packaging*, 591 F. Supp. 3d at 64 (emphasis added), but Dr. Ralat's undisputed testimony is that he was "completely disconnected" from and "had no role in" the prosecution of the non-provisional '509 Application that led to the '307 Patent.  Ex. 73 [Ralat] at 110:2-13; PEX105 at 236:23-37:1.  Plaintiffs argue that Dr. Ralat omitted material information in the *provisional* applications for the '307 Patent, but those are "not [] reviewed by the PTO" and "incapable of influencing a PTO decision."  *United States v. Camick*, 796 F.3d 1206, 1218-19 (10th Cir. 2015).

[8]    Plaintiffs cite no evidence for their speculation that Mr. Dichter "directed" Dr. Ralat to omit information about the FDA Submissions, Opp. 25, and none exists.

undisputed facts are fatal to their FDA Submissions theory.  If J&J posted the UNIFI Protocol publicly and told the Examiner where to find it—two facts which Plaintiffs cannot dispute—how can any reasonable inference be drawn that J&J intended to conceal that information?  Plaintiffs have no answer, and the inquiry should end there.[9]

Plaintiffs' Exhibit 177, which identifies what Plaintiffs consider the "material . . . yet deleted or omitted" information from the FDA Submissions (Opp. 11), underscores Plaintiffs' failure of proof.  Plaintiffs claim that three sentences and two citations were withheld, but this information was before the Examiner—either from the UNIFI Protocol or Mr. Dichter's submissions during patent prosecution:

| Allegedly Withheld Information | Before The Examiner |
|---|---|
| "However, based on the similarities in the genetics and biology of UC and Crohn's disease, it was reasonable to propose that ustekinumab may also be effective in the treatment of UC." PEX177 at 3. | • Appears almost verbatim in UNIFI Clinical Protocol before the PTO: "However, considering the similarities in the genetics and biology of UC and Crohn's disease, it is reasonable to assume that ustekinumab will also be effective in UC." Ex. 10 at 8529; SUF ¶28.<br>• The '509 Application and '307 Patent specification disclose (1) UC and CD's genetic relationship; (2) UC therapies "have also demonstrated efficacy in [CD]"; (3) Stelara was approved for CD. SUF ¶17, 21; Ex. 74 at 5-6, 8, 16-19. |
| "Th1- and Th17-related genes are upregulated considerably in the mucosa of both UC and Crohn's disease, suggesting that once established, the inflammatory mechanisms at the mucosal level between the two diseases are largely the same; similar conclusions were reached in a genome-wide association study of IBD patients conducted by Jostins and colleagues." PEX177 at 7. | • Appears in UNIFI Clinical Protocol before the PTO. SUF ¶28: Ex. 10 at 8513-14.<br>• The '509 Application and '307 Patent specification disclose UC and CD's genetic relationship, as do articles Mr. Dichter sent to the PTO (including one summarizing Jostins). SUF ¶¶17, 21; Ex. 74 at 5-6, 8-12, 14-19; Ex. 7 at ¶¶495-96. |

---

[9]    Plaintiffs' purported "fact" that "the record does not show the PTO having or considering [] the NCT 236 protocol" (PCSF ¶70) is beside the point because the question is whether Mr. Dichter deliberately withheld it, and he did not.

| | |
|---|---|
| "These data, along with the shared biology of, and similar response to current treatments between, Crohn's disease and UC provide a substantial clinical scientific and clinical rationale to justify a direct-to-Phase-3 approach to the study of ustekinumab in UC." PEX177 at 8. | • Appears in UNIFI Clinical Protocol before the PTO.  SUF ¶28: Ex. 10 at 8514.<br>• The '509 Application and '307 Patent specification disclose CD and UC's genetic relationship and that UC therapies are effective for CD. SUF ¶¶17, 21; Ex. 74 at 5-6, 8, 16-19. |
| Citations to Jostins and Granlund articles, which discuss CD and UC biological/genetic relationship. PEX177 at 9-10; PCSF ¶51. | • Appears in UNIFI Clinical Protocol before the PTO.  SUF ¶28: Ex. 10 at 8602.<br>• The '509 Application and '307 Patent specification and articles sent to PTO (including one summarizing Jostins) disclose CD and UC's genetic relationship. SUF ¶¶17, 21; Ex. 74 at 5-6, 8, 14-19; Ex. 7 at ¶¶495-96. |

Plaintiffs fault Dr. Ralat (and Mr. Dichter) for not using the FDA Submissions' *exact wording* in the '307 Patent's background section, but no such requirement exists.  *Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 823-24 (Fed. Cir. 1988) (no intent to withhold prior art information that was "disclosed generically in the patent application").  Putting aside that the FDA Submissions were before the PTO, *supra*, the court in *Chamberlain Grp. v. Techtronic Indus. Co. Ltd.*, 2017 WL 3493799 (N.D. Ill. Aug. 14, 2017) rejected Plaintiffs' very argument.  There, the patent at issue described prior art information generally but omitted its "richer and more extensive treatment of certain claimed limitations." *Chamberlain*, 2017 WL 3493799, at *6.  The court found no intent to deceive because the general language created "at least a colorable case for *inherent disclosure*" of the prior art information. *Id* (emphasis added).  Here, too, the specification in the '509 Application (and the '307 Patent) generally disclosed J&J's hypothesis that ustekinumab might be clinically effective for UC, and "nothing in the record [] elevate[s] the inference that [Dr. Ralat or Mr. Dichter] intentionally limited the background discussion at the expense of material information above any other inference of permissible conduct." *Id.*

7

Nor do Plaintiffs provide evidence (as they must) that Mr. Dichter or Dr. Ralat believed that the FDA Submissions were material to patentability.[10]  The best Plaintiffs can offer is that Mr. Dichter *should have known* that the FDA Submissions were material because the Examiner issued a non-final rejection of the '307 Patent over the CT.Gov Postings, Opp. 26, but "[p]roving that the applicant [] should have known of [a reference's] materiality [] does not prove specific intent to deceive."  *Therasense*, 649 F.3d at 1290-91.  And while Plaintiffs cite Dr. Ralat's testimony about the different "goals" of clinical submissions and patent applications, Opp. 24, that is irrelevant to whether he believed that the *specific* words allegedly withheld from the FDA Submissions were material to the patentability of the *'307 Patent claims*.  *Inline Packaging*, 962 F.3d at 1027.

### (2)    The Inventors Did Not Deliberately Withhold The FDA Submissions Or Believe That They Were Material

While Plaintiffs argue generally that "multiple inventors" intended to deceive the PTO regarding the FDA Submissions, they do not identify *which* inventors.  That alone is fatal to their claim.  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 (Fed. Cir. 2009).  Further, Plaintiffs offer no evidence that any inventor believed that the FDA Submissions were material to patentability.  Finally, Plaintiffs do not offer any evidence that a single inventor considered and deliberately withheld the FDA Submissions.  Instead, they argue that there is no evidence that the inventors "took steps" to disclose the FDA Submissions or the Jostins and Granlund articles, but that is backwards: *Plaintiffs* must show that the inventors *deliberately withheld* material information, and they have not done so.  *Therasense*, 649 F.3d at 1290.  Regardless, as noted above, Mr. Dichter disclosed the CT.Gov website that included the UNIFI Protocol (which cited

---

[10]    Plaintiffs cite *Reeves* to minimize Dr. Ralat's testimony that the '509 Application discloses the FDA Submissions' supposedly "material" information, Opp. 19, but his testimony was unrebutted and consistent with the '509 Application disclosures, which themselves independently evidence the same point.  *Supra* 6-7.

8

the Jostins and Granlund articles), and the inventors and Mr. Dichter disclosed what Plaintiffs say is the FDA Submissions' material information during the '307 Patent prosecution. *Supra* 5-7.

Plaintiffs effectively concede their failure of proof, but—shockingly—try to blame it on J&J, suggesting that J&J withheld discovery on this issue. Opp. 26-27. J&J did no such thing, as Plaintiffs know. Tellingly, Plaintiffs cite no instance in which an inventor was prevented from providing relevant testimony; nor can they, because Plaintiffs did not even ask the inventors questions on the purported materiality of the FDA Submissions.[11] Further, J&J searched and produced documents from each of the inventors' files related to the FDA Submissions using numerous search term strings *proposed or agreed to by Plaintiffs*, Ex. 75 at 6-11, but, unsurprisingly, there was nothing for Plaintiffs to find. Plaintiffs had ample opportunity to prove intent to deceive. They just failed to do so because there was no such intent. And while Plaintiffs resort to seeking an inference of intent from J&J's privilege instructions (revealing their lack of proof), it is well-settled that "no adverse inference shall arise from invocation of the attorney-client [] privilege." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004).

### (b) Dr. Ochsenkühn's Abstracts Were Not Known, Let Alone Deliberately Withheld

Plaintiffs have also failed to provide evidence that any duty-bound J&J employee deliberately withheld Dr. Ochsenkühn's abstracts with specific intent to deceive. The record shows only that (1) certain '307 Patent inventors had Dr. Ochsenkühn's abstracts in their files (as attachments to emails) and (2) Janssen Germany sponsored Dr. Ochsenkühn's attendance at a single conference. Opp. 27-28. But to prevail on their *Walker Process* claim based on the

---

[11]    Plaintiffs also cannot complain that they lack discovery from the inventors because they chose not to depose three inventors: Jewel Johanns, Hongyan Zhang, and Omoniyi Adedokun.

Ochsenkühn abstracts, Plaintiffs must adduce evidence that permits the inference that at least one duty-bound J&J employee satisfies all of the following criteria: (1) he or she knew about Dr. Ochsenkühn's abstracts, (2) he or she knew they were material to patentability, and (3) he or she made a deliberate decision to withhold them. *Therasense*, 649 F.3d at 1290. They cannot. Rather, they offer a "mishmash of facts without sorting them out in relation to particular acts of particular individuals." *GCP Applied Techs. Inc. v. AVM Indus., Inc.*, 2022 WL 17081176, at *16 (C.D. Cal. Aug. 5, 2022) (granting summary judgment of no inequitable conduct); *see* Opp. 27-28. That is insufficient. *Id.*; *Exergen*, 575 F.3d at 1329.

Importantly, Plaintiffs have failed to provide any evidence that a duty-bound J&J employee knew about Dr. Ochsenkühn's abstracts. Plaintiffs insist that that the presence of the abstracts in certain J&J inventor files shows "knowledge," but it does not. Plaintiffs must present evidence showing the inventors' "*actual* knowledge" of these abstracts. *See Nordberg, Inc. v. Telsmith, Inc.*, 82 F.3d 394, 396-97 (Fed. Cir. 1996).[12] Proving "actual knowledge" requires more than merely showing that "a copy of the [abstracts] w[ere] in [the inventors'] files." *Id.* Plaintiffs cannot rely on *Kove* or *Sysmex*, Opp. 28, because there was evidence in those cases beyond the mere presence of the references in the inventors' files which permitted an inference that the inventors had actually *read* the withheld references. *Kove IO, Inc. v. Amazon Web Servs., Inc.*, 2024 WL 450028, at *29 (N.D. Ill. Feb. 6, 2024) (inventor saved prior art to his computer and drafted letter that referenced prior art); *Sysmex Corp. v. Beckman Coulter, Inc.*, 2022 WL 1503987,

---

[12]    Plaintiffs argue that J&J cannot rely on *Nordberg* (or *Giuliano*) because J&J purportedly withheld "discovery into prior art searches," Opp. 29 n.10, but J&J agreed to and did produce non-privileged documents related to J&J's prior art searches; J&J's 30(b)(6) witness testified that Mr. Dichter did not ask her to perform any prior art searches; and, as Plaintiffs' own exhibit shows, Mr. Dichter testified that J&J patent agents did not perform Stelara-related prior art searches. Ex. 76 at 8-9; Ex. 77 at 12:3-13:6, 18:15-22:21; PEX100 at 36:6-11.

at *6 (D. Del. May 6, 2022) (inventor emailed prior art document to someone and suggested an edit to the document). Here, to the contrary, every inventor whom Plaintiffs deposed testified that they did not know about or read Dr. Ochsenkühn's abstracts, and no evidence suggests otherwise.

Dr. Ochsenkühn's DDW attendance does not change that conclusion, because it is undisputed that no duty-bound J&J employee met him there or attended his German-language "special session,"[13] and Dr. Ochsenkühn testified that he did not know the inventors or Mr. Dichter. Br. 25 n.12. Further, Plaintiffs' speculation that Mr. Dichter should have known about Dr. Ochsenkühn due to his experience with Stelara "does not prove specific intent to deceive," *Therasense*, 649 F.3d at 1290, and flies in the face of Mr. Dichter's uncontradicted testimony that he first learned about Dr. Ochsenkühn's abstracts *after* the '307 Patent prosecution. Ex. 24 at 166:17-22. Plaintiffs try to avoid the implications of this testimony by arguing that credibility determinations preclude summary judgment. They are wrong, because the evidence "must be sufficient to *require* a finding of deceitful intent," *Therasense*, 649 F.3d at 1290, and "the testimony and evidence adduced is basically in accord; it simply falls short of yielding a single, most reasonable inference of specific intent to deceive."[14] *Chamberlain*, 2017 WL 3493799, at *7; *Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*, 2018 WL 4697255, at *12-*14 (C.D. Cal. Aug. 3, 2018) (granting summary judgment of no *Walker Process* fraud because "[a] factfinder would not be *required* to find intent to deceive even if it disbelieved [the patent counsel] and [inventor]").

Rather than seriously defend their failure of proof, Plaintiffs again try to blame it on J&J, accusing J&J of withholding "all access to information" on knowledge of Dr. Ochsenkühn. Opp.

---

[13] That fact distinguishes this case from *TransWeb*, where the inventor's supervisor told him his company was gathering information about the prior art and asked if he wanted "samples". *TransWeb, LLC v. 3M Innovative Properties Co.*, 16 F. Supp. 3d 385, 398-99 (D.N.J. 2014).

[14] Plaintiffs thus cannot rely on *TransWeb, EIS, or Mitsubishi.* Opp. 28.

11

28.  Plaintiffs know that is not true.   J&J searched and produced documents from the files of Mr. Dichter, Dr. Ralat, and each of the inventors using search terms related to Dr. Ochsenkühn that *Plaintiffs proposed* (including "Ochsenkühn" and "Ochsenkuhn"), and Mr. Dichter and the inventors all testified regarding Dr. Ochsenkühn—namely, that they did not know him or his abstracts before the '307 Patent issued.  Ex. 75 at 8; SUF ¶26.  Further, Plaintiffs contacted Dr. Ochsenkühn, noticed his deposition, drafted a declaration for him, and paid him $1000 an hour, but they still could not obtain evidence that any duty-bound J&J employee knew him or his abstracts.  Ex. 78 at 1-42.  Plaintiffs cannot blame their lack of evidence on J&J.  Nor can they remedy their lack of proof by resorting to an adverse inference based on J&J's privilege instructions.[15]  *Knorr-Bremse*, 383 F.3d at 1345.

Finally, Plaintiffs do not even attempt to show that any duty-bound employee believed that Dr. Ochsenkühn's abstracts were material to patentability or made a deliberate decision to withhold them.  In fact, when Mr. Dichter learned about Dr. Ochsenkühn's abstracts after the '307 Patent prosecution, his "view" was that these abstracts were *not* material to patentability.  Ex. 24 at 199:3-200:8.  Plaintiffs thus have failed to prove intent to deceive.

### 3. The Alleged Misrepresentations Were Not False Or Made With Intent To Deceive

Similarly, Plaintiffs have failed to provide evidence (as they must) that any of the alleged affirmative misrepresentations were "false representations" or that J&J made them with "intent to deceive the patent examiner."  D.I. 119 at 13.  *First*, Plaintiffs argue that Mr. Dichter made a misrepresentation to the PTO when he presented an argument to the Examiner that J&J's CT.Gov Posting did not anticipate or render obvious the '307 Patent "due to the uncertainty of clinical

---

[15]    Plaintiffs also appear to accuse J&J of "willful ignorance or compartmentalization of knowledge," Opp. 29, but they cite no evidence to support this accusation, and none exists.

outcomes" and "given the nature of Phase 3 clinical trials."  Opp. 26 (citing PCSF ¶78); PEX 106A at 250.  But the Court already dismissed Plaintiffs' *Walker Process* claim regarding Mr. Dichter's "uncertainty of clinical outcomes" statement.  D.I. 119 at 21-23.  Further, the uncontradicted record shows that Mr. Dichter's statements were (1) attorney arguments, not representations of fact; (2) accurate (given undisputed Phase III trial failure rates); (3) consistent with the FDA Submissions (the information disclosed to the PTO that conveyed J&J's uncertainty about Stelara, and FDA's uncertainty in approving the UNIFI protocol); and (4) made in good faith by Mr. Dichter.  Br. 27-28.  These "arguments . . . as a matter of law, cannot form the basis of a *Walker Process* fraud claim," and the Court should dismiss Plaintiffs' *Walker Process* claim.  *Giuliano v. SanDisk LLC*, 224 F. Supp. 3d 851, 863 (N.D. Cal. 2016) (granting summary judgment when alleged "misrepresentation" was argument about POSA's understanding of claim element).

*Second*, Plaintiffs argue that J&J's statement in the specification that "prior to the present invention, no studies had been conducted with ustekinumab for UC" was a misrepresentation due to Dr. Ochsenkühn's abstracts.  Opp. 27.  But there is no genuine dispute that (1) a person of ordinary skill would understand that, when read in context, this statement referred to "clinical studies";[16] (2) UNIFI was the first clinical study testing ustekinumab in UC; (3) no evidence shows that any duty-bound J&J employee believed this statement was inaccurate; and (4) Mr. Dichter and Dr. Ralat believed this statement was accurate (because it was).  Br. 27-28.

### B.    Plaintiffs Have Failed To Offer Evidence Of But-For Materiality

Because Plaintiffs have provided no evidence of specific intent to deceive—which is a "separate requirement[]" for proving inequitable conduct—the Court must stop here and grant summary judgment.  *Therasense,* 649 F.3d at 1290; *Amdocs*, 2013 WL 265602, at *30; *Fuma*,

---

[16]    Mr. Bahr's opinions cannot create a factual dispute (PCSF ¶19) because he did not and cannot offer a POSA's perspective on the '307 Patent.  PEX4 at ¶¶111-112; D.I. 440 at 10-13.

2020 WL 3470458, at *3.  Regardless, Plaintiffs have also failed to provide evidence that the alleged omissions or misrepresentations were but-for material: that "the PTO would not have allowed the claim but for the nondisclosure or misrepresentation."  *Network Signatures, Inc. v. State Farm Mutual Auto. Ins. Co.*, 731 F.3d 1239, 1242 (Fed. Cir. 2013).

### 1.    The FDA Submissions Are Not But-For Material

Plaintiffs cannot show that the allegedly withheld information from the FDA Submissions was but-for material because this information was before the PTO and the PTO allowed the '307 Patent.  *Supra* 5-7.  Moreover, at most, the FDA Submissions reflect J&J's subjective thoughts and Plaintiffs correctly concede that "what J&J subjectively thought about the likelihood [UNIFI] would succeed is *not relevant to the question of obviousness under Patent law*," D.I. 552 at 16 (emphasis added).  Plaintiffs argue that "information is material if it tends to show that, by September 2018, there was a reasonable probability that [UNIFI] would achieve the study's endpoints", and that the '307 Patent inventors' expectations that UNIFI would succeed "show[s] that there was a reasonable probability that [UNIFI] would achieve the study's endpoints," Opp. 17-18.  But the relevant question is whether a *POSA with access only to the prior art* would have reasonably expected success, and the inventors' expectations are irrelevant.  *See Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1362 (Fed. Cir. 2009); *Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012) ("The inventor's own path itself never leads to a conclusion of obviousness; that is hindsight.").  Thus, even if the FDA Submissions are read to reflect J&J's expectations regarding the likelihood of UNIFI's success, they are irrelevant to the '307 Patent's obviousness and patentability.  *Therasense*, 649 F.3d at 1292-93.

### 2.    The Alleged Misrepresentations Are Not But-For Material

Plaintiffs ignore the Court's controlling decision that that Mr. Dichter's "uncertainty of clinical outcomes" statement could not be but-for material.  D.I. 119 at 21-23.  Instead, Plaintiffs

14

cite the Examiner's Notice of Allowability, PCSF ¶86, but that notice discussed only the '908 Publication and did not mention Mr. Dichter's statement. SUF ¶22; Br. 32. Further, Plaintiffs do not even argue that the specification's "no studies" statement was but for-material.

### 3. Dr. Ochsenkühn's Abstracts Are Not But-For Material

Dr. Ochsenkühn's abstracts are not but-for material because, as *Dr. Ochsenkühn himself admitted*, these abstracts do not disclose the claimed clinical endpoints of the '307 Patent. SUF ¶25; Br. 31. Plaintiffs ignore this point, which is fatal to their theory.

Plaintiffs experts' opinions do not save them because they are irrelevant and unreliable: Plaintiffs' experts did not compare Dr. Ochsenkühn's abstracts to the limitations of the claims, Dr. Warfield admitted that he did not perform a proper obviousness analysis, and Dr. Matovcik and Mr. Bahr are not POSAs. SUF ¶25; D.I. 434 at 14-18; Br. 29; D.I. 554 at 11 n.9. Further, while the Examiner has now issued a final rejection of U.S. Patent App. No. 18/383,310 (the "'310 Application") over the CT.Gov Postings (which the Examiner considered during the '307 Patent prosecution) combined with the Stelara label and Dr. Ochsenkühn's abstracts, Opp. 21, ███

███████████████████████████████████████

███████████ Because the PTO proceedings on the '310 Application are not yet final, the Examiner's rejection should neither be admissible at trial or considered at summary judgment. *CreAgri, Inc. v. Pinnaclife, Inc.*, 2013 WL 6673676, at *4–5 (N.D. Cal. Dec. 18, 2013), *aff'd,* 579 F. App'x 1003 (Fed. Cir. 2014) (ignoring PTO final office action at summary judgment because "[patentee] still may file a response to the examiner that may result in the PTO's withdrawal of its invalidity conclusion"); *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 2015 WL 10457176, at *1 (D. Del. Apr. 23, 2015) (excluding evidence of pending PTO proceedings that were "not final, as [the patentee] has appellate rights").

15

Finally, Plaintiffs point to the UC "toolkit's" description of Dr. Ochsenkühn's abstracts as "real-world evidence." But that description does not show materiality because (1) it does not show that Dr. Ochsenkühn's abstracts disclose the '307 Patent's *claimed endpoints* (they do not); and (2) the toolkit was created by Janssen's EMEA Medical Affairs team and a UK outside vendor, not a POSA or anyone involved with the '307 Patent prosecution. Ex. 79 at 1, 7-10. Further, no evidence shows that any duty-bound employee read the over 300-slide "toolkit," let alone its two slides describing Dr. Ochsenkühn's 2018 abstracts.

## II. The Undisputed Record Shows That J&J's Acquisition of Momenta Was Neither Willful Nor Anticompetitive

Plaintiffs' theory that J&J willfully acquired Momenta, including its patent portfolio, to monopolize the alleged market for ustekinumab also fails. ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████[17]

### A. The Undisputed Record Shows That J&J Did Not Act To Willfully Acquire Monopoly Power When It Purchased Momenta

As J&J explained in its opening brief, the undisputed factual record shows that J&J did not act with the requisite "monopolistic intent" when it acquired Momenta and its patent portfolio. Unable to create any factual disputes, Plaintiffs resort to distorting both the law and the facts.

---

[17]    Plaintiffs claim that "there is no evidence J&J was unaware of the biosimilar manufacturers' cell culture media." PCSF ¶ 38. But it is *Plaintiffs' burden* to show that J&J was aware of the biosimilar manufacturers' cell culture media. It is not J&J's burden to prove a negative and affirmatively demonstrate the absence of awareness.

16

### 1.    Plaintiffs Rely On An Incorrect Legal Standard

Plaintiffs argue that to succeed in their monopolization claim with respect to Momenta, they need only show that J&J "intended to do the act," i.e., the acquisition of Momenta (along with all its assets, including intellectual property). Br. 31-32. This amounts to a strict liability standard—and is not the law. As J&J explained in its Opposition to Plaintiffs' Motion for Partial Summary Judgment, D.I. 542 at 17, Plaintiffs must also show that, at the time of the acquisition, J&J knew or intended that, by acquiring Momenta, it would be maintaining or adding to its alleged monopoly power with respect to Stelara. They have not done so.

The Second Circuit's decision in *SCM Corp. v. Xerox Corp.* is instructive. There, the court acknowledged that patent acquisitions may constitute monopolization if "the dominant competitor in a market acquires a patent covering a substantial share of the same market that [it] know[s] when added to [its] existing share will afford [it] monopoly power." 645 F.2d 1195, 1205 (2d Cir. 1981). Applying that straightforward reasoning here: the "act" that J&J must have intended is the acquisition of the Momenta Manufacturing Patents *with knowledge* that those specific patents covered a substantial share of the alleged market for Stelara and would afford it monopoly power.

This is consistent with well-settled law that a monopolization claim requires "willful" acquisition or maintenance of monopoly power. *See* D.I. 328 at 7 (holding that "[a] failure of willfulness would defeat" Plaintiffs' monopolization claim); *see also Friedman v. Del. Cnty. Mem. Hosp.*, 672 F. Supp. 171, 195 (E.D. Pa. 1987) (granting summary judgment because "no evidence" showed that "defendants had any intent to monopolize"). The Fourth Circuit has held that establishing willfulness requires evidence showing "monopolistic intent"—*i.e.*, that a defendant acted for anticompetitive purposes and that "a jury could find no valid business reason or concern for efficiency" for the conduct. *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 710 (4th Cir. 1991)

17

(*quoting White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 105 (4th Cir. 1987)).[18]  Here, there is no evidence showing J&J had the required monopolistic intent when it acquired Momenta, and the undisputed record is to the contrary.  SUF ¶¶34-35, 38-39.

Plaintiffs argue that J&J is relying on a "specific intent" requirement for Sherman Act Section 2 claims.  Opp. 31.  Not so.  J&J is arguing that Plaintiffs must show that, at the time of the Momenta acquisition, J&J acted willfully, *i.e.*, with some knowledge that the Momenta Manufacturing Patents covered a substantial share of the alleged market for Stelara and would afford it monopoly power.  That is the law.  Br. 32-34; *Oksanen v. Page Mem'l Hosp.*, 945 F.2d at 710 (explaining that "willfulness" requires a showing of "monopolistic intent").  The undisputed record shows no such knowledge, so Plaintiffs' claims must fail.

Plaintiffs' cited cases do not change this conclusion.  Plaintiffs rely on the Fourth Circuit's decision in *United States v. Evans*—a criminal case—to argue that willfulness only requires "intent to do the act."  74 F.4th 597, 604 (4th Cir. 2023); Opp. 31.  But the Fourth Circuit also explained that "willfully" means "with a bad purpose or with knowledge that his conduct is unlawful," *Evans*, 74 F.4th 597 at 605 (internal quotations omitted), which confirms that Plaintiffs must show, at minimum, that J&J acted with knowledge that the Momenta Manufacturing Patents could be used to exclude with respect to Stelara.  Plaintiffs also rely on the Supreme Court's decision in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 603 (1985), but they omit the Supreme Court's explanation that intent is "relevant to the question whether the challenged conduct is fairly

---

[18]    Plaintiffs likewise told the Court that the relevant question was "whether J&J intentionally acquired the Momenta biosimilar manufacturing patents to unlawfully delay competition and to unlawfully maintain its monopoly over ustekinumab." D.I. 184 ¶¶286, 187-189.

characterized as 'exclusionary' or 'anticompetitive.'" *Id.* at 602.[19]

Plaintiffs also cannot rely on *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Takeda Pharm. Co. Ltd.* (*"ACTOS"*), 11 F.4th 118 (2d Cir. 2021). Br. 31-32. In *ACTOS*, the relevant improper "act" was the defendant's listing of its patents in the FDA's "Orange Book," which it of course knew it was doing.[20] 11 F.4th at 135. Here, in contrast, the undisputed record shows that when J&J acquired Momenta, it did so for reasons unrelated to Stelara and was unaware of the substance of the Momenta Manufacturing Patents. Br. 34-36. Moreover, the *ACTOS* court was addressing defendant's argument that improper patent listings could not be an antitrust violation if it reasonably believed that its conduct was lawful. *ACTOS*, 11 F.4th at 136-37. But J&J is making a different argument: that the undisputed record shows that, at the time of the acquisition, J&J was not aware of the substance of those patents. *ACTOS* thus is simply inapplicable. *Id*. at 125-27.

### 2. The Undisputed Record Shows That J&J Did Not Have the Required Willful Intent

██████████████████████████████████████████████

██████████████████████████████████████████████

---

[19] Plaintiffs also rely on *Aspen Skiing*'s language that "no monopolist monopolizes unconscious of what he is doing," Opp. 31-32, but that is precisely J&J's point. The undisputed record shows that, at the time of the acquisition, J&J was "unconscious" of the substance of the Momenta Manufacturing Patents and of the effect they could have with respect to Stelara. *See* Br. 32-37; *see also U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1359 (2d Cir. 1988). It cannot, therefore, be said to have willfully acquired monopoly power.

[20] The Orange Book identifies FDA-approved drug products and their related patents. When a brand company lists patents in the Orange Book, a prospective generic manufacturer relying on technology covered by those patents must certify to the FDA that the brand's patents are either invalid or not infringed. *Id.* at 125. This certification allows the brand company to sue the generic company, and the lawsuit triggers an automatic thirty-month stay, meaning that the FDA will not approve the generic until the earlier of (1) a court determination that the brand's patents are invalid, or (2) 30 months from the initiation of the lawsuit. *Id.* Put simply, a brand company knows that when it lists its patents, it can halt FDA approval of competing products.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████     In response, Plaintiffs rely on the following: J&J acquired Momenta in 2020, and with it the four Momenta Manufacturing Patents.  PCSF ¶¶90-91.  As part of its diligence, J&J received documents listing the Momenta Manufacturing Patents.  D.I. 443 ¶¶17-21.

███████████████████████████████████████████████████████████

████████████     In short, Plaintiffs are relying entirely on the fact that during transactional diligence, J&J had access to lists identifying the numbers and titles of more than 500 patents, patent applications, and patent publications that Momenta owned, including the number and title of the Momenta Manufacturing Patents.  *See id.* ¶¶17-19.  None of these facts suggest that J&J had any knowledge regarding the substantive claims of the Momenta Manufacturing Patents, let alone that they might be infringed by future applicants for biosimilar versions of Stelara.[21]

### 3.    Plaintiffs Resort to Misleading the Court About Key Facts

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[21]    Plaintiffs cite J&J's February 21, 2023 amended complaint against Amgen, PCSF ¶94, but what J&J said years later is irrelevant to J&J's knowledge at the time of the acquisition.

20



21



███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Plaintiffs also claim that J&J withheld discovery on J&J's knowledge of the Momenta Patents. PCSF ¶ 93. Plaintiffs know that this too is false. Plaintiffs point to J&J's initial objections to Plaintiffs' Request for Production No. 42, but hide that J&J ultimately agreed to search for and produce non-privileged documents related to this RFP and the scope of the Momenta Manufacturing Patents. Ex. 82, [HB 6/11] at 19. Finally, Plaintiffs again resort to relying on J&J's privilege objections to argue that J&J refused to produce documents or testify about the Momenta patents, but this attempt to obtain an adverse inference fails. *Knorr-Bremse*, 383 F.3d at 1345.[25]

### B.    The Momenta Acquisition Had No Effect On Competition At The Time Of The Acquisition

As J&J explained in its opening brief—and as this Court recognized—any potential anticompetitive effects of patent acquisitions must be evaluated at the time of the acquisition. Br. 36; D.I. 119 at 29 (citing *SCM Corp.*, 645 F.2d at 1207). Plaintiffs argue that J&J is advocating for a "safe harbor" period that allows a would-be monopolist to exclude competitors after a certain amount of time has passed. That is wrong. Rather, J&J simply relies on black-letter antitrust law: For antitrust liability to attach as the result of a patent acquisition, there must be anticompetitive effects at the time of the acquisition. *SCM Corp.*, 645 F.2d at 1207. That rule is consistent with the principle that the competitive effects of an allegedly anticompetitive agreement must be analyzed at the time of the agreement. *See, e.g.*, *Polk Bros., Inc. v. Forest City Enters., Inc.*, 776

---

[25] ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

F.2d 185, 189 (7th Cir. 1985); *Valley Drug Co. v. Geneva Pharm., Inc.*, 344 F.3d 1294, 1306 (11th Cir. 2003).  At the time J&J acquired the Momenta Manufacturing Patents, that transaction had no actual or foreseeable effect on competition.  SUF ¶¶34, 38.

### III.     Plaintiffs Fail to Establish Antitrust Injury

#### A.     The Entry Dates For Biosimilars Stem From Lawful Settlements, Not Anticompetitive Conduct

J&J is entitled to summary judgment for an additional, independent reason: Plaintiffs are unable to establish antitrust injury.  The biosimilar entry dates that Plaintiffs claim were "delayed" by J&J's conduct flow directly from the rational, independent business decisions of each biosimilar manufacturer to enter into settlement agreements.  Br. 37-38.  Plaintiffs agree that they are not challenging these settlements as unlawful.  Opp. 37.  Nor can they, because these settlements are precisely the type of "commonplace" early-entry licensing agreements that are not "subject to antitrust liability."  *FTC v. Actavis*, 570 U.S. 136, 151-52, 158 (2013).

#### B.     Plaintiffs Offer No Evidence That The '307 Patent Delayed Biosimilar Entry

As J&J explained in its opening brief, Plaintiffs cannot show antitrust injury for their *Walker Process* claim because there is no evidence that the '307 Patent delayed biosimilar entry.

24

Br. 39.  Plaintiffs concede that the '307 Patent, standing alone, would not have delayed biosimilar entry.  Opp. 38.  This is important.  In the event the Court grants summary judgment for J&J on Plaintiffs' Momenta claims but finds that there are disputes of fact with respect to Plaintiffs' *Walker-Process* fraud claim related to the '307 Patent, Plaintiffs are unable to show causation, and their claims fail.  Separately, even if Plaintiffs' Momenta claims survive, the Court should grant partial summary judgment on Plaintiffs' *Walker Process* claim.  Because it is undisputed that the '307 Patent would not have prevented biosimilar entry, Plaintiffs cannot pursue damages based on conduct that did not cause injury.

## IV.    Plaintiffs' State Law Claims Fail

Plaintiffs agree that the substantive requirements of their state law claims are to be interpreted consistently with federal antitrust law.  Opp. 40.  As a result, Plaintiffs' state law claims fail for the same reasons as the federal antitrust claims.  *See* Br. 39-40.  Plaintiffs' assertion that, for the state law claims, "procedural standing rules are markedly different" than federal law does not change this result.  Nor does the fact that J&J chose not to move to dismiss the operative Second Amended Complaint for lack of state law standing save the state law claims on the merits if the federal law claims fail.  Br. 40.  If Plaintiffs are suggesting that if the Court grants summary judgment for J&J on the merits of Plaintiffs' federal antitrust claims, the state law claims survive because state-law standing was not challenged at the motion to dismiss stage, they cite no authority for this perplexing assertion, and as a result, it should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should grant J&J's Motion and enter summary judgment in favor of J&J.

Dated: October 13, 2025

Respectfully submitted,

*/s/ Christina Guerola Sarchio*
George G. Gordon *(pro hac vice)*
Julia E. Chapman *(pro hac vice)*
Katherine Unger Davis *(pro hac vice)*
Forrest E. Lovett (*pro hac vice*)
Judah Bellin (*pro hac vice*)
David M. Costigan (*pro hac vice*)
**DECHERT LLP**
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994 4000
Fax: (215) 994-2222
george.gordon@dechert.com
julia.chapman@dechert.com
katherine.ungerdavis@dechert.com
forrest.lovett@dechert.com
judah.bellin@dechert.com
david.costigan@dechert.com

Christina Guerola Sarchio VSB No. 87166
**DECHERT LLP**
1900 K Street, NW
Washington, DC 20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
christina.sarchio@dechert.com

Katherine A. Helm *(pro hac vice)*
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel.: (212) 698-3500
Fax: (212) 698-3599
khelm@dechert.com

Amanda K. Antons (*pro hac vice*)
**DECHERT LLP**
230 Northgate Street #209
Lake Forest, IL 60045
Tel.: (312) 646-5800
Fax: (312) 646-5858
amanda.antons@dechert.com

1

*Counsel for Defendants Johnson &
Johnson and Janssen Biotech, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2025, I caused to be served a copy of the foregoing document on all counsel of record via the Court's CM/ECF system.


Dated: October 13, 2025

*/s/ Christina Guerola Sarchio*
Christina Guerola Sarchio, Esq.
VSB No. 87166
**DECHERT LLP**
1900 K Street, NW
Washington, DC 20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
christina.sarchio@dechert.com

*Counsel for Defendants Johnson & Johnson and Janssen Biotech, Inc.*