**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| CAREFIRST OF MARYLAND, INC., GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., and CAREFIRST BLUECHOICE, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON and JANSSEN BIOTECH, INC.,<br><br>Defendants. | Case No. 2:23-cv-00629-JKW-LRL<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS JOHNSON & JOHNSON AND JANSSEN BIOTECH, INC.'S MOTION IN LIMINE NO. 1 (AND MEMORANDUM IN SUPPORT) TO PRECLUDE REFERENCES TO THE '310 APPLICATION PROSECUTION**

Defendants Johnson & Johnson and Janssen Biotech Inc. (collectively, "J&J") respectfully move to preclude Plaintiffs CareFirst of Maryland, Inc., Group Hospitalization and Medical Services, Inc., and CareFirst BlueChoice, Inc. ("Plaintiffs") from offering any testimony, evidence, or argument related to the prosecution of U.S. Patent Application No. 18/383,310 (the "'310 Application"), which remains pending before the United States Patent & Trademark Office ("PTO") and subject to additional review, including via administrative appeal as well as review by federal courts. Allowing Plaintiffs to introduce evidence regarding this pending patent application and would unduly prejudice J&J, open the door to a mini-trial on a patent application with at best attenuated relevance to this case, and create a substantial risk of jury confusion. Federal Rules of Evidence 402 and 403 preclude the introduction of such evidence.

## INTRODUCTION

Plaintiffs claim that J&J fraudulently obtained the U.S. Patent No. 10,961,307 (the "'307 Patent") by withholding Dr. Thomas Ochsenkühn's abstracts that described his retrospective, non-placebo controlled use of Stelara on 17 ulcerative colitis patients (the "Ochsenkühn abstracts") from the PTO. To prevail on that claim, Plaintiffs must show that, during prosecution of the '307 Patent, a J&J employee with the duty of candor "knew of the [Ochsenkühn abstracts]"; "knew that [they were] material" to patentability; and "made a deliberate decision to withhold [them]." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290-91 (Fed. Cir. 2011) (en banc). They must also show that the abstracts were "but-for" material, *i.e.*, that the PTO would not have allowed the '307 Patent but for the omission. *Id.* This requires a showing that the Ochsenkühn abstracts would have rendered the claims of the '307 Patent obvious under 35 U.S.C. § 103.

Plaintiffs are trying to prove their claim with evidence related to the '310 Application, a later-filed application that, although it belongs to the same patent "family" as the '307 Patent and

shares the same patent specification, includes pending claims that are distinct from those in the ’307 Patent.[1] Specifically, although the ’310 Application, like the ’307 Patent, seeks claims covering a “method of treating moderately to severely active ulcerative colitis (UC) in a subject in need thereof,” the pending claims of the ’310 Application also recite additional dosing and administration limitations. Ex. 1 at ¶ 148. For example, while certain claims of the ’307 Patent recites administering “a clinically proven safe or clinically proven effective” (claim 1) or more specifically, a dosage of about “6.0 mg/kg body weight of the subject or 130 mg per administration” (claim 17) at week 0 of the treatment, the ’310 Application recites administering a dosage of “(1) 260 mg if the subject weighs ≤55 kg, (2) 390 mg if the subject weighs >55 kg and ≤85 kg, or (3) 520 mg if the subject weighs >85 kg” at week 0. Ex. 2 at cl. 1 and 17; Ex. 3 at cl. 1. In addition, unlike the ’307 Patent, the ’310 Application claims a clinical response in a subject who “prior to week 0 of the treatment, had a duration of disease of at least 6 years.” Ex. 8 at cl. 1.

Like the ’307 Patent, the ’310 Application is being prosecuted by J&J patent prosecutor Eric Dichter and examined by PTO Examiner Robert Landsman. Ex. 1 at ¶¶ 22, 147; Ex. 2 at p. 1, Item 74; Ex. 5 at 1. Mr. Dichter was unaware of the Ochsenkühn abstracts until after the ’307 Patent issued; as a result, he did not disclose them during prosecution of the ’307 Patent, but he did disclose them to the PTO while prosecuting the ’310 Application because his practice was to be “overinclusive,” not because he believed they were material to patentability.[2] Ex. 4 at 166:17-

---

[1] During the pendency of a patent application (*i.e.*, before the claims grant as an issued patent), patentees can file continuing applications (continuation or divisional applications) during that pendency. Ex. 1 at ¶¶ 31-33. A month before the ’307 Patent issued, J&J filed U.S. Patent Application No. 17/174,201 (the “’201 Application”) as a divisional application to the ’509 Application. Ex. 1 at ¶¶ 140-46. J&J later filed the ’310 Application as a continuation application to the ’201 Application. Ex. 1 at ¶ 147.

[2] Mr. Dichter testified that he did not and still does not consider the Ochsenkühn abstracts to be material to the patentability of the ’307 Patent. Ex. 4 at 199:7-200:8.

22, 176:7-12. On January 16, 2025, the Examiner issued a "non-final rejection" of the '310 Application—an initial determination that the application did not meet the requirements for patentability—citing J&J's postings to the CT.Gov website that provided updates on J&J's UNIFI clinical trial for Stelara (the "CT.Gov Postings")[3], along with the Stelara label and the Ochsenkühn abstracts. Ex. 5 at 5-7. Following the applicant's submission of claim amendments and argument, the Examiner issued a second and "final" rejection of the '310 Application claims over the same combination of references. Ex. 6 at 2-4. *See* 37 C.F.R. § 1.113 ("On the second or any subsequent examination or consideration by the examiner the rejection or other action may be made final, whereupon applicant's . . . reply is limited to appeal in the case of rejection of any claim (§ 41.31 of this title), or to amendment as specified in § 1.114 or § 1.116.").

As the PTO's rules make clear, a "final rejection" remains open to further review, either by further amendment or appeal. *See id.* Regardless, Plaintiffs treat the '310 Application as if it were conclusive proof of but-for materiality of the Ochsenkühn abstracts to the '307 Patent claims, simply because the same Examiner who examined the '307 Patent rejected the '310 Application over a combination of references that included the Ochsenkühn abstracts. D.I. 549 at 16, 21.

## ARGUMENT

The Court should exclude evidence related to '310 Application prosecution under Federal Rules of Evidence 402 and 403 because it lacks probative value, would be unduly prejudicial, and will confuse the jury.

The Examiner's rejections of the '310 Application, which relates to an application not at issue in this case, are not relevant to patentability because they remain subject to further review.

---

3 The Examiner considered the CT.Gov Postings during prosecution of the '307 Patent. *See* D.I. 444 at 9, 12, 22-23.

Patent applicants like J&J can challenge final rejections in numerous ways, including by filing (1) "after final proposed amendment[s]," (2) notices of appeal to the Patent Trademark and Appeals Board ("PTAB"), or (3) requests for continued examination ("RCE"). Ex. 1 at ¶ 50. J&J disagrees with the final rejection and intends to continue prosecuting the '310 Application. Moreover, nearly half of all patent applications that receive final rejections eventually issue as patents or receive notice of allowances, which means that they will issue as patents at a later date. Ex. 7.

As a result, Courts routinely exclude evidence of PTO rejections offered to show unpatentability where, like here, the applicant can still challenge the rejection and may ultimately persuade the PTO to allow the patents. *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 2015 WL 10457176, at *1 (D. Del. Apr. 23, 2015) (excluding evidence of pending PTO proceedings that were "not final, as [the patentee] has appellate rights"); *Silver State Intell. Techs., Inc. v. Garmin Int'l, Inc.*, No. 2:11-CV-01578-GMN, 2015 WL 2152658, at *7–8 (D. Nev. May 7, 2015) (excluding evidence of "final rejection" where deadline to appeal "has not yet expired"); *see also CreAgri, Inc. v. Pinnaclife, Inc.*, 2013 WL 6673676, at *4–5 (N.D. Cal. Dec. 18, 2013), *aff'd*, 579 F. App'x 1003 (Fed. Cir. 2014) (ignoring PTO final office action because "[patentee] still may file a response to the examiner that may result in the PTO's withdrawal of its invalidity conclusion"). Because the '310 Application prosecution is ongoing—and may well result with the PTO allowing the claims—evidence related to the rejections in the '310 Application is irrelevant and will confuse the jury and prejudice J&J.

Further, evidence of the '310 Application would be unhelpful, confusing, and prejudicial due to the differences between the claims of the '310 Application and '307 Patent. Permitting this evidence will create a virtual mini-trial regarding the technical differences between these claims, the various types of patent applications, the relationship between the '307 Patent and '310

Application, adding unnecessary complexity to what is already a complex pharmaceutical antitrust case involving numerous scientific, medical, and patent issues. *Interdigital Commc'ns Inc. v. Nokia Corp.*, No. CV 13-10-RGA, 2014 WL 8104167, at *1 (D. Del. Sept. 19, 2014) (rejecting evidence of PTAB "final decision" because "the probative value is greatly outweighed by the expenditure of time that would be required to give the jury the full context necessary to fairly evaluate the evidence").

## **CONCLUSION**

For the foregoing reasons, the Court should exclude Plaintiffs from offering any testimony, evidence, or argument related to the '310 Application prosecution.

Dated: November 4, 2025

Respectfully submitted,

*/s/ Christina Guerola Sarchio*
George G. Gordon *(pro hac vice)*
Julia E. Chapman *(pro hac vice)*
Katherine Unger Davis *(pro hac vice)*
Forrest E. Lovett (*pro hac vice)*
Judah Bellin (*pro hac vice*)
David M. Costigan (*pro hac vice*)
**DECHERT LLP**
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994 4000
Fax: (215) 994-2222
george.gordon@dechert.com
julia.chapman@dechert.com
katherine.ungerdavis@dechert.com
forrest.lovett@dechert.com
judah.bellin@dechert.com
david.costigan@dechert.com

Christina Guerola Sarchio VSB No. 87166
**DECHERT LLP**
1900 K Street, NW
Washington, DC 20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
christina.sarchio@dechert.com

Katherine A. Helm *(pro hac vice)*
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel.: (212) 698-3500
Fax: (212) 698-3599
khelm@dechert.com

Amanda K. Antons (*pro hac vice)*
**DECHERT LLP**
230 Northgate Street #209
Lake Forest, IL 60045
Tel.: (312) 646-5800
Fax: (312) 646-5858
amanda.antons@dechert.com

*Counsel for Defendants Johnson & Johnson and Janssen Biotech, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2025, I caused to be served a copy of the foregoing document on all counsel of record via the Court's CM/ECF system.

Dated: November 4, 2025

*/s/ Christina Guerola Sarchio*
Christina Guerola Sarchio, Esq.
VSB No. 87166
**DECHERT LLP**
1900 K Street, NW
Washington, DC 20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
christina.sarchio@dechert.com

*Counsel for Defendants Johnson & Johnson and Janssen Biotech, Inc.*