# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| CAREFIRST OF MARYLAND, INC., GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., and CAREFIRST BLUECHOICE, INC., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON & JOHNSON and JANSSEN BIOTECH, INC., <br><br> Defendants. | Civil Action No. 2:23-cv-00629-JKW-LRL |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS JOHNSON & JOHNSON AND JANSSEN BIOTECH, INC.'S MOTION *IN LIMINE* NO. 7 TO PRECLUDE EVIDENCE RELATING TO THE INVENTORS' PATH TO THE INVENTION AND J&J'S AND THE INVENTORS' SUBJECTIVE EXPECTATIONS**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARD............................................................................................ 1

III.  BACKGROUND ................................................................................................... 2

IV.  ARGUMENT......................................................................................................... 4

      A.     J&J's FDA submissions and its inventors' subjective beliefs regarding the novelty of the '307 patent are relevant to the plaintiffs' *Walker Process* fraud claim. ......................................................... 4

      B.     The plaintiffs need not prove the '307 patent is invalid for obviousness; they only need to prove *Walker Process* fraud. ............................. 10

      C.     Patent applicants are required to submit *any* and *all* documents that are material to patentability, irrespective of their status as prior art..................... 13

      D.    Mr. Dichter's knowledge of the FDA submissions is relevant to the plaintiffs' *Walker Process* fraud claims............................................................ 15

V.    CONCLUSION.................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aventis Pharma S.A. v. Hospira, Inc.*,
   675 F.3d 1324 (Fed. Cir. 2012).................................................................................................7

*Belcher Pharms. LLC v. Hospira, Inc.*,
   11 F.4th 1345 (Fed. Cir. 2021) ........................................................................................5, 6, 7

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
   326 F.3d 1226 (Fed. Cir. 2003)..............................................................................................13

*In re DDAVP Direct Purchaser Antitrust Litigation*,
   585 F.3d 677 (2d Cir. 2009)....................................................................................................12

*Ferring B.V. v. Barr Lab'ys, Inc.*,
   437 F.3d 1181 (Fed. Cir. 2006)...............................................................................................12

*King Drug Co. of Florence v. Cephalon, Inc.*,
   No. 2:06-CV-1797, 2014 WL 982848 (E.D. Pa. Mar. 13, 2014) .....................................12, 13

*Life Techs., Inc. v. Clontech Lab'ys, Inc.*,
   224 F.3d 1320 (Fed. Cir. 2000)..........................................................................................9, 10

*Ritz Camera & Image, LLC v. Sandisk Corp.*,
   700 F.3d 503 (Fed. Cir. 2012).................................................................................................11

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011)...............................................................................................11

*United States v. Chaudhri*,
   134 F.4th 166 (4th Cir. 2025), *cert. denied*, No. 25-146, 2025 WL 2824227
   (Oct. 6, 2025) ...........................................................................................................................2

*United States v. Ferguson*,
   140 F.4th 538 (4th Cir. 2025) ...................................................................................................1

*United States v. Kiza*,
   855 F.3d 596 (4th Cir. 2017) .....................................................................................................1

*Xitronix Corp. v. KLA-Tencor Corp.*,
   882 F.3d 1075 (Fed. Cir. 2018)...............................................................................................11

*In re Zetia (Ezetimibe) Antitrust Litigation*,
   No. 2:18-MD-2836, 2023 WL 2898421 (E.D. Va. Apr. 11, 2023) .............................1, 2, 3, 11

**Rules**

37 C.F.R. § 1.56 ................................................................................................................13, 14

MPEP § 2001 ........................................................................................................ *passim*

**Other Authorities**

*Duties of Disclosure and Reasonable Inquiry During Examination,*
    *Reexamination, and Reissue, and for Proceedings Before the Patent Trial and*
    *Appeal Board*, 87 Fed. Reg. 45764 (July 29, 2022) ................................................................8

## I.     INTRODUCTION

The plaintiffs submit this response in opposition to Defendants Johnson & Johnson and Janssen Biotech, Inc.'s (J&J) Motion *in Limine* No. 7. There, J&J moves to preclude evidence or argument on (1) the path the inventors took to develop the "invention" described and claimed in the '307 patent and (2) J&J's and the inventors' expectations concerning whether that "invention" would succeed, including their expectations concerning the outcome of the NCT 236 clinical trial. *See* ECF No. 671 (J&J MIL No. 7) at 1.

The motion lacks merit. Incorrectly treating this *antitrust* case as an *infringement* action that raises only a standalone issue of patent validity, J&J argues that the inventors' path to invention and subjective expectations regarding the NCT 236 phase 3 trial are irrelevant to whether a person of ordinary skill in the art (POSA) would view the invention as novel. But this is an antitrust case. The plaintiffs allege that J&J and the inventors *knowingly misrepresented* facts about NCT 236 and its likely success. Their actions, subjective expectations, and statements concerning the NCT 236 are directly relevant to the plaintiffs' fraud claim. The motion must be denied; all it does is invite reversible error.

## II.     LEGAL STANDARD

Under Federal Rule of Evidence 401, evidence is relevant if: "(a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). "Relevance is an exceptionally low bar[.]" *United States v. Ferguson*, 140 F.4th 538, 544 (4th Cir. 2025); *see also United States v. Kiza*, 855 F.3d 596, 604 (4th Cir. 2017) (the "threshold for determining whether evidence is relevant is comparatively low").

Rule 403 allows the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . : unfair prejudice, confusing the issues, misleading

the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. But, fundamentally, "Rule 403 is a rule of inclusion." *United States v. Chaudhri*, 134 F.4th 166, 183 (4th Cir. 2025), *cert. denied*, No. 25-146, 2025 WL 2824227 (Oct. 6, 2025). "'[A]ll evidence suggesting guilt is prejudicial to a defendant,' and '[t]hat kind of general prejudice [] is not enough to warrant exclusion of otherwise relevant, admissible evidence.'" *Id.* at 183-84 (quoting *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008)). "Rather, to warrant exclusion, the prejudice must be *unfair*, and 'even then the unfair prejudice must *substantially* outweigh the probative value of the evidence.'" *Id.* (emphasis in original) (quoting *Siegel*, 536 F.3d at 319) (cleaned up). "'Evidence is unfairly prejudicial and thus should be excluded under Rule 403 when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence.'" *Id.* at 184 (quoting *United Stated v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006)).

"At bottom, admissibility is within the trial court's discretion." *In re Zetia (Ezetimibe) Antitrust Litig*., No. 2:18-MD-2836, 2023 WL 2898421, at *3 (E.D. Va. Apr. 11, 2023) (citing *United States v. Melton*, 970 F.2d 1328, 1336 (4th Cir. 1992)). And "a motion *in limine* to exclude evidence 'should be granted only when the evidence is clearly inadmissible on all potential grounds.'" *Id.* at *2 (E.D. Va. Apr. 11, 2023) (quoting *United States v. Verges*, No. 1:13-cv-222, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014)).

## III.    BACKGROUND

The plaintiffs allege that J&J engaged in an anticompetitive scheme to keep more affordable versions of ustekinumab off the U.S. market. A key component of this anticompetitive scheme was J&J's fraudulent procurement of a patent claiming the use of ustekinumab to treat ulcerative colitis (the '307 patent) from the U.S. Patent and Trademark Office (PTO).

To prove that J&J committed fraud on the PTO, "[the] plaintiff must show: (1) a false representation or deliberate omission of a fact material to patentability, (2) made with the intent to deceive the patent examiner, (3) on which the patent examiner justifiably relied in granting the patent, and (4) but for which misrepresentation or deliberate omission the patent would not have been granted." Order, ECF No. 119 (MTD) at 13 (citing *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070–71 (Fed. Cir. 1998)). "Because it is rare to have direct evidence of deceptive intent, especially at the pleading stage, 'a district court may infer intent from indirect and circumstantial evidence.'" *Id.* at 24 (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011)).

Among other things, the plaintiffs allege that J&J misrepresented to the PTO examiner that the results of the NCT 236 clinical trial were uncertain, and, thus, the claims of the '307 patent were not obvious. Substantial evidence shows both that this was objectively untrue, and that inventors of the '307 patent and other J&J employees had taken the exact opposite position, including in their submissions to a different federal agency (the FDA). The inventors' repeated statements to the FDA (years before J&J applied for the '307 patent) laid out—*based on public research*—the substantial scientific and clinical basis to expect that ustekinumab would successfully treat ulcerative colitis. *See* ECF No. 549 (Pls.' Opp. to J&J's Mot. for Summ. J.) ¶¶ 50-69. These FDA submissions, as well as other internal J&J documents memorializing the inventors' strong expectations that ustekinumab would effectively treat ulcerative colitis, serve as circumstantial and direct evidence of the inventors' and prosecutors' deceptive intent and false representations to the PTO.

## IV.    ARGUMENT

**A.    J&J's FDA submissions and its inventors' subjective beliefs regarding the novelty of the '307 patent are relevant to the plaintiffs' *Walker Process* fraud claim.**

The plaintiffs seek to prove that J&J committed fraud on the PTO when its employees owing a duty of candor to that agency represented that—as of September 2018—it was "uncertain" that ustekinumab would work to treat ulcerative colitis. The plaintiffs intend to prove the falsity of this representation by showing that, years earlier, many of the same J&J employees told the FDA that public scientific research created a "substantial scientific and clinical rationale" to expect that ustekinumab would effectively treat ulcerative colitis. *See* ECF No. 549 (Pls.' Opp. to J&J's Mot. for Summ. J.) ¶¶ 63, 68; *id.* at 18. Likewise, the plaintiffs will seek to prove that J&J employees with a duty of candor were required to submit the statements they made to the FDA concerning the use of ustekinumab to treat ulcerative colitis to the PTO and failed to do so. *See* MPEP 2001.06(e). The plaintiffs intend to prove J&J's fraudulent intent in withholding the FDA submissions and making contradictory statements to the two agencies by showing that the '307 patent's inventors and prosecutors were aware of—and, indeed, actually *drafted*—the relevant statements to the FDA. Nonetheless, they withheld the statements that admitted it was obvious ustekinumab would work to treat ulcerative colitis, instead telling the PTO the exact opposite. ECF No. 549 (Pls.' Opp. to J&J's Mot. for Summ. J.) at 23-27.

The evidence J&J seeks to exclude—*e.g.*, its FDA submissions and internal inventor communications regarding their ███████████████████████████ ████████████████—serves as direct and circumstantial evidence of that fraud. *See* ECF No. 671 (J&J MIL No. 7) at 3-4 (describing the type of documents J&J seeks to exclude).

The Federal Circuit routinely affirms trial court decisions finding fraud *based on the exact type of documents J&J seeks to exclude.* Take *Belcher Pharms. LLC v. Hospira, Inc.*, 11 F.4th 1345, 1352–54 (Fed. Cir. 2021), for example—a case J&J's own expert raises as an example of impermissible patent applicant conduct. *See* Ex. 49[1] (Hirschfeld Rpt.) ¶ 107. There, the Federal Circuit affirmed a district court's finding (in a bench trial) that the patent holder had engaged in inequitable conduct in its prosecution of a drug formulation patent. "[A]lthough there was no direct evidence of deceptive intent, the evidence of record persuaded [the district court] 'clearly and convincingly[ ] that this is the only reasonable inference that can be drawn.'" *Belcher*, 11 F.4th at 1353 (quoting the district court decision). That evidence? The fact that one of the patent's drafters, Mr. Rubin, actively participated in the FDA approval process for the drug and understood that the pharmaceutical company told the FDA—in confidential submissions—"that the [claimed formulation range] was an 'old' range." *Id.* "When later drafting the patent application and through his communications with the PTO during prosecution, however, Mr. Rubin performed an about-face and advanced the position that the [claimed formulation] was a 'critical' innovation contrary to the knowledge of a person of ordinary skill in the art that yielded 'unexpected results' . . . ." *Id.* at 1353-54. Based on this evidence, "the district court found that this argument was 'false' and a 'fiction' . . . ." *Id.* at 1354. At trial, Mr. Rubin also claimed he withheld certain material prior art references "because he believed that they were irrelevant . . . ." *Id.* "According to [the defendant], the record provides

---

[1] Exhibit Nos. 1–43 are to the Declaration of Hannah W. Brennan in Support of Plaintiffs' Affirmative Motions *in limine* (ECF No. 687). Exhibit No. 44 onward are to the Declaration of Abbye R. K. Ognibene in Support of Plaintiffs' Opposition to Defendants' Motions *in limine* (Ognibene Decl.) filed contemporaneously with this opposition. Appendix A to this brief provides a chart of all Exhibit Nos. and the corresponding docket number (ECF No.).

corroboration that his mental state was a genuine belief about the irrelevance of the references, rather than a desire to deceive the PTO." *Id.* J&J makes the same argument here. Nonetheless, the *Belcher* district court found this testimony to be uncredible, and the appeals court affirmed. *Id.* Put simply, the district court, acting as the factfinder, found that the pharmaceutical company's confidential communications with the FDA, as well as its employee's testimony regarding his impressions of relevant prior art, were not only relevant and admissible but determinative of the fraud inquiry.

Under the position J&J advances here, none of this key evidence is relevant. J&J seeks to exclude the very mental impressions, beliefs, and contradictory FDA submissions that were dispositive on the fraud question in *Belcher.* It is true that evidence of the '307 patents inventors' and prosecutors' views on the materiality of prior art references and submissions to the FDA would not be relevant to a patent infringement action where the only question at issue was: is the '307 patent objectively invalid? But this is not a patent infringement case. This is a fraud case. And, as explained above, courts have routinely found that such evidence is highly relevant to the question of whether individuals committed fraud.

An example helps further illustrate this concept. The '307 patent inventors cited public research by Jostins[2] and Granlund[3] to persuade the FDA that "it is reasonable to assume that ustekinumab will also be effective in UC." *See* ECF No. 549 (Pls.' Opp. to J&J's Mot. for Summ. J.) ¶ 63 (quoting ECF No. 534-1 (Ex. 139) at 41); ECF No. 534-1 (Ex. 139) at 114 (citing

---

[2] Luke Jostins, *et al.*, *Host-Microbe Interactions Have Shaped the Genetic Architecture of Inflammatory Bowel Disease*, 491 Nature 7422 (2012), *available at* https://pmc.ncbi.nlm.nih.gov /articles/PMC3491803/.

[3] Atle van Beelen Granlund, *et al.*, *Whole Genome Gene Expression Meta-Analysis of Inflammatory Bowel Disease Colon Mucosa Demonstrates Lack of Major Differences between Crohn's Disease and Ulcerative Colitis*, 8 PloS One 2 (2013), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC3572080/.

the Jostins and Granlund studies as references). While, in a case alleging patent invalidity, the factfinder would look to whether the Jostin and Granlund references objectively render the patent invalid,[4] the factfinder's inquiry in an equitable conduct or *Walker Process* fraud case is broader, rendering the inventors' and patent prosecutors' knowledge of the prior art, beliefs regarding the novelty of the invention, and "mental state" relevant. *Belcher*, 11 F. 4th at 1354.

And lest J&J argue on reply that *Belcher* post-dates its prosecution of the '307 patent (and is, therefore, somehow less relevant), *Belcher* echoes the analysis and holding of similar Federal Circuit precedent pre-dating J&J's conduct at issue here. In *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324 (Fed. Cir. 2012), the district court focused on the internal experiments an inventor ran, his internal (non-public) notes about the outcome of those experiments, and his testimony regarding his "path to invention" to determine whether his representations to the PTO were fraudulent. *Id.* at 1335-36. The Federal Circuit affirmed the district court's finding of fraud based on this internal evidence of the inventor's knowledge. *Id.* at 1336.

---

[4] J&J argues that the plaintiffs "concede" that "'[w]hat J&J subjectively thought about the likelihood NCT 236 would succeed is not relevant to the question of obviousness under patent law; whether there is reasonable expectation of success does not depend on the applicant's subjective expectations.'" (quoting plaintiffs' briefing). ECF No. 671 (J&J MIL No. 7) at 1-2. This "concession" is merely the plaintiffs' recognition that whether a patent is invalid for obviousness is an objective inquiry. This fact in no way undermines the reality that an inventor's subjective understanding of the patent's novelty at the time of application is relevant to the *Walker Process* fraud inquiry.

Relatedly, as the Federal Circuit has emphasized, "[a] prior art reference may constitute material information, even where the reference is not sufficient to invalidate the claim in district court, if the disclosure of the reference would have blocked the issuance of a patent under the PTO's evidentiary standards. Thus, prior art is but-for material information if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Belcher*, 11 F.4th at 1352 (citing *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1334 (Fed. Cir. 2012) and *Therasense*, 649 F.3d at 1292). As a result, a prior art reference and a patentee's choice to withhold it may be relevant to the fraud inquiry even if that prior art reference is insufficient to render an issued patent invalid in district court litigation.

Indeed, to reduce the type of misconduct that the plaintiffs allege J&J engaged in, the PTO published a Notice in the Federal Register in July of 2022 specifically reminding patent applicants that it is improper to submit conflicting statements to the FDA and PTO. *See Duties of Disclosure and Reasonable Inquiry During Examination, Reexamination, and Reissue, and for Proceedings Before the Patent Trial and Appeal Board*, 87 Fed. Reg. 45764 (July 29, 2022).

> The duty of candor and good faith in dealing with the United States Patent and Trademark Office (USPTO) includes the duty to disclose to the USPTO information material to the patentability of a claimed invention. . . . In the pharmaceutical space, the duties promote robust and reliable patents that incentivize and protect innovation that brings life-saving drugs to the American people while not unnecessarily delaying more affordable generic drugs. *This notice is intended to clarify the duties, including as to materials or statements material to patentability or statements made to the USPTO that are inconsistent with statements submitted to the FDA and other governmental agencies.*

*Id.* (emphasis added); *see also* MPEP § 2004 ¶ 19 ("where relevant documentation is submitted to a regulatory review body, such as the Food & Drug Administration (FDA), and is material to a pending patent application, such documentation should be submitted for examiner review.").

J&J's position that the inventors' statements and submissions to the FDA are irrelevant conflicts with the PTO's guidance regarding the inventors' duty to submit any such documents to the extent they are material to patentability. The PTO expressly clarified that the duty of candor requires patent applicants to submit such materials. *See* Manual of Patent Examining Procedure (MPEP) 2001.06(E) (requiring patent applicants to submit to the PTO relevant information "submitted to a regulatory review body, such as the U.S. Food & Drug Administration (FDA)") (citing 37 C.F.R §§ 1.56, 1.555, & 11.18(b)(2)). As a result, J&J's failure to submit these materials is relevant to whether it breached its duty of candor and, in so doing, committed *Walker Process* fraud. The J&J employee who drafted the '307 patent application (Dr. Ralat) admitted under oath that this rule applied to him, that he knew certain statements were made to

the FDA concerning the same subject, and that he nevertheless omitted them from his PTO submissions. ECF No. 688-5 (Ex. 4, Ralat Tr.) at 226:9-227:17. Yet, J&J would deprive the jury of this critical evidence concerning its fraudulent conduct.

Finally, J&J makes relevant the documents it seeks to exclude by putting them at issue through its own arguments at summary judgment. Specifically, J&J repeatedly argued "there is no evidence that anyone at J&J with the duty of candor *believed* that these [FDA] submissions were material to the patentability of the '307 Patent." ECF No. 444 (J&J Mot. for Summ. J.) at 24 (emphasis added). In so arguing, J&J puts at issue its inventors' thoughts, beliefs, and/or understanding of the FDA submissions it now seeks to exclude.[5] J&J does so because it knows the *Walker Process* standard probes the inventors' intent and knowledge of materiality, putting at issue what J&J dubs the "path to invention." *See* ECF No. 444 (J&J Mot. for Summ. J.) at 21 ("Plaintiffs must present evidence sufficient for a jury to find, by clear and convincing evidence, that a J&J employee with the duty of candor (1) 'knew of the reference' (2) 'knew that it was material' to patentability; and (3) 'made a deliberate decision to withhold it.'" (citing *Therasense*, 649 F.3d at 1290)).

The cases J&J cites in support of its motion merely exclude evidence regarding inventors' "path to invention" in cases where the question is: is the patent objectively invalid? *See* ECF No. 671 (J&J MIL No. 7) at 6-7.[6] Those cases explain that an inventor's subjective

---

[5] It also shielded them from discovery through assertion of the attorney-client privilege. *See* ECF No. 682 (Pls. MIL No. 1).

[6] J&J does cite one inequitable conduct case: *Life Techs., Inc. v. Clontech Lab'ys, Inc.*, 224 F.3d 1320, 1325 (Fed. Cir. 2000). But, there, the patentee *submitted* the relevant prior art reference to the PTO. *Id.* at 1324-25 ("the Johnson article was extremely influential in leading the inventors to their engineered RT enzymes. Realizing its materiality to the patentability of the claimed invention, the inventors revealed the Johnson article to the PTO during prosecution and even discussed it in the written description section of the patent application."). The district court

beliefs about validity are not relevant to the objective inquiry into the issued patent's validity. In arguing that those cases preclude "path to invention" evidence here, J&J misses (or obfuscates) the point: the plaintiffs do not seek to use J&J's FDA submissions and internal documents to prove that the '307 patent is, objectively, invalid. Instead, they seek to use this evidence in an antitrust case to prove fraud—to show what J&J's inventors and prosecutors knew but withheld from the PTO. Once J&J's misstatement of the plaintiffs' case is corrected, the impropriety of its sweeping request to exclude "any testimony, evidence, or argument relating to the inventors' path to the invention claimed in the '307 Patent or J&J's or the inventors' subjective expectations" becomes clear. ECF No. 671 (J&J MIL No. 7) at 9-10.

**B.    The plaintiffs need not prove the '307 patent is invalid for obviousness; they only need to prove *Walker Process* fraud.**

In its Motion *in limine* No. 7 (and elsewhere), J&J argues that the plaintiffs must invalidate the '307 patent to prevail on their *Walker Process* claim. *See, e.g.*, ECF No. 671 (J&J MIL No. 7) at 4. Not so. But before contesting this claim, it is necessary to clarify that the evidence J&J seeks to exclude is relevant irrespective of whether the plaintiffs must affirmatively prove the '307 patent is invalid for obviousness. The plaintiffs advance a fraud claim. And for the reasons elaborated above, the inventors' submissions to the FDA and internal communications regarding the "invention's" novelty are relevant to that inquiry. Whether or not

---

held that the patentee nonetheless committed inequitable conduct because it had not explained to the PTO "how [the Johnson article] motivated them to conduct the experiments that eventually led to the invention." *Id.* at 1325. The Federal Circuit found this holding to be clearly erroneous because once the patentee disclosed the reference, it had no further duty to the PTO. Once the PTO had the reference before it, the question became an objective one: was this reference enough to render the patent application unpatentable? The inventors' use of the disclosed reference to come to the invention was not relevant once the inventors disclosed the reference. Here, the accusation is that J&J failed to disclose information it knew to be materiality. So evidence proving that knowledge of materiality is squarely relevant.

the plaintiffs must *also* prove that the '307 patent is invalid for obviousness (and they need not), the evidence J&J seeks to exclude is relevant to the plaintiffs' fraud claim.

The plaintiffs will nonetheless address J&J's claim that they must invalidate the '307 patent to avoid any confusion on this point. To prevail on their *Walker Process* fraud claim, plaintiffs must prove the four elements outlined in this Court's Order on J&J's Motion to Dismiss *and only those elements*. *See* ECF 119 (MTD) at 13. While a finding that J&J committed *Walker Process* fraud renders the patent unenforceable, this outcome flows from the plaintiffs' proof of the elements outlined by the Court. *Cf. Therasense*, 649 F.3d at 1285 ("Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent."). The plaintiffs need not separately prove the patent is invalid for obviousness, as they would in patent infringement litigation asserting patent invalidity as a defense. Indeed, such a requirement would be redundant as successful proof of *Walker Process* fraud or inequitable conduct renders the patent invalid.

The Federal Circuit explained this point in *Xitronix Corp. v. KLA-Tencor Corp.*, 882 F.3d 1075, 1078 (Fed. Cir. 2018). As *Xitronix* clarifies, *Walker Process* claims do "no[t] dispute… the validity of the [patent] claims—patent law is only relevant to determine if [J&J] intentionally made misrepresentations. Patent claims will not be invalidated or revived based on the result of this case." *Id.* "A *Walker Process* antitrust claim is a separate cause of action from a patent declaratory judgment action . . . [and is] governed by principles of antitrust law[.]" *Ritz Camera & Image, LLC v. Sandisk Corp.*, 700 F.3d 503, 508 (Fed. Cir. 2012); *see* ECF 119 (MTD) at 19-20 (quoting this language). J&J is therefore incorrect that the plaintiffs must additionally prove patent invalidity. In this *antitrust* matter, patent law is relevant only insofar as it bears on the question of fraud—*i.e.*, whether J&J, through its inventors and patent prosecutors, affirmatively

misrepresented that it was unexpected that ustekinumab would treat ulcerative colitis and intentionally omitted material references showing the opposite.[7]

To argue the contrary, J&J cites outdated, and out-of-circuit, dicta from *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 690 (2d Cir. 2009). ECF No. 671 (J&J MIL No. 7) at 4. There, the Second Circuit held that direct purchasers of a drug had standing to bring a *Walker Process* fraud claim against a drug maker for its enforcement of a patent it procured through fraud. *DDAVP*, 585 F.3d at 691-92. Prior to that antitrust litigation, the Federal Circuit affirmed the district court's ruling that the patent at issue was unenforceable due to the patent holder's inequitable conduct in procuring it. *See Ferring B.V. v. Barr Lab'ys, Inc.*, 437 F.3d 1181, 1186-95 (Fed. Cir. 2006). In discussing the standing issue, the Second Circuit remarked that "[i]f a patent is valid, a *Walker Process* claim cannot stand." *DDAVP*, 585 F.3d at 690. In this quote, the Second Circuit seems to be remarking that if a patent is valid because the patentee committed no inequitable conduct, a *Walker Process* claim cannot stand. *See id.* In *King Drug Co. of Florence v. Cephalon, Inc.*, No. 2:06-CV-1797, 2014 WL 982848, at *6-11 (E.D. Pa. Mar. 13, 2014), the district court held that its prior ruling that a patent was invalid and unenforceable due to the patentee's inequitable conduct did not collaterally estop that patentee from arguing, in the subsequent antitrust case, that it had not committed *Walker Process* fraud. The court

---

[7] Understanding the case through this lens (i.e., one that does not seek to prove the invalidity of the '307 patent but rather seeks to prove *Walker Process* fraud) may help resolve the issue this Court spotted in its Order on J&J's Motion to Dismiss. *See* ECF 119 (MTD) at 60-61 n.26. There, this Court pointed out that: "The confluence of the Federal Circuit's preemption doctrine and each state's antitrust standing doctrine has produced two possible outcomes in the *Walker Process* fraud context: Either state courts can invalidate a patent, or plaintiffs can bring a claim under state law that they cannot bring under federal law but can only be filed in federal court." *Id.* at 60 n.26. Understanding a *Walker Process* action as one that only seek to prove *fraud*, not patent invalidity, helps ease this tension. Viewing a *Walker Process* fraud this way, the state court is not ruling on patent validity but rather on fraud—a topic well within the ken of state courts.

explained, "[i]t is only when a patentee's dishonest conduct allows him to obtain 'exclusionary rights to which he was not legally entitled under the patent laws' that the Sherman Act comes into play. Thus, invalidity is a prerequisite to a successful *Walker Process* fraud claim." *Id.* at *11 (quoting *E.I. du Pont de Nemours & Co. v. Berkley & Co., Inc.,* 620 F.2d 1247, 1274 (8th Cir. 1980)). While the court appears to be suggesting that a patent must be invalidated prior to a finding of *Walker Process* fraud, it seems the court views invalidation through a finding of inequitable conduct to be sufficient. Irrespective, this confusing out-of-circuit dicta cannot override the Federal Circuit's more recent clarification that *Walker Process* claims do not dispute a patent's validity. And ultimately, whether the plaintiffs must *also* prove that the '307 patent is invalid for obviousness does not lessen the relevance of the evidence J&J seeks to exclude.

**C.    Patent applicants are required to submit *any* and *all* documents that are material to patentability, irrespective of their status as prior art.**

In its motion, J&J also argues that its statements to the FDA and its internal documents regarding the inventors' expectations are irrelevant because these documents are not prior art that can be used to invalidate the patent. But documents need not qualify as prior art to be material to patentability. Under 37 C.F.R. § 1.56(a), a patent applicant must disclose "all information known to that individual to be material to patentability." And as the Federal Circuit has explained (and the MPEP affirms): "materiality is not limited to prior art but embraces *any* information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1234 (Fed. Cir. 2003); *see* MPEP § 2001.04 (quoting the same language). "The term 'information' is intended to be all encompassing," MPEP § 2001.04, and inventors and patent prosecutors have a duty to disclose "all material information they are *aware* of regardless of the source of or how they become aware of the information." *See* MPEP § 2001.06

(emphasis in original) (citing *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp*., 267 F.3d 1370, 1383 (Fed. Cir. 2001) ("Once an attorney, or an applicant, has notice that information exists that appears material and questionable, that person cannot ignore that notice in an effort to avoid his or her duty to disclose.")). Thus, a document's status as prior art is immaterial to a patent applicant's duty to disclose that document. Because the patent application process is non-adversarial, patent applicant must submit all information that is material patentability, including all information that "refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability." 37 C.F.R. § 1.56(b)(2).

Indeed, the PTO recommends that patent applicants keep records of the information that they "specifically considered and discarded as not material, . . . including the reason for discarding it" to as a guard against later inequitable conduct and *Walker Process* claims. MPEP § 2004 ¶ 18. "If judgment might have been bad or something might have been overlooked inadvertently, a note made at the time of evaluation might be an invaluable aid in explaining that the mistake was honest and excusable." *Id.* The MPEP would not recommend that patent applicants keep such records of their consideration of information if it were not relevant to accusations of inequitable conduct.

If there was any question as to whether or not statements to the FDA must be submitted to the PTO, the MPEP has squarely answered that question. In its section concerning patentees' "duty of disclosure, candor, and good faith" and their "duty to disclose information material to patentability," the MPEP *specifically instructs*:

> Where relevant documentation is submitted to a regulatory review body, such as the U.S. Food & Drug Administration (FDA), and is material to any pending patent application or reexamination proceeding, such documentation should be submitted for Office review. While the considerations made by the FDA for approving clinical

trials are different from those made by the USPTO in determining whether a claim is patentable, submissions, particularly any assertion that is made which is contradictory to assertions made to the examiner, may be material to ongoing patent proceedings. *Belcher Pharmaceuticals, LLC v. Hospira, Inc.*, 11 F.4th 1345, 1353-54, 2021 USPQ2d 909 (Fed. Cir. 2021). *See also* MPEP § 2164.05. . . . Accordingly, each party presenting a paper to the USPTO, whether a practitioner or non-practitioner, has a duty to perform an inquiry that is reasonable under the circumstances. This reasonable inquiry may comprise reviewing documents that are submitted to or received from other Government agencies, including the FDA. *If any reviewed document is material to the patentability of a pending matter before the Office, such as a patent application (including a reissue application), or a reexamination proceeding, the party has a duty to submit the information to the USPTO.*

MPEP § 2001.06(e) (citing 37 CFR 1.56, 1.555, and 11.18(b)(2)) (emphasis added).

At bottom, whether a document qualifies as prior art does not dictate its materiality to the patentability analysis. And, thus, its status as prior art does not dictate the document's relevance to the *Walker Process* fraud analysis, which examines whether the patent would have issued in the face of its disclosure.

**D.    Mr. Dichter's knowledge of the FDA submissions is relevant to the plaintiffs' *Walker Process* fraud claims.**

At the end of its motion, J&J makes a convoluted argument that Mr. Dichter's knowledge of the FDA submissions is irrelevant to the plaintiffs' *Walker Process* fraud claims. According to J&J, when Mr. Dichter told the PTO that the results of NCT 236 were "uncertain" and therefore the ClinicalTrial.gov posting did not render the '307 application obvious, he was making a representation regarding the expectation of a POSA (i.e., a POSA would have been uncertain) based on the state of the science. ECF 671 (J&J MIL No. 7) at 9. Put another way, J&J is trying to frame Mr. Dichter's representation to the PTO as an objective assessment of the state of the science, rather than a subjective statement about what J&J expected.

*First*, this argument makes no sense. In its submissions to the FDA, J&J represented to the FDA that ustekinumab could be expected to treat ulcerative colitis *based on the state of the*

*science*. Put another way, J&J told the FDA that it should be allowed to skip Phase II trials because public research and clinical trial results offered a reasonable expectation that ustekinumab would work to treat ulcerative colitis. *See* ECF No. 549 (Pls.' Opp. to J&J's Mot. for Summ. J.) ¶ 63 (quoting ECF No. 534-1 (Ex. 139) at 41). J&J's submissions to the FDA are highly relevant here precisely because they reveal J&J's evaluation of the state of the science (i.e., the expectation of a POSA) years before J&J applied for the '307 patent. And this evaluation directly contradicts Mr. Dichter's representation to the PTO regarding the same.

*Second*, it is not at all clear that Mr. Dichter's representation to the PTO was a statement about what a *POSA* would objectively expect, rather than what *J&J* subjectively expected. Mr. Dichter is not a POSA, he's a lawyer. He did not tell the FDA that he was speaking from a POSA perspective, rather than from the (expected) perspective of an attorney advocating for patentability. It is up to the jury to assess Mr. Dichter's statement and make a finding about what he meant.

Irrespective of what Mr. Dichter meant, his statement to the PTO that it was uncertain ustekinumab would work to treat ulcerative colitis directly contradicts the inventors' representations to the FDA on the same topic—representations Mr. Dichter was fully aware of. This evidence directly supports the plaintiffs' fraud claim and should be presented to the jury.

## V.    CONCLUSION

For the foregoing reasons, the plaintiffs respectfully request that the Court deny J&J's motion.

Dated: November 18, 2025                    Respectfully submitted,

*/s/ William H. Monroe, Jr.*
William H. Monroe, Jr. (VSB No. 27441)
Marc C. Greco (VSB No. 41496)

Kip A. Harbison (VSB No. 38648)
Michael A. Glasser (VSB No. 17651)
**GLASSER AND GLASSER, P.L.C.**
Crown Center, Suite 600
580 East Main Street
Norfolk, VA 23510
Telephone: (757) 625-6787
bill@glasserlaw.com
marcg@glasserlaw.com
kip@glasserlaw.com
michael@glasserlaw.com


Thomas M. Sobol (*pro hac vice*)
Hannah W. Brennan (*pro hac vice*)
Abbye R. K. Ognibene (*pro hac vice*)
Whitney E. Street (*pro hac vice*)
Rebekah Glickman-Simon (*pro hac vice*)
Hannah Schwarzschild (*pro hac vice*)
Audley Fuller (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
One Faneuil Hall Square, 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
tom@hbsslaw.com
hannahb@hbsslaw.com
abbyeo@hbsslaw.com
whitneyst@hbsslaw.com
hannahs@hbsslaw.com
rebekahgs@hbsslaw.com
audleyf@hbsslaw.com


Peter D. St. Phillip (*pro hac vice*)
Uriel Rabinovitz (*pro hac vice*)
Raymond Girnys (*pro hac vice*)
Noelle Ruggiero (*pro hac vice*)
Alexis Castillo (*pro hac vice*)
Thomas Griffith (*pro hac vice*)
Peyton A. Woodward (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
PStPhillip@lowey.com
URabinovitz@lowey.com
RGirnys@lowey.com
NRuggiero@lowey.com

ACastillo@lowey.com
tgriffith@lowey.com
pwoodward@lowey.com

John Radice (*pro hac vice*)
April Lambert (*pro hac vice*)
Kenneth Pickle (*pro hac vice*)
Charles Kopel (*pro hac vice*)
**RADICE LAW FIRM, P.C.**
475 Wall Street
Princeton, NJ 08540
Telephone: (646) 245-8502
jradice@radicelawfirm.com
alambert@radicelawfirm.com
kpickle@radicelawfirm.com
ckopel@radicelawfirm.com

*Counsel for Plaintiffs CareFirst of Maryland, Inc.,*
*Group Hospitalization and Medical Services, Inc.,*
*and CareFirst BlueChoice, Inc.*

## CERTIFICATE OF SERVICE

I, William H. Monroe, Jr., certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record, and parties may access the filing through the Court's system.

Dated:    November 18, 2025                    _/s/ William H. Monroe, Jr._____
                                                            William H. Monroe, Jr.

# Appendix A

| Plaintiffs' Exhibit No. Note: 1-43 were previously filed with the plaintiffs' motions *in limine* | ECF No. | Sealed ECF No. | Description |
|---|---|---|---|
| 1 | 687-1, 687-2, 687-3, 688-1, 688-2 | | '307 Patent Wrapper |
| 2 | 688-3 | | Case Document |
| 3 | 688-4 | | Lisa Matovcik Expert Report |
| 4 | 688-5 | 698-1 | Luis Ralat Transcript Excerpts |
| 5 | 688-6 | 698-2 | Richard Strauss Transcript Excerpts |
| 6 | 688-7 | | Colleen Marano Transcript Excerpts |
| 7 | 688-8 | 698-3 | Katherine Li Transcript Excerpts |
| 8 | 688-9 | 698-4 | Eric Dichter Transcript Excerpts |
| 9 | 688-10 | | Case Document |
| 10 | 688-11 | 698-5 | Melissa Miller Transcript Excerpts |
| 11 | 688-12 | 698-6 | Denise DeFranco Transcript Excerpts |
| 12 | 688-13 | 698-7 | Privilege Log Excerpt |
| 13 | 688-14 | | Christopher O'Brien Transcript Excerpts |
| 14 | 688-15 | | Case Document |
| 15 | 688-16 | | Public Data |
| 16 | 688-17, 689-1, 689-2 | | Byron Cryer Expert Declaration |
| 17 | 689-3, 690-1, 690-2, 690-3 | | Bates Stamped Document |
| 18 | 690-4 | 698-8 | Debbie Feinstein Expert Declaration |
| 19 | 6905 | | Michael Malecki Expert Report |
| 20 | 690-6 | 698-9 | Dr. John Johnson Expert Report |
| 21 | 690-7 | | Public Report |

| 22 | 690-8 | | Public Report |
|----|-------|--|---------------|
| 23 | 690-9 | | Public Report |
| 24 | 690-10 | | Public Report |
| 25 | 690-11 | | Article |
| 26 | 690-12 | | Article |
| 27 | 691-1 | 698-10 | Bates Stamped Document |
| 28 | 691-2 | 698-11 | Bates Stamped Document |
| 29 | 691-3 | 698-12 | Bates Stamped Document |
| 30 | 691-4, 691-5, 691-6 | | J&J Public Report |
| 31 | 691-7 | | J&J Public Report |
| 32 | 692-1 | | J&J Public Report |
| 33 | 692-2 | 698-13 | Bates Stamped Document |
| 34 | 692-3 | 698-14 | Bates Stamped Document |
| 35 | 692-4 | | Article |
| 36 | 692-5 | | Article |
| 37 | 692-6 | | Article |
| 38 | 692-7 | | J&J Public Report |
| 39 | 692-8 | | J&J Public Report |
| 40 | 692-9 | 698-15 | Bates Stamped Document |
| 41 | 692-10 | 698-16 | Brian Smith Transcript Excerpts |
| 42 | 692-11 | 698-17 | Bates Stamped Document |
| 43 | 692-12 | 698-18 | Bates Stamped Document |
| 44 | 712-1 | | '310 Patent Wrapper Excerpt |
| 45 | 712-2 | | J&J Exhibit List Excerpt |
| 46 | 712-3 | | Bates Stamped Document |
| 47 | 712-4 | | Aaron Kesselheim Expert Report Excerpt |
| 48 | 712-5 | | Nicole Maestas Supplemental Expert Report Excerpt |
| 49 | 712-6 | | Andrew Hirshfeld Rebuttal Expert Report Excerpt |
| 50 | 712-7, 712-8 | | J&J Public Report |
| 51 | 712-9 | | J&J Trial Witness List |
| 52 | 712-10 | | Brian Smith Transcript Excerpt |

| 53 | 713-1, 713-2 | | J&J Public Report |
| 54 | 713-3 | | Patent Application Comparison |
| 55 | 713-4 | | Lisa Matovcik Reply Expert Report |
| 56 | 713-5 | | Bates Stamped Document |
| 57 | 713-6 | | Kimberly Shields-Tuttle Transcript Excerpt |
| 58 | 713-7 | | ECF Document |
| 59 | 713-8 | | Luis Ralat Transcript Excerpt |
| 60 | 713-9 | | Attorney Email Correspondence |
| 61 | 713-10 | | Paul Warfield Opening Expert Report |