# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**CAREFIRST OF MARYLAND, INC.,** *et al.*, **on behalf of themselves and all others similarly situated,**

      **Plaintiffs,**

      **v.**                                                                 **Case No. 2:23cv629**

**JOHNSON & JOHNSON and JANSSEN BIOTECH, INC.,**

      **Defendants.**

## OPINION & ORDER

This is an antitrust action filed by Plaintiffs CareFirst of Maryland, Inc., Group Hospitalization and Medical Services Inc., and CareFirst Bluechoice Inc. (collectively, "CareFirst") alleging that Defendants Johnson & Johnson and Janssen Biotech, Inc. (collectively, "J&J") used monopoly power to unlawfully delay the introduction of biosimilar competitors for their drug ustekinumab (sold under the brand name "Stelara"). CareFirst alleges J&J did so by: (1) defrauding the United States Patent and Trademark Office to obtain its method-of-use patent ("the '307 patent") that covers the use of ustekinumab to treat ulcerative colitis (*Walker Process* fraud); (2) acquiring a portfolio of biosimilar manufacturing patents from Momenta; and (3) enforcing those patents to delay biosimilar competition from the market.

Presently before the Court are two motions to exclude CareFirst's experts that raise similar issues. The first motion is J&J's Motion to Exclude the Testimony of CareFirst's Expert, Dr. Lisa Matovcik, and an accompanying memorandum in support. ECF Nos. 437, 438. Dr. Matovcik offers testimony from the perspective of a reasonable patent attorney. J&J seeks to exclude certain opinions from Dr. Matovcik on the grounds that she improperly offers opinions from the

perspective of a person of ordinary skill in the art, she offers unreliable and irrelevant opinions about what a "reasonable patent practitioner" knew or should have known, and she offers improper opinions about duties to the PTO.  ECF No. 438 at 18–36.  CareFirst filed a memorandum in opposition, ECF No. 554, and J&J filed a reply, ECF No. 602.

Also before the Court is J&J's Motion to Exclude the Testimony of CareFirst's Expert, Mr. Robert Bahr, and an accompanying memorandum in support.  ECF Nos. 439, 440.   Mr. Bahr offers testimony from the perspective of a reasonable patent examiner.  J&J seeks to exclude Mr. Bahr's opinions on the grounds that he improperly offers opinions from the perspective of a person of ordinary skill in the art, he lacks the qualifications to opine on how a reasonable patent examiner would view the withheld references, and he provides improper opinions about duties to the PTO. ECF No. 440 at 16–36.  CareFirst filed a memorandum in opposition, ECF No. 551, and J&J filed a reply, ECF No. 594.  The Court held a hearing on both motions on December 16, 2025.

The motions are fully briefed and ripe for disposition.  For the reasons explained below, J&J's Motions to Exclude, ECF Nos. 437 and 439, are **GRANTED in PART and DENIED in PART**.

## I. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Under Rule 702, a witness may be qualified as an expert by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  The proponent of the expert must demonstrate it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007). Accordingly, the Court is tasked with "a special gatekeeping obligation on the trial judge to ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (cleaned up).

The *reliability* of expert testimony is a "flexible inquiry" that requires the Court to ensure an expert's opinion is "based on scientific, technical, or other specialized *knowledge* and not on belief or speculation." *Id.* (emphasis in original) (quotation omitted). Trial courts have "broad latitude" to determine "reasonable measure of reliability in a particular case," which can "depend on[] the nature of the issue, the expert's particular expertise, and the subject of [the expert's] testimony." *Id.* (alteration in original) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). The *relevancy* of expert testimony depends on whether the opinion "has 'a valid scientific connection to the pertinent inquiry" to "ensure that the expert helps the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (internal quotations and citation omitted). Ultimately, if an opinion is not relevant to a fact at issue, it must be excluded. *Id.*

While some experts may proffer "[p]urely scientific testimony. . . characterized by its falsifiability or refutability, or testability," other experts may proffer testimony based on their experience, which does not "rely on anything like the scientific method." *Wilson*, 484 F.3d at 274. In those instances, it is a function of the Court's gatekeeping role to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001) (quoting *Kumho Tire Co.*, 526 U.S. at 152). Thus, an experiential expert must still "explain

how [his] experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (citation and quotation omitted).

As emphasized by the Fourth Circuit, in cases where expert testimony is challenged on relevance or reliability grounds, the district court's gatekeeping function is "indispensable" and "cannot be overstated." *Id.* at 283–84. However, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 631 (4th Cir. 2018) (quoting *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013) (per curiam) (unpublished)). "Indeed, *Daubert* itself stressed the importance of the 'conventional devices' of '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' (rather than wholesale exclusion by the trial judge) as 'the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

## II. ANALYSIS

CareFirst proffers Dr. Matovcik as an expert to provide opinions as a reasonable patent practitioner. *See* ECF No. 554 at 6. She has over twenty-five years of experience prosecuting and evaluating patents. *Id.* She also has a Ph.D. in biological sciences and has taught and conducted research at Yale Medical School. *Id.* CareFirst proffers Mr. Bahr as an expert to provide opinions as a reasonable patent examiner. He has a Bachelor of Science in Mechanical Engineering, and a law degree from George Washington University School of Law. ECF No. 551 at 7. He has over thirty-eight years of experience working at the PTO, including as a patent examiner, an administrative judge on the Patent Trial and Appeal Board ("PTAB"), Senior Patent Counsel to

4

the Deputy Commissioner for Patent Examination Policy, and the Deputy Commissioner for Patents. *Id.* at 7–9. CareFirst does not offer either as an expert qualified to opine as a person of ordinary skill in the art.[1]

J&J seeks to exclude both Dr. Matovcik and Mr. Bahr for similar reasons. First, J&J argues that Mr. Bahr is not qualified to offer opinions as a "reasonable patent examiner." ECF No. 440 at 30–34 (Bahr). Second, J&J argues that both experts offer technical opinions on subjects for which they cannot opine because they are not qualified in the ordinary skill in the art (often referred to as a "POSA" or "POSITA"). ECF No. 438 at 18–30 (Matovcik); ECF No. 440 at 20–30 (Bahr). Third, J&J argues that both offer improper opinions about duties to the PTO. ECF No. 438 at 35–36 (Matovcik); ECF No. 440 at 34–36 (Bahr). Lastly, J&J argues that Dr. Matovcik's opinions about what a reasonable patent practitioner knew or should have known are not relevant and are unreliable. ECF No. 438 at 33–35 (Matovcik). Following this framework, the Court addresses each argument in turn below.

### A. Mr. Bahr's Qualifications as a "Reasonable Patent Examiner"

J&J argues that Mr. Bahr should be excluded because even if Mr. Bahr could offer his opinions related to invalidity, he lacks the qualifications to offer opinions as a "reasonable patent examiner." ECF No. 440 at 30–34 (Bahr). J&J contends that Mr. Bahr is not a reasonable patent examiner because he has an engineering background and was not part of the examining group that reviews patents related to pharmaceuticals. *Id.* CareFirst, in response, highlights Mr. Bahr's experience as an administrative judge on the PTAB and his experience in his role as Senior Patent Counsel, where he oversaw and provided direction to examiners in the group that reviews

---

[1] Because CareFirst is not offering Dr. Matovcik or Mr. Bahr as a person of ordinary skill in the art, the Court does not address J&J's arguments that they lack the qualifications to opine as a person of ordinary skill in the art.

pharmaceutical patents. ECF No. 551 at 7–9, 20–21. They contend that his experience exceeds that of an examiner in the group that reviews pharmaceutical patents, and he is qualified to offer his opinions. *Id.*

J&J's argument is not sufficient grounds to exclude Mr. Bahr's opinions. Under Federal Rule of Evidence 702, expert testimony is admissible if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Mr. Bahr, as a patent examiner with years of experience at the PTO, including in supervisory roles, is well qualified to discuss the practices and procedures at the PTO. Mr. Bahr applies his expertise and experience to the facts of this case and offers opinions about the examination of the '509 application.[2] *See Wilson*, 484 F.3d at 274 (requiring an expert relying on experience to "explain how [his] experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts").

J&J makes much of the fact that, as an examiner, Mr. Bahr was assigned to "Technology Center 3700 (Mechanical Engineering, Manufacturing and Products)". ECF No. 440 at 8, 30–31. They contend he cannot be a reasonable patent examiner for the '307 patent because the patent's subject matter falls within "Technology Center 1600 (Biotechnology and Organic fields)". *Id.* However, given Mr. Bahr's extensive experience with the PTO, as an examiner, a judge on the PTAB, and as Senior Patent Counsel, he is qualified to opine as a "reasonable patent examiner." To the extent Mr. Bahr offers opinions which J&J believes requires specialized knowledge from an examiner within Technology Center 1600 or pharmaceutical patents generally, they may cross-examine him at trial about his relevant experience.[3] But, for purposes of offering opinions as a

---

[2] The '509 application ultimately led to the issuance of the '307 patent.

[3] Mr. Bahr is qualified to opine as a reasonable patent examiner, but as explained *infra*, his testimony will be limited to non-technical information involving the practices and procedures of the PTO.

reasonable patent examiner, Mr. Bahr is sufficiently qualified, and his opinions are admissible from that perspective.

### B. *Opinions from Dr. Matovcik & Mr. Bahr About Invalidity, Inequitable Conduct, Materiality, and Cumulativeness*

J&J alleges that Dr. Matovcik offers a number of opinions related to "invalidity, inequitable conduct, materiality, and cumulativeness." ECF No. 438 at 22.  As for Dr. Bahr, J&J alleges that he offers opinions related to "invalidity, claim construction, materiality, and cumulativeness." ECF No. 440 at 20.  They argue that because these opinions can only come from a person who is qualified in the ordinary skill in the art, the opinions must be excluded.  ECF No. 438 at 18–30 (Matovcik); ECF No. 440 at 20–30 (Bahr).  In response, CareFirst contends that neither Dr. Matovcik nor Mr. Bahr offer technical opinions that must come from a person of ordinary skill in the art.  ECF No. 554 at 11–25 (Matovcik); ECF No. 551 at 12–27 (Bahr).  Instead, they argue, the experts properly couched their opinions as a "reasonable patent attorney" and "reasonable patent examiner." ECF No. 554 at 11–25 (Matovcik); ECF No. 551 at 12–27 (Bahr).

#### i. *Legal Standard*

Patent lawyers may offer expert testimony on patent office practice and procedure.  *See Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1361–64 (Fed. Cir. 2008); *Bausch & Lomb, Inc. v. Alcon Lab'ys, Inc.*, 79 F. Supp. 2d 252, 255 (W.D.N.Y. 2000) (finding that expert opinions from a patent attorney about general procedures involved in the patent application process would be helpful to the jury and admissible). However, only a person who is qualified as a person of ordinary skill in the art can offer opinions about technical questions related to patent validity. *Sundance*, 550 F.3d at 1361.  Courts have interpreted *Sundance* to "advise[] district courts to consider the perspective from which the relevant issue of patent law will be analyzed when the court determines whether an expert is qualified to testify as an expert on that issue." *In re Namenda*

*Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 187 (S.D.N.Y. 2018) (quotation and citation omitted).

### ii. Invalidity

The Federal Circuit has made clear that opinions that rest on technical questions involving the validity of a patent, including determinations as to obviousness and anticipation, must come from an expert who is qualified as a person of ordinary skill in the art. *Sundance*, 550 F.3d at 1364; *BorgWarner, Inc. v. Honeywell Int'l Inc.*, 750 F. Supp. 2d 596, 611 (W.D.N.C. 2010) (excluding invalidity opinions from a "reasonable patent examiner"). With respect to anticipation, only a person of ordinary skill in the art may offer expert testimony about "anticipation, or any of the underlying questions, such as the nature of the claimed invention, what a prior art references discloses, or whether the asserted claims read on the prior art reference." *Sundance*, 550 F.3d at 1364. Similarly, for obviousness, only a person of ordinary skill in the art may offer expert testimony about "obviousness, or any of the underlying technical questions, such as the nature of the claimed invention, the scope and content of prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention." *Id.*

Dr. Matovcik offers opinions related to patent invalidity. Her report offers the opinion that the '307 patent is obvious. Matovcik Report ¶¶ 150–229, ECF No. 438, attach. 3 at 55–79. To offer this opinion, Dr. Matovcik provides a comprehensive analysis of: (1) the standard for determining obviousness; (2) the scope and content of withheld material information; (3) a comparison of the claims of the '307 patent and the prior art; (4) an obviousness analysis—including a review of whether a POSA would have been motivated to combine prior art references and whether a POSA would expect success in doing so. *Id.* As just one of many examples, Dr.

8

Matovcik offers that "Ochsenkühn (January 2018) and Ochsenkühn (May 2018) disclosed treating moderately to severely active UC with ustekinumab. *Combining the disclosure* of ClinicalTrials.gov (August 2018) with both Ochsenkühn disclosures discloses every limitation of the claims of the '307 patent." *Id.* ¶ 207, ECF No. 483, attach. 3 at 72 (emphasis added). She offers a similar analysis of the prior art in her reply report. Matovcik Reply ¶¶ 63–110, ECF No. 438, attach. 4 at 23–36.

Dr. Bahr also offers opinions related to invalidity. In his rebuttal report, he states "the 2017 ClinicalTrials.gov posting anticipates treating moderately to severely active ulcerative colitis (UC) in a subject in need thereof, comprising administering to the subject a pharmaceutical composition comprising a clinically proven safe and clinically proven effective amount of an anti-IL-12/IL-23p40 antibody." Bahr Rebuttal ¶ 40, ECF No. 440, attach. 4 at 23. He further states that he "disagree[s] with Dr. Cryer's opinion that the ClinicalTrials.gov posting . . . does not anticipate or render obvious the claimed invention of the '307 patent" and "[t]he NCT-236 Study Record . . . either expressly or inherently discloses the elements of at least claims 1, 19, 33, 34 (the independent claims) of the '307 patent."[4] *Id.* ¶ 41, ECF No. 440, attach. 4 at 23.

The Court finds that *Sundance* is directly on point in this case. In *Sundance*, the Federal Circuit held it was an abuse of discretion to allow "a patent attorney with extensive experience in patent law and procedure" to testify about technical evidence supporting the issues of infringement or validity." *Sundance*, 550 F.3d at 1361–64. There, the patent attorney expert "offered testimony on several issues which are exclusively determined from the perspective of ordinary skill in the art" including "how the disclosed invention, accused system, and prior art operate" and "opinions as to the noninfringement and invalidity of claim 1 of the [] patent." *Id.* at 1361 (internal quotations

[4] Dr. Cryer is a gastroenterologist retained by J&J to provide expert opinions as a person of ordinary skill in the art.

9

omitted). Here, Dr. Matovcik does exactly that when she offers opinions analyzing the prior art, whether a POSA would be motivated to combine that prior art, and whether doing so would create a reasonable expectation of success. Dr. Bahr does the same when he offers opinions on whether prior art studies anticipate the '307 patent.

CareFirst's attempts to distinguish the clear mandate from Federal Circuit that only a person of ordinary skill in the art may testify as an expert about technical patent validity questions are not persuasive. *See* ECF No. 554 at 16 (citing cases for the proposition that testimony concerning patent validity and obviousness is routinely admitted from experts who are not POSAs). First, while several of the cases cited by CareFirst involve antitrust claims, they involve claims based on reverse payment settlements.[5] *See In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 188 (S.D.N.Y. 2018) (involving antitrust claims based on a reverse payment settlement); *In re Glumetza Antitrust Litigation*, No. C 19-05822, 2021 WL 3773621, at *1 (N.D. Cal. Aug. 25, 2021) (same); *In re HIV Antitrust Litig.*, No. 19-CV-02573, 2023 WL 3090619, at *1 (N.D. Cal. Mar. 13, 2023) (same). In an antitrust case involving a reverse payment settlement, the court's concern with technical issues of patent validity is "indirect" and only involves "tangential assessment" of the issues of validity and infringement. *See Namenda*, 331 F. Supp. 3d at 187–88. This indirect assessment of patent validity is distinguishable from *Walker Process* fraud, where the "misrepresentation or omission must evidence a clear intent to deceive the examiner and thereby cause the PTO to grant an *invalid* patent." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070 (Fed. Cir. 1998) (emphasis added).

For example, *Namenda* involved a reverse payment settlement, and the patent attorney

---

[5] *See FTC v. Actavis, Inc.*, 570 U.S. 136, 140–41 (2013) (explaining that a reverse payment settlement occurs when "the settlement requires the patentee to pay the alleged infringer, rather than the other way around" in exchange for the alleged infringer delaying entry to a market).

expert was offered to opine on "what a reasonable and competent patent attorney would have advised the litigants *at the time they settled the Namenda patent litigation.*" *Namenda*, 331 F. Supp. 3d at 184–85 (emphasis added). Those opinions included: "1) their likelihood of success in the litigation; 2) each of the parties' likely litigation costs; and 3) the likely litigation timing, if the parties had not settled, but rather had continued to litigate through a final, non-appealable judgment." *Id.* The court allowed the patent attorney expert to provide opinions "from the perspective of a reasonable patent attorney with extensive experience in the area of patent law, about the likelihood that [a pharmaceutical patent-holder company] would succeed in its lawsuit against [a company with an allegedly infringing generic]." *Id.* at 187–89. Acknowledging *Sundance*, the court held that the patent attorney expert was *not* offering "the sort of opinion that one skilled in the art would offer – a black-and-white, yes or no, opinion that the patent was or was not valid or infringed." *Id.* at 188 (emphasis added).

In reverse payment antitrust claims, the likelihood of success of *patent litigation* is at issue. *See id.* In *Walker Process* fraud cases, *patent validity* is at issue. *See Nobelpharma*, 141 F.3d at 1070 (Fed. Cir. 1998). For this reason, Dr. Matovcik and Mr. Bahr cannot simply cloak invalidity opinions from the perspective of a "reasonable patent attorney" or "reasonable patent examiner." *See, e.g.*, Matovcik Report ¶ 228, ECF No. 438, attach. 3 ("A reasonable patent practitioner would advise their client that it had a strong expectation of success in defending the lawsuit on the grounds that the '307 patent was invalid because it was obvious under 35 U.S.C. § 103 and the likelihood of winning on the merits of the invalidity defense was very high."). The inquiry here is not whether litigation seeking to declare the patent would succeed—it is whether the patent *would not have issued* considering the alleged misrepresentation or omission. *See Nobelpharma*, 141 F.3d at 1070.

11

Second, in both *Namenda* and *Glumetza*, the experts relied on the conclusions of the technical experts—the persons of ordinary skill in the art—to reach their conclusions. *Id.* at 187; *Glumetza*, 2021 WL 3773621, at *15 ("Attorney Lentz's report parses the testimony of those experts regarding noninfringement and validity in order to evaluate the legal merit of the Lupin and Sun parties' respective cases and predict the outcome of the disputes if they had not settled.").

Third, the cases CareFirst cites that do involve *Walker Process* fraud and direct issues of patent validity are easily distinguishable here. In *In re Loestrin 24 Fe Antitrust Litig.*, a *Walker Process* fraud case, the court found that the expert opinions "clearly" did not offer a technical analysis of patent validity. 433 F. Supp. 3d 274, 306 (D.R.I. 2019). The court agreed that only a person of ordinary skill in the art "may opine on [] technical patent law issues." *Id.* So long as the experts "only evaluate[d] these issues from their respective perspectives, and *do not offer legal conclusions on technical patent issues*," their opinions were admissible. *Id.* (emphasis added). Similarly, in *Bone Care International LLC v. Pentech Pharmaceuticals, Inc.*, the party offering the patent attorney as an expert confirmed that they would not elicit testimony from the expert as a person of ordinary skill in the art. No. 08-CV-1083, 2010 WL 3928598, at *13 (N.D. Ill. Oct. 1, 2010). The court held that testimony involving "the patent application process, the operations and functions of the PTO, and the *criteria* to which examiners look in assessing patentability (including obviousness, priority, etc.)" would be permitted. *Id.* at *14 (emphasis added).

The Court acknowledges that Dr. Matovcik and Mr. Bahr's testimony is subject to nuance, and that the Court must "consider the perspective from which the relevant issue of patent law will be analyzed[.]" *See Namenda*, 331 F. Supp. 3d at 187. The experts may both testify as to PTO practice and procedure. That said, Dr. Matovcik and Mr. Bahr clearly offer a number of opinions beyond the scope of their expertise, including opinions involving the technical issues in the prior

art, and obviousness and anticipation.  As explained in *Sundance*, their opinions on issues of patent validity—including anticipation, obviousness, and the underlying technical questions related to either issue—are not admissible.  *See Sundance*, 550 F.3d at 1361–64; *Namenda*, 331 F. Supp. 3d at 188 (acknowledging "black-and-white, yes or no, opinion[s] that the patent was or was not valid or infringed" would not be admissible).

While there are certain obvious instances in Dr. Matovcik and Mr. Bahr's reports where they offer a technical analysis, the Court cannot parse out each time Dr. Matovcik and Mr. Bahr offer an opinion that relies on a technical analysis they are not qualified to give.  Whether their opinions on these issues can be offered at trial will depend on the context provided, and whether they are engaging in a technical analysis in offering an opinion.  But to the extent Dr. Matovcik and Mr. Bahr offer opinions on invalidity and the underlying related technical analyses, those opinions are not admissible.

### iii.   *Materiality, Cumulativeness, and Inequitable Conduct*

The law is clear that Dr. Matovcik and Mr. Bahr cannot opine on technical issues involving invalidity, but less clear is the extent to which they can offer expert testimony about materiality, cumulativeness, and inequitable conduct. Before discussing the admissibility of Dr. Matovcik and Mr. Bahr's materiality, cumulativeness, and inequitable conduct opinions, the Court finds it necessary to frame how materiality is alleged to apply in this case.  The Court then addresses the relevant standards and whether Dr. Matovcik and Mr. Bahr's opinions are admissible.

### 1.   *Legal Framework*

*Walker Process* fraud requires CareFirst to show: "(1) a false representation or deliberate omission of a fact material to patentability, (2) made with the intent to deceive the patent examiner, (3) on which the patent examiner justifiably relied in granting the patent, and (4) but for which

13

misrepresentation or deliberate omission the patent would not have been granted." *Nobelpharma*, 141 F.3d at 1070–71. In this case, the issue of inequitable conduct is also relevant because the findings required to render a patent unenforceable due to inequitable conduct are similar to the requirements of *Walker Process* fraud.[6] Like *Walker Process* fraud, inequitable conduct requires a challenger to show that "the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *See In re Rosuvastatin Calcium Patent Litig. v. Aurobindo Pharma Ltd.*, 703 F.3d 511, 519 (Fed. Cir. 2012) (citing *Therasense*, 649 F.3d 1276, 1285 (Fed. Cir. 2011)). Both *Walker Process* fraud and inequitable conduct require a finding of "but-for" materiality—meaning, that the patent would not have issued if the misrepresentation or omission was disclosed to the patent examiner. *See Therasense*, 649 F.3d at 1290–91. Accordingly, "the showing required for proving inequitable conduct and the showing required for proving the fraud component of Walker Process liability may be nearly identical." *Transweb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1307 (Fed. Cir. 2016); *see also* ECF No. 119 at 24–25 n.10 (Opinion and Order on Motion to Dismiss, Aug. 16, 2024) (noting that "post-*Therasense* cases analyzing inequitable conduct may be instructive on *Walker Process* fraud").

Materiality is relevant to this case in several ways. CareFirst argues that one aspect of materiality is relevant to establish the first and second elements of *Walker Process* fraud—that a false misrepresentation or omission of a fact *material to patentability* was made *with intent to deceive* the patent examiner. ECF No. 554 at 12. Whether a misrepresentation or omission was material to patentability, according to CareFirst, depends on the standards set by the PTO in 37 C.F.R. § 1.56 (known as "Rule 56"). ECF No. 554 at 11. Under Rule 56, information is material

---

[6] "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011)

to patentability if it is non-cumulative of information already before the PTO, and either (1) "establishes a prima facie case of unpatentability," through, for example, non-novelty or obviousness; or (2) "refutes, or is inconsistent with, a position the applicant takes" before the PTO. 37 C.F.R. § 1.56(b). A reference, therefore, can only be material for purposes of Rule 56 if it is not cumulative to other references before the examiner. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1337 (Fed. Cir. 2008).

Rule 56 also creates certain duties on behalf of individuals involved in patent applications—including the "duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability[.]" 37 C.F.R. § 1.56(a). Thus, Rule 56 also becomes relevant to determine the second element of *Walker Process* fraud—whether the misrepresentation or omission was made with intent to deceive the patent examiner. Rule 56 is also relevant to allegations of inequitable conduct, which occurs when a patent applicant breaches duties to the PTO, including the duties of candor, good faith, and honesty. *See United States Water Servs. v. Novozymes A/S*, 843 F.3d 1345, 1352 (Fed. Cir. 2016) (citation omitted).

Under this analysis, several considerations involving Rule 56 are relevant to the inquiry of whether a false misrepresentation or omission of a fact *material to patentability* was made *with intent to deceive* the patent examiner, including: (1) whether omissions or misrepresentations are non-cumulative of other information before the patent examiner; (2) whether those misrepresentations or omissions establish a prima facie case of unpatentability; (3) whether the misrepresentations or omissions refute a position taken before the PTO.

CareFirst also contends that a separate aspect of materiality is relevant to the fourth element of *Walker Process* fraud, which requires CareFirst to show that a misrepresentation or omission

that was material was "but-for" material. But-for materiality "requires that the patent would not have issued but for the patent examiner's justifiable reliance on the patentee's misrepresentation or omission." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007). The Federal Circuit has made clear that materiality under Rule 56 does not establish but-for materiality. *Therasense*, 649 F.3d at 1291–94. The key to but-for materiality is that the misrepresentation or omission must affect the issuance of the patent. *Id.*

Relating the two aspects of materiality relevant in this case, a misrepresentation or omission could be material for purposes of Rule 56 because it would establish a *prima facie* case of unpatentability, for example, due to lack of novelty or obviousness, creating a duty for a patentee to disclose it. This may be relevant to the first and second elements of *Walker Process* fraud. However, a finding of materiality under Rule 56 is not sufficient to establish but-for materiality for purposes of the fourth element of *Walker Process* fraud, because a patentee can overcome a prima facie case of unpatentability and ultimately a valid patent could be issued. *See Therasense*, 649 F.3d at 1294 ("Rule 56 is overly broad because information is considered material even if the information would be rendered irrelevant in light of subsequent argument or explanation by the patentee.").

Both Dr. Matovcik and Mr. Bahr offer opinions on materiality, cumulativeness, and inequitable conduct. As just a few examples, Dr. Matovcik offers the following opinions: (1) a reasonable patent practitioner would have expected that the disclosure of one or more of the alleged prior art references "would have been material to the patent examiner's consideration as to whether to allow claims in the application to proceed to grant, or, alternatively, would consider them likely to form a basis for rejection . . . "; and (2) "a reasonable patent practitioner would know—and advise a pharmaceutical client facing a claim that it infringed the '307 patent is unenforceable for

16

inequitable conduct due to J&J's misconduct before the PTO." Matovcik Report ¶¶ 12, 20, ECF No. 438, attach. 3 at 8. In her reply report, she offers opinions on cumulativeness, stating that she disagrees with Dr. Cryer (J&J's POSA) that "Ochsenkühn would be cumulative over the '908 publication." Matovcik Reply ¶ 75, ECF No. 438, attach. 4 at 26. She goes on to review Ochsenkühn, stating that in that reference, "the patients were given an initial dose of 6 mg/kg body IV followed by 90 mg SC every 8 weeks, i.e., the dosage regimen disclosed in J&J's Phase 3 study. Clinical remission was achieved by Dr. Ochsenkühn's patients, and he hypothesized similar success for the subjects in J&J's clinical study." *Id.* ¶ 124, ECF No. 438, attach. 8 at 40. She concludes, "[a] reasonable patent practitioner would consider these facts relevant to the patentability of the '509 application's claims." *Id.*

Dr. Matovcik also offers an opinion on inequitable conduct and therefore opines on but-for materiality. Matovcik Report ¶ 235, ECF No. 438, attach. 3 at 81–82. She states that "a reasonable patent practitioner would advise a pharmaceutical client facing a claim that it infringed the '307 patent that the '307 patent is unenforceable due to J&J's inequitable conduct before the USPTO, including violations of the duties of candor and disclosure . . . . " *Id.*

As for Dr. Bahr, he also makes findings of materiality. In his opening report he offers his opinion that "the following prior art documents were not disclosed to the patent examiner, and would have been relevant and material to a reasonable patent examiner when considering whether to allow the claims of the application that led to the '307 patent," and he lists the alleged prior art references. Bahr Report ¶ 22, ECF No. 440, attach. 3 at 19. He further opines that "the updated postings on the NCT-236 clinical trial website . . . would have been relevant and material to a reasonable patent examiner." *Id.* ¶ 23, ECF No. 440, attach. 3 at 19–20. He offers the same opinion with respect to submissions and representations made to the FDA—that those would have

17

been "relevant and material to a reasonable patent examiner." *Id.* ¶ 24, ECF No. 440, attach. 3 at 20. In his rebuttal report, he states that his opening report "accurately describes the [alleged prior art studies], as information that 'would have been relevant and material to a reasonable patent examiner when considering whether to allow the claims of the '307 patent' or information that 'would likely have led a reasonable patent examiner to reject the application that issued as the '307 patent.'" Bahr Rebuttal ¶ 82, ECF No. 440, attach. 4 at 48. He further opines that he disagrees with Dr. Cryer that the prior art references are cumulative. *Id.* ¶ 94, ECF No. 440, attach. 4 at 53 (titled "[t]he publications and documents cited in my opening report are not cumulative of the information of record in the '509 application").

## 2. Legal Standards

The law is generally clear that a patent attorney expert or patent examiner expert may testify about general patent practice and procedure before the PTO. *See Sundance*, 550 F.3d 1356, 1363 n.5 (Fed. Cir. 2008); *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, No. CV 07-8108, 2014 WL 12586105, at *9 (C.D. Cal. Jan. 3, 2014) (permitting patent attorney expert to "explain the prosecution of the patents-in-suit but only as to background information and the PTO's procedures"). Less clear is the extent to which a patent expert can opine on materiality for purposes of Rule 56 (including issues related to materiality and cumulativeness), and but-for materiality.

Some courts have held that expert testimony on materiality and cumulativeness is beyond the scope of a patent attorney expert. *Ojmar US, LLC v. Sec. People, Inc.*, No. 16-CV-04948-HSG, 2018 WL 3008872, at *3 (N.D. Cal. June 15, 2018) (citing cases); *Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, No. CIV.A. 08-464, 2010 WL 3907490, at *2 (D. Del. Sept. 21, 2010) (finding that experts in patent cases may not opine whether certain information was

18

material to a pending patent application); *Alfred E. Mann Found. for Sci. Rsch.*, 2014 WL 12586105, at *10 (excluding expert opinions from a patent attorney about materiality, as well as "underlying technical questions involved in determining materiality of the scientific article at issue"); In *Ojmar*, the court specifically disagreed with any cases that have allowed attorney-experts to opine on materiality. 2018 WL 3008872, at *3. The court held that those cases were all not binding on the court, and the expert in *Ojmar* "failed to clarify how [the expert] can testify on materiality and cumulativeness without delving into prior art issues and the technical aspects of [that prior art]." *Id.*

In other cases, courts have held that an attorney expert may offer opinions as a "reasonable patent prosecutor" about "standard behavior of counsel participating in prosecution of a patent." *Deere & Co. v. Kinze Mfg., Inc.*, No. 420cv00389, 2024 WL 1235569, at *7 (S.D. Iowa Feb. 8, 2024). Similarly, courts have allowed an expert in patent examination to opine on "facts underlying the prosecution of the patent in suit, evidence of factual inconsistencies, and a factual explanation regarding what is required to comply with the duty of candor." *Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 07-CV-3770, 2010 WL 11570123, at *10 (D.N.J. May 13, 2010). In *Deere*, the Court found that opinions on "how a reasonable patent prosecutor usually seeks to avoid violating the duty of candor and duty of disclosure set forth by 37 C.F.R. § 1.56" were admissible. 2024 WL 1235569, at *7. As an example from the *Deere* case, the relevant opinions were that: (1) that a reasonable prosecutor overseeing a foreign patent application "would be aware of any statements made to the [foreign patent office] by the foreign patent attorneys and agents who he was managing"; (2) "a reasonable patent prosecutor would also be well aware of the fact that foreign prior art cited by a foreign patent office in connection with a novelty rejection in a related application is highly likely to be material and non-cumulative"; and (3) "best practices in the field

all strongly counsel in favor of submitting any such information to the USPTO and all relevant patent examiners." *Id.* at *8 (internal quotations omitted). The court concluded that these opinions were admissible because they "rel[ied] on non-technical information, including 'best practices' to conclude a reasonable patent prosecutor . . . would be aware [that certain prior art] was likely material and non-cumulative." *Id.* In evaluating a separate expert, the *Deere* court also permitted an attorney who had experience with patent prosecution to opine on "the normal practices of reasonable patent prosecutors . . . and when his knowledge of these practices provides the foundation for his conclusions about materiality and cumulativeness under § 1.56, he may opine on those issues." *Id.* at 9. But he was not permitted to present any technical analysis, and to the extent his opinions "rel[ied] entirely on the analysis and conclusions of a technical expert" the court determined "such opinions should be presented by the technical expert." *Id.*

Rules about when law experts may offer opinions about materiality are not absolute and may depend on the context they are offered. *See Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123, 2008 WL 2037732, at *3 (N.D. Cal. May 12, 2008). "Some issues of materiality may be so independent of scientific complexity that even patent lawyers can understand them." *Id.* In *Therasense*, the court explained:

> [i]f, for example, a inventor swears in a later application that a given formula was always true, he would normally be obligated to reveal that he had sworn in an earlier separate application that the same formula was never true. When the contradiction is manifest, scientists are not needed to explain it. On the other hand, if scientists are needed to explain or set up the contradiction, then mere lawyers should refrain from purporting to explain the science part.

*Id.* In *Therasense*, the contradiction involved two interpretations of a single sentence and whether the interpretations contradicted one another. *Id.* The court held that the contradiction could be "understood without the resort to science" and "lawyers skilled in practice before the PTO and familiar with how the duty of candor works in practice" could "opine on whether both should have

20

been revealed to the PTO." *Id.* However, "lawyer witnesses . . . should stop short of trying to explain the underlying science." *Id.*

Similarly, some courts have held that testimony about whether information is material or "important" to a reasonable examiner is admissible. *Holmes Grp., Inc. v. RPS Prods., Inc.*, No. CIV.A. 03-40146, 2010 WL 7867756, at *5 (D. Mass. June 25, 2010). In *Holmes*, the Court explained:

> Whether information is material turns on an analysis of whether there is a substantial likelihood that an objectively reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent. If [the expert] can shed light on what a reasonable examiner would have considered important, [her] testimony is admissible. She may, therefore, testify as to how patent practitioners generally interact with the patent office and whether plaintiff's conduct was out-of-the-ordinary or contrary to the expectations of a reasonable patent examiner. She may also testify as to and explain the patenting process.

*Id.* (internal citations and quotations omitted, alterations in original).

While courts have reached differing conclusions about the extent to which an attorney-expert can opine on materiality and cumulativeness, the majority of cases hold that an expert may not offer an ultimate opinion about what conclusion to reach on the issue of inequitable conduct or but-for materiality. *Alfred E. Mann Found. for Sci. Rsch.*, 2014 WL 12586105, at *10 (excluding testimony about "what conclusion to reach on the issue of inequitable conduct, including any opinions as to breach of the duty of disclosure, [and] intent to deceive"); *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-CV-03424, 2019 WL 4492802, at *16 (N.D. Cal. Sept. 18, 2019), *order vacated in part on reconsideration*, No. 15-CV-03424, 2020 WL 127612 (N.D. Cal. Jan. 10, 2020) (finding expert "may testify regarding the sort of information that patent examiners consider and what a patent examiner might look for in determining whether to reach a particular outcome," but cannot offer "opinions regarding whether particular information

21

was but-for material to any decision regarding the patents at issue in this case"); *Holmes Grp., Inc.*, 2010 WL 7867756, at *6 (finding that although a patent attorney expert could opine about whether a reasonable patent examiner would have considered information to be material, she could not testify as to the conclusion that a plaintiff engaged in inequitable conduct).

### 3. *Dr. Matovcik & Mr. Bahr's Opinions*

Throughout their reports, Dr. Matovcik and Mr. Bahr offer opinions related to materiality—purportedly under both Rule 56 and the but-for standard—cumulativeness, and inequitable conduct. Based on the above analysis, the Court finds it appropriate to set the following guidelines on Dr. Matovcik and Mr. Bahr's opinions related to materiality and cumulativeness.

First, opinions from Dr. Matovcik and Mr. Bahr about general patent practice and procedure are admissible. Their opinions about PTO practice, how the Manual for Patent Examination Procedure ("MPEP") guides examiners and applicants, and behavior and expectations involved in practicing before the PTO are relevant to the issues in this case. Because Dr. Matovcik and Mr. Bahr are qualified to offer those opinions, and because lay jurors are generally unfamiliar with practicing before the PTO, their testimony will be helpful to the jury.

Second, Dr. Matovcik and Mr. Bahr's opinions about materiality under Rule 56 and cumulativeness are generally admissible. Their opinions are admissible only to the extent they do not wade into technical analyses of the prior art, and only to the extent they stay within the framework of a "reasonable patent attorney" and "reasonable patent examiner." Dr. Matovcik may offer opinions as a reasonable patent attorney, about the standard behavior of attorneys participating in the prosecution of a patent, and "how a reasonable patent prosecutor usually seeks to avoid violating the duty of candor and duty of disclosure[.]" *See Deere*, 2024 WL 1235569, at *7. Her opinions must not wade into technical analyses of the prior art. If she can explain a

22

contradiction "without the resort to science," as a lawyer "skilled in practice before the PTO and familiar with how the duty of candor works in practice," she may opine on what should have been revealed to the PTO.[7] *See Therasense*, 2008 WL 2037732, at *4. Mr. Bahr may offer opinions about what is "important" to a reasonable examiner, "how patent practitioners generally interact with the patent office and whether [a given individual's] conduct was out-of-the-ordinary or contrary to the expectations of a reasonable patent examiner." *See Holmes*, 2010 WL 7867756, at *5. Similarly, he can offer opinions about "facts underlying the prosecution of the patent in suit, evidence of factual inconsistencies, and a factual explanation regarding what is required to comply with the duty of candor." *Eli Lilly & Co.*, 2010 WL 11570123, at *10.

Third, neither Dr. Matovcik nor Mr. Bahr may opine on but-for materiality or ultimate conclusions as to inequitable conduct. CareFirst argues that Dr. Matovcik opines on but-for materiality "by explaining how a reasonable patent practitioner would assess the impact of the relevant disclosures on patent issuance" by "conduct[ing] a detailed analysis on whether a reasonable patent attorney would conclude that the withheld materials render the '307 patent's claims obvious . . . or anticipated[.]" ECF No. 554 at 13–14. As explained above, she may not offer her invalidity opinions, so to the extent she uses those to opine on but-for materiality, that opinion would be unreliable and inadmissible.[8]

Even if Dr. Matovcik did purport to offer a proper opinion on but-for materiality, the Court

---

[7] This is not to say, as J&J argues, that CareFirst can characterize this matter as one involving "simple technology." *See* ECF No. 602 at 11. It is not. But, if Dr. Matovcik can explain a contradiction "without the resort to science," she may do so. *See Therasense*, 2008 WL 2037732, at *4.

[8] The Court notes that Dr. Matovcik is not always clear about what standard of materiality she is using. While many or most of her opinions appear to be directed to materiality under Rule 56, she does also appear to offer an opinion on but-for materiality. *See e.g.*, Matovcik Report ¶ 12, ECF No. 438, attach. 3 at 8 (opining that "a reasonable patent practitioner . . . would have expected that the disclosure of one or more of the following documents would have been material to the patent examiner's consideration" to grant or deny the patent). Dr. Matovcik does not appear to define but-for materiality in her report.

finds that opinion would go beyond her expertise and what the case law allows from a patent attorney. *See Alfred E. Mann Found. for Sci. Rsch.*, 2014 WL 12586105, at *10 (attorney expert may not "testify about what conclusion to reach on the issue of inequitable conduct, including any opinions as to breach of the duty of disclosure, intent to deceive, or materiality"); *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-CV-03424, 2019 WL 4492802, at *16 (N.D. Cal. Sept. 18, 2019), *order vacated in part on reconsideration*, No. 15-CV-03424, 2020 WL 127612 (N.D. Cal. Jan. 10, 2020) (finding attorney expert cannot offer "opinions regarding whether particular information was but-for material to any decision regarding the patents at issue in this case").

Ultimately, Dr. Matovcik and Mr. Bahr's opinions about PTO practice and procedure are admissible. The remainder of their opinions, while admissible in some contexts, may be inadmissible in others. Opinions regarding Rule 56 materiality and cumulativeness that do not wade into a technical analysis and are within their expertise as a reasonable patent attorney or reasonable patent examiner are admissible. Their testimony on these issues should be closely policed at trial to ensure they do not provide improper opinions. In any context, their opinions on but-for materiality and inequitable conduct are inadmissible.

### iv.    Claim Construction

J&J also argues that Mr. Bahr offers an opinion on claim construction. ECF No. 440 at 20–24. In doing so, J&J contends that Mr. Bahr engages in a technical analysis that requires the perspective of a person of ordinary skill in the art who has expertise in inflammatory bowel disease.[9] *Id.* In response, CareFirst denies that Mr. Bahr conducts a technical anticipation analysis or claim construction analysis and instead argues that his opinions explain to the jury how claims are interpreted by the PTO. ECF No. 551 at 24.

---

[9] J&J does not argue that Dr. Matovcik provides any improper opinion on claim construction.

An expert must have ordinary skill in the art to offer testimony regarding claim construction. *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1376–77 (Fed. Cir. 2022); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]"). Absent that skill, "the witness' opinions are neither relevant nor reliable." *Kyocera*, 22 F.4th at 1377.

Mr. Bahr appears to offer an opinion on claim construction. Bahr Report ¶¶ 215–20, ECF No. 440, attach. 3 at 118–21 ("In my opinion . . . an examiner following this MPEP instruction and the claim interpretation training provided by the USPTO would have applied prior art to the limitations of claim 1 of the '509 application as follows . . . ."). Specifically, for example, paragraph 217 of his report offers the following opinion:

> [t]he limitation "administering to the subject a pharmaceutical composition comprising a clinically proven safe and clinically proven effective amount of an anti-IL-12/IL23p40 antibody" would be met by administering an effective amount of a clinically proven safe anti-IL-12/IL-23p40 antibody such as ustekinumab. The phrase "clinically proven effective" read in light of the specification requires no more than an amount administered to a subject for a time sufficient to induce an improvement in at least one indicator that reflects the severity of the subject's ulcerative colitis, and would be met by an amount administered to a subject for a time sufficient to meet any of the alternatives claimed in the measure of response to treatment limitation.

*Id.* ¶ 217, ECF No. 440, attach. 3 at 119. Mr. Bahr admits in his rebuttal report that he is engaging in claim construction. Bahr Rebuttal ¶¶ 39–40, ECF No. 440, attach. 4 at 22 ("My opening report at ¶¶ 215 through 220 explains how the limitations of claim 1 of the '307 patent would be interpreted during the patent examination process.").

Mr. Bahr cannot offer an opinion about how claim 1 of the '307 would be construed, or how the prior art would apply to limitations of claim 1 of the '509 application. That opinion

necessarily involves a technical analysis of the prior art—and does so here. Although CareFirst argues that Mr. Bahr is simply explaining how claims are interpreted by the PTO, he is engaging in a technical analysis to offer that explanation. Under *Kyocera*, that type of analysis from Mr. Bahr is "neither relevant nor reliable." *See Kyocera*, 22 F.4th at 1377. Mr. Bahr can explain how the PTO interprets claims, in the general sense from the perspective of a reasonable patent examiner. For example, he can explain that "the MPEP instructs examiners to apply a 'broadest reasonable interpretation' or 'broadest reasonable interpretation consistent with the specification' standard when interpreting the claims of a pending application." Bahr Rebuttal, ¶ 39, ECF No. 440, attach. 4 at 22. But he cannot go on to interpret the specific claims of the '307 patent because he does not have ordinary skill in the art. Accordingly, Mr. Bahr's opinions that construe the claims of the '307 patent are not admissible.

### C. Dr. Matovcik & Mr. Bahr's Opinions About PTO Duties

J&J argues that both Dr. Matovcik and Mr. Bahr offer certain opinions about duties patent prosecutors have when interacting with the PTO, and that those opinions rest on incorrect statements of law, rendering them unreliable. ECF No. 438 at 35–36 (Matovcik); ECF No. 440 at 35–36 (Bahr). These opinions include: (1) Dr. Matovcik and Mr. Bahr suggesting through their opinions that there is a duty to conduct a search for prior art, and (2) Mr. Bahr opining that specific individuals prosecuting the application leading to the '307 patent breached duties to the PTO.

#### i. A Duty to Search for Prior Art or Conduct a Reasonable Inquiry

J&J argues that Dr. Matovcik offers the opinion that Mr. Dichter, a prosecutor for the '307 patent, "failed to conduct a reasonable inquiry" to confirm his statement that prior to the present invention, no studies had been conducted with ustekinumab for ulcerative colitis, was correct. ECF No. 438 at 35–36. J&J argues this opinion must be excluded as unreliable, because as a matter of

26

law, there is no general duty to conduct a prior art search. *Id.* In response, CareFirst agrees with the general premise that a patent applicant does not have an obligation to search for prior art but argues that "a duty arose when Mr. Dichter *affirmatively chose to make an assertion about the absence of prior art* to the PTO." ECF No. 554 at 25–26 (emphasis in original). They argue that there is no basis to exclude this opinion, and it is consistent with the law and Dr. Matovcik's experience. *Id.* at 26. As for Mr. Bahr, J&J argues he commits the same error as Dr. Matovcik. ECF No. 440 at 35–36. And CareFirst offers the same argument in response—that by certifying his factual assertions to the PTO were true, Mr. Bahr had a duty to conduct a reasonable inquiry to confirm that his statements to the PTO were in fact accurate. ECF No. 551 at 25.

It is undisputed that a patent applicant has "no general duty to conduct a prior art search," and accordingly "no duty to disclose art of which an applicant is unaware." *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs.*, 394 F.3d 1348, 1351 n.4 (Fed. Cir. 2005). "A requirement that an applicant disclose art of which the applicant should have been aware overlooks the intent element[.]" *Frazier v. Roessel Cine Photo Tech, Inc.*, 417 F.3d 1230, 1238 (Fed. Cir. 2005).

J&J points to the following statements in Dr. Matovcik's report to argue that she offers an opinion that there is a duty to search for prior art:

> 233.    In the '509 Application, J&J—through patent attorney Eric Dichter—stated that [p]rior to the present invention, no studies had been conducted with ustekinumab for UC[.] This is a factual statement.
>
> 267.    Therefore, disclosures in Ochsenkühn (January 2018), Ochsenkühn (May 2018), Kolios (2018), and Afonso (2017) are "inconsistent with, a position the applicant [took] in . . . [a]sserting an argument of patentability.
>
> 268.    To the extent a jury finds that Mr. Dichter knew that such a statement was wrong or failed to conduct a reasonable inquiry to confirm it was correct, such conduct would violate the duty of candor[.]

Matovcik Report ¶¶ 233, 267, 268, ECF No. 438, attach. 3 at 80, 81. CareFirst directs the Court

to read the opinions in context. This includes her opinion in paragraph 232 that "a reasonable patent practitioner would know that to the extent any factual statements are made to the USPTO, any party making such a factual representation to the USPTO has a duty to ensure that such statements are accurate, pursuant to their duty of candor." *Id.* ¶ 232, ECF No. 438, attach. 3 at 80. CareFirst further points to Dr. Matovcik's statement in her rebuttal report that a duty of reasonable inquiry arose under 37 C.F.R. § 11.18 once an affirmative statement was made to the PTO. In her rebuttal report, Dr. Matovcik explains:

> This regulation requires a patent applicant to certify that he or she has conducted an inquiry "reasonable under the circumstances" to confirm, among other things, that "[t]he allegations and other factual contentions have evidentiary or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." A reasonable inquiry in the circumstances of filing a patent application directed to a new indication for Stelara would include literature searches regarding the state of the science on that purported inventive use.

Matovcik Rebuttal ¶ 22, ECF No. 438, attach. 4 at 10. CareFirst contends that Dr. Matovcik does not suggest or opine that there is a duty to search for prior art. Rather, her opinion is that there is a duty to confirm that statements to the PTO have evidentiary support after a reasonable inquiry.

As for Mr. Bahr, J&J points to his opinion that "[t]he specification of the '509 application states—Prior to the present invention, no studies had been conducted with ustekinumab for UC . . ." Bahr Report ¶ 271, ECF No. 440, attach. 3 at 152. J&J then points to Mr. Bahr's opinion that:

> it would have been a violation of the certification requirements of 37 C.F.R. § 11.18(b), if the statement in the specification that "[p]rior to the present invention, no studies had been conducted with ustekinumab for UC" was made without having conducted a reasonable inquiry or investigation into its factual basis: i.e., into whether any studies with ustekinumab for ulcerative colitis actually had been conducted prior to the present invention.

*Id.* ¶ 274, ECF No. 440, attach. 3 at 153.

Both Dr. Matovcik and Mr. Bahr's opinions are admissible. They are offering their

opinions in the context of the requirements under 37 C.F.R. § 11.18, requiring that a patent applicant certify they have conducted a reasonable inquiry to confirm their factual contentions have evidentiary support. *See Eli Lilly & Co.*, 2010 WL 11570123, at *10 (permitting expert testimony about "facts underlying the prosecution of the patent in suit, evidence of factual inconsistencies, and a factual explanation regarding what is required to comply with the duty of candor"). To the extent CareFirst offers the experts' opinions on this issue, it should be clear that the opinions are based on a patent applicant's duty to ensure factual statements to the PTO are accurate—*not* based on a duty to search for prior art. The opinions are, of course, subject to "traditional and appropriate means of attacking shaky but admissible evidence[,]" including "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). Dr. Matovcik and Mr. Bahr's opinions will not be excluded on this ground, and their testimony about the requirements of 37 C.F.R. § 11.18 is admissible.

### ii. Opinions Certain Individuals Breached a Duty to the PTO

J&J also argues that Mr. Bahr offers two improper opinions about certain individuals breaching duties to the PTO.[10] ECF No. 440 at 34–35. First, they argue Mr. Bahr improperly opines that specific individuals breached their duty of disclosure by failing to disclose certain documents to the PTO. *Id.* Second, they argue that Mr. Bahr improperly opines that Mr. Dichter's actions, in failing to conduct a reasonable inquiry to confirm his statements to the PTO were accurate, would have violated 37 C.F.R. § 11.18(b). *Id.* J&J contends these opinions are not the proper subject of testimony because they usurp the jury's role to determine whether there was a breach. *Id.* In response, CareFirst contends that Mr. Bahr properly frames his opinions in the form

---

[10] J&J does not challenge any of Dr. Matovcik's opinions on this ground.

of a hypothetical. ECF No. 551 at 25–26. They offer that, if Mr. Bahr's report deviates from this framing, he will not do so at trial. *Id.*

Generally, experts are not permitted to offer opinions about what conclusion to reach about a breach of the duty of disclosure. *See Alfred E. Mann Found. for Sci. Rsch.*, 2014 WL 12586105, at *10 (excluding expert opinions about a breach of the duty of disclosure) (citing cases); *PacTool Int'l Ltd. v. Kett Tool Co.*, No. C06-5367, 2012 WL 13686, at *2 (W.D. Wash. Jan. 4, 2012) (excluding expert opinions that offered the clear legal conclusion that an individual violated the duty of disclosure); *Deere*, 2024 WL 1235569, at *7 (distinguishing between admissible opinions involving "how a reasonable patent prosecutor usually seeks to avoid violating the duty of candor and duty of disclosure" and inadmissible opinions concluding that an individual failed to satisfy the duty of disclosure).

J&J points to two instances in Mr. Bahr's report where he offers improper opinions about individuals breaching duties to the PTO. First, J&J points to paragraph 27 of Mr. Bahr's report, where he offers the following opinion:

> [i]n my opinion, Mr. Dichter breached his duty of disclosure by, *inter alia*, failing to disclose J&J-Janssen's updated postings on the NCT-236 clinical trial website and J&J Janssen's submissions to FDA regarding the clinical trial of ustekinumab [sic] to treat ulcerative colitis to the USPTO, and at least Drs. Marano, Strauss, and O'Brien breached their duty of disclosure by, inter alia, failing to disclose J&J-Janssen's submissions to FDA regarding the clinical trial of ustekinumab [sic] to treat ulcerative colitis, unless disclosed to Mr. Dichter for submission to the USPTO.

Bahr Report ¶ 27, ECF No. 440, attach. 3 at 21–22. Second, J&J points to paragraph 274 of Mr. Bahr's report, stating:

> [i]n my opinion, it would have been a violation of the certification requirements of 37 C.F.R. § 11.18(b), if the statement in the specification that "[p]rior to the present invention, no studies had been conducted with ustekinumab for UC" was made without having conducted a reasonable inquiry or investigation into its factual basis: *i.e.*, into whether any studies with ustekinumab for ulcerative colitis actually

had been conducted prior to the present invention.

*Id.* ¶ 274, ECF No. 440, attach. 3 at 153.

Mr. Bahr's first opinion is not admissible. It clearly tells the jury what conclusion to reach about a breach of a duty to the PTO, which is not the proper subject of expert testimony. His second opinion, however, is admissible. That opinion is properly framed as a hypothetical relying on factual assertions and does not tell the jury what conclusion to reach. Accordingly, his first opinion that Mr. Dichter breached a duty to the PTO is inadmissible, but his second opinion is a proper hypothetical and is admissible.

### D. *Dr. Matovcik's Opinions about What a Reasonable Patent Practitioner Knew or Should Have Known*

J&J also argues that Dr. Matovcik's opinions about what a reasonable patent practitioner knew or "should have known" are unreliable and irrelevant because they do not satisfy the intent requirement following the Federal Circuit's decision in *Therasense*. ECF No. 438 at 33. In response, CareFirst argues that Dr. Matovcik's opinions are consistent with *Therasense*, and her opinions are "relevant to the Rule 56 question—not intent or actual knowledge—which establishes a duty to submit known, material prior art to the PTO." ECF No. 554 at 24. CareFirst contends that Dr. Matovcik appropriately leaves the knowledge determination to the jury. *Id.* Finally, CareFirst offers that if the phrase "on notice of" is confusing to the jury, they will instruct Dr. Matovcik to use "known" instead. *Id.* at 24–25.

Pursuant to the Federal Circuit's decision in *Therasense*, specific intent to deceive requires "that applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." 649 F.3d 1276, 1290 (Fed. Cir. 2011). A specific intent to deceive cannot be established by demonstrating the "applicant *knew* of a reference, *should have known* of its materiality, and decided not to submit it to the PTO[.]" *Id.* (emphasis added). "Because direct

evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Id.* (citation omitted). A "specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Id.* (citation and quotations omitted).

J&J cites several paragraphs to Dr. Matovcik's report where she purports to offer opinions about what a reasonable patent practitioner "would have expected, known, or should have known." ECF No. 438 at 34 (citing Matovcik Report ¶¶ 11–13, 15, 17, 20, ECF No. 438, attach. 3 at 7–11). For example, Dr. Matovcik opines that if the jury finds that people "substantively involved in the application that led to the '307 patent *were aware of or on notice of* and intentionally withheld material information . . . a reasonable patent practitioner would know . . . the '307 patent is unenforceable for inequitable conduct." Matovcik Report ¶ 20, ECF No. 438, attach. 3 at 11.

This example, and others like it, are inadmissible for two reasons. First, given the Court's rulings in this opinion, Dr. Matovcik cannot offer technical analyses of the specific prior art, or ultimate conclusions of inequitable conduct. *See supra*, Section II.B. So, her opinions concluding that a reasonable practitioner would know that the patent was unenforceable for inequitable conduct are already limited. Second, to the extent that she can offer her opinions without concluding inequitable conduct occurred, opinions about what a reasonable patent practitioner "should have known" are not admissible because they rely on an improper standard. The only relevant inquiry for a specific intent to deceive under *Therasense* is that the applicant "knew of the reference, knew that it was material, and made a deliberate decision to withhold it." 649 F.3d at 1290. Thus, for example, J&J takes issue with Dr. Matovcik offering the opinion that a "reasonable patent attorney 'would or should have known' that the withheld materials are non-duplicative prior art." ECF No. 438 at 34; ECF No. 602 at 19–20. Pursuant to the rulings in this opinion, she cannot

offer that direct opinion. But so long as she does not wade into a technical analysis, she can offer opinions about what a reasonable patent attorney would find relevant, and explain why, pursuant to PTO practice and procedure. Those opinions would help the jury consider indirect and circumstantial evidence about intent.

Similarly, Dr. Matovcik's report uses the language "was aware of or on notice of" in discussing duties to the PTO. She offers the opinion that "a reasonable patent practitioner would know that to the extent the prosecuting attorney, the inventors, or anyone substantively involved in the preparation of or prosecution of the application that led to the '307 patent *was aware of or on notice of*" the alleged prior art, "they had an affirmative duty to disclose them to the PTO." Matovcik Report ¶ 14, ECF No. 438, attach. 3 at 9. Being "aware of" or "on notice of" is not the relevant inquiry. That opinion could confuse the jury to believe that awareness is sufficient to establish intent. CareFirst suggests that if the Court finds the phrase "on notice of" potentially confusing, Dr. Matovcik will use "known" rather than "on notice of" with the jury. ECF No. 554 at 25. In its reply, J&J did not address CareFirst's suggestion. *See* ECF No. 602. The Court finds Dr. Matovcik's usage of "known" versus "on notice of" is a sufficient remedy to alleviate J&J's concern.

Accordingly, Dr. Matovcik's opinions stating what a reasonable patent practitioner should have known are not admissible but she may offer opinions about what a reasonable patent practitioner would find relevant, and why, pursuant to PTO practice and procedure. Further, in offering her opinions, she should use the phrase "known" instead of "on notice of" during trial. This ensures she does not violate *Therasense* by suggesting awareness is sufficient to establish intent.

## III. CONCLUSION

For the reasons explained above, J&J's Motion to Exclude Dr. Matovcik, ECF No. 437, is **GRANTED in PART and DENIED in PART**, and J&J's Motion to Exclude Mr. Bahr, ECF No. 439, is **GRANTED in PART and DENIED in PART**.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 23, 2025