# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**CAREFIRST OF MARYLAND, INC.,** *et al.*, **on behalf of themselves and all others similarly situated,**

     **Plaintiffs,**

     **v.**

**JOHNSON & JOHNSON and JANSSEN BIOTECH, INC.,**

     **Defendants.**

**Case No. 2:23cv629**

## OPINION & ORDER

This is an antitrust action filed by Plaintiffs Carefirst of Maryland, Inc., Group Hospitalization and Medical Services Inc., and Carefirst Bluechoice Inc. (collectively, "CareFirst") alleging that Defendants Johnson & Johnson and Janssen Biotech, Inc. (collectively, "J&J") used monopoly power to unlawfully delay the introduction of biosimilar competitors for their drug ustekinumab (sold under the brand name "Stelara"). CareFirst alleges J&J did so by: (1) defrauding the United States Patent and Trademark Office to obtain its method-of-use patent ("the '307 patent") that covers the use of ustekinumab to treat ulcerative colitis (*Walker Process* fraud); (2) acquiring a portfolio of biosimilar manufacturing patents from Momenta; and (3) enforcing those patents to delay biosimilar competition from the market.

Presently before the Court is CareFirst's Motion to Exclude the Expert Testimony of Dr. Byron Cryer and Mr. Andrew Hirshfeld, and accompanying memorandum in support. ECF Nos. 445, 446. Therein, CareFirst seeks to exclude Dr. Cryer on the grounds that he misapplies patent law and engages in improper speculation, rendering his opinions unreliable and unhelpful to the jury. *See* ECF No. 446 at 11–31. CareFirst further seeks to exclude Mr. Hirshfeld's opinions to

the extent they rely on Dr. Cryer's opinions. *Id.* at 23–24. J&J filed a memorandum in opposition, ECF No. 537, and CareFirst filed a reply, ECF No. 616  Because CareFirst's reply raised a new issue, with approval from the Court, J&J filed a sur-reply. ECF No. 787. The Court held a hearing on the motion on December 16, 2025. ECF No. 795. Accordingly, the Motion to Exclude is fully briefed and ripe for disposition.

For the reasons explained below, CareFirst's Motion to Exclude, ECF No. 445, is **GRANTED IN PART** and **DENIED IN PART**.

## I. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Under Rule 702, a witness may be qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  The proponent of the expert must demonstrate it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007). Accordingly, the Court is tasked with "a special gatekeeping obligation on the trial judge to ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (cleaned up).

The *reliability* of expert testimony is a "flexible inquiry" that requires the Court to ensure an expert's opinion is "based on scientific, technical, or other specialized *knowledge* and not on

2

belief or speculation." *Id.* (emphasis in original) (quotation omitted). Trial courts have "broad latitude" to determine "reasonable measure of reliability in a particular case," which can "depend on[] the nature of the issue, the expert's particular expertise, and the subject of [the expert's] testimony." *Id.* (alteration in original) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). The *relevancy* of expert testimony depends on whether the opinion "has 'a valid scientific connection to the pertinent inquiry'" to "ensure that the expert helps the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (internal quotations and citation omitted). Ultimately, if an opinion is not relevant to a fact at issue, it must be excluded. *Id.*

While some experts may proffer "[p]urely scientific testimony. . . characterized by its falsifiability or refutability, or testability," other experts may proffer testimony based on their experience, which does not "rely on anything like the scientific method." *Wilson*, 484 F.3d at 274. In those instances, it is a function of the Court's gatekeeping role to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001) (quoting *Kumho Tire Co.*, 526 U.S. at 152). Thus, an experiential expert must still "explain how [his] experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (citation and quotation omitted).

As emphasized by the Fourth Circuit, in cases where expert testimony is challenged on relevance or reliability grounds, the district court's gatekeeping function is "indispensable" and "cannot be overstated." *Id.* at 283–84. However, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg.,*

3

*Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 631 (4th Cir. 2018) (quoting *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013) (per curiam) (unpublished)). "Indeed, *Daubert* itself stressed the importance of the 'conventional devices' of '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' (rather than wholesale exclusion by the trial judge) as 'the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

## II. ANALYSIS

J&J proffers Dr. Cryer, a physician and gastroenterologist, who studies and treats inflammatory bowel disease, including Crohn's disease and ulcerative colitis, as an expert in this matter. ECF No. 537 at 8. Dr. Cryer is a person of ordinary skill in the art ("POSA")—a classification that CareFirst does not dispute. CareFirst seeks to exclude Dr. Cryer's opinions on two subjects. ECF No. 446 at 11–31. First, CareFirst seeks to exclude Dr. Cryer's patent law opinions involving a reasonable expectation of success, obviousness, FDA approval standards, materiality, and anticipation. ECF No. 446 at 11–24. To the extent the Court finds that any of Dr. Cryer's opinions should be excluded, CareFirst also seeks to exclude Mr. Hirshfield's opinions that rely on Dr. Cryer's excluded opinions.[1] *Id.* at 7. Second, CareFirst seeks to exclude Dr. Cryer's opinions about what the PTO examiner considered during the examination of the '307 patent. *Id.* at 24–31. The Court addresses each argument in turn below.

### A. Dr. Cryer's Patent Law Opinions

CareFirst takes issue with Dr. Cryer's opinions related to the '307 patent, and argues that Dr. Cryer misapplied patent law in analyzing: (1) reasonable expectation of success and obviousness; (2) FDA approval standards; (3) materiality; and (4) anticipation. ECF No. 446 at

---

[1] Mr. Hirshfield is J&J's expert on PTO practice and procedure. *See* ECF No. 537 at 8; Hirshfeld Report, ECF No. 456, attach. 3.

11–23. Before addressing CareFirst's individual issues with Dr. Cryer's opinion, the Court finds it appropriate to address the apparent dispute between the parties about whether claim 1 of the '307 patent requires clinical proof of efficacy.

### i. Dispute About the Limitations of Claim 1 of the '307 Patent

Claim 1 of the '307 patent states it is:

> [a] method of treating moderately to severely active ulcerative colitis (UC) in a subject in need thereof, comprising administering to the subject a pharmaceutical composition comprising a *clinically proven safe and clinically proven effective amount of* [ustekinumab] . . . wherein after treating with the antibody, the subject is a responder to treatment by at least one measure of response to treatment selected from the group consisting of: (1) clinical remission based on at least one of the global definition of clinical remission with Mayo score ≤ 2 points with no individual subscore >1 and the US definition of clinical remission with absolute stool number ≤ 3, rectal bleeding subscore of 0 and mayo endoscopy subscore of 0 or 1, (ii) endoscopic healing with a Mayo endoscopy sub-score of 0 or 1, (iii) clinical response based on the Mayo endoscopy subscore, (iv) improvements from baseline in Inflammatory Bowel Disease Questionnaire (IBDQ) score, (v) mucosal healing, (vi) decrease from baseline in Mayo score, and (vii) clinical response as determined by a decrease from baseline in the Mayo score by ≥ 30% and ≥, 3 points and a decrease from baseline in the rectal bleeding subscore ≥ 1 points or a rectal bleeding subscore of 0 or 1.

ECF No. 459, attach. 3 at 64 (emphasis added)

Many of CareFirst's arguments to exclude Dr. Cryer's opinions are based on Dr. Cryer's purported focus on clinical efficacy. ECF No. 446 at 13–18. In response to those arguments, J&J states that "the plain language" of the claims of the '307 patent require efficacy, and that claim 1 requires "a clinically proven safe and clinically proven effective amount" of ustekinumab. ECF No. 537 at 19, 30. J&J explains that Dr. Cryer "took that definition at face value and analyzed that a POSA would not have a reasonable expectation of successfully achieving that limitation—a clinically proven effective treatment—in light of the approval standards of FDA or other agencies." *Id.* at 30.

CareFirst disputes that the claims of the '307 patent require clinical efficacy. *See* ECF No.

5

616. Citing a recent decision by the Federal Circuit in their reply brief—*Bayer Pharma Aktiengesellschaft v. Mylan Pharms. Inc.*, 152 F.4th 1400, 1403 (Fed. Cir. 2025)—CareFirst contends that *Bayer* made clear that "the descriptor 'clinically proven effective' is not a functional claim limitation" ECF No. 616 at 6, 13–15 (referencing "J&J's preferred claim construction"). In their sur-reply, J&J distinguishes *Bayer*, and argues that the '307 patent claims still require some clinical efficacy because they require that the subject achieve one of the specified clinical endpoints. ECF No. 787 at 2–3. This dispute is fleshed out further in the briefing on CareFirst's Motion in Limine No. 3. *See* ECF No. 686 at 17–22; ECF No. 716 at 17–21; ECF No. 745 at 13–17.

At the hearing on this motion, the Court asked the parties whether they are asking the Court to engage in claim construction for the purposes of this motion, or at all in this action. While both CareFirst and J&J both offered quips about whether the other side should want, or need, to engage in claim construction on this limited issue, the parties appeared to agree that claim construction was not necessary in this case.

For the purposes of reviewing Dr. Cryer's opinions, the Court will not address whether "clinically proven effective" is a functional limitation of claim 1 of the '307 patent. To the extent J&J seeks to have Dr. Cryer offer his opinions in that framework, the Court finds that determination is better reserved for the District Judge to resolve through the pending motion in limine, or at trial. The parties do not appear to dispute that, at the very least, even if "clinically proven effective" is not limiting, the '307 patent contains clinical endpoints that require a subject be a "responder to treatment" by achieving one of the specified endpoints. Accordingly, the Court will address Dr. Cryer's opinions in that framework, except to the extent J&J specifically offers the opinions in the context that the '307 patent requires a clinically proven effective amount of ustekinumab.

### ii. Reasonable Expectation of Success and Obviousness

CareFirst argues that Dr. Cryer's opinions related to a reasonable expectation of success and obviousness are contrary to patent law because Dr. Cryer's opinions require conclusive proof of efficacy. ECF No. 446 at 11–16. In response, J&J argues that because the claims of the '307 patent require efficacy, Dr. Cryer properly evaluated whether a person of ordinary skill in the art would have a reasonable expectation of success in achieving the claimed clinical endpoints. ECF No. 537 at 19–24. J&J also argues that Dr. Cryer's efficacy considerations are appropriate given that, from his perspective as a person of ordinary skill in the art, ulcerative colitis is a relapsing and remitting disease with a high placebo response rate. ECF No. 537 at 24–27.

A party seeking to establish obviousness must establish "that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012). Stated differently, "[t]he reasonable expectation of success requirement refers to the likelihood of success in combining references to meet the limitations of the claimed invention." *Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 141 F.4th 1367, 1383 (Fed. Cir. 2025) (quoting *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016)). A *reasonable* expectation of success "does not require certainty" or an "absolute predictability of success." *Immunogen, Inc. v. Vidal*, 653 F. Supp. 3d 258, 298 (E.D. Va. 2023) (quotations and citations omitted). Obviousness, therefore, "cannot be avoided simply by showing some degree of unpredictability in the art." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007).

Efficacy data is not required to establish a reasonable expectation of success. *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1346 (Fed. Cir. 2021) ("a showing of a reasonable

expectation of success in a method of treatment claim need not rely on clinical data (which might, in fact, lead to a finding of anticipation), nor must it include a demonstration of certainty that the treatment would be successful in every instance."). Though not required, courts have found that efficacy data can be helpful and relevant to evaluate whether there a reasonable expectation of success to achieve the claimed invention. *Id.*; *Immunogen*, 653 F. Supp. 3d at 298 (citation omitted) (finding efficacy data helpful but not required to demonstrate a reasonable expectation of success); *Novartis Pharms. Corp. v. West-Ward Pharms. Int'l Ltd.*, 923 F.3d 1051, 1061 (Fed. Cir. 2019) (finding that district court did not err in relying on prior art and expert testimony to find that certain trial data had diminished weight); *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1384–85 (Fed. Cir. 2019) (finding that a lack of data regarding a drug's effect was relevant to the consideration of a reasonable expectation of success).

For example, in *Novartis*, the Federal Circuit found no error where the district court "relied on the prior art and expert testimony to support subsidiary findings[,]" including that "phase I data diminished weight" resulting "from small sample size" and the fact that the studies were "designed to test safety, not efficacy." 923 F.3d at 1061. Similarly, the district court appropriately found it relevant that the alleged prior art studies did not "reveal the total number of [] patients enrolled and that phase II data was not yet available." *Id.* Finally, it was appropriate for the district court to consider the testimony of a person of ordinary skill in the art, "who stated that a person of ordinary skill would not make a determination or reasonable suggestion simply based in isolation upon whether a drug enters phase II, and who did not dispute that more than seventy percent of oncology drugs failed at phase II." *Id.* (internal quotations omitted). Ultimately, the district court's consideration of expert testimony involving efficacy data was relevant in determining a reasonable expectation of success, and the district court properly engaged in fact finding to reach its

8

conclusion that there was no reasonable expectation of success to establish obviousness. *See id.*

CareFirst points to multiple instances in Dr. Cryer's report and deposition testimony where he appears to focus on conclusive proof of efficacy as opposed to a reasonable expectation of success. ECF No. 446 at 13–16. For example, in his report, Dr. Cryer reviews the Ochsenkühn study (an alleged prior art reference), and provides the following conclusion:

> a person of ordinary skill in the art reviewing Ochsenkühn 2018 would not have a reasonable expectation that ustekinumab would work as treatment for ulcerative colitis or achieve the specific clinical end points recited by the '307 patent. It is my opinion that a person of ordinary skill in the art would immediately see serious flaws with this study. These flaws limit any conclusions regarding the efficacy of ustekinumab as a treatment for moderately to severely active ulcerative colitis. At best, I view Ochsenkühn 2018 as hypothesis generating. The abstract does not provide a reasonable expectation that ustekinumab would work to treat moderately to severely active ulcerative colitis.

Cryer Report ¶ 202, ECF No. 456, attach. 1 at 83. Dr. Cryer goes on to detail the flaws he finds in the Ochsenkühn study, including that it involved an insufficient sample size, included six subjects in remission, did not include a placebo or double-blind control, and did not include a washout period. *Id.* ¶¶ 202–46, ECF No. 456, attach. 1 at 83–102. Finally, Dr. Cryer opines that even if Ochsenkühn provided some expectation that ustekinumab "could improve an ulcerative colitis patient's condition," it would not disclose or render obvious any of the stated clinical endpoints in claim 1 of the '307 patent. *Id.* ¶¶ 245–55, ECF No. 456, attach. 1 at 102–07. Dr. Cryer offers similar opinions in his report for the other alleged prior art references. *See id.* ¶¶ 201–516, ECF No. 456, attach. 1 at 82–209. At his deposition, Dr. Cryer was asked how he defines his use of the term "reasonable expectation." Cryer Dep. 51:11–25–52:1–4, ECF No. 456, attach. 2 at 10–11. He explained that in his mind, "the authors of the study, the individuals conducting the study have shown that the treatment works . . . in the context of everything I've been provided, looking at this proposed treatment, am I convinced that it works? Does this information that's been

9

presented to me lead me to a reasonable expectation that it works." *Id.*

To the extent J&J seeks to have Dr. Cryer offer the opinion that claim 1 requires clinical efficacy, that issue is reserved for the District Judge to consider in the pending motion in limine or at trial. Independently, regardless of whether claim 1 requires clinical efficacy, Dr. Cryer's general opinions about the alleged prior art references and reasonable expectations of success are admissible because he does not necessarily require conclusive proof of efficacy to establish his opinions. First, although Dr. Cryer initially stated in his deposition that in defining a reasonable expectation of success he considers "am I convinced that it works," he followed that with the statement that he considers whether the "information that's been presented to me lead me to a reasonable expectation that it works." *Id.* Such testimony does not conclusively establish that he is, in effect, requiring conclusive proof of efficacy.

Second, CareFirst argues that Dr. Cryer "faults the prior art references (scientific studies) for having sample sizes that are too small; including subjects who were already in remission pre-study; not using double-blinded or placebo-controlled methodologies; and lacking washout periods" and that such faults "boil down to a complaint that the studies fail to offer 'conclusive proof' that ustekinumab effectively treats UC." ECF No. 446 at 13. However, it is not inherently impermissible for Dr. Cryer to consider these purported flaws as relevant considerations leading to his conclusion that there was no reasonable expectation of success of the '307 patent. *See Novartis Pharms.*, 923 F.3d at 1061; *OSI Pharms.*, 939 F.3d at 1384–85. Thus, while conclusive proof of efficacy is not required, criticisms of the prior art and explanations of what it demonstrates to a person of ordinary skill in the art are relevant in considering whether there is a reasonable expectation of success to achieve the claimed invention.

Ultimately, whether a person of ordinary skill in the art would have a reasonable

10

expectation of success is a question of fact. *Salix Pharms., LTD.*, 98 F.4th 1056, 1061 (Fed. Cir. 2024). It is not this Court's role to determine whether Dr. Cryer's conclusions are "irrefutable or certainly correct." *See Lipitor*, 892 F.3d at 632. Rather, Dr. Cryer's opinions about the effect of the alleged prior art on the reasonable expectation of success of the '307 patent is subject to "the traditional and appropriate means of attacking shaky but admissible evidence" including "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[.]" *See id.* at 632 (quoting *Daubert*, 509 U.S. at 596). Dr. Cryer's opinions on the reasonable expectation of success and obviousness determinations are admissible because they do not rest on an inherently incorrect legal standard, and those opinions are helpful for the jury to consider whether the alleged prior art studies would lead a person of ordinary skill in the art to believe that the prior art renders '307 patent obvious.

### iii.    FDA Approval Standards

Second, CareFirst argues that Dr. Cryer's offers improper opinions that the prior art would be insufficient to secure FDA approval for ustekinumab to treat ulcerative colitis. ECF No. 446 at 16–18. Dr. Cryer also contrasts the prior art references with FDA clinical trial standards, and the standards J&J's used in its clinical trial to secure FDA approval for the use of ustekinumab in treating ulcerative colitis.[2] They argue that analysis will mislead the jury into believing that the prior art references should be afforded less weight because J&J could not seek FDA approval based on the alleged prior art. *Id.* at 17. In response, J&J argues that Dr. Cryer's opinion that the prior art fails to "meet the requirements of the U.S. FDA" is directly related to the patentability of claim 1 of the '307 patent, which requires a "clinically proven safe and clinically proven effective

---

[2] CareFirst refers to J&J's direct-to-phase 3 clinical trial studying the use of ustekinumab to treat ulcerative colitis as NCT-236. *See* ECF No. 446 at 17. J&J and Dr. Cryer refer to the same trial as the UNIFI clinical trial. *See* ECF No. 537 at 20; Cryer Report ¶ 214, ECF No. 456, attach. 1 at 88. The Court will use the UNIFI clinical trial here because that is what Dr. Cryer uses.

amount" of ustekinumab. ECF No. 537 at 30. Beyond the consideration of whether claim 1 requires clinical efficacy, J&J contends that Dr. Cryer's FDA and clinical-trial related documents support his reasonable expectation of success and obviousness analysis, including his determination that a person of ordinary skill in the art would recognize the flaws in the prior art, and understand that each flaw is a serious deficiency. *Id.* at 31. J&J additionally argues that Dr. Cryer's testimony about FDA approval standards responds to Dr. Warfield's opinion that a gastroenterologist would anticipate FDA approval based on the prior art. *Id.*

Dr. Cryer's report offers a number of opinions about FDA approval standards and comparisons. For example, in discussing Ochsenkühn, Dr. Cryer opines that it had a small and insufficient sample size. *See* Cryer Report ¶ 203, ECF No. 456, attach. 1 at 83. He goes on to cite FDA guidance, and explain that "the FDA has noted that 'the number of subjects in a clinical trial should always be large enough to provide reliable answers to the questions addressed.'" *Id.* ¶ 206, ECF No. 456 attach. 1 at 84. Dr. Cryer further explains how "p-value" and "power" work, and explains that the UNIFI Study Protocol considered "the minimum number of subjects needed to properly evaluate efficacy using 'statistical power considerations.'" *Id.* ¶¶ 211–12, 214, ECF No. 456, attach. 1 at 87–88. He again compares this to UNIFI, stating that if it "required hundreds of subjects to achieve sufficient 'power' to evaluate whether ustekinumab was an effective treatment, Ochsenkühn 2018 is far below the number of subjects required." *Id.* ¶ 216, ECF No. 456, attach. 1 at 89. Dr. Cryer opines that Ochsenkühn "would also fail to meet the requirements of the U.S. FDA" and explain why that is the case. *Id.* ¶ 219, ECF No. 456, attach. 1 at 90. Dr. Cryer offers similar opinions throughout his report for the other alleged prior art references. *See e.g.*, Cryer Report ¶¶ 225, 233, 236–37, 264, 286–88, 290, 294, 308–12, 315, 318.

First, to the extent Dr. Cryer's FDA opinions offer the conclusion or rely on the assumption

12

that claim 1 of the '307 patent requires clinical efficacy, as explained above, the Court finds that is reserved for the trial judge to determine through the pending motion in limine or at trial. J&J argues that Dr. Cryer's opinions that the prior art fails to meet FDA requirements is relevant to the patentability of claim 1, and Dr. Cryer "took that definition at face value and analyzed that a POSA would not have a reasonable expectation of successfully achieving that limitation—a clinically proven effective treatment—in light of the approval standards of FDA or other agencies." *Id.* at 30. If claim 1 does in fact require clinical proof of efficacy, FDA approval standards may be relevant, and Dr. Cryer's opinions about those standards would likely be helpful to the jury. However, that opinion requires a determination that claim 1 requires a clinically proven effective treatment, and is not appropriate to resolve on this *Daubert* motion.

Second, if Dr. Cryer's opinions are offered from the framework that the '307 patent contains clinical endpoints that require a subject to be a responder to treatment by achieving one of the specified endpoints, many of Dr. Cryer's opinions about whether the prior art references would support FDA approval or how they compare to UNIFI are not relevant, and do not serve to help the jury understand the evidence or to determine a fact in issue. To be clear, as explained above, Dr. Cryer can offer his critiques of the prior art studies, and explain their flaws, including for example, that the sample size is insufficient to give a person of ordinary skill in the art a reasonable expectation of success. *See supra*, Section II.A.ii. For example, Dr. Cryer can offer opinions about "p-value" and "power" to explain what those measures do, and explain why the prior art studies containing these flaws lead to his conclusions about a reasonable expectation of success. However, Dr. Cryer's opinions comparing the prior art studies to UNIFI (*see, e.g.*, Cryer Report ¶¶ 214–216, 225), and his opinions that the prior art study would "fail to meet the requirements of the U.S. FDA" (*see, e.g.*, Cryer Report ¶¶ 219–20) are not admissible because

they are not relevant and do not help the jury assess any issues in this case.

Third, to the extent Dr. Cryer's opinions are in response to Dr. Warfield's opinions that a gastroenterologist would "anticipate [future] FDA approval" based on the prior art, Dr. Cryer's opinions are generally inadmissible because they do not actually respond to Dr. Warfield's opinions and are otherwise not relevant.  J&J and Dr. Cryer misinterpret Dr. Warfield's opinions as concluding that the information and data in each prior art reference indicate that ustekinumab would achieve ultimate FDA approval.  Reading Dr. Warfield's opinions as a whole and in the proper context, he does not offer the opinion that any prior art references are sufficient to achieve FDA approval.  Rather, Dr. Warfield is opining that, based on each alleged prior art reference, he would be willing to use ustekinumab off label for ulcerative colitis patients, and he would expect that one day ustekinumab would be approved for treatment of ulcerative colitis.  *See* Warfield Report ¶¶ 173–96, ECF No. 434, attach. 3 at 52–57; *see also* ECF No. 453 at 12 n.4 (clarifying that Dr. Warfield "does not opine on whether the FDA would have approved ustekinumab for [ulcerative colitis] based on the prior art references alone.").  Dr. Warfield does not go so far as to say that the alleged prior art references are sufficient to achieve FDA approval, so any of Dr. Cryer's opinions offered to respond to that opinion from Dr. Warfield is not relevant.

Accordingly, unless the Court determines that claim 1 of the '307 patent requires clinical efficacy, Dr. Cryer's opinions about FDA approval standards, and comparisons of the prior art to UNIFI are inadmissible because they are not relevant to an issue in this case.

### iv.  Materiality

Third, CareFirst argues that Dr. Cryer's opinion that the alleged prior art references do not establish but-for materiality should be excluded because they conflict with patent law and will confuse the jury.  ECF No. 446 at 18–19.  CareFirst appears to contend that because Dr. Cryer's

14

materiality opinions are based upon his reasonable expectation of success and obviousness opinions—both of which they seek to exclude—the court should exclude his materiality opinions as well. *Id.* at 19. CareFirst also appears to argue that Dr. Cryer was required to first determine whether the prior art gives rise to a prima facie case of unpatentability pursuant to 37 C.F.R. § 1.56. J&J argues in response that Dr. Cryer's obviousness and expectation of success opinions apply the correct legal standard, and his opinions on but-for materiality are reliable and helpful to the jury. ECF No. 537 at 35.

First, as explained above, Dr. Cryer's obviousness and expectation of success opinions are admissible because they do not rest on an incorrect legal standard. *See supra*, Section II.A.ii Second, CareFirst appears to take issue with the fact that Dr. Cryer relied on a but-for materiality standard instead of materiality under 37 C.F.R. § 1.56. The Court does not need to decide whether it is necessary to establish materiality pursuant to 37 C.F.R. § 1.56, because even if some analysis of materiality pursuant to 37 C.F.R. § 1.56 is relevant, but-for materiality is required for *Walker Process* fraud. *See Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007) (noting that but-for materiality "requires that the patent would not have issued but for the patent examiner's justifiable reliance on the patentee's misrepresentation or omission."); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1294 (Fed. Cir. 2011) (declining to adopt a standard of materiality in 37 C.F.R. § 1.56 because under that standard, "information is considered material even if the information would be rendered irrelevant in light of subsequent argument or explanation by the patentee."). Nonetheless, here, Dr. Cryer defines but-for materiality, and offers his opinions from that definition. *See* Cryer Report ¶ 194, ECF No. 456, attach. 1 at 81.

Though CareFirst may disagree with Dr. Cryer about his reasonable expectation of success and obviousness opinions, they are admissible and can serve as a basis for Dr. Cryer's materiality

15

opinions. Accordingly, Dr. Cryer's materiality opinions are admissible.

### v. Anticipation

CareFirst also argues that Dr. Cryer applies the wrong legal standard in his anticipation analysis. ECF No. 446 at 20. They take issue with Dr. Cryer's opinion that "the 2018 CT.gov posting does not anticipate the '307 patent because the posting 'describes a plan for a test with no results' and 'does not say that the tested doses will be effective.'" *Id.* at 21 (citing Cryer Report ¶¶ 369–70, ECF No. 456, attach. 1 at 149). According to CareFirst, Dr. Cryer effectively requires that the CT.gov posting prove that the drug will effectively treat ulcerative colitis by disclosing successful clinical trial results to demonstrate inherent anticipation. CareFirst argues that because anticipation does not require proof of efficacy as a matter of law, the fact that the 2018 CT.gov posting does not include results does not preclude it from inherently anticipating the '307 patent. *Id.* at 22. In response, J&J argues that Dr. Cryer offered his opinions as to why the CT.gov posting does not inherently anticipate the '307 patent, and in doing so, he applies the proper legal standards. ECF No. 537 at 31–33. J&J argues that it is not this Court's role to decide whether that opinion is correct. *Id.*

At the outset, it is not clear to the Court how CareFirst's theory of inherent anticipation is still viable in this action considering the Court's recent summary judgment ruling. *See* ECF No. 794 (Opinion and Order on Summary Judgment, Dec. 15, 2025). CareFirst alleges that "J&J's posting of NCT 236's design, objectives, endpoints, subject population, and methodology inherently anticipates the '307 patent claims." ECF No. 446 at 20. But, in the Court's summary judgment opinion, the District Judge ruled that J&J's alleged omission of the CT.gov posting (and the NCT-236 protocol) could not establish materiality because that information was before the examiner, and accordingly, could not serve as a basis for *Walker Process* fraud liability. ECF No.

16

794 at 32–33. Following that opinion, the only allegedly false representations or omissions remaining for purposes of *Walker Process* fraud liability are: (1) the statement that "[p]rior to the present invention, no studies had been conducted with [U]stekinumab for UC;" and (2) the omission of the Jostins, Granlund, and Ochsenkühn studies. *Id.* at 27–34.

At the hearing on the *Daubert* motions, as best as the Court could understand, CareFirst alleges inherent anticipation is still relevant in this case because had J&J not made the "no prior studies" misrepresentation, or had the patent examiner had Jostins, Granlund, or Ochsenkühn studies, the examiner would not have allowed J&J to overcome the original rejection of the application for the '307 patent for anticipation or obviousness. CareFirst argued that *all* the alleged prior art references—even though they cannot serve as a basis for *Walker Process* fraud liability—are still relevant to determine the state of the science in 2018. CareFirst directed the Court to consider the Federal Circuit's instructions when it remanded *Therasense*—to consider whether the PTO would have considered the prior art unpersuasive in overcoming an obviousness rejection had the allegedly withheld prior art had been disclosed. *See Therasense*, 649 F.3d at 1296. While the Court is skeptical of how CareFirst has framed the remaining issues, that is not for this Court to decide on this *Daubert* motion. Because CareFirst alleges inherent anticipation is still relevant to the issues in this case, the Court addresses Dr. Cryer's anticipation opinions.

All patents must be novel—meaning that a claimed invention is patentable unless "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1). If "each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference" the patent is anticipated, and accordingly invalid because it is not novel. *Verdegaal Bros. v. Union Oil Co.*, 814 F.2d 628, 631 (Fed. Cir.

1987). The single prior art reference must allow a person of ordinary skill in the art "to make the invention without undue experimentation." *Orion IP, LLC v. Hyundai Motor*, 605 F.3d 967, 975 (Fed. Circ. 2010). Anticipation is a question of fact. *Id.*

A finding of anticipation based on inherent disclosure "is appropriate only when the [single prior art] reference discloses prior art that must *necessarily* include the unstated limitation." *United States Water Servs. v. Novozymes A/S*, 843 F.3d 1345, 1348 (Fed. Cir. 2016) (alteration and emphasis in original) (citation omitted). "Inherency, [] may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient." *Id.* (quotation omitted). Accordingly, if there is a dispute of fact involving whether engaging in the prior art method "will necessarily" lead to the claimed invention, the district court should engage in fact finding to determine whether the prior art references inherently anticipate the patent at issue. *Id.* at 1351 (remanding to the district court with instructions to consider conflicting evidence about whether the prior art disclosed conditions that necessarily resulted in the claimed invention).

A prior art reference does not need to demonstrate "proof of efficacy" for it "to be enabling for purposes of anticipation." *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 468 F.3d 1366, 1383 (Fed. Cir. 2006). In *Impax*, the Federal Circuit held that the district court erred in its determination that a prior art reference did not anticipate the claimed drug invention because a person of ordinary skill in the art "would not have recognized [the drug's] effectiveness in treating [the disease]," and "there was no evidence that it would be 'effective.'" *Id.* at 1380, 1383. In reversing the district court, the Federal Circuit determined that efficacy of prior art is not relevant, and "the proper issue is whether the [] patent is enabling in the sense that it described the claimed invention sufficiently to enable a person of ordinary skill in the art to carry out the invention." *Id.* The Federal Circuit

18

remanded the case back to the district court to make a proper factual determination and reach its own conclusion as to whether the prior art reference was enabled for anticipation purposes. *Id.* at 1384 ("[T]he district court must determine whether the [prior art reference] enables a person of ordinary skill in the art to treat ALS with riluzole. Effectiveness in treating ALS does not have to be established.").[3]

> Regarding anticipation, Dr. Cryer provides the following full opinions in his report:

> 369.    It is my opinion that the ClinicalTrials.gov posting fails to disclose a "method of treating moderately to severely active ulcerative colitis (UC) in a subject in need thereof" as required by the claims of the '307 patent. It is also my opinion that the ClinicalTrials.gov posting fails to disclose that the subject with moderately to severely active ulcerative colitis is a responder to treatment to one of the claimed clinical endpoints. '307 patent, claim 1. For the same reasons, the reference does not enable a person of ordinary skill in the art to practice the claimed method achieving these clinical outcomes. This is because the ClinicalTrials.gov reference describes a plan for a test with no results. The reference does not disclose or enable a person of skill in the art to administer ustekinumab as a treatment.

> 370.    The ClinicalTrials.gov posting describes a plan for a Phase III test or experiment, not any results. The reference therefore does not enable a person of ordinary skill in the art to practice the claimed method. The ClinicalTrials.gov reference does not say that the tested doses will be effective. Prior to the UNIFI clinical trial results, no one knew whether Stelara would be a treatment for ulcerative colitis. The UNIFI clinical trial results are contained in the '307 patent, not the ClinicalTrials.gov reference. The ClinicalTrials.gov reference states that the "purpose of the study is to evaluate the efficacy and safety" of ustekinumab with IV and SC administration. ClinicalTrials.gov at Brief Summary. The authors therefore did not know whether ustekinumab would work as a treatment.

Cryer Report ¶¶ 369–70, ECF No. 456, attach. 1 at 149.

> As the Federal Circuit pointed out in *Impax*, regardless of any efficacy considerations, "the

---

[3] The Court does not find *In re Montgomery* to be helpful in determining whether to exclude Dr. Cryer's anticipation opinions. *See In re Montgomery*, 677 F.3d 1375, 1380 (Fed. Cir. 2012). There, the Federal Circuit found that as a matter of fact, "treating stroke-prone patients with ramipril does in fact inevitably treat or prevent stroke." *Id.* Accordingly, a study disclosing the protocol for administering ramipril to stroke-prone patients "inevitably treats or prevents stroke." *Id.* Here, there is no similar undisputed factual finding that would clearly lead to an inevitable conclusion. While *In Re Montgomery* may be helpful in determining the correctness of Dr. Cryer's opinions, at issue here is the admissibility of his opinions.

proper issue is whether the [] patent is enabling in the sense that it described the claimed invention sufficiently to enable a person of ordinary skill in the art to carry out the invention." 468 F.3d at 1380–83 (Fed. Cir. 2006). Dr. Cryer offers opinions about whether the patent is enabling to allow a person of ordinary skill in the art to carry out the invention. *See, e.g.*, Cryer Report ¶¶ 368–71, ECF No. 456, attach. 1 at 149–50 ("A physician cannot intend to treat a subject in the UNIFI study, including by achieving the claimed clinical endpoints, if they do not know whether they are giving a placebo or the study drug.").

The Court cannot conclude that Dr. Cryer's anticipation opinions necessarily require proof of efficacy such that they rely on an improper legal standard and must be excluded. Rather, it appears that there is an issue of fact as to whether ClinicalTrials.gov posting enables the use of ustekinumab as a treatment for UC, rendering the '307 patent inherently anticipated. Dr. Cryer frames his opinion to rely on the fact that "the ClinicalTrials.gov posting fails to disclose a 'method of treating moderately to severely active ulcerative colitis (UC) in a subject in need thereof' as required by the claims of the '307 patent." Cryer Report ¶ 369, ECF No. 456, attach. 1 at 149. Accordingly, it is Dr. Cryer's opinion that because claim 1 requires that the subject respond to treatment through one of the claimed clinical endpoints, a plan with no test results does not anticipate the '307 patent. To form this opinion, Dr. Cryer looks to the results of the UNIFI trial itself to conclude that the claimed method does not "inevitably" or "necessarily" achieve claimed endpoints.

While CareFirst may disagree with Dr. Cryer's opinion, it is not the Court's role to determine whether Dr. Cryer's opinion is correct. Rather than wholesale exclusion, his anticipation opinions are subject to "the traditional and appropriate means of attacking shaky but admissible evidence" including "vigorous cross-examination, presentation of contrary evidence,

and careful instruction on the burden of proof[.]" *See Lipitor*, 892 F.3d at 632 (quoting *Daubert*, 509 U.S. at 596).

### B. Mr. Hirshfeld's Opinions

J&J offers Mr. Hirshfeld as a patent office expert. ECF No. 537 at 8. CareFirst seeks to exclude Mr. Hirshfeld's opinions to the extent they rely on Dr. Cryer's invalidity analyses. ECF No. 446 at 24. CareFirst asks that to the extent the Court excludes Dr. Cryer's opinions, the Court exclude Mr. Hirshfeld's opinions that "rely on the Cryer exclusions as necessary inputs." *Id.* J&J argues that because Dr. Cryer's opinions are proper, the Court should not exclude any opinions from Mr. Hirshfeld.

Here, the Court only finds that Dr. Cryer's opinions about whether the prior art references would support FDA approval and his opinions on how the prior art references compare to UNIFI are inadmissible. Mr. Hirshfeld does not appear to rely on any of these opinions from Dr. Cryer in his report. *See generally*, Hirshfeld Report, ECF No. 456, attach. 3. Rather, relevant here, Mr. Hirshfeld appears to only rely on Dr. Cryer's opinions about materiality. *See e.g.*, *id.* ¶ 213, ECF No. 456, attach. 3 at 107 ("Based on my understanding from Dr. Cryer's technical opinions, I understand that these statements are not material to patentability"). Accordingly, Mr. Hirshfeld's opinions are admissible.

### C. Dr. Cryer's PTO Opinions

CareFirst also argues that Dr. Cryer opinions about what the PTO examiner reviewed and considered during the '307 patent application must be excluded. ECF No. 446 at 24. Specifically, CareFirst takes issue with Dr. Cryer's opinions that: (1) "ClinicalTrials.gov was considered During prosecution" (*see* Cryer Report, ¶ 363, ECF No. 456, attach. 1 at 147 (capitalization normalized)); and (2) "The NCT 236 protocol was considered by the PTO" (*see* Cryer Report, ¶ 491, ECF No.

456, attach. 1 at 197–98 (capitalization normalized)). *See id.* at 24–25.  They contend he is not qualified to offer opinions on this topic, his opinions do not fit the facts of this case, and these opinions engage in impermissible speculation.  *Id.* at 24–31.  In response, J&J contends that Dr. Cryer "reviewed the list of documents considered by the examiner" and what the examiner reviewed does not require expertise in PTO practice, and does not constitute impermissible speculation.  ECF No. 537 at 36.

Since the briefing on this motion concluded, the Court issued its decision on summary judgment. *See* ECF No. 794 (Opinion and Order on Summary Judgment, Dec. 15, 2025).  Therein, the Court found that J&J's omission of the NCT-236 protocol was not material because that information was before the examiner, and accordingly, could not serve as a basis for *Walker Process* fraud liability.  *Id.* at 32–33.  In light of the Court's decision on summary judgment, the Court finds that Dr. Cryer's opinions about what the PTO examiner reviewed and considered during the '307 patent application are moot.  They are not relevant because the Court determined there was no genuine dispute that the examiner had the NCT-236 posting and protocol before him. *See id.*  Accordingly, Dr. Cryer's opinions on this issue are inadmissible because they are not relevant to any issue in the case.

### III. CONCLUSION

For the reasons explained above, CareFirst's Motion to Exclude the Expert Testimony of Dr. Byron Cryer and Mr. Andrew Hirshfeld, ECF No. 445, is **GRANTED IN PART** and **DENIED IN PART**.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 23, 2025