UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CAREFIRST OF MARYLAND, INC.,** *et al.***, on behalf of themselves and all others similarly situated,**

    **Plaintiffs,**

    v.                                      Case No. 2:23cv629

**JOHNSON & JOHNSON and JANSSEN BIOTECH, INC.,**

    **Defendants.**

## OPINION & ORDER

This is an antitrust action filed by Plaintiffs Carefirst of Maryland, Inc., Group Hospitalization and Medical Services Inc., and Carefirst Bluechoice Inc. (collectively, "CareFirst") alleging that Defendants Johnson & Johnson and Janssen Biotech, Inc. (collectively, "J&J") used monopoly power to unlawfully delay the introduction of biosimilar competitors for their drug ustekinumab (sold under the brand name "Stelara"). CareFirst alleges J&J did so by: (1) defrauding the United States Patent and Trademark Office to obtain its method-of-use patent ("the '307 patent") that covers the use of ustekinumab to treat ulcerative colitis (*Walker Process* fraud); (2) acquiring a portfolio of biosimilar manufacturing patents from Momenta; and (3) enforcing those patents to delay biosimilar competition from the market.

Presently before the Court is CareFirst's Motion to Exclude in Part the Testimony of Dr. Sue Lim and an accompanying memorandum in support. ECF Nos. 452, 453. Therein, CareFirst seeks to exclude two of Dr. Lim's three opinions because they are unreliable and unhelpful to the jury, constitute improper speculation, and are not supported by the evidence or Dr. Lim's expertise. ECF No. 453 at 7. J&J filed a memorandum in opposition, ECF No. 539, and CareFirst filed a

reply, ECF No. 617. Accordingly, the Motion is fully briefed and ripe for disposition. For the reasons explained below, CareFirst's Motion to Exclude, ECF No. 452, is **GRANTED**.

## I. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Under Rule 702, a witness may be qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The proponent of the expert must demonstrate it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007). Accordingly, the Court is tasked with "a special gatekeeping obligation on the trial judge to ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (cleaned up).

The *reliability* of expert testimony is a "flexible inquiry" that requires the Court to ensure an expert's opinion is "based on scientific, technical, or other specialized *knowledge* and not on belief or speculation." *Id.* (emphasis in original) (quotation omitted). Trial courts have "broad latitude" to determine "reasonable measure of reliability in a particular case," which can "depend on[] the nature of the issue, the expert's particular expertise, and the subject of [the expert's] testimony." *Id.* (alteration in original) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). The *relevancy* of expert testimony depends on whether the opinion "has 'a valid scientific

2

connection to the pertinent inquiry" to "ensure that the expert helps the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (internal quotations and citation omitted). Ultimately, if an opinion is not relevant to a fact at issue, it must be excluded. *Id.*

While some experts may proffer "[p]urely scientific testimony... characterized by its falsifiability or refutability, or testability," other experts may proffer testimony based on their experience, which does not "rely on anything like the scientific method." *Wilson*, 484 F.3d at 274. In those instances, it is a function of the Court's gatekeeping role to "make certain that an expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001) (quoting *Kumho Tire Co.*, 526 U.S. at 152). Thus, an experiential expert must still "explain how [his] experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (citation and quotation omitted).

As emphasized by the Fourth Circuit, in cases where expert testimony is challenged on relevance or reliability grounds, the district court's gatekeeping function is "indispensable" and "cannot be overstated." *Id.* at 283–84. However, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 631 (4th Cir. 2018) (quoting *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013) (per curiam) (unpublished)). "Indeed, *Daubert* itself stressed the importance of the 'conventional devices' of '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' (rather than wholesale exclusion by the trial judge) as 'the traditional and appropriate means of attacking shaky

3

but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

## II. ANALYSIS

J&J proffers Dr. Sue Lim as "a physician and regulatory professional with extensive experience in biological product and biosimilar development." ECF No. 539 at 7. She is the founder of a consulting firm that provides services to organizations on "biological and biosimilar product development with respect to scientific, policy, and regulatory issues." ECF No. 460, attach. 1 at 4. She has over a decade of experience working for the Food and Drug Administration ("FDA"). *Id.*

J&J proffers Dr. Lim as a rebuttal expert to CareFirst's experts, Dr. Paul Warfield and Dr. Aruna Dontabhaktuni. *See* Lim Rebuttal ¶ 2, 14, ECF No. 460, attach. 1 at 4–5. She provides three opinions. *Id.* ¶¶ 21–171, ECF No. 460, attach. 1 at 6–47. Her first opinion is a rebuttal opinion to Dr. Warfield. *Id.* ¶¶ 21–108, ECF No. 460, attach. 1 at 6–29. Her second and third opinions are rebuttal opinions to Dr. Dontabhaktuni. *Id.* ¶¶ 109–171, ECF No. 460, attach. 1 at 29–47. CareFirst's Motion seeks to exclude Dr. Lim's first and third opinions. ECF No. 453 at 7. The Court addresses each opinion in turn below.

### A. Dr. Lim's First Opinion Responding to CareFirst's Expert Dr. Warfield

Dr. Lim's first opinion is that: "The small observational reports cited by Dr. Warfield are not indicative of phase 3 success, proceeding to phase 3, or FDA approval." Lim Rebuttal ¶¶ 21–108, ECF No. 460, attach. 1 at 6–29 (capitalization normalized). CareFirst argues Dr. Lim's first opinion should be excluded as irrelevant because FDA standards for reviewing clinical trials are not at issue in this case. ECF No. 453 at 10–15. In response, J&J argues that it is CareFirst's expert—Dr. Warfield—who put the likelihood of FDA approval at issue in this matter. ECF No. 539 at 12–13. J&J contends that because Dr. Warfield opened the door by offering his FDA

4

opinions, J&J must be permitted to present rebuttal expert opinions. *Id.*

Dr. Lim offers her first opinion in response to Dr. Warfield's report, and specifically, Dr. Warfield's statements that if he read the alleged prior art references prior to September 24, 2018, he would have expected clinical trials to demonstrate the efficacy of Stelara to treat ulcerative colitis, and he "would have been eager and willing to use ustekinumab off-label for ulcerative colitis patients, if possible, and would have anticipated future FDA approval for use in patients with ulcerative colitis after reading" the various alleged prior art references prior to September 24, 2018." Lim Rebuttal ¶ 21, ECF No. 460, attach. 1 at 6 (citing Warfield Report ¶ 42, ECF No. 434 attach. 3 at 14). Dr. Lim refers to the alleged prior art references cited by Dr. Warfield as "Small Observational Reports," and goes on to explain that she understands Dr. Warfield's claim that the "Small Observational Reports show ustekinumab is 'effective' in treating ulcerative colitis" to imply "that these Small Observational Reports would indicate that ustekinumab would achieve future Phase 3 success and subsequent FDA approval." Lim Rebuttal ¶ 23, ECF No. 460, attach. 1 at 8–9. Dr. Lim disagrees with this purported conclusion from Dr. Warfield. *Id.* ¶ 24, ECF No. 460, attach. 1 at 8. She opines that the Small Observational Reports do not necessarily predict success for a Phase 3 clinical trial, and that in her opinion "the FDA would not have granted approval of ustekinumab to treat patients with ulcerative colitis based on those Small Observational Reports" and the "Small Observational Reports do not meet FDA's standard of substantial evidence of effectiveness or safety." *Id.* Dr. Lim analyzes each Small Observational Report and explains that the reports do not allow one to draw the conclusion that the FDA would have approved ustekinumab for the treatment of ulcerative colitis based on the individual Small Observational Report. *Id.* ¶¶ 53–102, ECF No. 460, attach. 1 at 17–29.

The Court finds that Dr. Lim's opinions about whether the Small Observational Reports

are individually sufficient to support FDA approval should be excluded because they are not relevant to the issues in this case. First, J&J and Dr. Lim misinterpret Dr. Warfield's opinions as concluding that the information and data in each Small Observational Report indicate that ustekinumab would achieve ultimate FDA approval. Reading Dr. Warfield's opinions as a whole and in the proper context, that is not his opinion. Rather, Dr. Warfield is opining that, based on each alleged prior art reference, he would be willing to use ustekinumab off-label for ulcerative colitis patients, and he would expect that one day, ustekinumab would be approved for treatment of ulcerative colitis. *See* Warfield Report ¶¶ 173–196, ECF No. 434, attach. 3 at 52–57; *see also* ECF No. 453 at 12 n.4 (clarifying that Dr. Warfield "does not opine on whether the FDA would have approved ustekinumab for [ulcerative colitis] based on the prior art references alone."). Dr. Warfield does not go so far as to say that the alleged prior art references are sufficient to achieve FDA approval. Accordingly, to the extent Dr. Lim is offering her opinions in response to Dr. Warfield, they are largely irrelevant.

At trial, the Court may limit Dr. Warfield's testimony to ensure he does not overstep and opine that each or any alleged prior art reference provides data to support ultimate FDA approval. Absent such a sweeping opinion from Dr. Warfield, Dr. Lim's first opinion does not help the jury understand the evidence or determine a fact in issue. *See* Fed. R. Evid. 702(a). Her first opinion is not relevant and must be excluded. *See Sardis*, 10 F.4th at 281.

### B. Dr. Lim's Third Opinion Responding to CareFirst's Expert Dr. Dontabhaktuni

Dr. Lim's third opinion is that: "J&J faced substantial uncertainty regarding whether ustekinumab would be effective in treating ulcerative colitis, as defined by the endpoints in NCT 236." Lim Rebuttal ¶¶ 124–71, ECF No. 460, attach. 1 at 34–47 (capitalization normalized). Her opinion is based on her disagreement with Dr. Dontabhaktuni's opinion that J&J would have

expected its NCT 236 phase 3 clinical to succeed. *Id.* ¶ 124, ECF No. 460, attach. 1 at 34. Dr. Lim offers her rebuttal opinion that "there was uncertainty as to whether a Phase 3 trial studying the use of ustekinumab to treat ulcerative colitis would succeed. *Id.* ¶ 124, ECF No. 460, attach. 1 at 34. Dr. Lim supports this opinion by discussing Dr. Dontabhaktuni's improper assumptions, and errors, and overall explains how the design of the protocol demonstrates that J&J faced uncertainty about whether ustekinumab would be effective in treating ulcerative colitis. *Id.* CareFirst seeks to exclude two portions of Dr. Lim's opinions. ECF No. 453 at 15–20. First, CareFirst seeks to exclude any of Dr. Lim's opinions that improperly contain speculation as to J&J's beliefs, knowledge, and motives. *Id.* at 15–17. Second, CareFirst seeks to exclude Dr. Lim's opinions about J&J's probability of technical and regulatory success ("PTRS") and probability of success estimates ("POS"). *Id.* at 17–20.

Since the briefing on this motion concluded, the Court issued its decision on summary judgment. ECF No. 794 (Opinion and Order on Summary Judgment, Dec. 15, 2025). Therein, the Court found that J&J's omission of the NCT 236 Protocol was not material because that information was before the examiner, and accordingly, could not serve as a basis for *Walker Process* fraud liability. *Id.* at 32–33. Subsequently, on December 17, 2025, CareFirst submitted a notice indicating that they no longer plan to call Dr. Dontabhaktuni at trial. ECF No. 498.

In light of these two developments, the Court finds Dr. Lim's third opinion is not relevant to any issue in this case and must be excluded. *See Sardis*, 10 F.4th at 281.

## III. CONCLUSION

For the reasons explained above, CareFirst's Motion to Exclude in Part the Testimony of Dr. Sue Lim, ECF No. 452, is **GRANTED**.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 23, 2025