**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| CAREFIRST OF MARYLAND, INC., GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., CAREFIRST BLUECHOICE, INC., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON & JOHNSON and JANSSEN BIOTECH, INC., <br><br> Defendants. | Case No. 2:23-cv-00629-JKW-LRL <br><br> Judge Jamar K. Walker |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     LEGAL STANDARD.............................................................................................. 4

III.    ARGUMENT ........................................................................................................... 4

        A.      J&J Is Entitled To Summary Judgment On Plaintiffs' Claims Regarding
                The Momenta Transaction Under The Court's Standard........................................ 4

                1.      There Is No Disputed Fact Regarding J&J's Ability To Foresee, At
                        The Time Of The Momenta Acquisition, That The Cell Culture
                        Patents Could Be Used To Obtain Monopoly Power With Respect
                        To Stelara ...................................................................................................... 5

                2.      The Undisputed Evidence Shows That Momenta Was Neither A
                        Potential Competitor Nor Nascent Threat...................................................... 9

        B.      The Court's Summary Judgment Decision Misstates Critical Undisputed
                Facts Regarding The Nature Of Defendants' Privilege Log................................. 12

        C.      The Court Already Determined That The Jostins And Granlund Studies
                Are Not A Part Of Plaintiffs' *Walker Process* Claims ........................................ 18

        D.      There Is No Dispute That Dr. Luis Ralat's Actions Cannot Demonstrate
                Intent To Defraud The PTO .................................................................................. 19

        E.      Plaintiffs Have Not Provided Any Evidence Of Intent To Deceive
                Regarding the Ochsenkühn Abstracts................................................................... 21

IV.     CONCLUSION...................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
  326 F.3d 505 (4th Cir. 2003) .................................................................................................4

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).................................................................................................................9

*Glenn v. Inland Container Corp.*,
  1992 WL 521517 (E.D. Va. May 13, 1992), *aff'd*, 991 F.2d 789 (4th Cir.
  1993) ..........................................................................................................................4, 18, 20

*Inline Packaging LLC v. Graphic Packaging Int'l LLC*,
  962 F.3d 1015 (8th Cir. 2020) .............................................................................................23

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
  383 F.3d 1337 (Fed. Cir. 2004)......................................................................................14, 15

*In re Loestrin 24 Fe Antitrust Litig.*,
  433 F. Supp. 3d 274 (D.R.I. 2019).......................................................................................23

*Lynn v. Monarch Recovery Mgmt., Inc.*,
  953 F. Supp. 2d 612 (D. Md. 2013)..................................................................................4, 21

*Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*,
  230 F.R.D. 398 (D. Md. 2005)...............................................................................................13

*SCM Corp. v. Xerox Corp.*,
  645 F.2d 1195 (2d. Cir. 1981)........................................................................................5, 6, 8

*Sharer v. Tandberg, Inc.*,
  2007 WL 983849 (E.D. Va. Mar. 27, 2007) ........................................................................14

*Therasense, Inc. v. Becton*, *Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011)...........................................................................20, 21, 22, 23

**Other Authorities**

8 *Evidence in Trials at Common Law* § 2291 (McNaughton rev. 1961)................................14, 15

Federal Rule of Civil Procedure 54(b).........................................................................................3, 4

1 *McCormick on Evidence* § 72 (9th ed. 2022) .............................................................................15

Defendants Johnson & Johnson and Janssen Biotech, Inc. (together, "J&J") respectfully submit this Motion for Reconsideration of the Court's December 15, 2025, Summary Judgment Order (the "Order"), ECF No. 794.

## I.    INTRODUCTION

J&J respectfully requests reconsideration of the Court's Summary Judgment Order for five reasons, which individually and collectively bear on critical issues of law, misapprehensions of the undisputed record, and J&J's foundational right to protect its attorney-client privilege:

*First*, with respect to Plaintiffs' challenge to J&J's acquisition of Momenta Pharmaceuticals Inc. ("Momenta"), the Order adopted a legal standard argued by neither side. Even so, accepting the Court's standard for purposes of this Motion, J&J is entitled to summary judgment. The legal standard adopted by the Court requires Plaintiffs to prove not just that J&J acquired Momenta and its patents, but also that (a) J&J could have reasonably foreseen, at acquisition, the future ability to use Momenta's cell culture patents to obtain monopoly power in a relevant antitrust market; and (b) J&J reasonably viewed Momenta as a potential competitor or a nascent threat. Plaintiffs can show neither. As to the first point, Plaintiffs have never offered proof of any nexus between the acquisition and reasonably foreseeable future use of the patents to acquire monopoly power for Stelara. There is no evidence that J&J reasonably foresaw *at the time of the 2020 acquisition* that Momenta's cell culture patents—developed for a biosimilar program Momenta was exiting, and assigned no value in the Momenta acquisition—could be used for any purposes three years later. Let alone the specific purpose required under the Court's standard: obtaining monopoly power for Stelara. And as to the second point, Plaintiffs have never even argued that Momenta was a potential competitor or nascent threat to J&J with respect to Stelara, and certainly have not submitted evidence supporting that proposition. Neither factor turns on the factual disputes identified by the Court in its Order, which relate largely to the timing of J&J's

1

knowledge of the claims of the Momenta cell culture patents.  Because there are no material factual disputes under the Court's standard, the Court should grant reconsideration of its Order and grant summary judgment to J&J with respect to Plaintiffs' claims based on the Momenta acquisition.

*Second*, the Order rests in part upon a misapprehension of the record regarding J&J's privilege log and, contrary to law, would invite jurors to draw negative inferences regarding the content of privileged communications.  And that is precisely what Plaintiffs intend to do.  Key facts on this point are undisputed: Contrary to what the Order states, there is no dispute that J&J's privilege log was created in 2024 for purposes of this litigation—not in 2020 during the Momenta acquisition—and the record contains no 2020 email from Ms. DeFranco's file related to any Momenta patent.  Rather, the email from Ms. DeFranco's file identified in the log entries Plaintiffs cite is dated January 2023, more than two years after the Momenta transaction.  The Court should reconsider its Order to the extent it misapprehends the evidentiary record or permits Plaintiffs to invite jurors to draw impermissible inferences related to the content of privileged communications.

*Third*, the Court should grant summary judgment with respect to any claim based on Jostins and Granlund because they are indisputably not at issue in this case.  When the Court denied Plaintiffs' Motion for Leave to File a Third Amended Complaint, it specifically prevented Plaintiffs from adding these references to the case.  ECF No. 592 at 19-20.  Plaintiffs subsequently confirmed they "will not allege that J&J's withholding of the Jostins [and] Granlund . . . references were (alone or in combination) a separate source or theory of fraud."  ECF No. 718 at 15.  The Court should therefore reconsider its Order and grant summary judgment on claims that purport to rely on this excluded evidence.

*Fourth*, the Order misapprehends the record on the Jostins and Granlund studies. It is undisputed that neither reference is a study "conducted with ustekinumab for UC."  In fact, neither

2

mentions ustekinumab at all. Nonetheless, the Court found a disputed issue of fact regarding whether Dr. Ralat drafted the "no studies" statement with a specific intent to deceive the Patent and Trademark Office ("PTO") based on those references. Specifically, the Court found that a reasonable juror could conclude that Dr. Luis Ralat knew that the statement "no studies had been conducted with ustekinumab for UC" was false based on Jostins and Granlund. But both Jostins and Granlund are meta-analyses of gene expression in IBD patents that do not discuss, in any way, the treatment of ulcerative colitis with ustekinumab. Neither, therefore, can render false the statement that "no studies had been conducted with ustekinumab for UC" or support an inference of intent to deceive. The Court should reconsider its Order and grant summary judgment on Plaintiffs' *Walker Process* claims as to the alleged "no studies" statement to the extent it is based on Jostins and Granlund.

*Fifth*, the Court's conclusion that a reasonable jury could conclude from the evidence that at least one duty-bound employee knew about the Ochsenkühn reference, "*knew about its materiality*, and *decided to withhold it from the patent application and prosecution,*" ECF No. 794 at 38 (emphasis added), is based on a misapprehension of the record. At most, Plaintiffs proffered evidence related to whether certain duty-bound individuals were aware of Ochsenkühn. There is no evidence that any such individuals believed Ochsenkühn was material to patentability and deliberately withheld it from prosecution. Nor does the Order cite any such evidence. The Court should reconsider its Order and grant summary judgment on Plaintiffs' *Walker Process* claims to the extent based on the Ochsenkühn reference.

Defendants do not seek reconsideration lightly. However, Defendants respectfully submit that reconsideration is warranted under Federal Rule of Civil Procedure 54(b) and this Court should grant Defendants' Motion for Summary Judgment.

3

## II.        LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."   In considering whether to revise interlocutory decisions, "district courts in this Circuit have looked to whether movants presented new arguments or evidence, or whether the court has 'obviously misapprehended a party's position or the facts or applicable law.'" *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 619–20 (D. Md. 2013) (citing *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003)).   A "motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension."  *Glenn v. Inland Container Corp.*, 1992 WL 521517, at *1 (E.D. Va. May 13, 1992), *aff'd*, 991 F.2d 789 (4th Cir. 1993).   Reconsideration is within the sound discretion of the trial court.  *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted.").

## III.        ARGUMENT

### A.        J&J Is Entitled To Summary Judgment On Plaintiffs' Claims Regarding The Momenta Transaction Under The Court's Standard.

With respect to the Plaintiffs' claims based on J&J's acquisition of Momenta, the Court held that Plaintiffs' must prove that J&J, by acquiring Momenta, "intended to exclude rivals on some basis other than efficiency."  ECF No. 794 at 40-42.  The Court explained that, under its

4

view of the precedent, Plaintiffs must prove (at a minimum) that, at the time of the Momenta acquisition, it was reasonably foreseeable that the acquisition would permit J&J to obtain monopoly power in a relevant antitrust market. *Id.* In addition, the Court further required the Plaintiffs to prove that "J&J could have reasonably considered Momenta, through its manufacturing patents, to be a potential competitor and therefore a 'nascent threat' to J&J's alleged monopoly power." *Id.* at 43. Critically for this Motion, neither party argued for or applied this legal standard in their motions for summary judgment, *see* ECF No. 443 at 13-14; ECF No. 444 at 32-34, making this Motion the first opportunity to do so.[1]

Reconsideration is appropriate here because J&J is entitled to summary judgment under the Court's standard. Plaintiffs presented no evidence creating a disputed issue of fact with respect to either (a) J&J's ability to foresee the future use of the Momenta cell culture patents to obtain monopoly power, or (b) as part of the reasonable foreseeability analysis, whether J&J viewed Momenta as a whole to be a potential competitor or nascent threat. J&J respectfully submits that the Court's conclusion to the contrary is based on a misapprehension of the record.

### 1. There Is No Disputed Fact Regarding J&J's Ability To Foresee, At The Time Of The Momenta Acquisition, That The Cell Culture Patents Could Be Used To Obtain Monopoly Power With Respect To Stelara

Acquisition of a patent, with the intent to enforce it, is not anticompetitive. *See SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1208-09 (2d. Cir. 1981). Rather, there must be a nexus between such an acquisition and an intended use, reasonably foreseeable at the time of the acquisition, to improperly obtain monopoly power. *Id.* That monopoly power cannot exist at the time of the

---

[1] For the avoidance of doubt, J&J reserves the right to object to the application of this legal standard to Plaintiffs' claims. J&J maintains and preserves its position that its Motion for Summary Judgment described the appropriate legal standard, ECF No. 444 at 33; ECF No. 605 at 17, but is not seeking reconsideration on that basis.

5

acquisition or arise from the acquired patents alone; it must be newly obtained through acquired patents that confer share additive to the acquiror's existing share at the time of acquisition, and it must also be improperly obtained. *Id.* Consistent with these principles, the Court's Order correctly recognized that the mere acquisition of Momenta, including certain cell culture patents in its portfolio, is not sufficient to prove a monopolization claim. ECF No. 794 at 42. Rather, the Court held that, in addition to the acquisition itself, Plaintiffs must also prove (at a minimum) that, at the time of the acquisition, it was reasonably foreseeable that purchasing Momenta would permit J&J to obtain monopoly power in a relevant antitrust market including Stelara. *Id.* That holding requires a nexus between J&J's knowledge at the time of acquisition and a foreseeable future use of the acquired Momenta patents to improperly obtain monopoly power beyond the market share lawfully afforded by the patents themselves. No evidence of such a nexus exists on the undisputed record.[2]

First, Plaintiffs do not and cannot claim that Momenta's patents added anything to J&J's market power with respect to Stelara at the time of the acquisition. The compound patent covering Stelara, U.S. Patent No. 6,902,734 (the "'734 Patent"), did not expire until September 25, 2023. Because J&J acquired Momenta in October 2020, there necessarily cannot have been any effect on market power at the time of the acquisition. That should end the inquiry under the Court's order and result in a grant of summary judgment for J&J on the Momenta claim.

Second, for Plaintiffs' novel theory of patent acquisition liability to hold, Plaintiffs must demonstrate that J&J both (1) intended at the time of the Momenta acquisition to use Momenta's cell culture patents to unlawfully exclude biosimilar competition for Stelara; and (2) had reason to

---

[2]    Nor have Plaintiffs provided any evidence that there was any nexus between J&J's acquisition of Momenta and the only other alleged unlawful conduct in this case, J&J's acquisition of the '307 Patent.

believe that the patents would in fact have that effect.  In other words, mere knowledge of what the patents claimed—even if shown—is not enough.  The second element is critical: J&J cannot have had the requisite intent to monopolize if it could not reasonably foresee that the patents it acquired would be able to exclude biosimilar competition.  Here, because the Momenta cell culture patents claim methods of manufacturing biologic therapies, that means Plaintiffs must show that J&J, at the time of the acquisition, would have known that potential biosimilar manufacturers would likely practice the specific methods covered by those patents to make biosimilars to Stelara.  Defendants submit that reconsideration is warranted, and summary judgment should be granted, because Plaintiffs have not made that showing.

In its Order, the Court found that "on the evidence presented, it would be reasonable for a jury to conclude that J&J would have known a biosimilar manufacturer was likely to use the method at issue in the patent."  ECF No. 794 at 45, n.20.  That finding, however, is based on a misapprehension of the record.  It was Plaintiffs' burden at the summary judgment stage to come forward with evidence based on which a reasonable juror could conclude that J&J would have had such knowledge of biosimilar maker's potential future manufacturing processes.  They did not even attempt to do so.

To the contrary, the only evidence in the record on this point demonstrates that J&J had no way to know that a biosimilar manufacturer was likely to use the methods at issue in the patents.  ██████████████████████████████████████████████████████████  ████████████████████████████████████████████  and that it could not know what processes a biosimilar manufacturer might use.  ECF No. 444 at 14-15, 35-36.  At the time of the acquisition, no biosimilar applicants had even filed for approval to sell a biosimilar Stelara.  *Id.*  Moreover, biosimilar manufacturers keep their processes highly confidential, so at the time of the

7

Momenta transaction there was no way for J&J to discover what processes a potential future biosimilar manufacturer might employ years later. *Id.* at 14-15, 34.

The first biosimilar applicant, Amgen Inc., did not file for approval until November 2022, two years after the Momenta acquisition. *Id.* at 15, 36. ███████████████

████████████████████████████████████████████

██████████████ Only then did J&J file litigation against Amgen on the Momenta cell culture patents. *Id.* ████████████████████████████████

████████████████████████████████████████████

██████████████████████

Plaintiffs rebutted none of this evidence. They presented no evidence that, at the time of the Momenta acquisition, J&J had, or could obtain, any information regarding the manufacturing processes that might be used by potential future applicants for a biosimilar Stelara. Plaintiffs similarly presented no evidence that a biosimilar manufacturer was "likely to use" processes covered by the Momenta cell culture patents. ECF No. 549 at 4-5, 30-31. Nor did they present any evidence that, at the time of the Momenta acquisition, J&J even considered the likelihood of a biosimilar manufacturer using any particular manufacturing process. *Id.*[3]

In short, even viewed in the light most favorable to the non-moving party, the evidence can support only one conclusion: that at the time of the Momenta acquisition in 2020, J&J could not have reasonably foreseen that Momenta's cell culture patents could be used to obtain monopoly power with respect to Stelara, *SCM Corp.*, 645 F.2d at 1208-09, because J&J could not have known

---

[3] Even if such evidence existed (it does not), it would still be insufficient to demonstrate intent to wrongfully acquire monopoly power absent additional evidence that the patents were intended to be used to secure additional market share, at that time, other than what would otherwise be conferred by such patents. *See SCM Corp.*, 645 F.2d at 1208-09.

8

which processes a biosimilar manufacturer might employ to make a biosimilar to Stelara in 2023. Although the Court observed in its Order that J&J had not "sa[id] anything about the probability of a biologic using the methodology at issue," ECF No. 794 at 45, J&J respectfully suggests that is not the proper inquiry. It inverts the burden; a defendant need not, on summary judgment or at trial, prove a negative. Rather, at summary judgment, J&J's burden is merely to identify that Plaintiffs failed to satisfy an essential element of their case under the Court's standard. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). As described above, J&J met that burden. It was Plaintiffs' burden then to come forward with evidence sufficient to create a disputed issue of fact on each essential element, including that J&J could have reasonably foreseen at the time of acquisition that the Momenta cell culture patents could be used to obtain monopoly power with respect to Stelara. *Id.* They failed to do so.

For this reason alone, the Court should reconsider its Order, and grant summary judgment for J&J with respect to Plaintiffs' claims based on the acquisition of Momenta.

### 2. The Undisputed Evidence Shows That Momenta Was Neither A Potential Competitor Nor Nascent Threat

Under the Court's standard, J&J is also entitled to summary judgment on the Plaintiffs' monopolization claims challenging the Momenta acquisition because there is no disputed issue of fact regarding whether J&J viewed Momenta as a potential competitor or nascent threat. To the contrary, the undisputed evidence shows that J&J did not view it as such. At the time of the acquisition,

9

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████

     ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████ There is also no

dispute that J&J ascribed zero value to Momenta's cell culture patents at acquisition, *Id.* at 8135,

further undermining any contention that J&J viewed those patents as conferring a competitive

benefit. Plaintiffs have not proffered any evidence suggesting otherwise, or in any way suggesting

that J&J viewed Momenta as a potential competitor or nascent threat.  Nor could they.

The evidence identified in the Court's Order does not change this conclusion.  The Order

cites seven categories of evidence that "raise a genuine dispute" as to whether individuals at J&J

were aware *before* J&J acquired Momenta of the cell culture patents that J&J later enforced against

10

ustekinumab biosimilar manufacturers.  ECF No. 794 at 44-45.  But even accepting those inferences, mere awareness of the cell culture patents is not enough.  As described above, under the Court's standard, Plaintiffs must also show that (a) future use of the patents to obtain monopoly power was reasonably foreseeable, and (b) J&J reasonably viewed Momenta as a "potential competitor" or "nascent threat."[4]  For the reasons described above, Plaintiffs can prove neither.  Even if J&J had known of the claims of the cell culture patents, there is no evidence that J&J reasonably foresaw, at the time of the acquisition, that those claims might cover specific processes used by biosimilar manufacturers years later.  ECF No. 444 at 14-15, 35-36.  Moreover, mere awareness of the claims of the cell culture media patents – which do not even mention ustekinumab – would also not suggest that Momenta was a potential competitor, ███████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████ *see supra* Section III(A)(1).  And J&J's decision not to divest patents after the acquisition similarly says nothing about whether it viewed Momenta as a potential competitor at the time of the acquisition.  In sum, nothing in the undisputed record suggests that J&J acquired Momenta, a company that it did not view as a potential rival, to exclude it from the marketplace.

At most, the record in this case shows that the patents at issue simply changed hands, from non-competitor Momenta to J&J, as a result of a corporate acquisition.  As this Court recognized, there is no precedent for exposing such an unremarkable acquisition to potential antitrust liability.  *See* ECF No. 794 at 42 (noting the "absence of any case law analyzing a situation in which a potential monopolist acquired a company and its entire patent portfolio, only a fraction of which

---

[4]   As J&J set forth in its Summary Judgment Motion, they were not.  *See* ECF No. 444 at 34-37.

had the potential to be anticompetitive"). And for good reason: Doing so unnecessarily burdens ordinary course corporate acquisitions with risk unrelated to the asset that is the strategic rationale for the deal ███████████████████████████ It is not clear how that is even possible, given that it would require assessing the impact of the transaction based on unknown, third-party actions in a future market. Neither the Department of Justice nor the Federal Trade Commission require or engage in such an exercise when evaluating transactions (as is evident here; the transaction was cleared), and this Court should not impose more stringent requirements than the agencies tasked with enforcing antitrust law. *See* ECF No. 444 at 14.

Further, the undisputed evidence demonstrates that Plaintiffs cannot show they suffered antitrust injury. *See id.* at 37-39. Plaintiffs have not challenged the validity or enforceability of the Momenta patents at issue—in other words, Plaintiffs have not come forward with any evidence that the Momenta patents at issue would not have precluded biosimilar entry, regardless of who owned those patents. Therefore, even if J&J had not acquired Momenta, the relevant patents would have remained in Momenta's hands and biosimilars would have been subject to their enforcement. Plaintiffs simply assume, with the benefit of no evidence, that, in such a scenario, Momenta itself would not have enforced those patents, potentially leading to similar or later biosimilar entry dates. Such speculation is insufficient to survive summary judgment.

For these reasons, this Court should grant J&J's motion for reconsideration and grant summary judgment with respect to Plaintiffs' challenge to the Momenta acquisition.

B.      **The Court's Summary Judgment Decision Misstates Critical Undisputed Facts Regarding The Nature Of Defendants' Privilege Log**

As discussed above, the Court identified seven pieces of evidence, cited by Plaintiffs, that it found collectively "raise[d] a genuine dispute as to whether DeFranco had knowledge beyond mere awareness of the patent number—that is, whether J&J had meaningful knowledge of the four

12

Momenta patents in such a way that J&J could view Momenta as a potential competitor or nascent threat in any potential relevant market." ECF 794 at 45. Much of this claimed "evidence" is based on entries in J&J's privilege log, created for this litigation, not the Momenta transaction. But privilege log entries are not "evidence" of "events" or of anything; they are an attorney-created tool for evaluating a privilege claim. *See Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 406 (D. Md. 2005) (noting that the goal of a privilege log "is to allow the propounding party enough information to permit an evaluation of the assertion of the privilege and the Court enough information to rule"). As Plaintiffs themselves argued, "statements of counsel do not constitute evidence for the purposes of granting or denying a summary judgment motion." ECF No. 651 at 5-6 (citing *Miles v. Salvation Army*, 2013 WL 3762899, at *2 n.5 (D.S.C. July 16, 2013)).

In addition, and independently of whether it is appropriate to use privilege log entries as "evidence" in general, the Order reflects three specific—and significant—misapprehensions of the undisputed record related to J&J's privilege log entries:

***Privilege log entries identifying privileged communications involving Stelara***. In its Order, the Court states that J&J's privilege log lists "several emails between J&J's attorneys in June 2020 [that] referenced Stelara," identifying those privilege log entries as evidence creating a factual dispute regarding Plaintiffs' Momenta claim. ECF No. 794 at 44. But these entries only log: (1) documents related to discussions between J&J in-house and outside counsel about Stelara (which included Ms. DeFranco); and, independently, (2) in-house counsel discussing the Momenta transaction (which, notably, did not include Ms. DeFranco). ECF No. 651 at 6-7. There is no evidence whatsoever that the privileged conversations were in any way related to each other, and

13

any suggestion that they are reflects a misapprehension of the undisputed record.[5]   Instead, Plaintiffs intend to use these log entries to *suggest* that individuals at J&J were discussing the Momenta acquisition in the context of Stelara.  This would require jurors to make an inference, adverse to J&J, regarding the contents of privileged communications beyond what is disclosed on the log.  That is improper as a matter of law.

It is well settled that, while the "fact of legal consultation" by itself is not privileged, the fact finder may not draw an improper inference about the substantive information sought during legal consultations.  *See* ECF No. 667 at 4-7; *Sharer v. Tandberg, Inc.*, 2007 WL 983849, at *2 (E.D. Va. Mar. 27, 2007) (excluding privilege log evidence where "the fact of legal consultation [was] only relevant in order to draw [an] improper inference").   There is a good reason for this: The attorney-client privilege is "the oldest of the privileges for confidential communications known to common law," and it serves a public purpose "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)).  Permitting adverse inference based on privileged communications undermines an attorney's ability to represent their client because "the whole will not be told to counsel unless the privilege is confidential, is perfectly clear . . . [a client] will rarely make disclosure which may be used against him; rather than create an adverse witness in his lawyer, he will refuse all private arbitration, and take the chance of a trial."  8 *Evidence in Trials*

---

[5]   To the extent the Court believes it would assist its analysis, J&J will make available for the Court's *in camera* review the privileged e-mails identified by Plaintiffs in their summary judgment briefing and cited by the Court in its summary judgment decision.  ECF No. 794 at 44; ECF No. 651 at 6-7.

*at Common Law* § 2291 (McNaughton rev. 1961).  The legal system upholds this sacred privilege, even though it may lead to "some sacrifice of availability of evidence relevant to the administration of justice."  1 *McCormick on Evidence* § 72 (9th ed. 2022).

Allowing Plaintiffs to use J&J's privilege log as "evidence" also burdens Defendants with an untenable choice: allow adverse inferences based on privileged documents to stand, or waive privilege over the underlying documents to rebut the negative inference.[6]  That is not how the attorney-client privilege functions: "There should be no risk of liability in disclosures to and from counsel in patent matters; such risk can intrude upon full communication and ultimately the public interest in encouraging open and confident relationships between client and attorney."  *Dana Corp.*, 383 F.3d at 1344.

Although the Court correctly recognized "[a] trier of fact cannot draw an adverse inference 'from invocation of the attorney-client . . . privilege,'" ECF 794 at 35 n.16, the Court's reliance on privilege log entries describing privileged emails between J&J's attorneys as evidence to defeat summary judgment will result in exactly that.  Defendants respectfully request that the Court reconsider its Order denying summary judgment to the extent it relies on privilege log entries that would permit adverse inferences drawn from Defendants' attorney-client privileged documents to deny summary judgment.  Further, the Court should remove references to the privilege log entries as a basis for a disputed issue of fact.

***The privilege log at issue was not created during the Momenta acquisition***.  The Court identifies what it characterizes as "a privilege log created during the course of the Momenta acquisition" which "shows that DeFranco had one of the relevant patents (the '168 patent) in her

---

[6]    For this reason, J&J has moved to exclude from trial any evidence based on improper inferences drawn from its privileged communications or privilege logs referencing them.  *See* ECF No. 667.

file in June 2020 as well as an email with the subject/file name listed as the patent number." *Id.* at 44. But the privilege log at issue was *not* created during the course of the Momenta acquisition. There is no dispute that the log was created in 2024 for purposes of *this litigation*, more than four years after the Momenta acquisition. ECF No. 605 at 20-23; ECF No. 651 at 6 (citing privilege log produced entries with "JNJ-STELARA" bates stamps).

This distinction is critical: No reasonable fact finder could find that a privilege log created years *after* the Momenta acquisition for purposes of later litigation is evidence that Ms. DeFranco was aware of the relevant patents *before* the acquisition. This fact, then, cannot raise a genuine dispute and it also improperly invites the jury to draw an adverse inference from J&J's privilege log entries. To the extent that the Court's opinion rests on the understanding that the privilege log was created as part of the Momenta acquisition, reconsideration should be granted, and the Court should remove references to the privilege log entries as a basis for a disputed issue of fact.

***The record contains no email from 2020 in Ms. DeFranco's file related to any Momenta patent.*** The Order states that Ms. DeFranco "had one of the relevant patents (the '168 patent) *in her file in June 2020 as well as an email with the subject/file name listed as the patent number.*" ECF No. 794 at 44 (emphasis added). That statement is contrary to the undisputed factual record. The undisputed record is clear that there was ***no email*** in Ms. DeFranco's file in June 2020 with the relevant patent number as the subject line. Nor have Plaintiffs ever suggested such an email exists.

As is undisputed in the record and the briefing, the privilege log contains an entry related to a ***January 2023 email*** from Ms. DeFranco's files attaching the '168 patent. ECF No. 605 at 21-22; ECF No. 643 at 4-6. Although the attachment (the '168 patent) had a created by or last edited date of June 2020, the log does not suggest that the attachment was in Ms. DeFranco's files

16

at that time. The attachment arrived in Ms. DeFranco's files in January 2023, attached to the parent email of that date. As J&J explained in its Sur-Sur Reply, the attachment had its own, separate privilege log entry only because the privilege log protocol required that attachments to emails be logged separately. ECF No. 80 at 2-3. But the document was assigned a Family ID making it clear it was merely an attachment to the 2023 parent emails, and not a document that was independently in Ms. DeFranco's files. ECF No. 661 at 1-2. There is no dispute that, if the '168 document had been in Ms. DeFranco's files in June 2020, independently of the 2023 parent email, the privilege log would reflect a separate standalone entry for the '168 document on that date. The '168 document would have been logged as a parent, not an attachment, and assigned an ID number as such.

Moreover, Plaintiffs should not be permitted to use statements of counsel, like those contained in privilege log entries, as evidence for summary judgment. Nor should they be invited to ask the jury to draw an adverse inference from J&J's privilege log entries. Even so, no reasonable fact finder could conclude, based on the actual factual record, that Ms. DeFranco knew about any Momenta patents in 2020 based on an email she sent in 2023 attaching one of those patents. This is particularly so in light of Ms. DeFranco's unrebutted testimony that she was not aware of the Momenta patents until after the acquisition. *See* ECF No. 605 at 22-23.

To the extent the Court's ruling is based on the impression that Ms. DeFranco had a June 2020 email in her files with the subject/file name listed as the patent number, reconsideration should be granted, and the Court should strike references to such a non-existent email as a basis for a disputed issue of fact.

**C.    The Court Already Determined That The Jostins And Granlund Studies Are Not A Part Of Plaintiffs' *Walker Process* Claims**

The Court held in its Order that "CareFirst raises a genuine dispute as to whether J&J committed *Walker Process* fraud by omitting the Jostins, Granlund, and Ochsenkühn studies and by stating before the PTO that '[p]rior to the present invention, no studies had been conducted with [U]stekinumab for UC.'" ECF No. 794 at 26. This is in direct conflict, however, with both (1) the Court's prior ruling on Plaintiffs' Motion to Amend, in which the Court rejected Plaintiffs' attempt to add the Jostins and Granlund references (among others) to their *Walker Process* fraud claims, ECF No. 592 at 19-20, and (2) Plaintiffs subsequent commitment that they will "not allege that J&J's withholding of the *Jostins* [and] *Granlund* . . . references were (alone or in combination) a separate source or theory of fraud." ECF No. 718 at 15 (emphasis added). Jostins and Granlund are, therefore, "outside the adversarial issues presented to the Court," making reconsideration appropriate. *Glenn*, 1992 WL 521517, at *1. Accordingly, J&J respectfully requests that the Court reconsider its denial of J&J's Motion for Summary Judgment with respect to Jostins and Granlund.

A timeline is helpful: Plaintiffs filed a motion for leave to file a Third Amended Complaint on April 30, 2025. ECF No. 337. The proposed amendments included, among other things, allegations that would "add six additional pieces of prior art" to Plaintiffs' claims of *Walker Process* fraud. *Id.* at 8. The prior art included Jostins and Granlund, which Plaintiffs admitted they were seeking to "add" to the case for the first time. *Id.* ("The plaintiffs seek to add six additional pieces of prior art-the Jostins, Granlund, Bradbury, Downs, and Nakajima studies, and a 2017 version of the CT posting."). Before the Court ruled on Plaintiffs' motion for leave to amend, the parties cross-filed for summary judgment on August 6, 2025. ECF Nos. 441, 442. On October 10—after summary judgment briefing began—the Court issued its order on Plaintiffs' motion for leave to amend, which it granted in part and denied in part. ECF No. 592.

18

The Court denied Plaintiffs' motion to amend to add Jostins and Granlund to the case. In so holding, the Court noted that "[t]he Jostins 2012 study" and "Granlund 2013 study" were "cited to in J&J's 2016 NCT Protocol" such that CareFirst "fail[ed] to meet its burden to show that these new allegations could not have been included prior to the scheduling order's deadline to amend." *Id.* at 19. Accordingly, the Court held that "CareFirst does not show good cause to amend here." *Id.* at 20. On November 18, 2025, Plaintiffs recognized the implications of the Court's ruling, committing to not pursuing a claim that J&J's alleged withholding of the Jostins and Granlund references constituted fraud on the PTO. ECF No. 718 at 15 (committing to "not allege that J&J's withholding of the Jostins, Granlund, Bradbury, Downs, or Nakajima references were (alone or in combination) a separate source or theory of fraud").[7]

In sum, the Court's Order relies on the Jostins and Granlund references that its prior October 10 order excluded from the case and which the Plaintiffs represented they would no longer rely on to support their *Walker Process* claims. Defendants' request that the Court grant summary judgment as to Plaintiffs' *Walker Process* claims based on the Jostins and Granlund studies.

**D.    There Is No Dispute That Dr. Luis Ralat's Actions Cannot Demonstrate Intent To Defraud The PTO**

In its Order, the Court held that Plaintiffs' *Walker Process* claims survived summary judgment because "a reasonable jury could infer that Ralat had knowledge of the falsity of the statement [that "no studies had been conducted with ustekinumab for UC"] based on his deletion of the Jostins and Granlund studies." ECF No. 794 at 38-39. This is erroneous both because (1) Jostins and Granlund are not a part of Plaintiffs' *Walker Process* claims, *see supra* Section III(C);

---

[7]    Notably, on December 22, 2025, Plaintiffs filed a "Notice to Delete" this specific sentence from the brief, demonstrating their intent to go back on their prior commitment to the Court to abide by its earlier ruling. ECF No. 810. This proves that Plaintiffs read this commitment the same way as J&J. Otherwise, there would be no reason to attempt to renege on it.

19

and (2) because there is no dispute that Jostins and Granlund are not studies of ustekinumab such that they could render the "no studies" statement false. Accordingly, the Court should grant summary judgment as to Dr. Ralat's alleged intent to deceive the PTO.

As discussed above, the Court has ruled that Plaintiffs may not pursue allegations related to the Jostins and Granlund studies. *See supra* Section III(C). Because the Jostins and Granlund studies are not a part of Plaintiffs' claims, they are "outside the adversarial issues presented to the Court" such that reconsideration is appropriate. *Glenn*, 1992 WL 521517, at *1. Summary judgment should be granted on those grounds.

Jostins and Granlund cannot support a finding of intent for another reason: In order for a reasonable jury to infer that Ralat knew that the statement that "no studies had been conducted with ustekinumab for UC" was false based on "deletion of the Jostins and Granlund studies," ECF No. 794 at 38-39, a reasonable jury must be able to find that Jostins and Granlund are studies conducted with ustekinumab for UC. *Therasense, Inc. v. Becton*, *Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (finding that intent to deceive must be the "single most reasonable inference able to be drawn from the evidence"). They were not. It is undisputed that neither Jostins nor Granlund are studies of ustekinumab. Neither discloses any data or treatment of ulcerative colitis with ustekinumab, or even mentions ustekinumab. ECF No. 444-8 ¶ 433. Jostins is a meta-analysis of genome-wide association scans of IBD patients. *Id.* at ¶¶ 451-53. It "does not mention ustekinumab or the administration of ustekinumab to any ulcerative colitis patient." *Id.* Likewise, Granlund is a meta-analysis of a whole genome gene expression in inflamed mucosa of IBD patients. *Id.* at ¶ 461. It also "does not mention ustekinumab, or the administration of ustekinumab to any ulcerative colitis patient." *Id.* at ¶ 462. Plaintiffs did not raise a dispute of fact as to these characterizations of Jostins and Granlund.

20

Because Jostins and Granlund are not studies that have been "conducted with ustekinumab for UC" there is no basis for a reasonable fact finder to conclude, based on their deletion, that Dr. Ralat had knowledge of the falsity of the statement in the provisional application that "no studies had been conducted with ustekinumab for UC." To the extent that the Court's Order was based on a "misapprehension" about the nature of Jostins and Granlund, Defendants submit that reconsideration is appropriate. *Lynn*, 953 F. Supp. at 619–20. Defendants respectfully request that the Court grant summary judgment as to Dr. Ralat's intent to defraud the PTO.

### E.    Plaintiffs Have Not Provided Any Evidence Of Intent To Deceive Regarding the Ochsenkühn Abstracts

Although Plaintiffs offered evidence at summary judgment related to whether specific duty-bound individuals at J&J were allegedly aware of the Ochsenkühn abstracts, they did not come forward with *any* evidence that a duty-bound J&J employee (1) knew that the Ochsenkühn abstracts were material to patentability or (2) made a deliberate decision to withhold the Ochsenkühn abstracts from the PTO. ECF No. 549 at 27-29. Plaintiffs therefore did not create a disputed issue of fact with respect to two necessary elements of the test for intent to deceive. The Court's conclusion to the contrary reflects a misapprehension of the record.

To prove their *Walker Process* fraud claim with respect to the intent to deceive as to the Ochsenkühn abstracts, Plaintiffs must prove, by clear and convincing evidence, that J&J withheld these abstracts "with the specific intent to deceive the PTO" and that these abstracts are but-for material to patentability. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290-91 (Fed. Cir. 2011).[8] In other words, even a showing of knowledge cannot meet Plaintiffs' burden. *Id.* at 1290; ECF No. 444 at 24; ECF No. 605 at 11. To prove intent to deceive, as they must,

---

[8]    The Court correctly noted that "that the standard articulated in *Therasense* is the prevailing standard" for *Walker Process* fraud claims. ECF No. 794 at 34-35.

Plaintiffs have to show, by clear and convincing evidence, that at least one, single duty-bound J&J employee "[1] knew of the [Ochsenkühn abstracts], [2] knew that [they were] material, and [3] made a deliberate decision to withhold [them]." *Therasense*, 649 F.3d at 1290. Further, as the Court recognized, "intent to deceive the PTO must be 'the single most reasonable inference able to be drawn from the evidence.'" ECF No. 794 at 34 (citing *In re Rosuvastatin Calcium Pat. Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012)).

Defendants respectfully move for reconsideration solely as to elements [2] and [3] of the *Therasense* standard.[9] Plaintiffs have a failure of proof on those two points, which are necessary elements of their *Walker Process* claim. In its decision, the Court reviewed Plaintiffs' evidence related to "whether the inventors *knew* about this study," which, at best, goes to element [1] of *Therasense*. *Id.* at 37. But Plaintiffs' evidence stops at the first element. There is nothing in the record from which a reasonable juror could conclude anything more than mere knowledge. And *Therasense* requires Plaintiffs to satisfy all three elements. *Therasense*, 649 F.3d at 1290-91. While the Court held that "[a] reasonable jury could conclude from the evidence that at least one duty-bound employee knew about the very study that J&J invited Ochsenkühn to present on, *knew about its materiality*, and *decided to withhold it from the patent application and prosecution*," ECF No. 794 at 38 (emphasis added), it cited no record evidence to support its conclusion on the last two elements. None exists, and reconsideration is therefore warranted.

While the Court makes passing reference to Dr. Ochsenkühn being invited by certain J&J employees to present on his abstract, it is undisputed that this invitation was extended by Janssen personnel in Germany. ECF No. 444 at 25 n.12. There is no record evidence that any of the

---

9    Defendants respectfully disagree that, even viewed in the light most favorable to the non-moving party, Plaintiffs have adduced evidence from which a reasonable juror could conclude that any duty-bound employee had knowledge of the Ochsenkühn reference.

individuals from Jannsen Germany had any involvement in, or knowledge regarding, the prosecution of the '307 Patent.  Consequently, none of these individuals was in a position to have a view regarding the materiality of the Ochsenkühn abstract to the specific claims of the '307 Patent, nor is there any evidence that they had or expressed any such views.  And for the same reason, those individuals cannot have had any intent to defraud the PTO in connection with the '307 Patent. In short, Plaintiffs cannot rely on any knowledge of Ochsenkühn on the part of the German Janssen team to meet their burden on *Therasense* elements [2] and [3].

The Court cited the *Loestrin* decision for the proposition that "a jury could infer *knowledge* where 'other pertinent executives' knew about the study," but the cited passage addressed the opposite situation: whether individual duty-bound employees' knowledge could be imputed to the company as a whole for purposes of showing that the patents were enforced with knowledge of fraud, not whether the knowledge of others in the company could be imputed to duty-bound employees.  ECF No. 794 at 38 (citing *In re Loestrin 24 Fe Antitrust Litig.*, 433 F. Supp. 3d 274, 313 (D.R.I. 2019)).

Because Plaintiffs did not offer any evidence that a duty-bound J&J employee knew that the Ochsenkühn abstracts were material to patentability or made a deliberate decision to withhold them, they cannot prove intent to deceive with respect to these abstracts.  *Inline Packaging LLC v. Graphic Packaging Int'l LLC*, 962 F.3d 1015, 1017 (8th Cir. 2020) (affirming summary judgment of no *Walker Process* fraud because "[plaintiff] offered no . . . clear and convincing evidence . . . that anyone [] owing a duty of candor to the []PTO knew that the [information] w[as] material [and] deliberately chose not to disclose them").  Accordingly, Defendants respectfully request that the Court grant J&J's motion for reconsideration and grant J&J summary judgment on Plaintiffs'

23

*Walker Process* fraud claim as it relates to the Ochsenkühn abstracts, including as a basis for the claim related to the "no studies" statement.

## IV.    CONCLUSION

For the foregoing reasons, J&J respectfully requests that the Court grant its Motion for Reconsideration of this Court's Order denying in part and granting in part summary judgment.

Dated: December 24, 2025

Respectfully submitted,

*/s/ Christina Guerola Sarchio*

Christina Guerola Sarchio VSB No. 87166
**DECHERT LLP**
1900 K Street, NW
Washington, DC 20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
christina.sarchio@dechert.com

George G. Gordon *(pro hac vice)*
Julia E. Chapman *(pro hac vice)*
Katherine Unger Davis *(pro hac vice)*
Forrest E. Lovett (*pro hac vice*)
Judah Bellin (*pro hac vice*)
David Costigan (*pro hac vice*)
Agnese Whitt (*pro hac vice*)
Madeline Holler (*pro hac vice*)
**DECHERT LLP**
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994 4000
Fax: (215) 994-2222
george.gordon@dechert.com
julia.chapman@dechert.com
katherine.ungerdavis@dechert.com
forrest.lovett@dechert.com
judah.bellin@dechert.com
david.costigan@dechert.com
agnese.whitt@dechert.com
madeline.holler@dechert.com

24

Katherine A. Helm *(pro hac vice)*
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Tel.: (212) 698-3500
Fax: (212) 698-3599
khelm@dechert.com

Amanda K. Antons *(pro hac vice)*
**DECHERT LLP**
230 Northgate Street #209
Lake Forest, IL 60045
Tel.: (312) 656-5800
Fax: (312) 646-5858
Amanda.antons@dechert.com

Shyam Shanker *(pro hac vice)*
**DECHERT LLP**
300 South Tyron Street
Suite 800
Charlotte, NC 28202
Tel.: (704) 339-3100
Fax: (704) 339-3101
shyam.shanker@dechert.com

*Counsel for Defendants Johnson & Johnson and Janssen Biotech, Inc.*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 24, 2025, I caused to be served a copy of the foregoing Memorandum in Support of J&J's Motion for Reconsideration on all counsel of record via the Court's CM/ECF system.

*/s/ Christina Guerola Sarchio*
Christina Guerola Sarchio, Esq.
VSB No. 87166
**DECHERT LLP**
1900 K Street, NW
Washington, DC 20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
christina.sarchio@dechert.com

*Counsel for Defendants Johnson & Johnson and Janssen Biotech, Inc.*

26