## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CAREFIRST OF MARYLAND, *et al.*,

    Plaintiffs,

    v.

JOHNSON & JOHNSON, *et al.*,

    Defendants.

Case No. 2:23-cv-629

### OPINION & ORDER

Before the Court are Defendants Johnson & Johnson and Janssen Biotech, Inc.'s (together, "J&J") motion for reconsideration (ECF No. 823) of the Court's summary judgment order (ECF No. 794), and J&J's motions in limine No. 3 (ECF No. 667) and No. 9 (ECF No. 673). For the reasons stated herein, J&J's motion for reconsideration is **GRANTED IN PART** and **DENIED IN PART**; its motion in limine No. 3 is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED IN PART AS MOOT**; and its motion in limine No. 9 is **GRANTED IN PART** and **DENIED IN PART**.

## I.  BACKGROUND

The Court's December 15, 2025 Opinion and Order (ECF No. 794) denied the motion for partial summary judgment (ECF No. 442) filed by Plaintiffs CareFirst of Maryland, Inc., Group Hospitalization and Medical Services, Inc., and CareFirst Bluechoice, Inc. (together, "CareFirst") and granted in part and denied in part J&J's

1

motion for summary judgment (ECF No. 441).[1] As relevant to J&J's motion for reconsideration, the decision narrowed CareFirst's *Walker Process* fraud theory of monopolization, allowing it to proceed only as to the omission of the Jostins, Granlund, and Ochsenkühn studies and J&J's statement before the U.S. Patent and Trade Office (PTO) that "[p]rior to the present invention, no studies had been conducted with ustekinumab for [ulcerative colitis]." The Court also permitted CareFirst's theory of monopolization based on J&J's acquisition of four Momenta manufacturing patents to proceed.

J&J now seeks reconsideration on five grounds: (1) J&J is entitled to summary judgment on the Momenta acquisition theory; (2) the Court misapprehended the record regarding J&J's privilege log, and allowing the Momenta patent acquisition claim to go forward would require jurors to draw negative inferences about privileged communications;[2] (3) the Jostins and Granlund studies are not in this case based on the Court's order on CareFirst's motion for leave to file a third amended complaint (ECF No. 592); (4) the Court misapprehended the record as to whether Dr. Luis Ralat's actions could demonstrate intent to defraud the PTO; and (5) the Court's decision that a reasonable jury could conclude from the evidence that at least one

---

[1] The Opinion and Order also denied CareFirst's motion to exclude the expert opinions and testimony of Anupam Jena (ECF No. 450) and J&J's motion to exclude the expert opinions and testimony of Nicole Maestas (ECF No. 435).

[2] The Court held a hearing as to the privilege log issues on January 13, 2026. ECF No. 886.

duty-bound employee knew about the Ochsenkühn reference is based on a misapprehension of the record.

## II.    LEGAL STANDARD

"[A]ny [interlocutory] order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (a district court has "the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment"). "A district court may grant a motion for reconsideration under Rule 54(b): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice." *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-cv-363, 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014) (citing *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993) (articulating the same standard for motions to amend a judgment under Fed. R. Civ. P. 59(e)).

A district court may also grant a motion for reconsideration where it has "patently misunderstood a party, [] has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *Evans v. Trinity Industries, Inc.*, 148 F. Supp. 3d 542, 544 (E.D. Va. 2015) (internal citation and quotations omitted). But "the court should not reevaluate the basis upon which it made a prior ruling[] if the moving party merely seeks to

reargue a previous claim." *United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 977 (E.D. Va. 1997).

## III.    ANALYSIS

### A.    J&J's Acquisition of the Momenta Patents and Related Privilege Log Issues

To prevent manifest injustice to J&J,[3] and more importantly, to the doctrine of attorney-client privilege as a whole, the Court vacates its order on summary judgment as to CareFirst's claim that J&J's acquisition of four Momenta manufacturing patents constitutes unlawful monopolization under § 2 of the Sherman Act and grants summary judgment for J&J on this issue. In conjunction, the Court rules on J&J's motions in limine Nos. 3 and 9, which intersect with the Court's evidentiary inquiry.

### i.    *Controlling Standard*

Both parties take issue with the Court's "adopt[ion of] a legal standard argued by neither side." ECF No. 827 at 4; ECF No. 871 at 31 (referring to the Court's application of the monopolization intent test as "[t]he gorilla in the room").[4] But the Court has an independent obligation to apply the binding standard of law even if the

---

[3] Here, the Court does not rely on a finding of clear error of law in granting the motion for reconsideration on this point because J&J, in its summary judgment briefing, did not raise its contention that CareFirst's characterization of J&J's privilege log entries and metadata were impermissible negative inferences. ECF No. 886 at 5:22–6:13 (explaining "why [the argument] was [not] raised").

[4] J&J does not argue that the Court should apply a different standard when evaluating the motion for reconsideration. ECF No. 827 at 8 n.1.

parties have not raised it.[5] *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 783 F.3d 976, 980 (4th Cir. 2015) ("A party's failure to identify the applicable legal rule certainly does not diminish a court's responsibility to apply that rule. The judiciary would struggle to maintain the rule of law were it limited to the parties' competing assertions about what the law requires.").

The Court's summary judgment opinion clearly interprets and applies the Fourth Circuit's most recent articulation of the Sherman Act § 2 monopolization standard, which is "whether the defendant 'intended to exclude rivals on some basis other than efficiency.'" ECF No. 794 at 40 (quoting *2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*, 139 F.4th 404, 410 (4th Cir. 2025)). The Court will therefore not engage with CareFirst's lengthy argument about the contours of what the standard should be, which presents no intervening change in controlling law, no new evidence, and no clear error of law.[6] ECF No. 871 at 31–37. The Court will also

---

[5] The Court notes that CareFirst "suggests" the Court's articulation of the standard is "clear error." ECF No. 871 at 31 n.16. Because CareFirst does not move for reconsideration, the Court will not engage with this argument.

[6] CareFirst's contention that the Fourth Circuit's "prior panel rule" requires application of the law articulated in earlier panel decisions is overstated and does not change this Court's reliance on *2311 Racing*. The Fourth Circuit has held that "when there is an *irreconcilable conflict* between opinions issued by three-judge panels . . . the first case to decide the issue is the one that must be followed, unless and until it is overruled by th[e] court sitting *en banc* or by the Supreme Court." *McMellon v. United States*, 387 F.3d 329, 334 (4th Cir. 2004) (emphasis added).

There is no irreconcilable conflict between the Fourth Circuit cases CareFirst cites and *2311 Racing*. ECF No. 871 at 32 (citing *Greenville Pub. Co., Inc. v. Daily Reflector, Inc.*, 496 F.2d 391, 396 (4th Cir. 1974) and *Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.*, 910 F.2d 139, 147 (4th Cir. 1990)). In *Greenville Pub.*, the Fourth Circuit made passing reference to "the general intent which, accompanied by

largely not engage with J&J's arguments about the monopolization standard, which merely attempt to re-litigate its summary judgment briefing, except to the extent the arguments intersect with the evidentiary issues J&J raises regarding its privilege logs and document metadata.

### ii.    J&J's Motion in Limine No. 3

J&J moves to preclude evidence and argument concerning (1) pretrial disputes, motions, and orders; (2) the parties' designations of certain discovery as confidential; (3) and J&J's use of a privilege log and assertions of attorney-client privilege in depositions.[7] *See generally* ECF No. 667. Because the parties have stipulated not to introduce confidentiality designations, the Court will deny as moot the confidentiality designations portion of J&J's motion. ECF No. 710-1 at 2.

---

monopoly power, constitutes the offense of monopolization" before analyzing the question of intent raised in the attempted monopolization claim before it. 496 F.2d at 396–98. And in *Advanced Health-Care Servs.*, the court conducted a § 2 analysis on the pleadings and in part concluded that based on the allegations, "a finder of fact may be able to infer that [the defendants'] motives were anti-competitive (*i.e.*, that these were predatory acts stemming from an illegal specific intent to monopolize)." 910 F.2d at 147–48. While the *Advanced Health-Care* court appears to have analyzed both monopolization and attempted monopolization at the same time, its opinion closely followed the standard articulated by the *Aspen Skiing Co v. Aspen Highlands Skiing Corp.* decision, which states in relevant part, "the question of intent is relevant to both offenses"—attempt to monopolize and monopolization. 472 U.S. 585, 602 (1985). In the case of monopolization, the *Aspen Skiing* court stated that "evidence of intent is merely relevant to the question [of] whether the challenged conduct is fairly characterized as 'exclusionary' or 'anticompetitive.'" *Id.* Therefore, *Greenville Pub.* and *Advanced Health-Care*'s conclusions on the relevance of intent do not irreconcilably conflict with the standard articulated in *2311 Racing*.

[7] J&J's third category intersects with J&J's motion in limine No. 9, so the Court will combine its analysis of the two.

CareFirst asks the Court to defer ruling on the question of whether to exclude evidence and argument about pretrial disputes, motions, and orders, because it is not clear whether J&J's evidence at trial will open the door to discussion about its pretrial efforts to resist disclosure of certain discovery. ECF No. 719 at 9–11. But regardless of any evidentiary order, the Court may always present to the jury information about pretrial disputes, motions, or orders as it deems necessary. Therefore, the Court grants this portion of the motion under Fed. R. Evid. 403.

### iii.    Attorney-Client Privilege

In part of its motion in limine No. 3 and in its motion in limine No. 9, J&J moves to preclude CareFirst from "referencing misleading privilege log entries and making arguments regarding facts not in evidence" that would require the jury to make an impermissible negative inference about the privileged content.[8] ECF No. 678 at 2; ECF No. 667 at 5. As it has made clear throughout its briefing, CareFirst seeks to rely on J&J's privilege log and document metadata as evidence in support of its theory that J&J knew about the four Momenta manufacturing patents at the time

---

[8] CareFirst filed a motion to compel some material J&J withheld as privileged, which the Honorable Lawrence R. Leonard granted in part and denied in part. ECF Nos. 237 (motion), 330 (order). CareFirst did not object to Judge Leonard's ruling, nor did it contest in its briefing on motion in limine No. 3 J&J's assertion that, since the motion to compel is resolved, there remains "no dispute that J&J has properly asserted the privilege." ECF No. 667 at 6 n.1. However, at the January 13, 2026 hearing on J&J's reconsideration motion, CareFirst disagreed that J&J had properly asserted privilege and stated that it "know[s] that there are many things that are not privileged that J&J has withheld" but that it has let "many things . . . slide" to prioritize other issues. ECF No. 886 at 30:20–31:2. CareFirst conceded that it had not challenged these purportedly improperly designated privileged communications. *Id.* at 30:6–7.

it acquired Momenta and that J&J intended to acquire the manufacturing patents for an anticompetitive purpose. *See generally* ECF No. 738; *see also* ECF No. 871 at 14–18.

Privilege logs can be admissible evidence. *Knox Energy, LLC v. Gasco Drilling, Inc.*, 637 Fed. Appx. 735, 740 (4th Cir. 2016) (unpublished) (upholding district court's decision to allow party to introduce opposing party's privilege logs); *see also Cage v. Harper*, No. 1:17-cv-7621, 2021 WL 3022316, at *2 (N.D. Ill. July 16, 2021), *aff'd*, 42 F.4th 734 (7th Cir. 2022) ("[P]rivilege logs can be admissible evidence. . . . For example, an entry on a privilege log could be . . . an admission that a privileged communication took place on a certain day. Sometimes the existence of an attorney-client communication, in and of itself, can have a bearing on the issues at trial.").

However, the Fourth Circuit has held that "[a] negative[9] inference should not be drawn from the proper invocation of the attorney-client privilege." *In re Tudor Assocs., Ltd., II*, 20 F.3d 115, 120 (4th Cir. 1994); *see also Parker v. Prudential Ins. Co.*, 900 F.2d 772, 775 (4th Cir. 1990) ("[A] client asserting the privilege should not face a negative inference about the substance of the information sought."). While these cases have not been applied specifically in the context of privilege logs, *Sharer v. Tandberg*, No. 1:06-cv-626, 2007 WL 983849 (E.D. Va. Mar. 27, 2007), explored the contours of the rule. In *Sharer*, the plaintiff declined based on attorney-client

---

[9] The Court understands the Fourth Circuit to use the term "negative inference" to mean an inference that is adverse to the party against whom the inference is made. The Court sometimes used the term "adverse inference" at the hearing on the reconsideration motion. The parties should understand "negative inference" and "adverse inference" to be synonymous here pursuant to *In re Tudor* and *Parker*.

privilege to answer a question during his deposition about whether particular emails were his own idea or if someone had asked him to write the emails. *Id.* at *1–2. The court held that the fact that the plaintiff met with his attorney prior to the email exchange was only relevant to the extent it supported an inference about the substance of the legal communications between attorney and client. *Id.* So the court precluded the defendant from referring to the plaintiff's legal consultation prior to the relevant emails. *Id.*

Additionally, in *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2023 WL 4156858 (E.D. Va. Apr. 5, 2023), the Honorable Douglas E. Miller granted the defendant's motion in limine to exclude privilege log document descriptors to impeach defense witnesses who did not write the privilege log descriptions. *Id.* at *5. Judge Miller denied the motion as to the "fact or timing of a communication" at issue because *those* facts could "be ascertained from the document descriptors without contravening the privilege or misleading the jury about what was communicated." *Id.* (emphasis removed).

While it is undisputed that the fact of attorney-client communications is not itself privileged, where a party's theory of relevance depends on inferring the substance of the communications in a way that is adverse to the party invoking privilege, *Parker* instructs the Court to exclude the evidence. This distinction makes intuitive sense in order to protect the sanctity and purpose of attorney-client privilege. To allow negative inferences to be drawn about the subject of attorney-client privilege would contravene the very purpose of privilege: "to encourage full and

frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Here, J&J argues that several categories of evidence should be excluded. First, it contends that the "Created/Sent" field in its privilege log and document metadata have no probative value because the field only shows when the document was created, not when any custodian sent or received the documents. ECF No. 678 at 3–4. J&J explains that because the privilege log order in this case requires each document to be logged separately, J&J's privilege log contains separate entries for emails and attachments to those emails, so jurors would need to understand how the "Family LogID" field in the privilege log links emails with their attachments. *Id.* at 7–8. The "Created/Sent" field provides information about the fact and timing of communications but does not suggest anything about the substance of the privileged communication. However, it is CareFirst's burden as the proponent of the evidence to put on a witness to define the metadata fields.

Therefore, the "Created/Sent" metadata field of J&J's privilege log entries are admissible subject to CareFirst establishing a sufficient foundation about the meaning of the metadata fields and in conjunction with the "Family LogID" metadata field.

However, CareFirst will not be permitted to present entries in the privilege log or document metadata that are disconnected from the families. That approach relies on suggesting that the Created/Sent date for a document is probative of the date J&J possessed the document when it is not, and such a suggestion is likely to substantially

mislead the jury.[10] *See* Fed. R. Evid. 403; ECF No. 651 at 6 (acknowledging that five PDF copies of the Momenta patent '168 bearing "Created/Sent Date" metadata of June 26, 2020 were actually attached to 2023 email communications).

Second, J&J asks the Court to preclude CareFirst from arguing facts not in evidence by suggesting to the jury that J&J's privilege log, document metadata, or testimony from Denise DeFranco (J&J's global head of IP litigation) and Eric Dichter (J&J's '307 patent prosecution attorney) establish that J&J reviewed the Momenta manufacturing patents prior to the Momenta acquisition. ECF No. 678 at 8–9. J&J argues that CareFirst should be prevented from using such evidence to say that DeFranco or Dichter had the Momenta manufacturing patents in their files or had knowledge of those patents prior to 2023. *Id.* J&J specifically asks to preclude CareFirst from using evidence to "suggest that individuals at J&J were discussing the Momenta acquisition in the context of Stelara." ECF No. 827 at 17 (emphasis removed); ECF No. 667 at 5–8.

In response, CareFirst argues that "J&J is free to criticize the plaintiffs' interpretations of the evidence—as it does in its motion—before the jury." ECF No. 738 at 5. CareFirst attests it will use the privilege log to show that (1) the metadata demonstrate the PDFs of the Momenta manufacturing patents were created in May

---

[10] Indeed, CareFirst misled the *Court* at summary judgment by presenting evidence in this manner. CareFirst submitted a spreadsheet of produced documents and privilege log entries separate from their families and suggested that the Created/Sent dates for those entries reflected the dates J&J possessed certain documents, when in reality there is no evidence J&J possessed the documents on those dates. *See* ECF No. 648-2 (CareFirst's exhibit logging PDFs disconnected from their parent emails); ECF No. 657 (J&J's exhibit connecting PDF attachments to parent emails).

and June 2020, and (2) privilege log entries and DeFranco's testimony demonstrate that during those same months J&J was communicating with outside counsel and "performing other diligence regarding contemplated patent litigation against Amgen." *Id.* at 7. Essentially, CareFirst contends that the inferences it would ask the jury to make about the subject of J&J's privileged communications are permissible because those inferences are reasonable. Neither of those arguments is consistent with the law.

CareFirst contends that its "potential use of J&J's privilege log at trial would likely only establish the timeline of J&J's knowledge of critical facts." ECF No. 719 at 14. But CareFirst's theory of relevance depends precisely on making negative inferences about the contents of J&J's communications.

CareFirst draws a distinction between inferences about the *subject* of privileged communications and inferences about the communications' *content*. *E.g.*, ECF No. 886 at 21:16–21, 22:14–18. But that is a semantic difference, not a substantive one: An inference about what the subject line of a communication means *is* an inference about the contents of the communication. And a careful review of CareFirst's briefing and oral argument reveals that its theory of relevance for J&J's privilege log entries depends entirely on inferring the substance of privileged communications.

Specifically, for example, CareFirst intends to juxtapose metadata and privilege log entries such as: (1) a standalone PDF of the '168 Momenta patent, with a created/sent date of June 26, 2020, and Latham & Watkins LLP as the custodian,

and (2) two privilege log entries of June 26, 2020 emails between DeFranco and Latham attorneys regarding "J&J/Biosim – Stelara Biosimilar Competition Update," to support the inference that the two pieces of data are related. ECF No. 738 at 11–12. CareFirst's theory of relevance in this example depends on the inference that the email's subject line not only reflects the contents of the email itself but also that those contents would reveal a connection between DeFranco and the '168 patent. Both of those are negative inferences arising from J&J's assertion of attorney-client privilege. Because CareFirst's theory of relevance for the June 26, 2020 PDF and email depends on an impermissible inference, it is not permitted to present that evidence to the jury.

Similarly, CareFirst intends to rely on the subject lines from four June 26, 2020 emails between either J&J's in-house attorneys and outside counsel or J&J's in-house attorneys to create the impression that the emails are related. That would, again, go beyond the mere fact of communication and require the jury to draw the negative inference that the four emails are all related. The four emails are: (1) two emails including DeFranco with the subject line "J&J/Biosim – Stelara Competition Update"; and (2) two emails *without DeFranco* with the subject lines "Project Vigor (New Transaction)" and "[Vigor EXTERNAL] Draft Transaction CDA." Linking these two categories of emails without evidence that DeFranco or any other individual were associated with both sets of emails would require an inference adverse to J&J. Relying on the subject lines of these emails would also require an inference that the contents of the email necessarily relate to the subject lines, which CareFirst cannot demonstrate. *See* ECF No. 886 at 28:6–30:2. Because CareFirst has proffered no

13

theory of relevance for the subject lines that does not depend on negative inferences, CareFirst is not permitted to present the subject lines of these four emails for the purpose of establishing J&J's knowledge of the Momenta biosimilar patent.[11]

Therefore, the Court grants in part J&J's motion in limine No. 3 as to attorney-client privilege and grants in part J&J's motion in limine No. 9 as to CareFirst's misleading use of privilege log and metadata entries under Fed. R. Evid. 403.[12]

Furthermore, the motions are granted to the extent J&J seeks to preclude invocations of attorney-client privilege during deposition. However, the Court denies the motions to the extent J&J seeks to exclude CareFirst's characterization of DeFranco's or Dichter's testimony. ECF No. 678 at 8–9. CareFirst may characterize deposition testimony based on the facts in evidence and to the extent such characterizations do not require the jury to draw a negative inference about the content of privileged communications. J&J is free to rebut such testimony to the extent it arises at trial.

For clarity, the Court finds the following uses of J&J's privilege log are admissible subject to CareFirst laying a proper foundation as to the meaning of the metadata fields: (1) use of the "Created/Sent Date" metadata field for the purpose of showing the fact of a document's creation or download, if presented in conjunction

---

[11] This ruling includes CareFirst's use of the August 6, 2020 email with the subject line "pre-aBLA prep for Stelara." ECF No. 871 at 22.

[12] CareFirst points out that the privilege log could be admissible for purposes of impeachment. This ruling does not preclude that possibility should it arise at trial, though the Court is skeptical that it will arise in the context of CareFirst's remaining theory of *Walker Process* fraud.

14

with the FamilyID field to provide the context of whether the document was part of a family; and (2) use of the "Created/Sent Date" metadata field for emails as well as the custodian, sender, and recipient metadata fields to show the fact of communication. CareFirst's characterization of deposition testimony based on the facts in evidence and absent an impermissible negative inference about the content of privileged material is also admissible.

The Court finds the following uses of the privilege log and/or metadata are inadmissible: (1) use of any privilege log entries to demonstrate that particular entries are related based on the "Created/Sent Date" of the entries and/or the subject lines of emails; (2) invocations of privilege during deposition.

### iv.    *Momenta Patent Acquisition*

Based on the *admissible* evidence, CareFirst does not meet its burden to create a genuine dispute as to whether J&J intended to exclude rivals on some basis other than efficiency by acquiring Momenta. *Kennedy v. Joy Techs., Inc.*, 269 Fed. App'x 302, 308 (4th Cir. 2008) (unpublished) ("In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial."). In other words, CareFirst has not provided evidence upon which a reasonable jury could conclude that J&J had actual knowledge of the contents of the Momenta manufacturing patents such that it could have intended to exclude rivals from any potentially relevant market.

The admissible evidence the Court relied on in its summary judgment opinion is: (1) the patents were listed in the draft and executed merger agreement, ECF No.

471-3 at 12:8–17:23, 18:5–20:8; *see generally* ECF No. 471-6; (2) metadata of produced PDFs reveal that DeFranco and Dichter had copies of the '168 patent in their files in 2023, ECF No. 651 at 6, ECF No. 657; (3) DeFranco testified that "[i]n 2020, after the acquisition . . . I got a list of patents from Momenta and forwarded them to [the attorneys handling the merger]. I did not study them. I did not look at them. I became aware of the manufacturing patents after we got Amgen's information, and the patents were called out to my attention," ECF No. 561-7 at 28:9–17; (4) after looking at several internal emails and "log entries," DeFranco testified that she "believe[d] that [J&J's] pre-[Amgen] lit[igation] diligence started as early" as August 2020, *id.* at 34:19–21; (5) several emails existed between J&J's in-house and outside counsel in 2020 *see* ECF No. 648-3; and (6) J&J has not divested, sold, nor surrendered its interests in the patents, despite divesting another Momenta asset, ECF No. 474 at 23 ¶ 25.

On this motion for reconsideration, the Court considers additional evidence that was before it at summary judgment but to which CareFirst did not connect J&J's knowledge until its opposition to J&J's motion for reconsideration or in the hearing on the motion.[13] That evidence includes: (1) three standalone PDFs of Momenta

---

[13] To the extent CareFirst argues that it was not on notice that J&J's intent was relevant to its claim until the Court's summary judgment order, the Court is not convinced. *See* ECF No. 886 at 36:10–22 (CareFirst asking the Court to "consider staying its hand and trying the case" if the Court found the evidence was insufficient to meet the summary judgment standard because the required level of proof was "increased on us"). At the very least, the Fourth Circuit's decision in *2311 Racing*—again, the most recent articulation of the monopolization standard—has been available for CareFirst to read since before the summary judgment motions were

manufacturing patents with a "Date Created" of May or June 2020, where Latham (J&J's outside counsel) is a custodian for two and Janssen is a custodian for one, ECF No. 886 at 24:20–25:8; ECF No. 648-2 at 2;[14] and (2) a November 2022 email from DeFranco listing the four Momenta manufacturing patents, ECF No. 886 at 33:23–34:9; ECF No. 471-36.

CareFirst's theory of relevance for the three standalone PDFs depends on several layers of inferences that are unreasonable without more evidence. At the hearing on J&J's motion for reconsideration, CareFirst articulated, for the first time, its theory that the fact that there are two PDFs of Momenta manufacturing patents with a "Date Created" of May or June 2020 where Latham is a custodian should be looked at with the context that Latham "had been hired by J&J through Ms. DeFranco to investigate the potential of biosimilar patent litigation in order to protect Stelara." ECF No. 886 at 20:3–8.

CareFirst contends that Latham's role was before the Court on summary judgment. ECF No. 886 at 24:2–7 (stating that CareFirst identified Latham as J&J's

---

filed, and J&J has always contended that intent was relevant. *See, e.g.*, ECF No. 492 at 40–42.

[14] For the sake of completeness, the Court also notes that it has examined the privilege log entries of all four categories of Momenta patent PDFs listed in CareFirst's sur-reply to J&J's motion for summary judgment and concluded that the PDFs that were attached to 2023 emails have no probative value because they do not reveal anything about J&J's knowledge at the time of the acquisition. ECF No. 651 at 6 (listing the four categories); ECF No. 648-2; ECF No. 657.

The Court does *not* rely on CareFirst's contention that it will present "much more evidence at trial" on this issue. ECF No. 886 at 26:9–10.

"IP litigation legal team" in its summary judgment briefing). But CareFirst did not connect that role to the potential relevance of these standalone PDFs, and the Court could not have made such a connection in a vacuum. *See* ECF No. 651 at 8; *see also Reynolds v. N. Neck Reg'l Jail Auth.*, No. 3:07-cv-700, 2009 WL 1323224, at *1 (E.D. Va. May 11, 2009) ("Litigants may not thrust upon the Court the burden of combing through the record to make a case on their behalf."). It *might* be the case that a reasonable jury could infer that: (1) because Latham was a custodian of the two PDFs, it had knowledge of the contents of the patent, and (2) because Latham as J&J's outside counsel had knowledge of the contents of the patent, so did J&J. But it would not be reasonable to infer from knowledge of the contents of the patent that J&J thus intended to use the patent to exclude rivals for a reason other than efficiency—or even that J&J knew it would be able to use the patents in the context of Stelara.[15] A reasonable inference of actual knowledge does not alone give rise to a reasonable inference of intent to exclude rivals anticompetitively.

For the first time in the hearing on the reconsideration motion, CareFirst proffered a theory of relevance as to a November 2022 email from DeFranco to Alvotech (a biosimilar manufacturer) listing patents "that may be relevant to [] discussions" regarding Alvotech's interest in licensing "all of the patents that 'would be infringed' by Alvotech's ustekinumab biosimilar product." ECF No. 471-36; *see* ECF No. 886. at 33:23–34:9. CareFirst argued that "[w]hat you eventually do

---

[15] The Court also agrees with J&J's point that CareFirst's contentions about what the "Date Created" field means are simply attorney argument not rooted in any foundation. ECF No. 886 at 12:7–13:9; 40:13–41:6.

[reflects] what it is you intended to do all along," so a reasonable jury could conclude based on DeFranco's discussion of the four Momenta manufacturing patents in 2022 that she had the intent to assert those patents over two years prior, when the Momenta acquisition occurred. *Id.* at 33:16–17. But a reasonable jury could not leap to CareFirst's conclusion based on the November 2022 email alone. The email contains no reference back to an earlier time frame and so at most establishes DeFranco's knowledge of the contents of the patents in November 2022.

Even pairing up the November 2022 email with the three standalone PDFs of Momenta manufacturing patents, no reasonable jury could infer J&J acquired Momenta with the intent to exclude rivals on some basis other than efficiency. To find otherwise would be to entirely collapse the intent requirement and find that an assertion of a patent several years after it was acquired as part of a large corporate acquisition could be enough to demonstrate intent to acquire and use that same patent at the time of the acquisition. That cannot be right.

The rest of the evidence before the Court is not, as CareFirst contends, "sufficient for the jury to decide . . . that J&J both was aware of the relevant patents and uncovered their utility during its diligence." ECF No. 871 at 13. Even assuming a reasonable jury would credit DeFranco's single statement that after reviewing several internal emails and privilege log entries, she "believe[d] that [J&J's] pre-[Amgen] lit[igation] diligence started as early" as August 2020, her statement says nothing about whether such diligence related to the Momenta acquisition. And, as

19

the Court has explained repeatedly, CareFirst supplies no evidence to support a reasonable inference that such a relationship existed.

Additionally, while the Court does not rest its conclusion on this point, the fact that CareFirst cannot point to a single business document referencing one of the Momenta manufacturing patents in the context of the Momenta acquisition is telling.

Ultimately, a reasonable jury could not conclude J&J's acquisition of Momenta was anticompetitive based on the mere existence of four biosimilar patents in Momenta's portfolio of approximately 500 patents. To conclude otherwise would "subject every corporate acquisition to an after-the-fact review based on what the company did with the assets that it, at the time, had no knowledge of" and enormously expand the scope of what can be considered anticompetitive conduct. ECF No. 886 at 44:5–11.

The facts before the Court are insufficient to create a genuine dispute as to whether at the time it acquired Momenta, J&J intended to use the Momenta manufacturing patents to exclude rivals on some basis other than efficiency. The Court therefore grants J&J's motion for reconsideration and grants summary judgment in favor of J&J as to the Momenta patent acquisition theory of monopolization.

## B.    Jostins and Granlund Studies

J&J argues that the Court should grant summary judgment with respect to CareFirst's *Walker Process* claim based on the Jostins and Granlund studies because "they are indisputably not at issue in this case." ECF No. 827 at 5, 21–22. The Court

agrees. The Court denied CareFirst's motion for leave to file a third amended complaint with respect to CareFirst's proposed inclusion of the Jostins and Granlund studies because CareFirst failed to show good cause to amend. ECF No. 592 at 19–20. Subsequently, CareFirst represented in its opposition to J&J's motion in limine No. 2 that it would not "allege that J&J's withholding of the Jostins [and] Granlund . . . references were (alone or in combination) a separate source or theory of fraud." ECF No. 718 at 21. Therefore, reconsideration of CareFirst's *Walker Process* claim based on the Jostins and Granlund studies is proper because use of the studies to support the *Walker Process* claim falls "outside the adversarial issues presented to the Court." *Evans*, 148 F. Supp. 3d at 544.

CareFirst's argument that the Court denied its motion to amend to include the Jostins and Granlund studies because "they were already in the case" is either disingenuous or else completely misreads the Court's opinion and order on the motion to amend. ECF No. 871 at 25. The Court clearly held that CareFirst lacked good cause to amend its Complaint to include the Jostins and Granlund studies because CareFirst did not demonstrate that it could not have included the studies as a basis for liability prior to the scheduling order's deadline to amend. ECF No. 592 at 19. At the same time, however, CareFirst also argues that the Court's motion to amend order "drew" a "distinction" that "new theories are out, while facts supporting existing theories are fair game." ECF No. 871 at 26. CareFirst therefore seems to concede that the Court's decision on the motion for leave to amend prevented it from basing its *Walker Process* theory of liability on the Jostins and Granlund studies.

21

The Court vacates its summary judgment order as to CareFirst's *Walker Process* claim based on the Jostins and Granlund studies as a theory of liability and grants J&J's motion for summary judgment as to the same. To be clear, whether the studies should be admitted as evidence to support *Walker Process* liability founded on a theory that survives summary judgment is a separate question subject to currently pending motions in limine. *E.g.*, ECF Nos. 666, 671.

### C.    Dr. Ralat's Intent to Defraud the PTO

J&J seeks reconsideration of the Court's order denying summary judgment as to CareFirst's *Walker Process* fraud claim based on the misstatement "no studies had been conducted with ustekinumab for [ulcerative colitis]" because it contends Jostins and Granlund are not studies of ustekinumab and—pursuant to the Court's decision on CareFirst's motion to amend—cannot form the basis for *Walker Process* fraud liability. ECF No. 827 at 22–23. As explained above, whether the studies should be admitted as evidence to support *Walker Process* fraud is a separate question subject to currently pending motions in limine.

J&J does not raise any new argument or evidence such that the Court could properly consider its reconsideration request, and the Court's decision on this issue was not clear error. The Court concluded that a reasonable jury could infer that Ralat had knowledge of the falsity of the statement based on his deletion of the Jostins and Granlund studies and because he explained his deletions were based on different "goal[s] of an FDA submission versus a PTO submission." ECF No. 794 at 38–39; ECF No. 566 at 18–19 ¶ 68. A reasonable jury could infer intent to deceive the PTO from

the deletion of the Jostins and Granlund studies, regardless of whether they were studies regarding ustekinumab.

### D.    Ochsenkühn Study

J&J seeks reconsideration of the Court's order denying summary judgment on CareFirst's *Walker Process* fraud claim based on the omission of the Ochsenkühn study. ECF No. 827 at 24–27. J&J argues that CareFirst did not create a genuine factual dispute as to whether "a duty-bound J&J employee [1] knew that the Ochsenkühn abstracts were material to patentability or [2] made a deliberate decision to withhold the Ochsenkühn abstracts from the PTO." *Id.* at 26. However, J&J's argument retreads the same ground it covered in its summary judgment briefing and does not raise any new argument or present new evidence. *See Smithfield Foods, Inc.,* 969 F. Supp. at 977 ("[T]he court should not reevaluate the basis upon which it made a prior ruling, if the moving party merely seeks to reargue a previous claim.").

And in any event, the Court's conclusion on this issue was not clear error. The Court denied J&J's motion for summary judgment because it concluded CareFirst provided sufficient evidence of knowledge of materiality and intent to omit. For completeness, the Court will list the entirety of the evidence it relied on: (1) six of the eight '307 inventors received copies or descriptions of the Ochsenkühn research, sometimes from multiple sources, ECF No. 566 at 20 ¶ 72; (2) Janssen personnel in Germany sponsored Dr. Ochsenkühn to present his research at a U.S. conference, including a special session on his research for J&J, *id.* at 19 ¶ 71; (3) multiple duty-

bound employees, including Dr. Christopher O'Brien, "the physician responsible for NCT 236" at the time, and Dr. Colleen Marano, one of the '307 patent inventors whose work on NCT 236 "was nearly full-time" at the time, attended two conferences where Dr. Ochsenkühn presented his study results, *id.*; (4) J&J included references to Ochsenkühn in a "[m]aster slide deck" for ulcerative colitis, within a section of the deck titled "[r]eal-world evidence for biologics in [ulcerative colitis]," but marked those slides for removal, *id.* at 20 ¶ 73; ECF No. 565-1 at 254–62; (5) Marano received this deck in response to her July 2021 email requesting "a training deck on ulcerative colitis," ECF No. 565-1 at 2; (5) Dichter submitted the Ochsenkühn study to the PTO during prosecution of the '310 application, ECF No. 566 at 23 ¶ 88; (6) Dichter testified that he has been "familiar" with the Ochsenkühn study "[s]ince it was identified to [him] during whatever legal proceeding it was cited and identified to [him]," and that if it had been "brought to [his] attention before" he "[p]erhaps" would have included it in the patent application earlier, ECF No. 561-5 at 49:17–50:17; (7) the study tested the same dosing regimen claimed in the '307 patent, ECF No. 566 at 14 ¶ 54; ECF No. 457-50.[16]

---

[16] J&J disputes Dichter's knowledge of the Ochsenkühn study based on an excerpt of Dichter's deposition testimony where he states he "believe[s]" the two Ochsenkühn sites "came from one of the legal proceedings related to this family, patent family, either the IPR, or some other proceeding." ECF No. 633 at 16; ECF No. 494 at 10:17–22. The Court cannot determine whether this statement contradicts the statement CareFirst relies on because it is provided without any context as to the time-frame Dichter is discussing. Therefore, a genuine dispute exists as to the timeframe of Dichter's knowledge.

The Court properly concluded that a reasonable juror could infer from this evidence that a duty-bound J&J employee had knowledge of the materiality of the Ochsenkühn study and decided to withhold it from the PTO. *See, e.g.*, *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1336 (Fed. Cir. 2012) (affirming district court finding that evidence of a duty-bound employee's knowledge and engagement with a reference and evidence that the reference was highly material satisfied the *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) intent standard).

## IV.    CONCLUSION

Defendants Johnson & Johnson and Janssen Biotech, Inc.'s motion for reconsideration (ECF No. 827) is **GRANTED IN PART**, as to: (1) the use of the Jostins and Granlund studies as a basis for Plaintiffs CareFirst of Maryland, Inc., Group Hospitalization and Medical Services, Inc., and CareFirst Bluechoice, Inc.'s *Walker Process* fraud claim; and (2) CareFirst's monopolization claim based on J&J's acquisition of four Momenta manufacturing patents. The motion is **DENIED IN PART**, as to: (1) whether Dr. Luis Ralat's actions could demonstrate intent to defraud the PTO and (2) whether at least one duty-bound employee knew about the materiality of the Ochsenkühn study and deliberately withheld it.

The Court's Opinion and Order on summary judgment (ECF No. 794) is **VACATED IN PART**, as to the denial of J&J's motion for summary judgment (ECF No. 441) as described herein. All other portions of the summary judgment opinion and order remain in effect.

J&J's motion in limine No. 9 (ECF No. 673) is **GRANTED IN PART**, as to CareFirst's use of J&J's privilege log and/or metadata to: (1) demonstrate that particular entries are related based on the "Created/Sent Date" of the entries and/or the subject lines of emails; and (2) invocations of privilege during deposition. The motion is **DENIED IN PART**, as to CareFirst's characterization of deposition testimony based on the facts in evidence and CareFirst's use of J&J's privilege log for the following purposes: (1) use of the "Created/Sent Date" metadata field for the purpose of showing the fact of a document's creation or download, if presented in conjunction with the "Family LogID" metadata field to provide the context of whether the document was part of a family; and (2) use of the "Created/Sent Date" metadata field for emails as well as the custodian, sender, and recipient metadata fields to show the fact of communication. This evidence may be admissible subject to CareFirst laying foundation as to the meaning of the metadata fields and must not include impermissible negative inferences about the content of the privileged material.

J&J's motion in limine No. 3 (ECF No. 667) is **GRANTED IN PART**, as to the exclusion of evidence and argument about pretrial disputes, motions, and orders and as to attorney-client privilege issues consistent with the Court's ruling on motion in limine No. 9, **DENIED IN PART**, as to the attorney-client privilege issues consistent

with the Court's ruling on motion in limine No. 9, and **DENIED IN PART AS MOOT**, as to the confidentiality designations.

      **IT IS SO ORDERED**.

/s/

_____
Jamar K. Walker
United States District Judge

Norfolk, Virginia
January 14, 2026

27