## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

CAREFIRST OF MARYLAND, INC.,
GROUP HOSPITALIZATION AND
MEDICAL SERVICES, INC., and
CAREFIRST BLUECHOICE, INC., on
behalf of themselves and all others similarly
situated,

               Plaintiffs,

       v.

JOHNSON & JOHNSON and JANSSEN
BIOTECH, INC.,

               Defendants.

Civil Action No. 2:23-cv-00629

District Judge Jamar K. Walker

Magistrate Judge Lawrence R. Leonard

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
RECONSIDERATION OF THE MOMENTA SUMMARY JUDGMENT RULING
UNDER RULE 54(B) AND MOTION FOR CONSIDERATION OF FACTS SUFFICIENT
TO PROVE SPECIFIC INTENT UNDER RULE 56(C)(3) & (E)(1)**

**TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................1

II.     STANDARD.............................................................................................................2

III.    ARGUMENT............................................................................................................5

      A.      There is sufficient evidence for a reasonable jury to find that CareFirst satisfied the specific intent standard the Court articulated at summary judgment.................5

      B.      Proffer of Evidence ....................................................................................6

            1.      The Value of Stelara & Threat of Biosimilar Competition..........................7

            2.      Momenta's Biosimilar Capabilities .............................................................9

            3.      Knowledge During Acquisition Due Diligence........................................10

            4.      Post-Acquisition Conduct .........................................................................20

            5.      J&J's Actual Use of the Momenta Biosimilar Patents................................22

IV.     CONCLUSION.......................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*,
    139 F.4th 404 (4th Cir. 2025) ................................................................................................4

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
    326 F.3d 505 (4th Cir. 2003) ................................................................................................2

*Carlson v. Boston Sci. Corp.*,
    856 F.3d 320 (4th Cir. 2017) ................................................................................................3

*United States ex rel. Carter v. Halliburton Co.*,
    315 F.R.D. 56 (E.D. Va. 2016) ..............................................................................................5

*Dietz v. Bouldin*,
    579 U.S. 40 (2016)................................................................................................................2

*Harlan Bell Coal Co. v. Lemar*,
    904 F.2d 1042 (6th Cir. 1990) ..............................................................................................4

*Herrera v. Ilhan*,
    2013 WL 3177884 (D. Md. June 21, 2013)..........................................................................4

*Hill v. Int'l Paper Co.*,
    121 F.3d 168 (5th Cir. 1997) ................................................................................................5

*LaFleur v. Dollar Tree Stores, Inc.*,
    No. 2:12-cv-363, 2014 WL 2121563 (E.D. Va. May 20, 2014)..............................................3

*Lynn v. Monarch Recovery Mgmt., Inc.*,
    953 F. Supp. 2d 612 (D. Md. 2013)......................................................................................3

*Millipore Corp. v. Travelers Indem. Co.*,
    115 F.3d 21 (1st Cir. 1997)..................................................................................................4

*Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*,
    148 F.3d 396 (4th Cir. 1998) ................................................................................................5

*Pelino v. Ward Mfg., LLC*,
    2015 WL 4528141 (D. Md. July 27, 2015)...........................................................................3

*Phillips v. Esper*,
    No. 1:19-cv-362-TSE, 2020 WL 3579796 (E.D. Va. June 30, 2020) ......................................4

*Ridgell v. Astrue*,
  2012 WL 707008 (D. Md. Mar. 2, 2012)...................................................................................3

*In re Sinclair Broadcast Group, Inc. Sec. Litigation*,
  473 F. Supp. 3d 529 (D. Md. 2020)........................................................................................3

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  401 U.S. 321 (1971)................................................................................................................3

**Rules**

Federal Rule of Civil Procedure 54(b), 56(c) and 56(e) .................................................................1

Fed. R. Civ. P. 54(b) ...........................................................................................................1, 2, 3

Fed. R. Civ. P. 56(c) .......................................................................................................1, 2, 3, 4

Fed. R. Civ. P. 56(e) .........................................................................................................1, 2, 4

## I.    INTRODUCTION

Under Federal Rule of Civil Procedure 54(b), 56(c) and 56(e), and to avoid a manifest injustice to the certified class, the plaintiffs CareFirst of Maryland, Inc., Group Hospitalization and Medical Services, Inc., and CareFirst BlueChoice, Inc. (CareFirst) respectfully request the Court reconsider its Opinion & Order dated January 14, 2026 (ECF No. 889), consider additional evidence of J&J's knowledge of the Momenta patents prior to its acquisition of Momenta, and vacate the January 14 Order.

Since its inception, CareFirst has litigated this case based on the understanding that specific intent to monopolize is not an element of the legal standard for a monopolization claim. While CareFirst understands that J&J took a different position, it respectfully suggests that it was reasonable for CareFirst's counsel to shape the needed discovery and arguments around a proposition of antitrust law that has been accepted for decades and often repeated. After discovery, CareFirst moved for summary judgment in its favor on the Momenta aspect of the monopolization scheme based on its understanding of federal monopolization law. ECF Nos. 474 (Pls. Summ. J. Br.) & 629 (Pls. Summ. J. Reply).

On December 15, 2025, the Court issued its Opinion & Order on summary judgment. ECF No. 794. The Court noted that under the rule of reason "intent is not expressly contemplated and certainly not required." *Id*. at 41 n.19 (citing Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 651 (2025) ("The critical point is that the nature and consequences of a particular practice are the vital consideration, not the purpose or intent."). However, given the parties' differing positions, the Court understandably revisited the appropriate construction of the "willfulness" requirement. It ruled: (i) that as applied to this case, the standard requires that J&J knew and understood the contents of Momenta's manufacturing patents, but (ii) on the record before it, the evidence met that test. *Id*. at 39–45.

1

On January 14, 2026, the Court granted J&J's motion to reconsider. ECF No. 877. After determining that some of the evidence CareFirst presented on the question of knowledge was inadmissible, the Court found the remaining evidence insufficient to meet the willfulness requirement it articulated.

CareFirst respectfully asks that it be allowed an opportunity to meet the new standard the Court articulated in its December decision and found it did not meet in its January decision. As CareFirst lays out here, there is substantial evidence from which a reasonable juror could find that the test is met. It would work a manifest injustice to the certified class to grant summary judgment to J&J where (1) CareFirst did not know the legal standard it would be held to, and (2) if it had known the standard, CareFirst could have met it. Under Rule 56(e), it is well within the Court's power to allow CareFirst to supplement the summary judgment record. CareFirst asks the Court to vacate its summary judgment ruling and allow CareFirst to supplement the summary judgment evidentiary record to meet the standard the Court articulated in its December decision. Based on this supplementary evidence, CareFirst moves the Court to deny summary judgment to J&J and allow the case to proceed to trial.

## II.    STANDARD

The Court has the discretion to reconsider its December 15 and January 14 Orders pursuant to Rule 54(b) and to include additional evidence in its review pursuant to Rule 56(c)(3) and (e)(1). And district courts inherently have "the power to modify or rescind its orders at any point prior to a final judgment in a civil case." *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016).

"[A]ny [interlocutory] order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (a district court has "the power to reconsider and modify its interlocutory judgments . . . at

2

any time prior to final judgment"). "A district court may grant a motion for reconsideration under Rule 54(b): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice." *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-cv-363, 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014) (citing *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993) (articulating the same standard for motions to amend a judgment under Fed. R. Civ. P. 59(e))). Rule 54(b) gives a district court "flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (emphasis omitted).

Furthermore, the Court "has broad discretion to grant leave to file supplemental materials[,]" *Pelino v. Ward Mfg., LLC*, 2015 WL 4528141, at *1 n.3 (D. Md. July 27, 2015), as the goal on motions for reconsideration of interlocutory orders is "to reach the correct judgment under law." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 618 (D. Md. 2013); *see also In re Sinclair Broadcast Group, Inc. Sec. Litig.*, 473 F. Supp. 3d 529, 535 (D. Md. 2020) (granting leave to file supplemental memorandum of new evidence); *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331 (1971) ("[A] motion to reopen to submit additional proof is addressed to [the court's] sound discretion.").

As amended in 2010, Rule 56(e)(1) provides the proponent of evidence deemed inadmissible the opportunity to supplement the record with additional evidence to support the same fact. "The revised Rule [56] . . . clearly contemplates that the proponent of evidence will have the ability to address the opponent's objections [to admissibility], and the Rule allows the court to give the proponent 'an opportunity to properly support or address the fact,' if the court finds the objection meritorious. Fed. R. Civ. P. 56(e)(1).'" *Ridgell v. Astrue*, 2012 WL 707008, at

3

*9 (D. Md. Mar. 2, 2012) (quoting *Foreword Magazine, Inc. v. OverDrive, Inc.*, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011)); *Herrera v. Ilhan*, 2013 WL 3177884, at *3-4 (D. Md. June 21, 2013) (same). Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact." *See, e.g.*, *Phillips v. Esper*, No. 1:19-cv-362-TSE, 2020 WL 3579796, at *18 (E.D. Va. June 30, 2020) (permitting leave to submit the declaration under Rule 56(e)(1)). Additionally, Rule 56(c)(3) provides that "[t]he court need consider only the cited materials, but it may consider other materials in the record."

CareFirst's motion requests that leave be granted to submit the additional evidence presented in this brief. And it respectfully asks the Court to reconsider its January summary judgment order given this additional evidence. CareFirst's position is that the legal standard it must meet to prove its anticompetitive-patent-acquisition claim changed in the Court's December summary judgment decision. The Court's December ruling follows a reading of *2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*, 139 F.4th 404, 410 (4th Cir. 2025), and adopts a requirement of monopolistic intent. As the Court observed, *2311 Racing* is "inconsistent with Supreme Court precedent." ECF No. 794 at 40 n.19.

Courts hold that when the law changes after the record has been developed under a different framework, it is manifestly unjust to deny the affected party an opportunity to submit evidence appropriate under the new standard. *See, e.g.*, *Harlan Bell Coal Co. v. Lemar*, 904 F.2d 1042, 1046–48 (6th Cir. 1990) (remanding "to allow both parties to present proof directed at the new legal standard" because "a manifest injustice would result if [petitioner] were denied the opportunity to rebut evidence . . . ."); *Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 34

4

(1st Cir. 1997) (reversing summary judgment and remanding because "the better, fairer outcome is to permit the parties to make new submissions, if they wish, in light of the significant intervening clarification of the law" given that the new law "arguably requires a new level of precision in proving [causation]."); *Hill v. Int'l Paper Co.*, 121 F.3d 168, 177 (5th Cir. 1997) (vacating judgment and remanding for further proceedings "due to what we perceive as a mid-course change in Mississippi law [and] in fairness to the court and the parties"). As with all changes in intervening law, fundamental fairness counsels that the parties be permitted to address the appropriate standard.

A district court may alter its own judgements where, as here, doing so would not only prevent a manifest injustice but also "spar[e] the parties and the appellate courts the burden of unnecessary appellate proceedings." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quotations and citations omitted). To prevent that injustice, and the expenditure of the further judicial resources that would be necessary to resolve this claim, CareFirst asks the Court to consider its offer of evidence and then allow its Momenta acquisition theory to proceed to the jury. *See United States ex rel. Carter v. Halliburton Co.*, 315 F.R.D. 56, 61 (E.D. Va. 2016) ("[T]his case has consumed an immense amount of resources from the parties and the many courts that have sought to resolve [their] disputes . . . . To the extent a clarification of the [earlier] Opinion will provide a more direct route to finality in this case, it would be a manifest injustice to deny that clarification").

### III.    ARGUMENT

**A.    There is sufficient evidence for a reasonable jury to find that CareFirst satisfied the specific intent standard the Court articulated at summary judgment.**

In its December summary judgment decision, the Court held that "the inquiry is whether 'at the time of the patent acquisition' it was 'reasonably foreseeable' that the acquisition would

5

permit the acquirer to 'obtain monopoly power in a relevant product market.'" ECF No. 794 at 42 (quoting *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1208–09 (2d Cir. 1981)). "Therefore . . . the relevant question is whether J&J could have reasonably considered Momenta, through its manufacturing patents, to be a potential competitor and therefore a 'nascent threat' to J&J's alleged monopoly power." *Id.* at 43.

This is a standard CareFirst can meet. It was reasonably foreseeable that Momenta, a biosimilar manufacturer with a vast intellectual property portfolio directed towards the manufacture and sale of *biosimilar* drugs, would have patents that J&J could use against its *biosimilar* competitors. And, as shown below, there is evidence that J&J had the requisite "knowledge" of Momenta's manufacturing patents at the time it acquired Momenta. *Id.* at 43.

Indeed, there is evidence that the relevant acquisition is actually *Janssen*'s acquisition of the Momenta patents—through an assignment from J&J—which occurred on *February 2, 2023*. CareFirst presents these facts in Section B, below. Until this Court's December Order, the general intent standard presented no reason for CareFirst to distinguish between the timing of Johnson & Johnson and Janssen's acquisitions, i.e., Johnson & Johnson's *October 2020* acquisition of the relevant patents and Janssen's *February 2023* acquisition of those patents. After the Court's summary judgment Order, CareFirst pointed this out. *See* ECF No. 832 at 10. Given the Court's specific intent standard, CareFirst takes the position that, under any view of the evidence, Janssen's acquisition of the relevant patents in February 2023 meets the most stringent reading of the specific intent requirement, regardless of how it may be framed. Judgment for Janssen would be a manifest injustice.

**B.     Proffer of Evidence**

CareFirst makes the following proffer of evidence.

6

1.    The Value of Stelara & Threat of Biosimilar Competition

1.    For each fiscal year starting at least 2019 through 2023, Stelara (ustekinumab) was Johnson & Johnson's (J&J') largest selling product. Ex. 1 (J&J Supp. Objs. and Resps. to Pls. 2nd RFAs) at No. 75.1 In 2019, J&J's U.S. Stelara sales were $4.3 billion—7.8% of its total worldwide revenue. *Id.* at No. 69.

2.    J&J assumed that biosimilar Stelara products would launch in 2023 (internally, J&J referred to September 2023 as ███████████████████████. ECF No. 443 (Pls. MSJ Br.) at Fact No. 3 (undisputed as to this fact (*see* ECF No. 542 (J&J MSJ Opp.) at 34)); Ex. 1 at No. 251; ECF No. 629 (Pls. MSJ Reply Br.) at Fact No. 103. J&J told a federal court that it estimated its U.S. Stelara net revenues would decline by between ███████████ within the first year of biosimilar competition. Ex. 2 (Jarosz Decl., J&J v. Amgen litigation) ¶ 69.



3.    In April 2019, ███████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████ Ex. 3. By November 2019, ██████████████ ██████████████████████████████████████ ████████████████████████████. Ex. 4.

4.    Denise DeFranco testified that by ███████████████████ ████████████████████. Ex. 5 (DeFranco Tr.) at 283:3–284:25 (referencing log entries in Ex. 6 at Family LogID PL00032283); *see also* ECF No. 887 (denying J&J's motion

---

[1] All exhibits are to the Declaration of Abbye R. K. Ognibene, filed concurrently herewith. CareFirst will file a chart with the Court promptly indicating whether these exhibits were previously filed on the docket and, if so, where they are located.

to exclude CareFirst's characterization of this testimony). J&J's counsel in connection with those efforts was ███████████. Ex. 5 (DeFranco Tr.) at 68:16-23.

5.     Meanwhile, J&J ████████████████████████████ In 2019, J&J leadership requested ████████████████████████ ████████████████ Ex. 7 at -879. This included a ██████████ ████████████████████████████ *Id.* By December 2019, a ████████ ████████████████████████████████ *Id.* at -874 (emphasis added). As a part of this effort, J&J outlined its ████████████ ████████████████████████ *Id*. at -877 (emphasis added). J&J was ████ ████████████████████. *Id*. at -882.

6.     In January 2020, J&J ████████████████████████████ ████████████████████ Ex. 8. In discussing ██████████████ ████████████ *Id.* at -779. The "context" for that discussion was ████████ *Id*. While discussin ████████████████████████████ ████████████████████████████████ ████████████████████████████ *Id.* Specifically, J&J recognized that ████████████████████████████████████ ████████████████ *Id*. at 780. Attendee ████████████████ ███. Ex. 9 (J&J's Resps. & Objs. To Pls. 1st Set of Interr.) at No. 4 ("Michael Genus and Johan Verbeeck were the individuals with primary responsibility for securing approval of the Momenta acquisition.").

7.     J&J hired sophisticated consulting firms to advise on ██████████ Ex. 10. In June 2020, ████████████████████████████████████



*Id.* at -756.

*Id.* at -758 (emphasis in original). To prepare for the summit,

*Id.*

8.      Among the strategies considered at the summit were

*Id.* at -789.

*Id.* at -792.

*Id.* (emphasis added).

2.      Momenta's Biosimilar Capabilities

9.      Momenta Pharmaceuticals was a biosimilar drug company. J&J characterized Momenta's pre-acquisition business as follows: "Momenta was a highly skilled biosimilar manufacturer: its research and development focused on manufacturing antibodies, including enabling biosimilars to more effectively match the reference product." Ex. 11 (First Amended Compl., *J&J v. Amgen*) ¶ 4.

10.      J&J does not manufacture biosimilar antibodies, and it has

See ECF No. 443 (Pls. MSJ Br.) at Fact No. 31 (undisputed (*see* ECF No. 542 (J&J MSJ Opp.))).

11.      In July 2020, Momenta's

9



███████ Ex. 12 at -877. Momenta had ██████████████

*Id*. at -878.

12.     Among this IP were four biosimilar manufacturing patents: U.S. Patent Nos. 8,852,889; 9,217,168; 9,663,810; and 9,475,858 (the Momenta Biosimilar Patents). ECF No. 443 (Pls. MSJ Br.) at No. 16 (undisputed for this fact (*see* ECF No. 542 (J&J MSJ Opp.) at 37)). These patents were invented with the ████████████████████ ████████████████████ Ex. 13 (J&J Br. in Support of Mot. for Prelim. Inj., *J&J v. Amgen*) at -451.

13.     The Momenta employee who invented these patents testified that ████████ ████████████████████ Ex. 14 (Prentice Tr., *J&J v. Amgen*) at 268:11-14, and that the patents were ████████████████ *Id.* at 260:4-8.

### 3.     Knowledge During Acquisition Due Diligence

14.     J&J began considering the acquisition of Momenta by 2019. In early January 2019, Momenta's Chief Financial and Business Officer (Dr. Kwong) and members of Momenta's management met with senior members of J&J's business development and research and development teams. Ex. 15 at 17. J&J "expressed interest in learning more about [Momenta's] product candidates and potentially exploring a partnership or other strategic collaboration with respect to the Company's immunology capabilities[.]" *Id.* at 18.

15.     In April 2019, J&J and Momenta entered into a confidentiality agreement to facilitate further discussions on a potential partnership or strategic collaboration. *Id.* at 18.



*ee, e.g.*, Ex. 6 at Privilege Log # PL00038701 (Family LogID PL00038700.[3]

*See* Fact No. 33, *infra*.

17.

. Ex. 16 at -729.

18.      Momenta and J&J leadership met between April 2019 through June 2020 and discussed "potential partnership or collaboration opportunities," including with their business development and research and development teams. Ex. 15 at 18.

but Momenta repeatedly stressed "the potential for a strategic transaction involving the entire Company." *Id.* In December 2019, Momenta's management met with J&J's business development and research and development teams. *Id.* In January 2020, Momenta's CFO Dr. Kwon met with J&J representatives and provided an overview of Momenta "and its development programs." *Id.* Between January and June 2020, J&J and Momenta met to

---

[2] For clarity and ease of the Court's review concerning what of CareFirst's evidence relies on privilege log entries, CareFirst **indicates in bold** any content herein that comes from a privilege log entry.

[3] For each privilege log entry referenced herein, Exhibit 6 contains all entries from the applicable privilege log bearing a referenced Privilege Log Entry's same Family LogID.

[4] While plaintiffs have not challenged this withholding, the basis for J&J privilege claim is unclear. As J&J admitted, communications between J&J and Momenta prior to the acquisition in October 2020 are not privileged and should have been produced. ECF No. 240-12 at 2.

██████████████████████████ *and* "[J&J's] continued potential interest in a strategic transaction involving the Company's lead programs." *Id.*

19.    Apart from J&J, in the summer of 2020, Momenta approached two other global pharmaceutical companies concerning their interest in a competitive bid to acquire Momenta. *Id.* at 18–21. In late June and early July, following an investigation, each indicated that while they had in interest in buying particular Momenta assets, neither was prepared to participate in a potential sale involving the entire Momenta company. Only J&J was willing to do so. *Id.*

20.    On June 22, 2020, J&J made an oral offer to J&J to acquire Momenta. *Id.* at 18.

21.    At that time, Momenta hired its "existing outside counsel at Latham & Watkins LLP … to serve as its legal advisor in connection with [Momenta's] evaluation of the Initial Proposal and its strategic alternatives." *Id.* at 19. Momenta "believed Latham & Watkins would be a valuable advisor . . . based on Latham & Watkins' history with [Momenta], expertise advising companies in the life sciences industry and its expertise in strategic transactions generally." *Id.*

22.    At this same time, ████████████████████████████████████ ████████████████ *See* Exs. 3 & 4.

23.    On June 23, 2020, Momenta's Board met with attorneys from Latham (among others) to discuss J&J's offer. Ex. 15 at 19. ████████████████████████████ ██████

24.    On June 26, 2020, Momenta told J&J ████████████████████████ ████████████████████████████████████████████████████ ████████████ *Id.* That same day, Momenta informed J&J that ████████████████

12

*see* Ex. 17, ███████████████████████████████████████████████

███████ *See* Exs. 3 & 4.

███████████████

████████████████████████████████████████████

██████████████████████████████████ Ex. 6 at Privilege Log #

PL00061900.002 (Family LogID PL00061900).

26.  J&J has produced a copy of one of the Momenta Biosimilar Patents (the '168

patent) from ██████████████████████████████████ (*see* Ex. 18 at

metadata (last page of PDF)), i.e., ████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████

27.  On July 1, 2020, J&J obtained access to Momenta's virtual data room (VDR),

which included "high-priority due diligence materials related to [Momenta] and its product

candidates." Ex. 15 at 20.

28.  Included in the VDR was a July 3, 2020 █████████████████████

███████████████████████████████████████████████████

█████████ Ex. 19. The metadata for this document indicates it was in the ████████

██████████████████ *Id.* at metadata sheet (last page of PDF) at "All Paths" and "File Path."

Its "Date Created" and "Date Modified" are both █████████ and the "Author" is listed as

█████████████ *Id.*

29.  Slide 11 of the "████████████████████████" presentation concerns

Momenta's █████████████████████████████████████████████ as

one such biosimilar. *Id.* at -885. ███████████████████████████████

13

██████████████ . *Id.*, at -884. This same patent ████████████████████████

████████████████████████████████ . *See* Ex. 20 at -559 & -594.

30.    Also included in the VDR is a ████████████████████████████████

███████████████ which was dated ███████ nd describes ████████████████████

██████████████ . Ex. 21. ████████████████████████████████████████████

████████████████████████████████████████ . *See* Ex. 22. The metadata

for this presentation indicates it was ███████████████████████████ Ex. 21 at

metadata sheet (last page of PDF) at "All Paths" and "File Path." Its date created and date

modified ██████████████ *Id.* ██████████████████████████████████████

██████████████████████████████████ *Id.* at -849. It specifies that

████████████████████████████████████████████████████████████████

███████████ ██████████ ██████████████████████████████████████████

████ *Id.*

31.    On July 7, 2020, ████████████████████████████████████████

██████████████████████████████ . Ex. 23; *see also* ECF No. 443 (Pls. MSJ Br.)

at Fact No. 7 (citing to MSJ Ex. 20 (Miller Tr.) at 164:9–172:4, 180:13–184:21, 188:21-24,

189:22–190:5; MSJ Ex. 21; MSJ Ex. 22 at -875, -877–888, -885). That list included ████

███████████████████ . *Id.* at Rows 123 ██████████ & 124 ████████████████

█████████████████████████████████ Rows 183 ██████████ & 184 ████

████████████████████████████████████████ . It also lists █

████████████████████████████████████████████ . *Id.* at Rows 282–83.

32.    On July 21, 2020, J&J made a new offer and Momenta and Latham met to discuss

the proposal. Ex. 15 at 21. ████████████████████████████████████████████

███████████████████████████████████████ Momenta contacted J&J to let them know

Momenta would be providing "additional due diligence materials." *Id.*

33. Among the materials Momenta provided J&J on ████████████████

████████████████████████████████████████ *See* Ex. 24 at Due Diligence Question

No. 25 (showing J&J receiving ██████████████████████████████████ Ex. 25

████████████████████████████████ The agreement conce██████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. at -878)████

████████████████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* at -892. ██████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* at -889.

34. ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████

35. The day after it sent J&J the ██████████████████████████

Momenta's Vice President of Licensing and Intellectual Property, ██████████████████████



15



Ex. 26 at -438.

*Id.*

(emphasis added).

36.    Melissa Miller responded ▮▮▮▮▮▮▮▮ *Id.* at -437. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ *Id.*

37.    On July 24, 2020, ▮▮▮▮▮▮▮▮ *Id.* at -474.

▮▮▮▮▮▮▮▮ *Id.* at -474. He provides ▮▮▮▮▮▮

▮▮▮▮▮▮ *Id.* (emphasis added). ▮▮▮▮▮▮

▮▮▮▮▮▮ *Id.* (emphasis added).

38.    ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ Ex. 25 (*see* watermark stamp on document disclosing custodian and date). ▮▮▮▮▮▮

16

███████████████████████████████████████████ *See* Ex. 27. ████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████ Ex. 9 (J&J's Resps. & Objs. To Pls. 1st Set of

Interr.) at No. 4.) **The email is withheld for privilege**. Ex. 6 at Privilege Log # PL00038430

███████████████████████████████

████████████████████████████████████████████████

██████████████████████████ *Id.* at Privilege Log # PL00038431 (Family LogID

PL00038430).

39.    █████████████████████████████████

████████████████████████████████████████████ Ex. 24 at

Diligence Question No. 25. ████████████████ *Id.* █████████████

████████████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████ *Id.* (emphasis added)

██████████████████████████████████████████████████

████████████████████████████████████████

████████ *see*      *infra* ███████████████████████ Ex. 6 at Family

LogID PL00038700 (family including withheld ████████████████████████

███████████████ (Privilege Log # PL00038700.002) and **withheld PowerPoint**

**attachment** (Privilege Log # PL00038701)); Family LogID PL00086023 (family including a

withheld █████████████████████████████████████ (Privilege

█

Log # PL00086023) and **the withheld PowerPoint attachment** (Privilege Log # PL00086024));

Family LogID PL00096477 (family including withheld ▮▮▮▮▮▮▮▮▮▮▮

(Privilege Log # PL00096477) and **the withheld PowerPoint attachment** (Privilege Log #

PL00096481)). In two of these entries, **it is attached to emails with subject lines concerning**

**the** ▮▮▮▮▮▮▮▮ which CareFirst understands to mean ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮. *Id.* This connection between ▮▮▮▮▮▮▮▮▮▮▮

to J&J employees and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is probative of when J&J learned about

that potential use of Momenta's IP.

41.    On July 27, 2020, ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮. Ex. 28 (cover email, attachments withheld).

42.    On August 6, 2020, ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮ Ex. 4.

43.    On August 19, 2020, ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮ ECF No. 474 (Pls. MSJ Br.) at Fact No. 19 (undisputed (*see* ECF No. 541 (J&J Opp. to Pls.

MSJ Br.))).

44.    Also dated August 19, 2020 is ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 443 (Pls.

MSJ Br.) at Fact No. 18 (undisputed (

45.     Ms. Miller testified that when J&J executed ████████████████████

████████████████████████████ ECF No. 443 (Pls. MSJ Br.) at Fact No. 21 (citing

to MSJ Ex. 20 (Miller Tr.) at 129:6–130:19).

46.     The same day that the Merger Agreement was executed, █████████

█████████████████████████████████████████████████████████████

███████████████████████████ Ex. 29 at -043. ██████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████ *Id.* at -048 (emphasis in original).

47.     On September 9, 2020, ████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

Ex. 31 at -094. ████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████ *Id.* █████████████████

███████████████████████████████████████ *Id.* at -093 ████████████████

█████████████████████████████████████████████████ *Id.*

19

48.    The documents and evidence demonstrate that before the acquisition was final,



████████████████ *See, e.g.*, Exs. 31 & 32.

49.    On October 1, 2020, J&J completed the acquisition of Momenta for approximately $6.1 billion. ECF No. 822 (Joint Pretrial Memo: Undisputed Facts) at Fact 14. It would later tell a federal court that the Momenta patents claim "valuable manufacturing techniques" and that acquiring them was a part of J&J's "significant investments in research and development concerning the processes for generating and manufacturing antibodies for therapeutic use." Ex. 11 ¶¶ 5–6.

4.    Post-Acquisition Conduct

50.    ████████████—the same month the acquisition closed—████



████████████████████████████ with the

subject ████████████ Ex. 6 at Privilege Log # PL00057771.005 (Family LogID PL00057771). Mr. Nickson was the Momenta employee who initially raised ████████

████████████████████████████ in July 2020. Ex. 26. The privilege log shows that, **within weeks of the acquisition closing, Mr. Nickson** ████████████████████████

████████████████████████████ Ex. 6 at Privilege Log # 00057772 (email) and Privilege Log # PL00092495 (attachment), both of which are part of Family LogID PL00057772. The listed "**Sender/Author**" of the presentation is

████████████████████████████

████████████. *See* Ex. 6 at Privilege Log # PL00092495; ECF No. 471-5; Fact No.

20

28, *infra*. Mr. Nickson als███████████████████████████████████████████

███████**."** *See* Ex. 6 at Privilege Log # PL00092496 (Family LogID PL00057772). ████

████████████████████████████████████—an International Patent Application that

Momenta filed in December 2019 titled "Methods of Producing Ustekinumab." *See* Ex. 33.

51.    The privilege log also shows ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████. Ex. 6 at Privilege Log #

PL00033113 & PL00033114 (Family LogID PL00033112). Again, the listed "Sender/Author" of

the presentation is ████████████  Ex. 6 at Privilege Log # PL00033113 (Family LogID

PL00033112); *see also* ECF No. 471-5 & Fact Nos. 28 & 50, *infra*.

52.    On November 9, 2020—just after the acquisition closed—████████████

████████████████████████████████████████████████████████████████

████████  Ex. 34. He acknowledges that while ████████████████████████

████████████████████████████—demonstrating his familiarity with the

agreement—he further writes that J&J has ████████████████████████████

████████████████████—demonstrating J&J's efforts to "monetize"

Momenta's biosimilar IP.

53.    Likewise, ████████████████████████████████████

████████ among others, an email with the subject line ████████████████ *See*

Ex. 36 at metadata (last page of PDF) in "All Paths" and "File Path" folders. While the cover

email is withheld for privilege, ████████████████████████████████████

*Id.* This is evidence of Ms. DeFranco's knowledge of ████████████████

████████████████████████████—mere weeks after the

21

acquisition closed ████████████████████████████████████████████

████████████

54.     On January 11, 2021, █████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Ex. 26. Likewise, this is evidence of when senior J&J leadership

became aware of the Momenta IP and its relation to its alleged scheme to delay Stelara

biosimilar launch.

     5.     J&J's Actual Use of the Momenta Biosimilar Patents

55.     Since its acquisition of Momenta, ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████

56.     Starting in late 2022, J&J began to initiate or threaten lawsuits against biosimilar

ustekinumab manufacturers (ECF No. 741 (J&J's Answer to Third Am. Compl.) ¶ 8)), claiming

that their biosimilar ustekinumab products would infringe J&J's patents.

57.     ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ Ex. 9 (J&J's Resp. to Pls. First Set of Interr.) at No. 2.

---

[5] Mr. Wolk was in the loop regarding the details and goals of the Momenta transaction. *See* Ex. 37 (June 2020 email exchange in which Mr. Wolk briefs members of the J&J board regarding the planned Momenta acquisition on behalf of the senior executives, copying J&J's CEO, Alex Gorsky).

58.     On November 29, 2022, Janssen sued Amgen for infringement of two, non-Momenta patents. ECF No. 444 (J&J MSJ Br.) at Fact No. 40; ECF No. 443 (Pls. MSJ Br.) at Fact No. 37 (undisputed (*see* ECF No. 542 (J&J's MSJ Opp.)).



*See* ECF No. 443 (Pls. MSJ Br.) at Fact No. 39 (undisputed (*see* ECF No. 542 (J&J's MSJ Opp.)).

60.     In a March 15, 2023 letter,

Ex. 38.

61.     On February 21, 2023, Janssen amended its complaint against Amgen to assert that Amgen infringed the Momenta Biosimilar Patents. Ex. 11 (First Am. Compl., *J&J v. Amgen*) ¶¶ 5, 15, 26, 61–68, 145–393. It also sought an injunction preventing Amgen from selling its biosimilar Stelara product based on Amgen's alleged infringement of the Momenta Biosimilar Patents. ECF No. 444 (J&J MSJ Br.) at Fact No. 41.

62.



ECF No. 471-15 (J&J Prelim. Inj. Br., *J&J v. Amgen*) at 28.

*Id.* at 19.

23

███████████████████████████████████████████████████████

██████████ *Id.* at 21.

63.    On May 19, 2023, before Amgen responded to the preliminary injuction or the court entered any rulings on the patents, Amgen and J&J settled the lawsuit and entered into a settlement agreement. *See* ECF No. 444 (J&J MSJ Br.) at Fact No. 42. In the agreement, among other terms, J&J agreed to give Amgen a license that covered all its asserted patents, including the Momenta Biosimilar Patents, in exchange for Amgen's agreement not to launch its biosimilar ustekinumab product until January 1, 2025. *Id.*; Ex. 1 at Nos. 185–86.

64.    █████████████████████████████████████████

███████████████████████████████████████████ Ex. 9

(J&J's Resps. & Objs. To Pls. 1st Set of Interr.) at No. 5.

65.    A number of other biosimilar companies (Alvotech, Accord, Celltrion, Fresenius, Biocon, and Samsung/Sandoz) also sought to come to market with biosimilar ustekinumab. *See* ECF No. 822 (Joint Pretrial Memo: Undisputed Facts) at Fact No. 30. J&J asserted the Momenta Biosimilar Patents (among other patents it had acquired from Momenta) against each by threatening each of them with litigation. *See* ECF No. 443 (Pls. MSJ Br.) at Fact No. 67 (undisputed (*see* ECF No. 541 (J&J MSJ Opp.)); ECF No. 741 (J&J's Answer to Third Am. Compl.) ¶¶ 7–8.

66.    J&J's communications with biosimilar ustekinumab manufacturers demonstrate that it foresaw the relevance of the Momenta patents to its claims against those manufacturers, even before J&J received access to any aBLA manufacturing information. A November 28, 2022 letter ██████████████████████████████████████████

████████████████████████████████████████████ Ex. 39

█

(letter); Ex. Nos. 40–49 (ten asserted Momenta patents, including the Momenta Biosimilar Patents).

67.  Ex. 50.

68. On December 5, 2022,  Ex. 51. This evidence establishes that J&J knew about use of these patents to challenge biosimilar drugmakers even where it did not yet have those manufacturers' aBLA.

69. On June 22, 2023, █████████████████ Ex. 52.

70. Each biosimilar company agreed to settle and license agreements with J&J permitting them to come on the market in 2025. ECF No. 822 (Joint Pretrial Memo: Undisputed Facts) at Fact 31.

## IV.    CONCLUSION

CareFirst respectfully requests that the Court reconsider its summary judgment decision and deny J&J's motion as to its allegation that J&J's acquisition of Momenta was anticompetitive.

Dated: January 17, 2026

Respectfully submitted,

/s/ William H. Monroe, Jr.
William H. Monroe, Jr. (VSB No. 27441)
Marc C. Greco (VSB No. 41496)

25

Kip A. Harbison (VSB No. 38648)
Michael A. Glasser (VSB No. 17651)
**GLASSER AND GLASSER, P.L.C.**
Crown Center, Suite 600
580 East Main Street
Norfolk, VA 23510
Telephone: (757) 625-6787
Facsimile: (757) 625-5959
bill@glasserlaw.com
marcg@glasserlaw.com
kip@glasserlaw.com
michael@glasserlaw.com

Thomas M. Sobol (*pro hac vice*)
Hannah W. Brennan (*pro hac vice*)
Abbye R. K. Ognibene (*pro hac vice)*
Whitney E. Street (*pro hac vice*)
Rebekah Glickman-Simon (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
One Faneuil Hall Square, 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
tom@hbsslaw.com
hannahb@hbsslaw.com
abbyeo@hbsslaw.com
whitneyst@hbsslaw.com
rebekahgs@hbsslaw.com

Peter D. St. Phillip (*pro hac vice*)
Uriel Rabinovitz (*pro hac vice*)
Raymond Girnys (*pro hac vice*)
Noelle Ruggiero (*pro hac vice*)
Alexis Castillo (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
PStPhillip@lowey.com
URabinovitz@lowey.com
RGirnys@lowey.com
NRuggiero@lowey.com
ACastillo@lowey.com

John Radice (pro hac vice)
April Lambert (pro hac vice)
Kenneth Pickle (pro hac vice)

26

Charles Kopel (pro hac vice)
**RADICE LAW FIRM, P.C.**
475 Wall Street
Princeton, NJ 08540
Telephone: (646) 245-8502
jradice@radicelawfirm.com
alambert@radicelawfirm.com
kpickle@radicelawfirm.com
ckopel@radicelawfirm.com

*Counsel for Plaintiffs CareFirst of Maryland, Inc.,*
*Group Hospitalization and Medical Services, Inc.,*
*and CareFirst BlueChoice, Inc.*

27

## CERTIFICATE OF SERVICE

I, William H. Monroe, Jr., certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record, and parties may access the filing through the Court's system.

Dated: Dated: January 17, 2026                              /s/ William H. Monroe, Jr.
                                                            William H. Monroe, Jr.